```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
--------------------------------------------------------------------------x
ULTIMA SERVICES CORPORATION,                              :
        Plaintiff,                                        :
              -against-                                   :    No.
U.S. DEPARTMENT OF AGRICULTURE,                           :
U.S. SMALL BUSINESS ADMINISTRATION,
SECRETARY OF AGRICULTURE, and ADMINISTRATOR               :
OF THE SMALL BUSINESS ADMINISTRATION,
                                                          :
        Defendants.
                                                          :
--------------------------------------------------------------------------x
```

## COMPLAINT

This is an action for race discrimination in violation of the Fifth Amendment to the United States Constitution and federal law.

### JURISDICTION AND VENUE

1. This is an action arising under the Constitution and laws of the United States. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(3), 5 U.S.C. § 702, and 15 U.S.C. § 634(b)(1).

2. Venue is proper in this Court because (1) plaintiff's primary office is in this district, (2) discriminatory actions against plaintiff have been effected in this district and actions taken elsewhere have had an effect on plaintiff's business in this district.

PARTIES

3.     Plaintiff Ultima Services Corporation ("Ultima") is a corporation organized under the laws of the State of New Mexico with its principal place of business in Greeneville, Tennessee.

4.     Defendant U.S. Department of Agriculture ("USDA") is a cabinet-level agency of the United States government. The Secretary of Agriculture is the head of the Department. Sonny Perdue is the current Secretary.

5.     Defendant U.S. Small Business Adminsitration ("SBA") is a cabinet-level agency of the United States government. The Administrator of the SBA is its head. Chris Pilkerton is the current Acting Administrator.

FACTUAL BACKGROUND

6.     Ultima was and is a "small business" as defined by the SBA.

7.     Ultima competes for federal contracts with the Department of Agriculture reserved for "small businesses" by the SBA. Specifically, Ultima contracts to provide services for the Natural Resources Conservation Service ("NRCS"), an agency of the USDA. NRCS provides aid to farmers to help them comply with various conservation programs, like crop rotation, designed to improve conservation and the environment. The contracts that Ultima competes for, and that are at issue in this lawsuit, provide administrative and/or technical support to USDA offices that implement NRCS programs.

8. Until recently, Ultima was successful in winning these contracts and in completing its obligations under them to the satisfaction of the NRCS. Indeed, in 2017, it won four different regional IDIQ (Indefinite Delivery Indefinite Quantity) contracts to provide administrative and/or technical support services for NRCS programs covering up to all fifty states and several territories of the United States.

9. Both IDIQ contracts and individual contracts for state-specific administrative and/or technical support services have a base time period, with several options for renewal time periods. Historically, USDA has typically exercised the options and renewed contracts for administrative and/or technical support services where the company providing the services was performing satisfactorily. Prior to 2017, USDA had repeatedly exercised these contract options and renewed contracts under which Ultima was providing administrative and/or technical support services.

10. Beginning in 2018, however, USDA has refused to exercise options, add funding, and/or extend contracts on which Ultima was providing administrative and/or technical support services for the NRCS. Moreover, after declining to exercise the contract options, USDA has not offered these contract opportunities to any company willing to bid on the contracts, or even all small businesses willing to bid on the contracts. Rather, USDA has repeatedly, and with respect to a large number of these contracts for administrative and/or technical support services for NRCS programs, set aside these contracts for a Section 8(a) contractor.

11. The "Section 8(a) Program," as used in this complaint, is the program administered by defendant SBA and other agencies of the federal government pursuant to

3

Section 8(a) of the Small Business Act (15 U.S.C. § 637(a)).  In 1978, Congress passed Public Law 95-507, Section 202(a) of which substantially amended Section 8(a).  The SBA subsequently promulgated regulations for the operation of the Section 8(a) Program, the current version of which appears in Subpart A of Part 124, Chapter 1, Title 13 of the Code of Federal Regulations.

12. Section 8(a) of the Small Business Act itself authorizes the SBA to enter into agreements for goods and services with other government departments and agencies, and to subcontract the performance of those agreements to "socially and economically disadvantaged small business concerns."  15 U.S.C. § 637(a)(1)(A), (B).  Hence, as the Section 8(a) Program was initially conceived, contracts for the benefit of Section 8(a) firms would be subcontracts between those firms and the SBA.  These contracts can be "sole source" (reserved to one Section 8(a) firm) or competitive within the Section 8(a) program such that only firms qualified for the Section 8(a) Program ("Section 8(a) Firms") can bid.  13 CFR § 124.501(b).  They are not available to companies that have not qualified for the Section 8(a) Program.

13. More recently, the SBA has granted some federal agencies the authority to contract directly with Section 8(a) Firms.

14. "Socially and economically disadvantaged small business concerns" are (with exceptions not relevant here) "small business concerns" at least 51% owned, and operated, by individuals who are socially and economically disadvantaged.  15 U.S.C. § 637(a)(4); 13 CFR § 124.102.

15. "Socially disadvantaged individuals" are defined in Section 8(a) as those who have "been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to individual qualities." 15 U.S.C. § 637(a)(5).

16. "Economically disadvantaged individuals" are "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6).

17. In administering the Section 8(a) Program, the SBA identifies those firms that qualify for the program. Other agencies, like the USDA, rely on the SBA's determination of which companies are Section 8(a) Firms in utilizing the Section 8(a) Program and offering contracting opportunities to companies under that program.

18. In determining which companies are qualified for the Section 8(a) Program, the SBA presumes that individual members of certain racial and ethnic groups are "socially disadvantaged." These include Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and Subcontinent Asian Americans. 13 CFR § 124.103(b). Accordingly, companies owned by members of these groups have an advantage, based upon the owners' race and/or national origin, in having their firms qualify as Section 8(a) Firms.

19. In the absence of SBA's presumption, far fewer firms would qualify as Section 8(a) Firms and far fewer contracts would be reserved for the Section 8(a) Program.

20. In the absence of SBA's presumption, Ultima would have far more opportunities

to bid on contracting opportunities with USDA.

21. Because of defendants' decisions to reserve contracts for Section 8(a) Firms, Ultima has been unable to complete for contracts which it successfully performed in the past and could perform again in the future. Accordingly, it has suffered damages as a consequence.

22. Ultima's owner is not a member of a racial minority and, accordingly, cannot be presumed to be socially disadvantaged. Ultima is not a Section 8(a) Firm.

23. The SBA does not keep a database or statistics that would allow it to ascertain the capital and credit opportunities of those who are not socially disadvantaged in a particular business area.

24. The SBA does not keep a database or statistics that would allow it to compare the capital and credit opportunities of the owners of any particular company in the Section 8(a) Program with those not socially disadvantaged in the same business area.

25. Instead, the SBA determines whether an owner and/or operator of a potential Section 8(a) Firm is "economically disadvantaged" by examining the personal financial condition of those owners and/or operators.

26. The SBA considers owners of applicants to the Section 8(a) Program with up to $4 million in assets, excluding retirement accounts, to be "economically disadvantaged" if they meet certain other requirements.

27. The SBA considers owners of companies currently in the Section 8(a) Program

6

with up to $6 million in assets, excluding retirement accounts, to be "economically disadvantaged" if they meet certain other requirements.

28. In determining whether a particular USDA contract in an industry is appropriate for the Section 8(a) Program, neither the SBA nor the USDA examines whether a particular racial group is underrepresented in that industry.

29. Other than determining that the company obtaining the contract qualifies for the Section 8(a) Program, the SBA and the USDA have broad discretion in determining whether a contract should be reserved for the program.

30. Plaintiff believes that discovery will show that neither the SBA or the USDA has evidence that any particular racial or ethnic group is underrepresented in the administrative and/or technical support service industry and other areas in which Ultima competes for USDA contracts.

31. Even assuming there was evidence of underrepresentation of particular racial groups in the administrative and/or technical support service industry, defendants have no evidence that such underrepresentation was a consequence of discrimination either by the federal government or in which the federal government was a passive participant.

32. In amending Section 8(a) of the Small Business Act in 1978, Congress did not have any evidence that any underrepresentation of particular racial groups in federal government contracting was a consequence of discrimination either by the federal government or in which the federal government was a passive participant.

33. Although there are goals for participation of Section 8(a) Firms in the Section 8(a) Program, the participation goals are unrelated to any evidence of the present effects of past discrimination in any particular industry or in the federal government at large.

34. The reservation of NRCS administrative and/or technical support contracts has not been necessary to achieve any reasonable goals set by defendants.

35. Because of the presumption of social disadvantage, the vast majority of Section 8(a) contractors are owned and controlled by members of the racial or ethnic groups advantaged by that presumption. USDA has had a racial motive in reserving NRCS administrative and/or technical support service contracts for the Section 8(a) Program.

36. Defendants reserve contracts for the Section 8(a) Program even in industries that have low capital requirements for entry.

37. The Section 8(a) Program has no sunset or termination date.

38. As operated by the SBA, the Section 8(a) Program has no criteria by which the SBA can determine that specific racial groups should no longer have its members presumed to be socially disadvantaged.

39. As operated by the SBA, the Section 8(a) Program has no criteria by which the SBA could determine that specific racial or ethnic groups are no longer suffering the present effects of past discrimination.

40. In fact, although racial and/or ethnic groups have been added to the groups

deemed to be presumptively socially disadvantaged, no racial or ethnic group ever has been removed from that list on the ground that that group is no longer adversely affected by the present effects of past discrimination.

FIRST CLAIM FOR RELIEF (for non-monetary relief against all defendants)

41. By presuming that members of certain racial groups are socially disadvantaged, defendants and the Section 8(a) Program discriminate on the basis of race.

42. Defendants do not have a compelling governmental interest to support the discrimination in the operation of the Section 8(a) Program.

43. Even if defendants had a compelling governmental interest, the Section 8(a) Program, as operated by defendants, is not narrowly tailored to meet any such interest.

44. Accordingly, defendants' race discrimination in the Section 8(a) Program violates the Fifth Amendment to the United States Constitution.

45. Because defendants' race discrimination in the Section 8(a) Program discriminates in the award of contracts by the federal government, it also violates 42 U.S.C. § 1981.

46. In the absence of declaratory or injunctive relief, defendants will continue to award administrative and/or technical support contracts for NRCS programs through the Section 8(a) Program.

47.     In the absence of declaratory or injunctive relief, plaintiff will be harmed by the continuing reservation of contracts for administrative and/or technical support for NRCS programs for the Section 8(a) Program because Plaintiff will be unable to compete at all, much less on an equal basis, for such contracts.

SECOND CLAIM FOR RELIEF (for monetary relief against defendant SBA)

48.     Ultima has lost contracts and suffered damages as a consequence of defendant SBA's illegal discrimination in violation of 42 U.S.C. § 1981.

Demand For Judgment

WHEREFORE plaintiff demands judgment:

A.     A declaratory judgment that defendants are violating the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1981;

B.     Injunctive relief precluding defendants from reserving NRCS contracts for the Section 8(a) Program;

C.     Require defendants to reinstate contracts that defendants refused to renew for discriminatory reasons and/or replaced plaintiff with a Section 8(a) contractor;

D.     Damages in an amount to be determined;

E.     Attorney's fees and costs pursuant to 28 U.S.C. §§ 1920, 2412(a), or 2412(b), 42 U.S.C. § 1988, or any other applicable authority; and

F. Any other relief that is appropriate.

Dated: March 3, 2020

*M. Dale Conder*
M. Dale Conder, Jr.
RAINEY KIZER REVIERE & BELL PLC
209 E. Main St.
Jackson, TN 38301
(731) 426-8130

Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400