IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ULTIMA SERVICES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00041-DCLC-CRW |
| | ) | |
| U.S. DEPARTMENT OF AGRICULTURE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Plaintiff Ultima Services Corporation ("Ultima") alleges it is a small business that

contracts to provide services to the United States Department of Agriculture ("USDA"). Plaintiff

asks this Court to review the constitutionality of a provision of the Section 8(a) Business

Development Program ("8(a) program"), which permits the Small Business Administration

("SBA") to reserve certain contracting methods for "socially and economically disadvantaged"

small businesses. Specifically, plaintiff complains that members of certain racial and ethnic

groups who apply to the SBA to participate in the 8(a) program may qualify as socially

disadvantaged through a rebuttable presumption, whereas applicants not in the designated groups

need to submit evidence of social disadvantage with their application. Plaintiff does not allege it

has been subjected to this process by either applying to or being precluded from the 8(a)

program. Nevertheless, plaintiff alleges that the existence of this rebuttable presumption violates

its right to equal protection under the Due Process Clause of the Fifth Amendment, both facially

and as applied, and also violates 42 U.S.C. § 1981.

1

Plaintiff's claims fail for several reasons. *First*, the Court lacks jurisdiction over the entire Complaint because plaintiff lacks standing. Plaintiff does not allege that it could meet the program's independent, race-neutral criteria for designation as economically disadvantaged. Sixth Circuit precedent states that a plaintiff lacks standing to challenge an allegedly discriminatory barrier to a benefit where, as here, that plaintiff cannot satisfy independent, nondiscriminatory requirements for the benefit. *Second*, plaintiff's claim that the USDA refused to exercise options, add funding, and/or extend contracts on which plaintiff was providing services, and its request that the Court reinstate these contracts, is covered by the Contract Disputes Act ("CDA") and, therefore, should be dismissed because such claims are subject to the exclusive jurisdiction of the Court of Federal Claims and agency contract appeals boards. In addition, plaintiff has not pleaded that it has exhausted administrative remedies, a jurisdictional prerequisite to commencing an action pursuant to the CDA. *Third*, the Complaint fails to state an equal protection claim because plaintiff does not allege it was treated differently than similarly situated businesses based on race. *Fourth*, plaintiff's claim under 42 U.S.C. § 1981 should be dismissed because it is well-settled law that actions under section 1981 cannot be maintained against the federal government. *Finally*, plaintiff's claim for monetary damages under section 1981 also must be dismissed because the federal government has not waived sovereign immunity for damages claims under section 1981. For these reasons, as explained more fully below, defendants' motion should be granted, and the entire Complaint should be dismissed.

## BACKGROUND

I.   **Overview of the 8(a) Business Development Program**

Congress enacted the Small Business Act of 1953 ("the Act"), 15 U.S.C. § 631 *et seq.*, to

2

"aid, counsel, assist and protect . . . the interests of small-business concerns in order to preserve free competitive enterprise" and to ensure a "fair proportion" of government contracts go to small businesses. 15 U.S.C. § 631(a). The Act establishes several programs to aid small businesses, including requiring federal agencies to reserve certain contracts exclusively for small businesses. *Id.* § 644(j)(1). In addition to establishing contracting preferences and other programs for small businesses in general, the Act includes several programs that create contracting preferences for small businesses that satisfy certain criteria, including small businesses owned and controlled by women, *see id.* § 637(m); small businesses owned and controlled by service-disabled veterans, *id.* § 657f; small businesses located in historically underutilized business zones, known as "HUBZones," *id.* § 657a; and, the program at issue here, which is for "socially and economically disadvantaged" small business concerns, *i.e.*, the 8(a) program, *id.* § 637(a).

Through the 8(a) program, the SBA provides contract, financial, technical, and management assistance to promote the business development and competitive viability of eligible small businesses. *See id.* § 631(f)(2). Just as the Act authorizes the SBA to set aside certain contracts for small businesses in general, it also authorizes the SBA to enter into contracts with other federal agencies and to provide access to these contracts to 8(a) program participants. *See id.* at § 637(a)(1); 13 C.F.R. § 124.501(a). Contracts awarded through the 8(a) program may either be awarded competitively with other program participants or may be reserved for a particular firm (*i.e.*, sole source awards). *See* 13 C.F.R. § 124.501(b). The Act creates the aspirational goal for the federal government to spend at least five percent of its contracting dollars with businesses owned by socially and economically disadvantaged individuals, with an overall goal of awarding at least 23 percent of the total value of all prime contracts in a fiscal

3

year to small businesses in general. *See* 15 U.S.C. § 644(g)(1)(A)(i), (iv).

Eligibility for the 8(a) program is limited to small businesses that are at least 51 percent unconditionally owned and controlled by one or more "socially and economically disadvantaged" individuals who are of good character and citizens of the United States, and who demonstrate a potential for success in competing in the private sector. *Id.* at § 637(a)(4)(A), (7)(A); 13 C.F.R. § 124.101. Socially disadvantaged individuals are defined as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" and due to "circumstances beyond their control." 15 U.S.C. § 637(a)(5); 13 C.F.R. § 124.103(a).

A regulation promulgated pursuant to the Act by the SBA provides that program applicants who are members of certain designated groups, including Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and Subcontinent Asian Americans, are entitled to a rebuttable presumption of social disadvantage. *See* 13 C.F.R. § 124.103(b)(1). This presumption may be rebutted with "credible evidence to the contrary." *Id.* at § 124.103(b)(3). Individuals who are not members of one of these groups may demonstrate social disadvantage by submitting evidence that shows, by a preponderance of the evidence, that a distinguishing characteristic has contributed to substantial social disadvantage, which has limited their entry or advancement in the business world. *Id.* § 124.103(c)(1)-(2).

Regardless of how social disadvantage is established, all applicants for the 8(a) program must additionally meet the standard for economic disadvantage. An economically disadvantaged individual is one whose "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area

4

who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A). In evaluating economic disadvantage, the SBA considers the personal financial condition of the individual claiming disadvantaged status, including income for the prior three years, personal net worth, and the fair market value of all assets. *See* 13 C.F.R. § 124.104(c). For initial eligibility for the 8(a) program, an individual's average adjusted gross income generally cannot exceed $250,000 over the three years preceding the submission of the 8(a) application and must remain under $350,000 on average over the three preceding years for continued eligibility. *See id.* § 124.104(c)(3). An individual's net worth must be less than $250,000 for initial 8(a) program eligibility and must remain less than $750,000 after admission to the program for continued eligibility. *See id.* § 124.104(c)(2). Finally, the fair market value of an individual's assets must not exceed $4 million for initial 8(a) program eligibility and $6 million for continued eligibility after admission to the 8(a) program. *See id.* § 124.104(c)(4). Ownership in the 8(a) business and equity in the individual's primary personal residence are included for purposes of valuing assets, but not for calculating net worth. *See* 15 U.S.C. § 637(a)(6)(E); 13 C.F.R. § 124.104(c)(2).

Participation in the 8(a) program is limited to a maximum of nine years, *see* 13 C.F.R. § 124.2, but participants will graduate from the program (and thus lose eligibility for preferential contracting) earlier if they meet certain business achievements. *See* 13 C.F.R. § 124.302(a)(1)-(2). In addition, program participants must certify annually that they continue to meet program requirements and to provide financial and other information to allow the SBA to verify the participant's continued eligibility. *See* 15 U.S.C. § 637(a)(4)(C), (6)(B); 13 C.F.R. § 124.112.

## II.     Summary of Plaintiff's Allegations

Plaintiff alleges it is a small business that competes for contracts with the USDA's

Natural Resources Conservation Service ("NRCS"). Compl. ¶¶ 6-7. Plaintiff alleges that it competes for contracts for the provision of administrative and/or technical support to USDA offices that implement NRCS programs. *Id.* ¶ 7. Specifically, plaintiff alleges that in 2017, it won four contracts to provide administrative and/or technical support services for NRCS programs throughout the United States. *Id.* ¶ 8. These contracts included a base time period with options for renewal time periods. *Id.* ¶ 9. Plaintiff alleges that beginning in 2018, USDA has refused to exercise these options, add funding, and/or extend these contracts and, instead, set aside some of these contracts for 8(a) businesses. *Id.* ¶ 10.

Plaintiff alleges its owner is not a member of a racial minority and, thus, it is not entitled to the presumption of social disadvantage. *Id.* ¶ 22. Plaintiff does not allege it could satisfy the economic criteria for certification as an 8(a) firm. Nor does plaintiff allege it has ever applied for the 8(a) program. Plaintiff does allege that "[b]y presuming that members of certain racial groups are socially disadvantaged, defendants and the Section 8(a) Program discriminate on the basis of race." *Id.* ¶ 41. For remedies, plaintiff asks the court to reinstate specific contracts; to declare that the race-conscious presumption in the 8(a) program violates the Fifth Amendment and 42 U.S.C. § 1981 both on its face and as applied; to enjoin defendants from reserving NRCS contracts for the 8(a) program; and to award plaintiff monetary relief, fees, and costs.

## **ARGUMENT**

### I.     **This Court Does Not Have Jurisdiction to Hear Plaintiff's Complaint**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) can involve either a facial attack or a factual attack. *See Global Tech, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). Here,

6

defendants bring a facial attack as plaintiff has not sufficiently pleaded jurisdiction. When reviewing a facial attack, the standard is the same as that under Rule 12(b)(6). *Id.* Thus, the Court must accept the well-pleaded factual allegations in the Complaint as true, but does not accept conclusory allegations, legal conclusions, or unwarranted factual inferences as true. *See, e.g.*, *In re Omnicare, Inc. Secs. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014); *Hall v. Prudential Ins. Co. of Am.*, No. 3:13-CV-707-PLR-HBG, 2014 WL 1513261, at *2 (E.D. Tenn. Mar. 14, 2014).

The Court lacks jurisdiction over the entirety of the Complaint because plaintiff has not sufficiently pleaded standing. Even if the Court finds plaintiff has standing for the constitutional claims, the Court lacks jurisdiction over plaintiff's claim that the USDA terminated specific contracts and its request that the Court reinstate those contracts, because that claim lies within the exclusive jurisdiction of the Court of Federal Claims and agency contract appeals boards. Moreover, plaintiff has not alleged it has submitted an administrative claim and received a contracting officer's final decision on that claim, which is a jurisdictional prerequisite to commencing an action under the CDA, and makes a transfer of its Complaint futile.

## A.    <u>Plaintiff Lacks Standing to Assert Its Claims</u>

Whether plaintiff has standing to sue is a threshold jurisdictional question. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998); *Mason v. Adams Cnty. Recorder*, 901 F.3d 753, 756 (6th Cir. 2018). Article III, Section 2 of the Constitution limits federal judicial power to cases and controversies. *See Steel Co.*, 523 U.S. at 102. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Strict enforcement of standing requirements is particularly important where, as here, a court is asked to rule on the constitutionality of action by

7

the executive and legislative branches. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473-74 (1982).

It is well-settled that the "irreducible constitutional minimum of standing" contains three requirements: (1) the plaintiff must have suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan,* 504 U.S. at 560). The plaintiff bears the burden of establishing these elements. *Id.* At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Id.*

Plaintiff asserts it is injured because it has either lost certain contracts or been unable to compete on others that are placed in the 8(a) program. While this may have caused plaintiff harm, this harm does not constitute an injury in fact for purposes of an equal protection challenge because it does not result from the allegedly unconstitutional race discrimination plaintiff seeks to challenge, namely the rebuttable presumption of social disadvantage for members of certain racial and ethnic groups. Compl. ¶ 41 ("By presuming that members of certain racial groups are socially disadvantaged, defendants and the Section 8(a) Program discriminate on the basis of race."). Instead, plaintiff is unable to compete for a race-neutral reason: it is not economically disadvantaged. In addition, plaintiff fails to allege that its injury is traceable to the race-conscious presumption in the SBA regulation or that elimination of the presumption would redress its injuries. Defendants address the traceability and redressability factors first.

1. <u>**Plaintiff Cannot Trace Its Alleged Injury to Defendants' Actions**</u>

Plaintiff cannot trace its alleged injuries to the race-conscious presumption in the SBA regulation because an independent basis—its economic status—prevents it from competing for the sought-after contracts. The Sixth Circuit, and numerous other circuits, have held that

8

discrimination cannot be the cause of injury to a plaintiff who would not have obtained the desired benefit even in the absence of discrimination. *See, e.g.*, *Stefanovic v. Univ. of Tenn.*, 173 F.3d 856, 1999 WL 196570, at *4 (6th Cir. 1999) (affirming dismissal of equal protection claim for lack of standing where the plaintiff failed to demonstrate a direct relationship between the existence of a gender-conscious program and the decision not to hire him because the university had separate, nondiscriminatory reasons for not hiring him).[1]

In fact, the Fourth Circuit granted a motion to dismiss a challenge to the race-conscious presumption in the 8(a) program for lack of standing because, like Ultima, the plaintiff there could not satisfy the 8(a) program's criteria for economic disadvantage. *SRS Techs., Inc. v. U. S. Dep't of Defense*, 112 F.3d 510, 1997 WL 225979, at *1 (4th Cir. 1997). District courts also have found no causation in challenges to similar federal contracting programs for socially and economically disadvantaged businesses that include a racial presumption where the plaintiff was unable to meet race-neutral criteria for the program. *See Klaver Constr. Co. v. Kan. Dep't of Transp.*, 211 F. Supp. 2d 1296, 1301-07 (D. Kan. 2002) ("The existence of non-discriminatory criteria constitutes an independent cause that severs any causal nexus between the allegedly wrongful conduct and the plaintiff's injury."); *Interstate Traffic Control v. Beverage*, 101 F.

---

[1] *See also Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590 (10th Cir. 1996) (plaintiffs lacked standing to challenge rental of gender-segregated student apartments because as non-students they would not have qualified to rent the student apartments even absent the alleged discrimination); *Donaghy v. City of Omaha*, 933 F.2d 1448, 1455 (8th Cir. 1991) (white applicant for promotion to police lieutenant had standing to challenge promotion of minority officers out of rank only after he would have ranked high enough to be considered for promotion if strict rank order had been followed); *Doherty v. Rutgers Sch. of Law-Newark*, 651 F.2d 893, 899-902 (3d Cir. 1981) (unsuccessful white applicant for admission to law school lacked standing to challenge minority admissions program because he was not qualified for admission even in the absence of the minority admissions program).

Supp. 2d 445, 453 (W. Va. 2000) (dismissing constitutional challenge to program for disadvantaged businesses for lack of standing because plaintiff was ineligible to compete for economic reasons).

Plaintiff attempts to create a causal connection between the race-conscious presumption and its alleged injury by theorizing that "[i]n the absence of SBA's presumption, far fewer firms would qualify as Section(a) Firms . . . ." Compl. ¶ 19. Plaintiff then speculates that if fewer firms would qualify for the 8(a) program, that "far fewer contracts would be reserved for the Section 8(a) Program." *Id.* Plaintiff then leaps to the conclusion, based on these conjectures, that "[i]n the absence of SBA's presumption, Ultima would have far more opportunities to bid on contracting opportunities with USDA." *Id.* at ¶ 20. These are not factual allegations entitled to the presumption of truth, but pure speculation. A claim based on "speculation and conjecture" is insufficient to show causation. *See DeBolt v. Espy*, 47 F.3d 777, 780 (6th Cir. 1995).

Plaintiff "must show a likelihood or substantial probability" that the challenged policy caused the alleged injury. *See id.* In addition, the alleged injury must result in a "concretely demonstrable way, from respondents' alleged constitutional . . . infractions." *Warth v. Seldin*, 422 U.S. 490, 504 (1975). In *DeBolt*, the Sixth Circuit held the plaintiff lacked standing to challenge an allegedly discriminatory housing policy because plaintiff's "mere hope that the eventual result of 'leveling the playing field'" would enable her to obtain or compete equally for housing was insufficient to show causation. *DeBolt*, 47 F.3d at 781-82; *see also Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) ("Most, if not all, of the individual links in the chain [of causality] alleged by appellants depend on some allegation that cannot be easily described as true or false; as noted, we routinely refuse to permit such predictive assumptions to

10

establish standing."). Plaintiff similarly asks the Court to make several assumptions, including that defendants will not place these contracts in other limited contracting programs, such as HUBZone, and that socially disadvantaged businesses will not be able to qualify for the program through existing means. Plaintiff's conclusory assertions that elimination of the presumption would eventually remove enough socially disadvantaged businesses from the program to enable it to compete for more contracts are insufficient to show causation.

### 2. A Favorable Decision Would Not Redress Plaintiff's Alleged Injury

Even assuming that the Court ultimately found the challenged race-conscious presumption unconstitutional, that decision would not redress plaintiff's alleged injury because the 8(a) program would remain, and plaintiff still would not be qualified to compete with 8(a) firms for the independent reason that it is not economically disadvantaged. *See Stefanovic*, 173 F.3d at *4 (no redressability where even if the challenged race-conscious program were held unconstitutional, the hiring decision would remain intact because it was based on an independent nondiscriminatory reason); *Bashir v. Supreme Court of Ohio*, 652 F.2d 641 (6th Cir. 1981) (finding Pakistani attorney who sought admission to Ohio bar by motion lacked standing to bring constitutional challenge to requirement of U.S. citizenship because he failed to satisfy separate requirement of admission to the bar in another state).

To demonstrate redressability, plaintiff must plead specific facts showing it is "likely, as opposed to merely speculative," that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61 (internal quotations omitted). Plaintiff fails to allege this element of standing because its assertion that elimination of the race-conscious presumption would essentially gut the 8(a) program, resulting in more contracting opportunities for plaintiff, is purely speculative. *See* Compl. ¶¶ 19-21. The 8(a) program could operate independently of the presumption because

11

economically disadvantaged business owners may still submit evidence of social disadvantage. Consequently, the presumption in the regulation is severable from the rest of the program.

In *Cache Valley Electric Co. v. Utah Department of Transportation*, 149 F.3d 1119, 1123-24 (10th Cir. 1998), the Tenth Circuit dismissed a contractor's equal protection challenge to a federal contracting program for businesses owned by socially and economically disadvantaged individuals, which included certain racial and gender preferences. Similar to the 8(a) program, the program at issue in *Cache Valley* included size requirements measured by average annual gross receipts, and the plaintiff's gross revenues exceeded the statutory limit to qualify as a "small" business. *Id.* at 1121. The plaintiff there made the same argument Ultima makes here—that elimination of the challenged racial and gender preferences would eviscerate the program. *Id.* at 1123. The Tenth Circuit disagreed, finding "it would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way." *Id.* This is because the challenged race-conscious presumption is "severable from the rest of the DBE program and thus the program would remain viable even absent those preferences." *Id.* at 1123. The same is true here.

Thus, even if this Court were to invalidate the race-conscious presumption in the SBA regulation, the 8(a) program would remain fully operative because the rebuttable presumption is just one method for business owners to qualify as socially disadvantaged. *See* 13 C.F.R. § 124.103(c)(1). Based on the stated legislative intent to promote the development of small businesses owned and controlled by socially *and* economically disadvantaged individuals, such intent would remain even in the absence of the challenged presumption. *See* 15 U.S.C. § 631(f).

12

### 3. Sixth Circuit Authority on the Implication of Race-Neutral Criteria Defeats Standing for Plaintiff

Plaintiff fails to plead a basis for standing in this equal protection challenge under clear Sixth Circuit precedent. To allege an injury in fact in an equal protection challenge to a race-conscious government contracting program, a plaintiff must allege that a discriminatory policy prevents it from competing for contracts on an equal footing. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).[2] In *Northeastern Florida*, the Supreme Court held that when a plaintiff challenging an allegedly discriminatory governmental policy seeks prospective relief, the plaintiff "need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Id.* at 666. Rather, to establish an injury, a plaintiff challenging a set-aside program "need only demonstrate that it is able and ready to bid on contracts and that a *discriminatory policy prevents it from doing so* on an equal basis." *Id.* (emphasis added). There, the Court found the plaintiff association had suffered an injury because *but for* the challenged program, which set aside 10 percent of funds spent on city contracts exclusively for minority- or women-owned businesses, the association's members could have at least competed for the contracts at issue. *Id.* at 668-69.

The same is not true here. Unlike the program at issue in *Northeastern Florida,* the 8(a) program is not a set-aside program for all minority-owned businesses. Instead, 8(a) program participants not only must meet the criteria for social disadvantage, they also must meet separate, race-neutral economic criteria. 13 C.F.R. § 124.104. Here, plaintiff does not allege that it is

---

[2] To establish an injury in fact, plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted).

13

economically disadvantaged. Thus, while plaintiff alleges it is precluded from competing for certain contracts, the fact that plaintiff does not plead that it is otherwise qualified (*i.e.*, economically disadvantaged) means that it has not sufficiently pleaded that it is the challenged race-conscious presumption that prevents it from doing so. Where, as here, a plaintiff asserts a constitutional claim, the injury must be the deprivation of a constitutional right. *See Warth*, 422 U.S. at 500; *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1204 (11th Cir. 1991).

The Sixth Circuit's application of *Northeastern Florida* in *Brunet v. City of Columbus*, 1 F.3d 390 (6th Cir. 1993), demonstrates why the existence of race-neutral criteria, and plaintiff's failure to meet those criteria, defeats standing here. In *Brunet*, male applicants for positions in the city's fire department brought an equal protection challenge to a gender-conscious plan for hiring female applicants. *See Brunet*, 1 F.3d at 397. In contrast to *Northeastern Florida*, the policy challenged in *Brunet* was not the only factor preventing the plaintiffs from being considered for a position. Rather, applicants had to satisfy a number of criteria, including passing a written test, a physical examination, a background investigation, and a polygraph. *Id.* Applicants who passed these requirements were ranked in order of their combined scores and placed on an eligibility list. *Id.* The Court found those plaintiffs who would not have been eligible for consideration even in the absence of the consent decree due to their low placement on the eligibility list had not been injured by the challenged consent decree.[3] *Id.* at 398-99.

Similarly, in *Yeager v. General Motors Corp.*, 265 F.3d 389, 395 (6th Cir. 2001), the Sixth Circuit held that a white male lacked standing to bring an equal protection challenge

---

[3] The Court ultimately found the plaintiffs had standing on separate grounds related to loss of seniority rights, an issue not applicable here.

against an apprentice training program on the basis that it impermissibly favored minority and female candidates because he would have been rejected from consideration even under race- and gender-neutral criteria. The Sixth Circuit explained that the plaintiff "was not injured within the meaning of Article III because [the defendant] hired fifty candidates . . . and fifty candidates with higher unadjusted scores outranked [plaintiff]." *Yeager*, 265 F.3d at 395. The Court then concluded that there was "no casual connection between [the challenged] training program and [plaintiff's] alleged injury." *Id.* ("To satisfy Article III's cases-or-controversies requirement there must be a causal relationship between the challenged conduct and the injury.") (*citing Northeastern Fla.*, 508 U.S. at 663-64); *cf. Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 405-06 (6th Cir. 1999) (finding the plaintiff established standing because "[b]ut for the preferential treatment" given to two developers, the plaintiff would have submitted a proposal for the project).

The foregoing Sixth Circuit authorities illustrate that whether a plaintiff can show an injury in the context of a facial or as-applied equal protection challenge to a race-conscious program depends on whether the challenged policy was the deciding factor in the plaintiff's inability to compete on an equal footing, as in *Northeastern Florida* and *Lac Vieux*, or whether separate, race- or gender-neutral criteria were equally responsible for the plaintiff's inability to compete, as in *Brunet* and *Yeager*. In sum, this case is like the Sixth Circuit decisions of *Brunet* and *Yeager*—there is no standing. An injunction eliminating the race-conscious presumption will not have any meaningful effect since plaintiff has not alleged it qualifies for 8(a)'s race-neutral criterion of economic disadvantage and because damages are not available, *see* Sec. II.B, *infra*.

Some courts outside of the Sixth Circuit have failed to appreciate the distinction between

an equal protection challenge to a strictly race-based program and an equal protection challenge to a program that includes a race-conscious classification among other, race-neutral criteria. For example, in *Dynalantic Corp. v. Department of Defense*, 115 F.3d 1012 (D.C. Cir. 1997), the D.C. Circuit found that a defense contractor had standing to challenge the constitutionality of the 8(a) program even though it was not eligible to compete for 8(a) contracts for race-neutral reasons. Besides involving an entirely different procedural posture and distinct factual allegations, *Dynalantic* conflicts with Sixth Circuit standing precedent and therefore is neither controlling nor persuasive here.[4] *See Brunet*, 1 F.3d at 397; *Yeager*, 265 F.3d at 395. In accord with Sixth Circuit authority, the Fourth Circuit—contrary to *Dynalantic*—granted a motion to dismiss a challenge to the race-conscious presumption in the 8(a) program for lack of standing because, like Ultima, the plaintiff there could not satisfy the 8(a) program's criteria for economic disadvantage. *SRS Techs., Inc.* 1997 WL 225979, at *1 (explaining that "SBA's requirement of economic disadvantage for entry into the 8(a) Program is a raceneutral [sic] criterion. It was by virtue of this race-neutral criterion that plaintiff failed to qualify for a contract award, and its standing to challenge the race-conscious criteria is therefore lacking").

While the Fourth Circuit's decision appears to be based on traceability, whereas the Sixth Circuit's determinations in *Brunet* and *Yeager* focus on injury in fact, there is overlap between the analyses because the injury in fact prong includes an element of causation. *See Valley Forge*, 454 U.S. at 472 (*quoting Gladstone v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)) (explaining that to establish an injury in fact, a plaintiff must "show that he personally has suffered some actual

---

[4] The plaintiff in *Dynalantic* had first filed an administrative protest with the contracting officer, followed by an administrative appeal, contesting the decision to award a contract under the 8(a) program. Plaintiff skipped that step here. *See* Sec. II.B, *infra*.

or threatened injury *as a result of the putatively illegal conduct of the defendant*") (emphasis added); 13A Wright & Miller, *Fed. Prac. & Proc.*, § 3531.4 (3d ed.) ("The very notion of injury implies a causal connection to the challenged activity; an injury caused by other events is irrelevant to any purpose of standing doctrine."). Regardless of whether the Court determines that plaintiff's inability to satisfy race-neutral criteria required to compete for contracts reserved for the 8(a) program precludes a finding of injury, of traceability, or both, the result is the same—plaintiff lacks standing to seek prospective relief.[5]

### 4.     Plaintiff Lacks Standing to Seek Retrospective Relief

As regards plaintiff's claim for retrospective relief, the analysis is different, but the result is the same. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (explaining that "a plaintiff must demonstrate standing separately for each form of relief sought"). When a plaintiff seeks retrospective relief, the injury in fact is the actual denial of the benefit rather than the inability to have competed for the benefit on equal footing. *See Texas v. Lesage*, 528 U.S. 18, 21 (1999) ("[W]here a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury."); *Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002) ("If the plaintiffs allege that a racial preference cost them

---

[5] In addition to the constitutional requirements for standing, plaintiff also must overcome certain "prudential" limitations on standing, including that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *See Valley Forge*, 454 U.S. at 474-75; *Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011). Here, the most obvious third parties whose rights are implicated are small businesses owned by economically disadvantaged individuals who are not able to rely on the race-conscious presumption to be deemed socially disadvantaged. *See Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 696 (7th Cir. 2015). There is no allegation or reason for presuming that such businesses face any obstacle in litigating their rights themselves. *See id.*

17

some benefit under a government program, those plaintiffs may have alleged an injury in fact. But if those same plaintiffs cannot also allege and show that 'under a race-neutral policy' they would have received the benefit, those plaintiffs have not alleged an injury in fact because they have not alleged an invasion of some interest that the law protects."). Here, plaintiff asks this Court to award it monetary damages and to reinstate contracts it alleges defendants either refused to renew and/or for which defendants replaced plaintiff with an 8(a) contractor. Compl. p. 10 ¶ C. But plaintiff has not alleged that it would have received or retained such contracts but for the allegedly unlawful criteria it challenges. Accordingly, plaintiff lacks standing to assert its claims both for retrospective and prospective relief, and the entire Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction.

### B.    Plaintiff's Claim for Relief on Specific Contracts Falls Within the Exclusive Jurisdiction of the Court of Federal Claims

Plaintiff alleges the USDA has "refused to exercise options, add funding, and/or extend contracts on which Ultima was providing administrative and/or technical support services for the NRCS," and it asks the Court to reinstate these contracts. Compl. ¶ 10, p. 10 ¶ B. Even if the Court finds plaintiff has standing to assert this claim, the Court lacks jurisdiction to hear it because this claim is covered by the Contract Disputes Act ("CDA"), 41 U.S.C. § 7102, *et seq.* Accordingly, not only is it within the exclusive jurisdiction of the Court of Federal Claims and agency contract appeals boards, it is subject to administrative exhaustion requirements plaintiff has not met. *See* 41 U.S.C. §§ 7103, 7104.

The CDA applies to any express or implied contract entered into by an executive agency for the procurement of services. *See id.* § 7102(a). Under the CDA, the Court of Federal Claims has exclusive jurisdiction over any dispute relating to a contract for goods and services between

an executive agency and an independent contractor. *See id.* § 7104(b)(1); *B&B Trucking, Inc. v. USPS*, 406 F.3d 766, 768 (6th Cir. 2005). It is well-established that "a precisely drawn, detailed statute pre-empts more general remedies." *Hinck v. United States*, 550 U.S. 501, 506 (2007) (internal quotation marks omitted). The Sixth Circuit has found that the CDA is "the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 891 (6th Cir. 1998).

While plaintiff does not plead a CDA claim, plaintiff "cannot escape the precisely drawn remedial framework outlined by the Contract Disputes Act merely by styling his complaint as one of redress of constitutional torts and regulatory violations rather than as one for breach of contract—such a tactic, albeit crafty pleading, will not suffice." *Evers v. Astrue*, 536 F.3d 651, 658 (7th Cir. 2008) (*citing B&B Trucking*, 406 F.3d at 768); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996) ("[A] plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions.").

The CDA bars district court jurisdiction if the court determines the plaintiff's claims are essentially contractual in nature. *See B&B Trucking, Inc.*, 406 F.3d at 768 (*citing RMI Titanium Co.*, 78 F.3d at 1136). The classification of a particular action as contractual depends both on the source of the rights upon which the plaintiff bases its claim and upon the type of relief sought. *See id.* Here, the type of relief sought—monetary damages and reinstatement of the contracts—is clearly contractual in nature. The source of the rights is contractual, too, as claims involving failure to exercise an option and contract termination are contractual. *See, e.g.*, *Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522, 527 (2009) (failure to exercise an option); *Griffy's Landscape Maint. LLC v. United States*, 51 Fed. Cl. 667 (2001) (contract termination).

19

That plaintiff asserts the failure to exercise options or extend its contracts was unconstitutional does not render its claim non-contractual. *See, e.g.*, *B&B Trucking, Inc.*, 406 F.3d at 769 (finding claim that amendment to a contract violated plaintiff's Fifth Amendment due process rights was essentially contractual). In *Conoco Phillips v. United States*, 501 F.3d 1374, 1376 (Fed. Cir. 2007), the plaintiff sought reformation of contracts to compensate them for the effects of alleged equal protection violations related to a small business set-aside and minority preference program. *Id.* at 1377. The Federal Circuit found the allegations were contractual in nature because the allegedly unconstitutional act arguably could have affected the price of the contract, and therefore, the claim related to the contract. *Id.* at 1382; *see also Tesoro Haw. Corp. v. United States*, 249 F. App'x 200, 201 (Fed. Cir. 2007) (finding the Court of Federal Claims had exclusive jurisdiction over the plaintiff's claims that a program preferring minority suppliers violated the equal protection component of the Fifth Amendment).

Here, too, the constitutional claim does not render plaintiff's claim non-contractual. Courts routinely hold that when a contractor alleges the government failed to exercise an option, "the contractor must bring the claim pursuant to the CDA." *See Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 526 (2010); *see also Coast Prof'l, Inc. v. United States*, 828 F.3d 1349, 1355 (Fed. Cir. 2016) ("If a contractor wishes to contest an agency's decision regarding exercising an option under the contract, such a challenge is a matter of contract administration governed by the CDA."). Even if the Court were to find the challenged race-conscious presumption unconstitutional, that would not necessarily mean plaintiff would be entitled to have particular contracts reinstated. To make such a determination, the Court would have to review the contracts to ascertain, for example, whether any options or additional funding remained on

20

the contracts or if there was some other reason the contracts were not extended. As such, both the asserted claims and the form of relief sought relate to the contracts.

Not only are CDA claims subject to the exclusive jurisdiction of the Court of Federal Claims and agency contract appeals boards, but plaintiff has not alleged that it exhausted the required administrative remedies before filing suit. *See* 41 U.S.C. § 7103. That requirement is jurisdictional. Specifically, "'[a] prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a *valid claim.*'" *See Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359 (Fed. Cir. 2018) (*quoting Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013)). Plaintiff has not alleged either that it has submitted a valid claim or that it has received a final decision.

In addition to the jurisdictional consequences, the CDA has the salutary purpose to "help to induce resolution of more contract disputes by negotiation prior to litigation." *Medina Constr., Ltd. v. United States*, 43 Fed. Cl. 537, 546 (1999) (citation omitted). Had plaintiff properly submitted a claim to the contracting officer with authority to review the challenged decisions, the contracting officer potentially could have resolved plaintiff's concerns, or at least focused the issue by providing the reason for the actions. *See 25 New Chardon St. Ltd. P'ship v. United States*, 19 Cl. Ct. 208, 211 (1990) (noting that requiring exhaustion "will serve to discourage unwarranted claims and encourage prompt settlements"). In sum, plaintiff's claim is jurisdictionally deficient on two grounds: (1) plaintiff filed its claim in the wrong court; and (2) plaintiff has failed to exhaust its administrative remedy. Thus, the court should dismiss plaintiff's claim for lack of jurisdiction.

21

## II.     The Complaint Fails to State a Claim Upon Which Relief Can Be Granted

Even if this court finds that it has jurisdiction to hear this matter, plaintiff has failed to

state a claim upon which relief can be granted under either the Fifth Amendment or section 1981.

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-

pleaded factual allegations as true, but "'a legal conclusion couched as a factual allegation' need

not be accepted as true." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (*quoting Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the Complaint

"must state a claim that is plausible on its face, *i.e.*, the court must be able to draw a 'reasonable

inference that the defendant is liable for the misconduct alleged.'" *Id.* (*quoting Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).

### A.     The Complaint Fails to State an Equal Protection Claim

To state an equal protection claim, a plaintiff must adequately plead that the government

treated it "disparately as compared to similarly situated persons and that such disparate treatment

either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-*

*Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). "The

threshold element of an equal protection claim is disparate treatment; once disparate treatment is

shown, the equal protection analysis to be applied is determined by the classification used by

government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th

Cir. 2006). The Complaint makes no plausible allegation that plaintiff was treated disparately

because of race. At most, plaintiff alleges it is treated differently because it is unable to compete

for contracts reserved for the 8(a) program. Compl. ¶¶ 12, 22. But plaintiff is unable to compete

for such contracts not because of race, but because its owner is not socially or economically

disadvantaged. Plaintiff is treated no differently than a business owned by an economically

22

successful African American individual, for example. Such a business also cannot compete for contracts reserved for 8(a) firms, but, as with plaintiff, it could not plausibly allege that race is the reason for its inability to compete.

In an effort to link its inability to compete for contracts reserved for 8(a) firms to race, plaintiff alleges that the rebuttable presumption of social disadvantage available to some minority applicants to the 8(a) program is racially discriminatory because plaintiff is not entitled to the presumption. Compl. ¶¶ 18, 22, 41. However, plaintiff was never subjected to disparate treatment due to race because plaintiff makes no allegation that it was treated differently than similarly situated businesses. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959, 964 (6th Cir. 2019) ("In the equal protection context, a '[c]omplaint [that] fails to make a plausible allegation that similarly situated organizations and individuals . . . have not been subject to the same alleged treatment by Defendants' has not met the *Iqbal* standard.") (*quoting Ctr. For Bio-Ethical Reform, Inc.*, 648 F.3d at 379). Those businesses that are able to take advantage of the challenged presumption are owned by economically disadvantaged individuals and therefore are not similarly situated to plaintiff. *See Am. Atheists, Inc. v. Shulman*, 21 F. Supp. 3d 856, 870 (E.D. Ky. 2014) (dismissing Atheist organization's equal protection challenge to tax provision giving preferential treatment to religious organizations because having alleged it was not a church or religious organization, the Atheist organization could not show it had been treated disparately as compared to similarly situated organizations). Plaintiff was treated the same as businesses owned by economically successful individuals of all races.

In the absence of a plausible allegation of disparate treatment due to race, the Complaint fails to state an equal protection claim under the Fifth Amendment. Accordingly, plaintiff's equal

protection challenges, both facial and as applied, should be dismissed pursuant to Rule 12(b)(6).

**B.**     **42 U.S.C. § 1981 Does Not Apply to Federal Government Actions**

Plaintiff asserts that "[b]ecause defendants' race discrimination in the Section 8(a) Program discriminates in the award of contracts by the federal government, it also violates 42 U.S.C. § 1981. Compl. ¶ 45. Plaintiff seeks monetary damages solely pursuant to section 1981, but, as discussed below, the United States has not waived sovereign immunity from damages for such claims. In any case, the section 1981 claim should be dismissed in its entirety pursuant to Rule 12(b)(6) for failure to state a claim, which eliminates any claim for monetary damages.[6]

By its plain terms, 42 U.S.C. § 1981 does not protect against discrimination under color of federal law. Subsection (c) of section 1981, which was added via the Civil Rights Act of 1991, provides: "The rights protected by this section are protected against *impairment by nongovernmental discrimination and impairment under color of State law*." 42 U.S.C. § 1981(c) (emphasis added). The Sixth Circuit, and every other circuit to consider the issue, has held that section 1981 does not apply to actions taken under color of federal law. *See Conner v. Greef*, 99 F. App'x 577, 580 (6th Cir. 2004) ("[T]here is no basis for a § 1981 claim against individuals acting under color of federal law."); *Omeli v. Nat'l Council of Senior Citizens*, 12 F. App'x 304, 307 (6th Cir. 2001); *Sindram v. Fox*, 374 F. App'x 302, 304 (3d Cir. 2010); *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *Davis-Warren Auctioneers, J.V. v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000); *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 725-26 (7th Cir. 2000); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998); *Williams v. Glickman*, 936 F. Supp. 1 (D.D.C.

---

[6] Plaintiff does not, and could not, seek monetary damages for its Fifth Amendment claim as the United States has not waived sovereign immunity as to monetary damages for such claims. *See, e.g.*, *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 425 (6th Cir. 2016).

24

1996). Accordingly, plaintiff's claim under section 1981 should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *See Lee*, 145 F.3d at 1277 n.6 (noting a section 1981 claim brought against the federal government is properly dismissed pursuant to Rule 12(b)(6)).

Even if this clear weight of authority were not enough to mandate dismissal of the section 1981 claim in its entirety, plaintiff's claim for monetary damages under section 1981 also is barred by sovereign immunity, as the Sixth Circuit has recognized. *See Omeli*, 12 F. App'x at 307 ("Omeli also fails to make any persuasive argument as to why the EPA was not entitled to sovereign immunity on the claims under §§ 1981 and 1985, given the clear precedent to the contrary."); *Selden Apts. v. HUD*, 785 F.2d 152, 158 (6th Cir. 1986) (holding the district court correctly dismissed the section 1981 damages action as barred by sovereign immunity).

## <u>CONCLUSION</u>

For the foregoing reasons, the entire Complaint should be dismissed pursuant to Rule 12(b)(1) because plaintiff lacks standing to assert its claims; plaintiff's claims to reinstate specific contracts should be dismissed pursuant to Rule 12(b)(1) because this claim falls within the exclusive jurisdiction of the Court of Federal Claims and agency contract appeals boards, and because plaintiff failed to exhaust administrative remedies required even to pursue an appeal in those tribunals; the entire Complaint should be dismissed pursuant to Rule 12(b)(6) because plaintiff fails to state an equal protection claim; plaintiff's claim under 42 U.S.C. § 1981 should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim; and, finally, plaintiff's claim for monetary damages should be dismissed pursuant to Rule 12(b)(1) because the federal government has not waived sovereign immunity for such damages claims.

Dated: July 10, 2020

Respectfully submitted,

DELORA L. KENNEBREW
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

OF COUNSEL:

Karen Hunter
Senior Trial Attorney

David A. Fishman
Assistant General Counsel for Litigation

Eric S. Benderson
Associate General Counsel for Litigation
U.S. Small Business Administration

Amar Shakti Nair
Attorney Advisor

Ashley Craig
Attorney Advisor
U.S. Department Of Agriculture

ANDREW BRANIFF (IN Bar No. 23430-71)
Special Litigation Counsel


By: */s/ Juliet E. Gray*
Juliet E. Gray (D.C. Bar No. 985608)
Taryn Wilgus Null (D.C. Bar No. 985724)
Senior Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 598-1600
Juliet.Gray@usdoj.gov
Taryn.Null@usdoj.gov

26

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2020, I electronically filed the above document with the Clerk of Court using the ECF System, which will send notification of such filing to all counsel of record.

_/s/ Juliet E. Gray_
Juliet E. Gray
Senior Trial Attorney