```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
-----------------------------------------------------------------------------x
ULTIMA SERVICES CORPORATION,                        :
        Plaintiff,                                  :
            -against-                               :      No. 2:20-cv-00041-
                                                           DCLC-CRW
U.S. DEPARTMENT OF AGRICULTURE,                     :
U.S. SMALL BUSINESS ADMINISTRATION,
SECRETARY OF AGRICULTURE, and ADMINISTRATOR         :
OF THE SMALL BUSINESS ADMINISTRATION,
                                                    :
        Defendants.
                                                    :
-----------------------------------------------------------------------------x
```

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY ALL DISCOVERY DEADLINES AND
INITIAL DISCLOSURES

Plaintiff Ultima Services Corporation ("Ultima") submits this memorandum of law in opposition to defendants' motion for "an order staying all discovery deadlines and initial disclosures until after the Court has ruled on defendants' Motion to Dismiss." Defendants' Motion To Stay Discovery ("Mot."), Dkt. No. 22, 1.

Background

This is an action for race discrimination in violation of the U.S. Constitution and federal law. Plaintiff alleges that defendants have precluded plaintiff from competing for contracts for administrative and technical services by reserving such contracts for the "Section 8(a) Program," and that the Section 8(a) Program improperly discriminates on the basis of race and national origin.

This case commenced on March 4, 2020 with the filing of the complaint, and defendants were served shortly thereafter. Defendants sought a total of four months to respond to the complaint. Ultima's agreement to granting defendants' request for additional time to respond to the complaint was conditioned on defendants' agreement that other relevant deadlines would be

governed by the Federal Rules of Civil Procedure, and defendants so agreed.  The parties held their Rule 26(f) conference on May 21, 2020.  Under Rule 26(a)(1)(C), initial disclosures would have been due two weeks later on June 4, 2020.  Defendants, however, refused to agree to produce initial disclosures at that time.  Ultima served initial discovery requests on May 28, 2020, responses to which were due on June 29, 2020, but again Defendants indicated that they would not voluntarily comply with that deadline.  After a conference, this Court excused defendants from all disclosure and discovery obligations, but required them to make a motion for a stay by July 11, 2020 (the due date for responding to the Complaint).  Dkt. No. 19.  Defendants made their motion to stay, along with their motion to dismiss, on July 10, 2020.

The primary argument in defendants' motion to dismiss is that Ultima has no standing and cannot state an equal protection claim under the Constitution because it has not alleged that it can meet so-called race neutral requirements of disadvantage in the Section 8(a) Program. *See, e.g.*, Memorandum of Law In Support of Motion to Dismiss, Dkt. No. 21 ("Dfs' MTD Memo.") 22 ("[P]laintiff is unable to compete for such contracts not because of race, but because its owner is not socially or economically disadvantaged.").  Perhaps not surprisingly, this argument, if accepted, would make challenges to programs like the Section 8(a) Program – ones that combine race and disadvantage in determining eligibility – quite difficult, far more difficult than many past cases would suggest.

<u>Argument</u>

Defendants' motion for a stay should be denied for several reasons.  First, it fails to comply with the Federal Rules of Civil Procedure.  Second, to the extent it is based on defendants' motion to dismiss, defendants have not met their burden of showing that a stay is proper.  In fact, the balance of equities favors pursuing discovery while the motion is being resolved.

I.  DEFENDANTS' MOTION FOR A STAY SHOULD BE DENIED BECAUSE IT FAILS TO COMPLY WITH THE REQUIREMENTS OF THE FEDERAL RULES

Although defendants' motion neglects to mention any authority permitting this Court to stay discovery, such motions ask the Court to exercise its authority under Rule 26(c) for a protective order precluding discovery from taking place. *E.g.*, Fed. R. Civ. P. 26(c)(1)(A) ("The court may, for good cause, issue an order to protect a party from . . . undue burden or expense, including one or more of the following: forbidding the disclosure or discovery."); *Toho Tenax America, Inc. v. Linde, Inc.*, 2014 U.S. Dist. LEXIS 77836, *4 (E.D. Tenn. June 9, 2014) (Varlan, C.J.) ("Rule 26(c) permits the Court to enter a protective order staying discovery upon a showing of good cause."). Rule 26(c) states that any motion made pursuant to it "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Defendants' motion to stay contains no such certification.

This is not some technical slip-up on defendants' part. To bolster their motion, defendants emphasize the allegedly burdensome nature of the discovery that Ultima has sought to date:

> The Requests for Production are especially wide-ranging and seek voluminous materials, for example requesting that defendants produce "[a]ny documents concerning a decision to award a contract for administrative or technical support services for NRCS programs or activities to a participant in the Section 8(a) Program and any resulting contracts" and "[a]ny documents used to support or justify any presumption defendants make that members of particular groups are socially disadvantaged for purposes of the Section 8(a) Program." Responding to these discovery requests will be a tremendous burden for defendants.

Mot. 5. But Defendants have provided no certification that they have discussed the burden that the requests for production (or any other discovery) imposes or asked Ultima to narrow any of their requests. In fact, they have not.

Because defendants failed to comply with Rule 26(c), their motion should be denied.

3

II. **DEFENDANTS' MOTION FAILS TO MEET THEIR BURDEN OF SHOWING GOOD CAUSE FOR A PROTECTIVE ORDER STAYING ALL DISCOVERY**

Movants seeking a protective order pursuant to Rule 26(c) bear the burden of demonstrating good cause. *E.g.*, *Toho Tenax America*, 2014 U.S. Dist. LEXIS 77836, at *4 (on a motion seeking a stay of discovery "'[t]he party moving for the protective order bears the burden of showing good cause.'") (quoting *In re First Energy Shareholder Derivative Litigation*, 219 F.R.D. 584, 587 (N.D. Ohio 2004)). A pending motion to dismiss is not usually sufficient to show good cause. *E.g.*, *Samples v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 157014, *2 (E.D. Tenn. Nov. 6, 2014); *Lakatos v. Canberra Industries, Inc.,* 2014 U.S. Dist. LEXIS 153018, *2 (E.D. Tenn. Oct. 29, 2014). *See also Tri-Cities Holdings, LLC v. Tennessee Health Services and Development Agency*, 2013 U.S. Dist. LEXIS 199695, *9 (E.D. Tenn. Dec. 10, 2013) (noting the court's general practice of denying motions to stay pending the outcomes of motions to dismiss); *Mitchell v. Ohio State University*, 2020 U.S. Dist. LEXIS 19090, *5 (S.D. Ohio Feb. 3, 2020) (stating that routinely granting stays based on a pending motion to dismiss is "'a notion . . . directly at odds with the need for expeditious resolution of litigation.'") (quoting *Williams v. New Day Farms, LLC*, 2010 U.S. Dist. LEXIS 98934 (S.D. Ohio Sept. 7, 2010) (additional internal quotation omitted). Rather, a pending motion to dismiss might weigh in favor of a motion for a stay when it appears all but certain that the case will not continue. *Styles v. Dep't of Veterans Affairs*, 2017 U.S. Dist. LEXIS 164157, *2 (E.D. Tenn. March 6, 2017) ("Stays of discovery may also be appropriate if it appears that the complaint will almost certainly be dismissed.").

Defendants have not met their burden here because their motion to dismiss is unlikely to end this lawsuit and they ignore the burden on Ultima that a stay imposes. Moreover, bringing defendants' use of the Section 8(a) Program to the light of day is in the public interest.

A. <u>Defendants' Motion To Dismiss Is Unlikely To End This Lawsuit</u>

Defendants' motion to dismiss is a facial challenge to the complaint. Accordingly, the Court must assume that the facts alleged therein are true. The complaint alleges that Ultima

4

cannot compete for contracts reserved for the Section 8(a) Program and is, accordingly, harmed when contracts for administrative and technical support are so reserved. Specifically, it alleges that the program limits participants to companies that are majority-owned by individuals who are both "socially disadvantaged" and "economically disadvantaged." Dkt. No. 1, ¶ 14. It further alleges that race comes into play for both definitions. Specifically, defendant Small Business Administration presumes that members of certain racial and ethnic groups are "socially disadvantaged individuals," and the definition of "economically disadvantaged individuals" is limited to individuals who are "socially disadvantaged." *Id.*, ¶¶ 16, 18.

Defendants' motion to dismiss asserts that Ultima lacks standing, and cannot assert a claim for a denial of equal protection, because there are other, race-neutral requirements of "social disadvantage" and "economic disadvantage," and that only those individuals who meet those requirements are being treated unequally and can challenge the racially-discriminatory parts of the definitions.[1] In other words, according to defendants, standing is determined by removing the racial elements of "social disadvantage" and "economic disadvantage," leaving only supposedly race-neutral requirements. If a plaintiff does not allege that it can meet those allegedly race-neutral requirements, then it was not harmed by the racial elements, lacks standing, and cannot state an equal protection claim. *See Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012, 1015-16 (D.C. Cir. 1997) (describing same argument made by government).

But the courts generally have not sliced up "race-disadvantage" programs – those where the law gives some advantage to both race and those qualifying under some allegedly objective definition of "disadvantage" – in this fashion. Rather, they have treated these programs as

---

[1] These are Arguments I.A.1-3 and II.A in Defendants' motion to dismiss. Defendants also make several other arguments in their motion to dismiss: that the Contract Disputes Act precludes the remedy of reinstatement of certain regional contracts and that Ultima cannot assert a claim under Section 1981 or for damages. These arguments, even if they were successful, would not affect Ultima's claim for a declaration or injunction regarding the unconstitutionality of the Section 8(a) Program going forward. Defendants' motion for a stay does not identify how these arguments, independent from the main standing or failure to state a claim argument, would affect the scope of discovery and, accordingly, Ultima will address them in its opposition to the motion to dismiss.

5

unitary ones and determined whether those programs as a whole will put plaintiffs at a disadvantage.

There are two Supreme Court cases that are frequently cited on the question of whether a plaintiff has standing to challenge the future application of a program under equal protection principles: *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) and *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200 (1995). Defendants discuss the former at some length in their memorandum in support of their motion to dismiss, Dfs' MTD Memo. 13, but make no mention at all of *Adarand*. Given its apparent relevance to the issue they raise, it is hard to believe that this omission was a mere oversight.

*Adarand* involved a clause that the federal government put in its prime contracts giving prime contractors a financial incentive to hire subcontractors certified as small businesses controlled by "socially and economically disadvantaged individuals." *Adarand*, 515 U.S. at 205. Certification as such a small business could come from the SBA, either through the same Section 8(a) Program at issue in this case or a separate program under Section 8(d) of the Small Business Act, or from a state agency. Thus, if one removed the racial presumptions that enabled a firm to be certified as eligible for the subcontracting preference, there would still be, at least, the purportedly race-neutral provisions of the Section 8(a) Program that defendants rely upon here.[2] Under the theory propounded by defendants in this case, Adarand would not be harmed by the racial presumptions in certification in the future if it did not meet those supposed race-neutral provisions because it would have been at the same disadvantage without the racial presumptions as it was with them. If Adarand's standing depended upon its owners qualifying under racially-neutral definitions of "socially disadvantaged" and "economically disadvantaged," one would expect that the Supreme Court would have paid careful attention to that question.

---

[2] The Court was uncertain as to whether the Section 8(d) program required an individualized showing of economic disadvantage. *Id.* at 208.

6

It did not. Rather, in assessing Adarand's standing under *Northeastern Florida Contractors*, the Court held that Adarand merely had to show that it would bid on subcontracts in the future and that the subcontractor clause – not the *racial presumptions*, but rather the *clause itself* – put it at a disadvantage. *Adarand*, 505 U.S. at 211 ("Adarand's claim that the Government's use of subcontractor compensation clauses denies it equal protection of the laws of course alleges an invasion of a legally protected interest . . ."). That alone was sufficient to show that Adarand had standing to challenge the program without any demonstration that it would be the low bidder on a specific contract. *Id.* And when the Government argued that parts of the certification process involved disadvantage, the Court agreed only that any race-neutral parts would be subject to a lower level of scrutiny – *not* that Adarand lacked standing to challenge them, much less the use of the subcontracting clause as a whole. *Id.* at 212-13.[3]

The result in *Adarand* demonstrates that defendants' main theory is very likely to lose and that the primary thrust of the case will remain after their motion to dismiss is resolved. When "race plus disadvantage" programs are involved, the question is whether the program as a whole, not some isolated part of it, places the plaintiff on an unequal footing. *See also, e.g., Regents of the University of California v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (rejecting attacks on medical school applicant's standing to challenge program that set-aside admission places for disadvantaged minorities; "even if Bakke had been unable to prove that he would have been admitted in the absence of the special program, it would not follow that he lacked standing. . . Nor is it fatal to Bakke's standing that he was not a 'disadvantaged' applicant."); *Sherbrooke Turf, Inc. v. Minnesota Department of Transportation*, 345 F.3d 964, 967 (8th Cir. 2003) (holding that plaintiffs had standing to challenge TEA-21 set aside of 10% of federal

---

[3] So, too, when the Tenth Circuit later held that Adarand did not have standing to challenge the Section 8(a) Program in isolation, it had nothing to do with its qualification (or lack thereof) as disadvantaged, but rather its simple failure to show how that program itself harmed it. *Adarand Constructors v. Slater*, 228 F.3d 1147, 1159, 1189 n.34 (10th Cir. 2000), *writ of certiorari dismissed as improvidently granted sub nom. Adarand Constructors v. Mineta*, 534 U.S. 103 (2001).

7

contracting dollars to firms owned by socially and economically disadvantaged individuals, including those so certified under Section 8(a); "The stipulated facts demonstrate that [plaintiffs] have bid on federally assisted highway projects in the past, will continue to bid in the future, and suffer competitive harm when contracts are awarded to others under DOT's Disadvantaged Business Enterprises (DBE) program."); *W.H. Scott Construction Co. v. City of Jackson*, 199 F.3d 206, 213 n.5 (5th Cir. 1999) (holding that plaintiffs had standing to challenge city's policy of maximizing the participation of Disadvantaged Business Enterprise, defined as businesses owned and controlled by socially and economically disadvantaged individuals under Small Business Act; "[T]he City argues . . . that DBE classification is *not* dependent on race, but rather disadvantage. The distinction, however, is relevant only to our constitutional analysis and the degree of scrutiny to be applied to the classification. It is not relevant to an Article III 'case or controversy' requirement. Therefore, for clarity's sake, we presume no such racial classification in our standing analysis and address only the differing obligations of DBEs and non-DBEs, whether race-based or not."); *Cortez III Service Corp. v. National Aeronautics and Space Administration*, 950 F. Supp. 357, 360 (D.D.C. 1996) (holding that plaintiff had standing to challenge an award of a contract under the Section 8(a) Program even though plaintiff was neither a small business nor a socially and economically disadvantaged business, but rather a large business owned by a non-minority that wanted the contract awarded under full and open competition; "Under the standing analysis: (1) plaintiff faces the threatened injury of losing the right to compete for a valuable contract; (2) that injury is fairly traceable to the decision by NASA and SBA to offer the contract under 8(a); and (3) if the Court finds that defendants violated either the APA or the Constitution, such a decision would put plaintiff in a position to compete for the contract, which it is now precluded from doing.").

Defendants' "substantial Sixth Circuit precedent" (Mot. 4) does not address "race-disadvantage" programs like the ones at issue in the cases addressed above and in this case. Rather, they are cases in which a plaintiff scored so low on a civil service or other qualifying

exam that, even if the list had been used in the normal course, they would not have been considered for employment.

B.  <u>Defendants Ignore The Burden on Ultima And The Public Interest</u>

Defendants' final argument is that "there is no prejudice to [Ultima] if there is a delay in starting discovery" because it "cannot . . . identify any contracts for which the USDA has actually issued a bid solicitation, so there is no imminent danger of plaintiff losing the opportunity to bid on a contract." Mot. 5. But Ultima cannot identify contracts being withheld from open or small business competition and reserved for the Section 8(a) Program because *defendants do not make that information public* until it is too late. *E.g.*, *Dynalantic*, 115 F.3d at 1018 ("We are told that many sole source procurements are set aside under the 8(a) program without any public notice, and thus Dynalantic learns about their award only after the fact.").

It is thus understandable why defendants complain so vociferously about discovery seeking to learn about "[a]ny decision to award a contract for administrative or technical support services for NRCS programs or activities to a participant in the Section 8(a) Program" (Mot. 5). If they truly have no intention to award such contracts during the pendency of their motion to dismiss, *let them so stipulate for the Court*. Otherwise, the argument is disingenuous, the harm to Ultima is ongoing, delay exacerbates the harm, and discovery should move forward. Moreover, the public interest favors disclosing how defendants use the Section 8(a) Program.

Defendants also assert that Ultima waited too long before suing. *Id.* Well, it is not an easy decision for a small business to sue the agency that provides it with nearly all of its work. That decision should not be the reason why the agency should be permitted to inflict even more injuries.

## Conclusion

For the foregoing reasons, defendants' motion for a stay should be denied.

9

Respectfully submitted,

*/s/ Michael E. Rosman*
Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400

M. Dale Conder, Jr.
RAINEY KIZER REVIERE & BELL PLC
209 E. Main St.
Jackson, TN 38301
(731) 426-8130

10

<u>Certificate of Service</u>

  I certify that I served the foregoing memorandum in opposition by filing it on July 17, 2020 with the Court's CM/ECF system which will serve counsel for defendants.

                */s/ Michael E. Rosman*
                Michael E. Rosman