# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
---------------------------------------------------------------------------------x

ULTIMA SERVICES CORPORATION, :

    Plaintiff, :

      -against- : No. 2:20-cv-00041-DCLC-CRW

U.S. DEPARTMENT OF AGRICULTURE, :
U.S. SMALL BUSINESS ADMINISTRATION,
SECRETARY OF AGRICULTURE, and ADMINISTRATOR :
OF THE SMALL BUSINESS ADMINISTRATION,
     :
    Defendants.
     :
---------------------------------------------------------------------------------x

PLAINTIFF'S [PROPOSED] SUPPLEMENTAL MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Pursuant to Local Rule 7.1(d), Plaintiff Ultima Services Corporation ("Ultima") submits this supplemental memorandum of law in opposition to defendants' motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and in brief response to certain arguments made in defendants' reply memorandum ("Dfs' MTD Reply Memo."). To keep this memorandum to a reasonable length, Ultima cannot respond to each erroneous argument in defendants' reply; its failure to respond here should not be construed as agreement to anything there.

1. Ultima's initial memorandum in opposition to the motion to dismiss ("Ultima Memo.") repeatedly pointed out that Paragraph 35 of the Complaint in this action alleges that defendants had a racial motive in using the Section 8(a) Program. *See, e.g.*, Ultima Memo. 3, 7, 19. Yet Defendants never once mention this allegation in their entire 25-page reply. *E.g.*, Dfs' MTD Reply Memo. 6 (arguing that the Complaint only alleges racial discrimination on the basis of race in the rebuttable presumption for social disadvantage). Nor do they address the authorities Ultima cited that show the consequences of such racial motivation. Ultima Memo. 8.

This bespeaks a broader theme in defendants' reply: rather than interpret the allegations of the Complaint reasonably (much less with all inferences favoring Ultima, as is required), the reply ignores allegations that are inconvenient to defendants' argument or insists that the Complaint does not state what Ultima claims. Another example: Defendants claim that Ultima's argument that defendants' use of race fails narrow tailoring because it excludes only the very wealthy "appears nowhere in the Complaint." Dfs;' MTD Reply Memo. 6. Ultima disagrees. After setting forth the statutory definition of "economic disadvantage," and its requirement that individuals have less access to capital than those not socially disadvantaged, the Complaint alleges that defendants lack the information to assess whether individuals can meet this part of the statutory definition. Dkt. No. 1 ("Compl.") ¶¶ 23-24. It then pointed out that defendant Small Business Administration allowed those with $4 million of assets (excluding retirement accounts) to be deemed "economically disad-vantaged" upon initial application to the Section 8(a) Program and those with $6 million in assets (excluding retirement accounts) to be considered "economically disadvantaged" after admission to the program. Compl. ¶¶ 26-27. (The $4 million threshold was recently changed to $6 million. Dfs'

MTD Reply Memo. 7 n.3.)  Finally, it alleges that defendants' use of race is not narrowly-tailored. Compl. ¶ 43.  Defendants cite no authority for the proposition that a pleading must connect the dots as if the readers are oblivious.  *See* Fed. R. Civ. P. 8(a).[1]

In any event, if defendants actually were confused about why the Complaint alleges that their use of race is not narrowly-tailored, they could have asked for a more definite statement under Rule 12(e) or, more importantly, identified their need for more detail in the discussions that took place pursuant to this Court's March 5, 2020 order regarding motions to dismiss.

2. The cases on standing have been addressed at great length, so Ultima would point out only two of the flaws in defendants' analysis of them.  First, the Court in *Regents of the University of California v. Bakke*, 438 U.S. 265, 280 n.14 (1978) did state that Bakke could not compete for all of the places at Davis Medical School simply because of his race, but the same can be said of Ultima (or, at least, it cannot compete on an even playing field because of its owner's race). Bakke was not disadvantaged, which was an independent requirement of the set-aside program at Davis Medical School; so he was *also* ineligible "because of [his] financial status."  Dfs' MTD Reply Memo. 14.  It did not affect his standing.

Defendants claim that *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995) is distinguishable because it involved one of the federal transportation programs.  Dfs' MTD Reply Memo. 14.  But so did many of defendants' cases, including *Cache Valley Electric Co. v. Utah Dep't of Transportation*, 149 F.3d 1119 (10th Cir. 1998).  Although it is unclear, defendants seem to suggest that these cases are different because the plaintiffs there were in direct competition with disadvantaged business enterprises for subcontracts.  Dfs' MTD Reply Memo. 15.  But it cannot be the case that Ultima's standing would somehow improve if it were allowed to compete for Section 8(a) contracts, but at a disadvantage, instead of (as is the case) being completely excluded from the

---

[1] *Compare also, e.g.*, Dfs' MTD Reply Memo. 7 ("Nowhere in the Complaint does plaintiff allege that the economic disadvantage requirements are racially discriminatory") *with* Compl. ¶¶ 16, 18 (alleging that "economically disadvantaged individuals" must be "socially disadvantaged" and that defendants presume that members of certain races are "socially disadvantaged").

2

competition.

3.      On the question of whether Section 1981 reaches conduct taken under color of federal law, defendants' main point is that the weight of authority supports their argument. As indeed it does. But the analysis in these cases is, to put it kindly, skimpy; indeed, Ultima is unaware of any court of appeals to engage significantly on this issue prior to the D.C. Circuit's opinion in *Xia v. Tillerson*, 865 F.3d 643, 659 (D.C. Cir. 2017), an opinion which ultimately did not reach the issue.

Defendants assert that *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) did not address whether Section 1981 reaches federal conduct, and that, of course, is also true. (If it did, there would hardly be much room for debate here.) But *Arendale* did address the more general question of determining whether the Civil Rights Act of 1991 modified prior judicial interpretations of Section 1981, so its careful examination of the legislative history of the 1991 Act is obviously relevant. Defendants ask this Court to ignore *Arendale*'s use of legislative history because the language of Section 1981(c) makes it clear that "Congress overrode [prior] decisions" (Dfs' MTD Reply Memo. 24) holding that Section 1981 reaches conduct under color of federal law. (Defendants do not explain why the language of Section 1981(c) – that "[t]he rights protected by this section are protected against . . . impairment under color of State law" – does not show a clear intent to provide a direct claim under Section 1981 against those acting under color of state law.) They do not explain why Congress, given prior case law, did not just state "but not federal law"; and why it intentionally did this "overriding" without one single word about it in the legislative history.

Finally, defendants never even mention the *expressio unius* rule of statutory interpretation, much less the careful limits that the Supreme Court has laid upon it.

4.      Defendants' reply finally addresses the SBA's "sue and be sued provision" (15 U.S.C. § 634(b)(1)), but its arguments border on the frivolous. Defendants first argue that the Contract Disputes Act trumps Section 634(b)(1) for "the loss of contracts in the past." Dfs' MTD Reply Memo. 24. But the CDA does not cover damages for contracts that Ultima never obtained (indeed, on which it was never even permitted to bid in the first place). If it did, there would be no

3

need for additional jurisdictional statutes regarding bid protests (*e.g.*, 28 U.S.C. § 1491(b)(1)).

Defendants' second argument is even more disingenuous. They assert that Section 634(b)(1) "does not constitute a blanket waiver of the SBA's sovereign immunity from monetary damages." Dfs' MTD Reply Memo. 25. But the two appellate cases they cite involve the Federal Torts Claims Act and, more specifically, 28 U.S.C. § 2679(a), which makes the FTCA the exclusive remedy for claims cognizable under that statute. (The district court case they cite was an Administrative Procedure Act case, a statute which does not provide for damage claims.) Defendants do not explain why a claim for damages under Section 1981 would be covered under the FTCA.

It would not. Defendants' glib use of these FTCA cases is undermined by binding Sixth Circuit law. In *Federal Express Corp. v. United States Postal Service*, 151 F.3d 536 (6th Cir. 1998), the Court addressed whether Section 2679(a) limited the waiver of sovereign immunity in the Post Office's "sue and be sued" clause (39 U.S.C. § 401(1)) in a suit brought by Federal Express under the Lanham Act. Holding that such "sue and be sued clauses" must be construed liberally in favor of a waiver of immunity (*id.* at 539 n.3), it held that Section 2679(a) only made the FTCA the exclusive remedy for lawsuits based upon state tort law and "does not preclude the assertion of tort lawsuits supported by substantive federal law against federal governmental instrumentalities which have been congressionally invested with the power to sue and be sued in their own names." *Id.* at 541. *See also Aces & Eights Realty v. Hartman*, 2002 U.S. Dist. LEXIS 22647, *12-*19 (W.D.N.Y. Nov. 4, 2002) (holding that Section 634(b)(1) must be construed broadly to waive sovereign immunity and that the SBA could be sued for violation of New York Navigation Law).

Conclusion

For the foregoing reasons, and those stated in Ultima's opposition memorandum, defendants' motion to dismiss should be denied.

Respectfully submitted,


*/s/ Michael E. Rosman*
Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400

M. Dale Conder, Jr.
RAINEY KIZER REVIERE & BELL PLC
209 E. Main St.
Jackson, TN 38301
(731) 426-8130

5

Certificate of Service

I certify that I served the foregoing supplemental memorandum in opposition by filing it on August __, 2020 with the Court's CM/ECF system which will serve counsel for defendants.

*/s/ Michael E. Rosman*
Michael E. Rosman