UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| ULTIMA SERVICES CORPORATION, | ) |
| | ) |
| Plaintiff, | ) 2:20-CV-00041-DCLC |
| | ) |
| vs. | ) |
| | ) |
| U.S. DEPARTMENT OF AGRICULTURE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants, the United States Department of Agriculture, the Secretary of Agriculture, the United States Small Business Administration and its Administrator, filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and supporting memorandum [Docs. 20, 21]. Plaintiff, Ultima Services Corporation, responded [Doc. 25] and Defendants replied [Doc. 26]. Defendants also filed a supplemental brief in support [Doc. 29] and Plaintiff responded [Doc. 30]. This motion is now ripe for resolution.

**I.     BACKGROUND**

Plaintiff challenges the constitutionality of the Section 8(a) Program of the Small Business Act of 1953 in which contracts are reserved for socially and economically disadvantaged individuals. The Small Business Association ("SBA") administers the Section 8(a) Program which "create contracting preferences for small business that … are socially and economically disadvantaged small business concerns." [Doc. 21, pg. 3] (quoting 15 U.S.C. § 637(a)(1)(B)). "Contracts awarded through the 8(a) Program may either be awarded competitively with other

1

program participants or may be reserved for a particular firm (*i.e.*, sole source awards)." [Doc. 21, pg. 3] (citing 13 C.F.R. § 124.501(b)).[1]

To qualify to participate in the Section 8(a) Program, a small business must be at least 51% "owned and controlled by one or more socially and economically disadvantaged individuals."[2] 15 U.S.C. § 637(a)(4)(A); 13 C.F.R. § 124.101. The Program presumes "Black Americans; Hispanic Americans; Native Americans…; Asian Pacific Americans…; Subcontinent Asian Americans..." are socially disadvantaged for purposes of qualifying for the Program. 13 C.F.R. § 124.103(b)(1). Those not in those groups do not benefit from the presumption and must instead establish "individual social disadvantage" to qualify for the Program. 13 C.F.R. § 124.103(c)(1). The Program is also limited to those who are also economically disadvantaged. 13 C.F.R. § 124.104(b)(1). In making that determination, the "SBA will examine factors relating to the personal financial condition of any individual claiming disadvantaged status, including income for the past three years…, personal net worth, and the fair market value of all assets, whether encumbered or not." 13 C.F.R. § 124.104(c).

Plaintiff is a small business as defined by the SBA [Doc. 1, ¶ 6] and competes for federal contracts with the U.S. Department of Agriculture ("USDA") to provide administrative and technical support for USDA offices that implement Natural Resources Conservation Service ("NRCS") programs [*Id.* at ¶ 7]. In 2017, Plaintiff was awarded four contracts to provide services

---

[1] The Small Business Act allows for the reservation of contracts for socially and economically disadvantaged small business owners, which is further defined by the Code of Federal Regulations, Title 13, Chapter 1, Part 124.

[2] "Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities. The social disadvantage must stem from circumstances beyond their control." 13 C.R.F. § 124.103(a).

2

for NRCS programs [*Id*. at ¶ 8]. Prior to 2017, the USDA had repeatedly renewed these contracts with Plaintiff [*Id*. at ¶ 9].

In 2018, that changed. Plaintiff alleges that the "USDA has refused to exercise options, add funding, and/or extend contracts on which [Plaintiff] was providing administrative and/or technical support services for the NRCS." [*Id*. at ¶ 10]. Instead, the contracts for support services for the NRCS, which Plaintiff had been providing, were set aside for the Section 8(a) Program *Id*. at ¶ 10]. Plaintiff does not qualify to participate in the Section 8(a) Program as its owner is neither considered socially nor economically disadvantaged under the Program's eligibility criteria [*Id*. at ¶ 22]. This has prevented Plaintiff from competing for the very contracts it had been awarded in the previous years [*Id*. at ¶ 21]. Plaintiff alleges it stands ready to perform those contracts and claims that the Program violates the Fifth Amendment because it discriminates on the basis of race and fails to satisfy strict scrutiny [*Id*. at ¶¶ 42-43].

Plaintiff requests a declaratory judgment finding that Defendants' actions in administering this Program are in violation of the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1981 and requests the Court enjoin Defendants "from reserving NRCS contracts for the Section 8(a) Program." [*Id*. at pg. 10. ¶¶ A-B]. This relief would, in effect, end the Section 8(a) Program as presently administered. Plaintiff also requests monetary damages from the contracts that it has already lost due to the alleged discrimination [*Id*. at ¶ 48].

## II. STANDARD OF REVIEW

Defendant's Motion to Dismiss is two-fold, pursuant to Fed.R.Civ.P. 12(b)(1) and alternatively, Fed.R.Civ.P. 12(b)(6). As the Court must establish jurisdiction to rule on Defendants' Rule 12(b)(6) arguments, the Court shall address Defendants' Rule 12(b)(1) claims first. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). Under Fed.R.Civ.P. 12(b)(1), the Court may

3

dismiss an action for a lack of subject-matter jurisdiction. "The party asserting that subject matter jurisdiction exists has the burden of proof." *E.E.O.C. v. Care Centers Mgmt. Consulting, Inc.*, 942 F.Supp.2d 771, 774 (E.D. Tenn. 2013) (citing *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)). The Court may look to evidence beyond the pleadings to resolve a Rule 12(b)(1) motion. *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

"A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) involves either a facial attack or a factual attack." *Global Tech, Inc. v. Yubei (XinXiang) Power Steering System Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) (citing *Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007)). In this case, Defendants mount a facial attack to the Court's subject matter jurisdiction [Doc. 21, pgs. 6-7]. "When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Gentek Bldg. Prods. v. Sherwin–Williams Co.,* 491 F.3d 320, 330 (6th Cir.2007). This is the same standard for a Rule 12(b)(6) motion. *Global Tech*, 807 F.3d at 810 (citing *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012)).

### III. ANALYSIS

### A. Standing

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *National Rifle Assoc. of Am. v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997) (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). In order to show standing, Plaintiff must prove the following elements:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)).

1. **Injury-in-Fact**

Plaintiff's injury in fact must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. The Section 8(a) Program operates by "setting aside" certain contracts for certain groups of disadvantaged small businesses who meet both the social and economic disadvantage requirements. In the context of a set-aside program, the injury-in-fact is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 666 (1993). "To establish standing, therefore, a party challenging a set-aside program…need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id*.

Plaintiff alleges that "[b]ecause of defendants' decisions to reserve contracts for Section 8(a) Firms, [it] has been unable to [compete] for contracts which it successfully performed in the past and could perform again in the future." [Doc. 1, ¶ 21]. It requests the Court enjoin any more set asides for the Program. Defendants argue that "while plaintiff alleges it is precluded from competing for certain contracts, the fact that plaintiff does not plead that it is otherwise qualified [for the Program] means that it has not sufficiently pleaded that it is the challenged race-conscious presumption that prevents it from doing so." [Doc. 21, pg. 14].

5

In *Northeastern*, a group of construction firms challenged an ordinance that set aside money for city contracts for minority owned businesses. *Id.* at 659. The plaintiffs argued they would have bid on the contracts but for the ordinance. Because they were excluded from consideration for a certain portion of the contracts, the Supreme Court held they had stated an injury. *Id.* at 667-68. "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," the injury-in-fact "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* at 666.

In this case, as in *Northeastern*, Plaintiff alleges the Program excludes it from consideration for certain contracts. That was sufficient to state an injury in *Northeastern*, and it is sufficient here. Plaintiff alleges it cannot compete on equal footing in the bidding process. Other courts have come to similar conclusions in addressing this issue. *See also Interstate Traffic Control v. Beverage*, 101 F.Supp.2d 445, 447 (S.D. W. Va. 2000) (finding an injury in fact where the plaintiff could not compete for a percentage of highway contracts that went to businesses in the Department of Transportation's Disadvantaged Business Enterprise ("DBE") program); *Cache Valley Elec. Co. v. State of Utah Dep't of Transp.*, 149 F.3d 1119, 1122, n. 2 (10th Cir. 1998) (finding injury that was attributable to the DBE program itself and its use of race and gender preferences).

2. **Causation and Redressability**

Plaintiff must also demonstrate "a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenge action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). Defendants argue that Plaintiff has not shown that its injury is traceable to the race-conscious

6

presumption of the Section 8(a) Program "because an independent basis—its economic status—prevents it from competing for the sought-after contracts." [Doc. 21, pg. 8].

But Plaintiff's challenge is not just to the Program's race-based presumption but to the Program as a whole. It seeks the Court to enjoin Defendants from reserving *any* contracts for the Section 8(a) Program because the Program violates the Fifth Amendment. In *Dynalantic Corp. v. Dep't of Defense*, 115 F.3d 1012 (D.C. Cir. 1997), that was sufficient. In *Dynalantic*, the plaintiff complained that the Section 8(a) Program was unconstitutional when it excluded plaintiff from competing for a Navy contract that was reserved for participants in the Program. Dynalantic did not claim it qualified for the Section 8(a) Program, but "whether it could meet the non-race-conscious requirements [was] wholly irrelevant." *Id*. at 1016. Because its challenge was to the entire program, that was sufficient to give it standing.

Defendants note that not all courts have reached the same conclusion as *Dynalantic*. They cite *SRS Technologies, Inc. v. U.S. Dep't of Defense* in support of its contention that Plaintiff lacks standing. In *SRS Tech*., SRS challenged "the racial presumptions of social disadvantage in the SBA regulations implementing the section 8(a) program." 112 F.3d 510 (Table), 1997 WL 225979, at *1 (4th Cir. 1997). The Court found SRS lacked standing because it could not qualify for the program in any event because it was not economically disadvantaged, a race neutral criterion. *Id*. Unlike in *Dynalantic*, the Court found whether the plaintiff could meet the race-neutral economic disadvantage criteria was relevant to the standing question. If it struck down the race-based presumption, SRS still would not qualify for the program because it was not economically disadvantaged. The Court reasoned that any relief it could give the plaintiff would not redress its injury.

7

But Plaintiff's challenge here is not quite the same as in *SRS Tech*. Plaintiff claims it lost the ability to compete for contracts that are reserved for Section 8(a) Program participants and seeks to enjoin any contracts being reserved for the Program. That is a challenge to the Program as a whole and not a single element of the program as in *SRS*. It claims the whole program violates the Fifth Amendment. Plaintiff's injury – exclusion from bidding on certain contracts – is directly traceable to its claim of discrimination as it is the purported discrimination that limits the number of contracts for which Plaintiff can compete.

Defendants also argue that the injury is too speculative for the Court to be able to redress it. *See* [Doc. 21, pg. 11]. At this stage of the proceedings, however, the Court must construe the allegations in the complaint in the light most favorable to the plaintiff. *See Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). Plaintiff alleges that "[i]n the absence of SBA's presumption, far fewer firms would qualify as Section 8(a) Firms and far fewer contracts would be reserved for the Section 8(a) Program." [Doc. 1, ¶ 19]. Taking that as true, if the Court found the Section 8(a) Program violated the Fifth Amendment, Plaintiff "would be able to compete immediately on equal footing for virtually all [NRCS administrative and/or technical support] contracts." *Dynalantic*, 115 F.3d at 1018. Therefore, Plaintiff has standing to challenge the constitutionality of the Section 8(a) Program.

**B.      Contract Disputes Act Claim**

Next, Defendants argue that Plaintiff's request to reinstate the contracts that were not renewed falls under the exclusive jurisdiction of the Court of Federal Claims under the Contract Disputes Act ("CDA"). Even though Plaintiff did not invoke the CDA, it "applies to any express or implied contract…made by an executive agency for…the procurement of services." 41 U.S.C. § 7102(a)(2); *see B&B Trucking, Inc. v. USPS*, 406 F.3d 766, 768 (6th Cir. 2005) ("The plaintiff's

title or characterization of its claims is not controlling. A plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions.") (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1136 (6th Cir. 1996)) (internal quotation marks omitted). "The CDA bars district court jurisdiction if the court determines that a plaintiff's claims against a government agency are essentially contractual in nature." *B&B Trucking*, 406 F.3d at 768 (citing *RMI Titanium*, 78 F.3d at 1136). Therefore, if Plaintiff's claim is "essentially contractual", then the Court of Federal Claims would have exclusive jurisdiction. However, if its claims are genuinely based on constitutional grounds, then this Court has subject matter jurisdiction.

Defendants argue that the source of the rights is contractual, "as claims involving failure to exercise an option and contract termination are contractual." [Doc. 21, pg. 19]. However, Plaintiff alleges that while it claimed that Defendants failed to renew its NRCS contracts, the ultimate cause of the failure to renew was the unconstitutional Section 8(a) Program. Specifically, Plaintiff states

> Beginning in 2018, however, USDA has refused to exercise options, add funding, and/or extend contracts on which Ultima was providing administrative and/or technical support services of the NRCS. Moreover, after declining to exercise the contract options, USDA has not offered these contract opportunities to any company willing to bid on the contracts, or even all small businesses willing to bid on the contracts. Rather, USDA has repeatedly, and with respect to a large number of these contracts for administrative and/or technical support services for NRCS programs, set aside these contracts for the Section 8(a) contractor.

[Doc. 1, ¶ 10]. Plaintiff's complaint goes beyond Defendants failing to renew its contracts. Instead, it is first and foremost constitutional challenge to the Section 8(a) Program.

Plaintiff notes that "reinstatement would be just one of the many possible equitable remedies available to this Court if it finds illegal discrimination." [Doc. 25, pg. 20]. Notably, Plaintiff also requests declaratory and injunctive relief relating to the constitutionality of the

9

Section 8(a) Program. *See* [Doc. 1, pg. 10, ¶¶ A-B]. This reinforces that Plaintiff's primary concern is not the enforcement or reinstatement of a contract. If the Court were simply reinstate Plaintiff's NRCS contracts, there would be nothing to prevent any future, similar harm to occur by new contracts being reserved for the Section 8(a) Program. Therefore, the Court finds that Plaintiff's claims are not essentially contractual and subject to the jurisdiction of the Court of Federal Claims.

C.      **Equal Protection Claim**

Defendants also claim that Plaintiff failed to adequately plead an equal protection claim under the 5th Amendment because Plaintiff is not socially or economically disadvantaged. *See* [Doc. 21, pg. 22]. As stated above, Plaintiff claims that due to the racial presumption, the entire program is unconstitutional in violation of the Fifth Amendment. While Plaintiff does not use the words "equal protection," Plaintiff argues that it "is treated differently from a Section 8(a) firm" and that the racial presumption necessitates differential treatment based on race [Doc. 25, pg. 19]. It further claims that it is harmed by "the continuing reservation of contracts … for NRCS programs for the Section 8(a) Program because [it] will be unable to compete at all, much less on an equal basis, for such contracts." [Doc. 1, ¶ 47]. Plaintiff claims the Section 8(a) Program is unconstitutional because it discriminates on the basis of race in violation of the Fifth Amendment. That is sufficient to state a claim.

D.      **42 U.S.C. § 1981 Claim**

Finally, Defendants argue that 42 U.S.C. § 1981 does not protect against discrimination under color of federal law and therefore Plaintiff has failed to state a claim under this section. Section 1981 gives citizens "the same right in every State and Territory to make and enforce contracts…as is enjoyed by white citizens." "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

§ 1981(c). By its own terms, Section 1981 does not apply to federal agencies, such as Defendants in this case, as they operate under color of federal law. *See Conner v. Greef*, 99 F. App'x 577, 580 (6th Cir. 2004); *see also DynaLantic Corp. v. U.S. Dep't of Defense*, 885 F. Supp. 2d 237, 291 (D.D.C. 2012) (collecting cases) (finding that plaintiff could not bring a § 1981 claim when challenging the constitutionality of the Section 8(a) Program). Therefore, Plaintiff's §1981 claims are **DISMISSED**.

IV. **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 20] is **GRANTED IN PART** and **DENIED IN PART.**

SO ORDERED:

s/ Clifton L. Corker
United States District Judge