# ADDENDUM: *ROTHE* BRIEF

No. 16-1239

# In the Supreme Court of the United States

———————

ROTHE DEVELOPMENT, INC., PETITIONER

*v.*

DEPARTMENT OF DEFENSE, ET AL.

———————

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE DISTRICT OF COLUMBIA CIRCUIT*

———————

**BRIEF FOR THE FEDERAL RESPONDENT IN OPPOSITION**

———————

JEFFREY B. WALL
  *Acting Solicitor General*
    *Counsel of Record*
T.E. WHEELER, II
  *Acting Assistant Attorney*
    *General*
DIANA K. FLYNN
TERESA KWONG
  *Attorneys*

  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

**QUESTION PRESENTED**

Whether Section 8(a)(5) of the Small Business Act, 15 U.S.C. 637(a)(5), which relates to federal contracting with socially disadvantaged individuals, contains a race-based classification that is subject to strict scrutiny.

(I)

## TABLE OF CONTENTS

Page

Opinions below ............................................................................ 1
Jurisdiction ................................................................................... 1
Statement ...................................................................................... 1
Argument....................................................................................... 5
Conclusion .................................................................................... 12

## TABLE OF AUTHORITIES

Cases:

*Adarand Constructors, Inc.* v. *Pena*,
515 U.S. 200 (1995)....................................................... 10, 12

*Midwest Fence Corp.* v. *United States Dep't of
Transp.*, 840 F.3d 932 (7th Cir. 2016),
cert. denied, No. 16-975, 2017 WL 497345
(June 26, 2017)..................................................................... 11

*Northern Contracting, Inc.* v. *Illinois*, 473 F.3d 715
(7th Cir. 2007)...................................................................... 12

*Rothe Dev. Corp.* v. *United States Dep't of Def.*,
262 F.3d 1306 (Fed. Cir. 2001)............................................ 11

*Sherbrooke Turf, Inc.* v. *Minnesota Dep't of Transp.*,
345 F.3d 964 (8th Cir. 2003), cert. denied,
541 U.S. 1041 (2004)............................................................ 12

*Western States Paving Co.* v. *Washington State
Dep't of Transp.*, 407 F.3d 983 (9th Cir. 2005),
cert. denied, 546 U.S. 1170 (2006) .................................. 7, 12

Constitution, statutes, and regulations:

U.S. Const. Amend. V (Due Process Clause) ...................... 4

Small Business Act, Pub. L. No. 85-536,
72 Stat. 384 (15 U.S.C. 631 *et seq.*) ...................................... 1

15 U.S.C. 631 (§ 2) ............................................................... 3

15 U.S.C. 631(a) ................................................................... 2

(III)

IV

Statutes and regulations—Continued:                                    Page

   15 U.S.C. 631(f)(1) (§ 2(f)(1)) ........................................ 10
   15 U.S.C. 631(f)(1)(A) (§ 2(f)(1)(A)) ............................... 2
   15 U.S.C. 631(f)(1)(B) (§ 2(f)(1)(B)) ........................... 3, 8
   15 U.S.C. 631(f)(1)(C) (§ 2(f)(1)(C)) ....................... 3, 8, 9
   15 U.S.C. 637(a) (§ 8(a)) ....................................... *passim*
   15 U.S.C. 637(a)(1) ..................................................... 2
   15 U.S.C. 637(a)(4)(A)(i) ........................................... 2
   15 U.S.C. 637(a)(5) (§ 8(a)(5)) ................... 2, 6, 7, 8, 9, 10
   15 U.S.C. 637(a)(6) (§ 8(a)(6)) ................................... 2
   15 U.S.C. 637(a)(8) (§ 8(a)(8)) .............................. 9, 10
   15 U.S.C. 637(d) (§ 8(d)) ..................................... 10, 11
   15 U.S.C. 637(d)(3)(C) ........................................ 10, 11
13 C.F.R.:
   Section 124.1-1(c)(3) (1980) ..................................... 10
   Section 124.103 ...................................................... 11
   Section 124.103(b) ............................................... 3, 11
   Section 124.103(c)(1) ................................................ 3
   Section 124.104(b) ................................................... 3
   Section 124.104(c) ................................................... 3

Miscellaneous:
   44 Fed. Reg. 30,674 (May 29, 1979) ........................... 10

# In the Supreme Court of the United States

No. 16-1239

ROTHE DEVELOPMENT, INC., PETITIONER

*v.*

DEPARTMENT OF DEFENSE, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**BRIEF FOR THE FEDERAL RESPONDENT IN OPPOSITION**

## OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1a-64a) is reported at 836 F.3d 57. The opinion of the district court (Pet. App. 67a-127a) is reported at 107 F. Supp. 3d 183.

## JURISDICTION

The judgment of the court of appeals was entered on September 9, 2016. A petition for rehearing was denied on January 13, 2017 (Pet. App. 128a-130a). The petition for a writ of certiorari was filed on April 13, 2017. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATEMENT

1. Congress enacted the Small Business Act (SBA), Pub. L. No. 85-536, 72 Stat. 384, in part to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free

(1)

competitive enterprise." 15 U.S.C. 631(a). Through Section 8(a) of the SBA (as amended), 15 U.S.C. 637(a), Congress sought to "obtain social and economic equality" of "socially and economically disadvantaged persons," and to "improve the functioning of our national economy," 15 U.S.C. 631(f)(1)(A). Section 8(a) authorizes the Small Business Administration to limit competition for certain government contracts to small disadvantaged businesses that have been certified by the Small Business Administration as eligible to participate in the Section 8(a) program. 15 U.S.C. 637(a)(1). Section 8(a) defines a "socially and economically disadvantaged small business concern" as "any small business concern" that, *inter alia*, "is at least 51 per centum unconditionally owned by  * * *  one or more socially and economically disadvantaged individuals." 15 U.S.C. 637(a)(4)(A)(i).

Section 8(a)(5) of the SBA defines "[s]ocially disadvantaged individuals" as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. 637(a)(5). A determination of social disadvantage is thus made on an individualized basis—*i.e.*, whether any particular person has been the subject of group-based prejudice or bias, rather than being treated according to his "individual qualities." *Ibid.* Section 8(a)(6) defines "[e]conomically disadvantaged individuals" as "those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. 637(a)(6).

Section 2 of the SBA sets out the policies and congressional findings supporting the Act. 15 U.S.C. 631. As relevant here, Congress found that small business owners may be "socially disadvantaged because of their identification as members of certain groups that have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control." 15 U.S.C. 631(f)(1)(B). Section 2 contains a congressional finding that the groups that have suffered such discriminatory effects "include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. 631(f)(1)(C).

Although neither Section 2 nor Section 8(a) requires a race-based presumption of social disadvantage, the regulations implementing the Section 8(a) program include a rebuttable race-based presumption of social disadvantage for individuals who are members of particular racial groups (including the groups listed in 15 U.S.C. 631(f)(1)(C)). 13 C.F.R. 124.103(b). "An individual who is not a member of one of the groups presumed to be socially disadvantaged" may establish eligibility to participate in the Section 8(a) program by presenting evidence of social disadvantage. 13 C.F.R. 124.103(c)(1). The regulations require all applicants to the Section 8(a) program to submit a narrative describing economic disadvantage and to provide specified financial information. 13 C.F.R. 124.104(b) and (c).

2. Petitioner is a small business that provides computer services, and that bids and performs on government contracts nationwide. Pet. App. 75a. In 2012, petitioner sued the Department of Defense (DOD) and

Small Business Administration, alleging that the Section 8(a) program is facially unconstitutional because it uses a racial classification to prevent petitioner from bidding on DOD contracts, in violation of the equal-protection component of the Due Process Clause of the Fifth Amendment. *Id.* at 76a.

a. On cross-motions for summary judgment, the district court granted the government's motion, holding that the Section 8(a) program is facially constitutional. Pet. App. 69a, 111a-125a. The court determined that the program is subject to strict scrutiny because it is implemented through a presumptive racial classification. *Id.* at 113a. The court further held that the program survives strict scrutiny because it uses narrowly tailored measures to further compelling government interests. *Id.* at 113a-122a.

b. A divided panel of the court of appeals affirmed for different reasons. Pet. App. 3a-33a. At oral argument, petitioner's counsel clarified that petitioner is pursuing a facial challenge only to the statute, not to Section 8(a)'s implementing regulations or to the manner in which the agency administers the Section 8(a) program. *Id.* at 6a, 11a. The court held that the statutory provisions challenged by petitioner do not contain any racial classification. *Id.* at 7a-31a. The court noted that, by contrast, the Small Business Administration's "regulation implementing the [Section] 8(a) program does contain a racial classification in the form of a presumption that an individual who is a member of one of five designated racial groups * * * is socially disadvantaged." *Id.* at 5a. But because petitioner challenged only the statute itself on its face, the court held that the statute is subject to rational-basis review. *Id.* at 6a.

The court further held that the statute "readily sur-
vives" that standard. *Ibid.*[1]

Judge Henderson filed a separate opinion concur-
ring in part and dissenting in part. Pet. App. 36a-64a.
She would have held that Section 8(a) draws a racial
classification and is therefore subject to strict scrutiny.
*Id.* at 37a, 39a. Judge Henderson did not address whether
in her view the district court had erred in upholding the
challenged statutory provisions under strict scrutiny.
See *id.* at 44a, 64a.[2]

## ARGUMENT

The court of appeals correctly recognized that a stat-
ute, regulation, or government program is subject to
strict scrutiny if it employs a racial classification. The

---

[1] The court of appeals also rejected petitioner's arguments that
Section 8(a) violates the nondelegation doctrine and that the district
court had abused its discretion in various evidentiary rulings. Pet.
App. 6a, 32a-33a. Petitioner does not renew those arguments before
this Court.

[2] Judge Henderson stated that the parties had agreed that strict
scrutiny should apply. Pet. App. 44a. As relevant here, that is not
correct. The government had argued in the district court that, on
its face, Section 8(a) is race-neutral and therefore subject to
rational-basis review. D. Ct. Doc. 65-1, at 22-23 (June 16, 2014);
D. Ct. Doc. 72, at 20-21 (Aug. 1, 2014). In holding that the Section
8(a) program was subject to strict scrutiny, the district court relied
on the implementation of the program through regulations, includ-
ing the rebuttable race-based presumption of social disadvantage.
See Pet. App. 72a, 113a-122a. On appeal, the government defended
that presumption and the Section 8(a) program as a whole under
strict scrutiny. See, *e.g.*, Gov't C.A. Br. 18 ("The race-based portion
of the Section 8(a) program is facially constitutional.") (capitaliza-
tion altered). Because it was not clear until the oral argument that
petitioner was challenging only the statute, the government did not
focus on whether the statute alone, without its implementing regu-
lations, is subject to a less stringent form of review.

court also correctly recognized that the Small Business Administration's implementation of the Section 8(a) program employs a racial classification and is therefore subject to strict scrutiny. Pet. App. 5a. The only dispute here is whether a single statutory provision, standing alone—Section 8(a)(5), 15 U.S.C. 637(a)(5)—reflects a racial presumption. It does not. The agency has chosen to implement the statute through race-conscious means, but the statute itself leaves the agency free to select a different course. In any event, the decision below is the first to consider whether Section 8(a) is facially race-neutral, because other plaintiffs that have challenged the Section 8(a) program (and similar programs) have not divorced their claims from the implementing regulations and the agency's practice. Review of the narrow question presented by petitioner is not warranted.

1. The Section 8(a) program extends government contracting opportunities to small business owners who are socially and economically disadvantaged. The parties agree, and the court of appeals recognized, that the Small Business Administration's implementation of the Section 8(a) program is subject to strict scrutiny, because the relevant regulation presumes that members of certain specified racial groups are socially disadvantaged. Pet. App. 5a-6a; Gov't C.A. Br. 16. Neither that regulation nor the government's implementation of the Section 8(a) program is at issue here, however, because petitioner's challenge is limited to the statute itself. See Pet. 16; Pet. App. 6a. The only question in this case is whether Section 8(a)(5)—which defines the "[s]ocially disadvantaged individuals" who qualify for the Section 8(a) program—is race-neutral on its face and thus subject to rational-basis review.

a. Section 8(a)(5) provides that "[s]ocially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. 637(a)(5). That definition looks to whether a specific individual has suffered prejudice or bias because of his membership in a particular racial or ethnic group. By its terms, Section 8(a)(5) does not limit participation in the Section 8(a) program to members of certain racial or ethnic groups. A person of any race may qualify as a socially disadvantaged individual if he has suffered prejudice or bias based on his race or ethnicity. See *Western States Paving Co.* v. *Washington State Dep't of Transp.*, 407 F.3d 983, 988 (9th Cir. 2005) (recognizing that the term "socially and economically disadvantaged" is race-neutral "on its face," although the regulations impose a race-based presumption), cert. denied, 546 U.S. 1170 (2006).

Petitioner selectively quotes (Pet. 17) Section 8(a)(5) in arguing that social disadvantage is based on membership in one of certain specified racial or ethnic groups. In fact, the question under Section 8(a)(5) is whether any particular applicant has suffered prejudice on account of his race or ethnicity, without regard to his individual qualities. The provision does not identify any particular racial or ethnic groups for which membership is sufficient to qualify one as socially disadvantaged. An individual of any race or ethnicity may qualify if, but only if, he has suffered prejudice or bias based on his race or ethnicity.

Petitioner argues (Pet. 28-29) that social disadvantage is based on group membership rather than individual experience, because Section 8(a)(5) refers to

racial prejudice or bias "without regard to [one's] individual qualities." 15 U.S.C. 637(a)(5). Petitioner suggests that, by including that phrase, Congress prohibited consideration of a person's individual experience and limited the focus to whether the person is a member of a particular racial or ethnic group. Petitioner's reading of Section 8(a)(5) is grammatically incorrect. The phrase "without regard to [one's] individual qualities" is naturally read to describe the type of prejudice to which the person has been subjected—*i.e.*, prejudice that stems from one's race or ethnicity rather than one's personal qualities. The phrase cannot be read to eliminate the requirement that an individual has in fact "been subjected to racial or ethnic prejudice or cultural bias." 15 U.S.C. 637(a)(5).

b. Petitioner invokes other provisions of the SBA as well, but they also do not presumptively limit the Section 8(a) program to members of certain racial or ethnic groups.

i. Petitioner cites the statutory findings in Section 2(f)(1)(B) and (C) of the SBA, 15 U.S.C. 631(f)(1)(B) and (C). Those provisions—which are part of a subsection titled "Findings; purpose"—set out some of the reasons Congress chose to enact the SBA. For instance, Section 2(f)(1)(B) states that "many" socially and economically disadvantaged "persons are socially disadvantaged because of their identification as members of certain groups that have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control." 15 U.S.C. 631(f)(1)(B). Nothing in that observation allocates benefits or burdens on the basis of race or otherwise employs a racial classification. Section 2(f)(1)(B) does not direct agency action or

alter the statutory definition of social disadvantage set out in Section 8(a)(5).

Section 2(f)(1)(C) contains a congressional finding that the groups that have suffered the effects of past discrimination "include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." 15 U.S.C. 631(f)(1)(C). In petitioner's view (Pet. 30), that finding creates a presumption that every member of the enumerated groups is a socially disadvantaged individual under Section 8(a)(5). But nothing in Section 2(f)(1)(C) requires such a presumption or overrides the focus in Section 8(a)(5) on whether a particular individual has been the target of racial or ethnic prejudice. Moreover, Section 2(f)(1)(C) is not exhaustive; it does not preclude members of other racial groups from qualifying as socially disadvantaged.

ii. Petitioner also contends (Pet. 17, 23 n.13, 33) that Section 8(a)(8) creates a race-based presumption. Section 8(a)(8) provides that "determinations made pursuant to [Section 8(a)(5)] with respect to whether a group has been subjected to prejudice or bias shall be made by the Administrator after consultation with the Associate Administrator for Minority Small Business and Capital Ownership Development." 15 U.S.C. 637(a)(8). "All other determinations made pursuant to" Section 8(a)(5) "shall be made" by the Associate Administrator under the supervision of the Administrator. *Ibid.*

Section 8(a)(8) appears to contemplate that the Administrator will determine that certain racial or ethnic groups have been subjected to prejudice or bias, and thereafter the Associate Administrator will determine whether any particular individual has incurred such

prejudice or bias by virtue of his membership in that racial or ethnic group. But on its face, Section 8(a)(8) does not place any limits on the Administrator's ability to determine which racial or ethnic groups have been the targets of discrimination. Nor does Section 8(a)(8) require the use of a presumption that every member of a particular racial group—even a group identified pursuant to Section 8(a)(8)—has individually suffered prejudice or bias and is therefore socially disadvantaged. Although the Small Business Administration has elected to administer Section 8(a) through a race-based presumption of social disadvantage, the SBA itself does not require that.[3]

c. That point is underscored by the fact that Section 8(a)'s original implementing regulations did not contain such a presumption. See Pet. App. 16a-17a (citing 13 C.F.R. 124.1-1(c)(3) (1980); 44 Fed. Reg. 30,674 (May

---

[3] Contrary to petitioner's contention (Pet. 28-35), the court of appeals did not disregard various canons of statutory construction. First, the court did not ignore Section 2(f)(1) or fail to consider the statute as a whole. Petitioner disagrees with the court's conclusion that Section 2(f)(1) does not alter the race-neutral criteria in Section 8(a)(5), but the court considered the interaction between those provisions. Second, the court did not fail to consider "Section 8(a) in context alongside Section 8(d)." Pet. 30. Unlike Section 8(a), Section 8(d) employs an express race-based presumption of social and economic disadvantage. 15 U.S.C. 637(d)(3)(C); *Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200, 207 (1995). Section 8(d), which is not at issue here, shows that Congress knows how to require a race-based presumption when it wants to. Pet. App. 22a. Third, the court explained—in response to Judge Henderson's dissent—that even if Section 8(a)(5) could be construed as enacting a race-based presumption, the canon of constitutional avoidance would counsel against such a reading. *Id.* at 19a. The court of appeals' use of that canon is consistent with this Court's decisions.

29, 1979)); *id.* at 26a-27a. By contrast, the existing regulations employ a race-based presumption of social disadvantage: they state that members of certain specified racial and ethnic groups presumptively satisfy the statutory criteria for treatment as a socially disadvantaged individual. 13 C.F.R. 124.103. That race-based presumption—along with any other racial classification employed in the implementation of the Section 8(a) program—is subject to strict scrutiny. See Gov't C.A. Br. 16. But as explained above, petitioner does not challenge either the relevant regulation or the government's implementation of the Section 8(a) program. Petitioner therefore does not challenge the race-based aspects of the Section 8(a) program.

2. No other court of appeals has addressed whether Section 8(a) is facially race-neutral. Although other courts of appeals have considered equal-protection challenges to aspects of government contracting under the SBA, the plaintiffs in those cases challenged a provision or program that includes an explicit race-based presumption. For example, in *Rothe Development Corp.* v. *United States Department of Defense*, 262 F.3d 1306, 1313-1314 (2001), the Federal Circuit considered a constitutional challenge to the Section 8(d) program, which relates to federal subcontracting and includes a race-based presumption of disadvantage in the statute and in the implementing regulations. 15 U.S.C. 637(d)(3)(C); 13 C.F.R. 124.103(b).

Other courts of appeals have considered similar challenges to Section 8(d) and to 13 C.F.R. 124.103(b) as implemented in the Department of Transportation's contracting program. *Midwest Fence Corp.* v. *United States Dep't of Transp.*, 840 F.3d 932, 936 (7th Cir. 2016), cert. denied, No. 16-975, 2017 WL 497345 (June

12

26, 2017); *Northern Contracting, Inc.* v. *Illinois*, 473 F.3d 715, 717 (7th Cir. 2007); *Western States Paving Co.*, 407 F.3d at 988 (9th Cir.); *Sherbrooke Turf, Inc.* v. *Minnesota Dep't of Transp.*, 345 F.3d 964, 968 (8th Cir. 2003), cert. denied, 541 U.S. 1041 (2004). In all of those cases, the courts of appeals correctly applied strict scrutiny because the challenged programs use race-conscious presumptions. See *Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200, 207 (1995). There is no conflict between those decisions and the decision below, and this Court's review is not warranted.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

> JEFFREY B. WALL
> *Acting Solicitor General*
> T.E. WHEELER, II
> *Acting Assistant Attorney General*
> DIANA K. FLYNN
> TERESA KWONG
> *Attorneys*

JULY 2017