UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
---------------------------------------------------------------------------------x

ULTIMA SERVICES CORPORATION,                                    :

    Plaintiff,                                                      :

        -against-                                         :        No. 2:20-cv-00041-DCLC-CRW

U.S. DEPARTMENT OF AGRICULTURE,                                 :
U.S. SMALL BUSINESS ADMINISTRATION,
SECRETARY OF AGRICULTURE, and ADMINISTRATOR     :
OF THE SMALL BUSINESS ADMINISTRATION,
                                                                :
    Defendants.
                                                                :
---------------------------------------------------------------------------------x

## STATEMENT OF CELESTE BENNETT

Celeste Bennett hereby states:

1. I am the President and sole owner of Plaintiff Ultima Services Corporation ("Ultima"). I submit this statement in support of Ultima's motion for summary judgment.

2. Ultima is a small business that competes for federal service contracts. It was incorporated in 1999. I purchased it in 2002. I am a white woman.

3. Currently, I own 100% of the shares of Ultima and am in charge of its operations.

4. Beginning in 2004, Ultima has won contracts from defendant United States Department of Agriculture ("USDA") for providing administrative and technical support to offices of the Natural Resources Conservation Service ("NRCS"), an agency within USDA.

5. Until recently, Ultima had been successful in procuring such contracts, largely through competition with other small businesses.

1

6. In 2017, Ultima won four regional Indefinite Delivery Indefinite Quantity ("IDIQ") contracts to provide administrative services to NRCS offices, covering all of the United States. These contracts each had one base year with four option years available. Each year (and each option) was for $2 million. Accordingly, the total funds committed for each contract was $10 million.

7. Contracting officers with the USDA could issue task orders pursuant to the IDIQ for services in particular NRCS state offices.

8. In two of the regions (Region II and III), demand for Ultima's services was quite high, and the issued task orders soon depleted the funds available for the base year.

9. The USDA exercised options early for those regions. In fact, within the first year, all or almost all of the options for Regions II and III were exercised, and the funds allocated to those contracts were significantly (although not completely) expended.

10. In the other two regions (Regions I and IV), few, if any, options were exercised and substantial funds remained unspent.

11. In 2018, the USDA decided not to exercise any further options for all four regional contracts.

12. This had the effect of precluding the USDA from exercising any previously unexercised options on task orders issued pursuant to the IDIQ contracts or issuing new task orders.

13. Where funds had been committed under the task orders, though, Ultima completed its obligations as required thereunder.

14. After the USDA ended the IDIQ contracts, it still had to provide services for the

NRCS offices. In many instances, I received communications from contracting officers with the USDA indicating that they intended to meet the needs of the NRCS offices by utilizing sole source contracts under the 8(a) program.

15. The USDA contracting officers needed to communicate with me because Ultima's employees in an NRCS office would be given the opportunity to work for the new contractor, and the USDA relied on me to help facilitate that transfer.

16. Because Ultima is not a participant in the 8(a) Program, it was completely precluded from bidding on those contracts.

17. From the period 2018-21, there were any number of contracts for the provision of administrative and technical services to NRCS offices that Ultima was ready, willing, and able to perform, but could not bid on because they were reserved for the 8(a) Program. While Ultima's size has fluctuated over time and, accordingly, it would not have been eligible (because of size standards) to bid on every contract defendants here reserved for the 8(a) Program had those contracts been open to competition, it was *always* qualified to bid on *some* of those contracts.

18. I have reviewed a number of documents produced by defendants in this lawsuit relevant to the 8(a) contracts at issue here, particularly offering letters from the USDA to the SBA requesting that certain requirements be placed in the 8(a) program and the resulting acceptance letters and/or contracts. These are among the contracts Ultima was eligible to perform and would have bid on had they not been reserved for the 8(a) program.

| Contract No. | State (Year) | NAICS Code | 8(a) Contractor |
| --- | --- | --- | --- |
| 122B4618C0009 | Missouri (2018) | 561110 | ALL Solutions |
| 121A2318P0184 | Mississippi (2018) | 561110 | All Pro |

3

| | | | |
|---|---|---|---|
| 123C7818C0008 | Kansas (2018) | 561110 | PBP Management |
| 121A2318P0167 | Virginia (2018) (4 counties) | 561320 | Lewis-Price & Assocs. |
| 12FPC119P0156 | Virginia (Richmond) (2019) | 561320 | Lewis-Price & Assocs |
| 12FPC119P0222 | Alabama (2019) | 561320 | Essnova |
| 12FPC119P0218 | S. Carolina (2019) | 561320 | KRJ Consulting |
| 12FPC119P0282 | Tennessee (2019) | 561320 | Chenega |
| 12FPC219C0027 | DC, N.C., Oregon (2019) | 541611 | Lewis-Price |
| 12FPC219P0252 | D.C. (2019) | 541611 | Lewis-Price |
| 12FPC120P0083 | Georgia (2020) | 541611 | Rividium |
| 12FPC221P0029 | DC (2021) | 541611 | Unico Govt Solutions |

19. I reviewed either offering letters, acceptance letters, or contracts or some combination of the three for each of the foregoing contracts except the last. With respect to the last, it was listed on a spreadsheet sent to my attorneys that (according to defendants) listed contracts "of the type Ultima performed." I looked up information about that contract on a third party service (Bloomberg Government), and feel confident that Ultima would have and could have bid on that service had it not been reserved for the 8(a) program.

20. Ultima remains ready, willing, and able to perform such contracts in the future.

21. Because contracts to provide administrative and technical support to NRCS offices constituted (and still constitutes) such a significant portion of Ultima's business, the reservation of such contracts for the 8(a) program has caused a foreseeable and significant drop in Ultima's revenues, and will continue to reduce its potential revenues in the future.

22. Today, Ultima meets the size standards for almost all NAICS codes, and certainly

all NAICS codes relevant to the performance of contracts providing administrative and technical support for USDA-NRCS offices.

I state under penalty of perjury that the foregoing is true and correct. Executed on June 21, 2022.

_____
Celeste Bennett