# EXHIBIT 5

# SBA

SOP 80 05 7

# Standard Operating Procedure for the Office of Business Development

Office of Business Development

U.S. Small Business Administration

US0051216



**SMALL BUSINESS ADMINISTRATION**
**STANDARD OPERATING PROCEDURE**

| SUBJECT: | S.O.P. | | REV |
|---|---|---|---|
| 8(a) Business Development Program | **SECTION** | **NO.** | |
| | 80 | 05 | 7 |

# INTRODUCTION

1. Purpose: The SOP 80 05 6 is being revised to SOP 80 05 7. The Office of Business Development's Chapters 5 and 10 were updated to provide clear guidance and establish consistency regarding conducting SBA required reviews for 8(a) Participants and initiating adverse actions for ineligible firms to ensure that only eligible firms are retained in the 8(a) BD Program. BD also added Chapter 11 to provide policies and procedures on the resolution of Hotline complaints referrals in order mitigate fraud, waste and abuse in the 8(a) program as well as Chapter 12 to provide policies and procedures on the All Small Mentor Protégé Program.

2. Background: To address Office of Inspector General's concerns that only eligible firms are admitted and retained into the 8(a) BD Program.

3. Personnel: SBA employees who work with 8(a) Business Development Program, both at Headquarters and in the Field.

4. Directives: Canceled: SOP 80 05 6

5. Originator: Office of Business Development

| AUTHORIZED BY: | | EFFECTIVE DATE<br>December 7,2020 |
|---|---|---|
| Barbara E. Carson,<br>Deputy Administrator for the Office of Government<br>Contracting and Business Development | | PAGE |

**SBA Form 989 (5-90) Ref: SOP 00 23**

Federal Recycling Program ♺ Printed on Recycled Paper

This form was electronically produced by Elite Federal Forms, Inc.

m.   Obtain required documentation from Participants on a timely basis for submission to both DO and HQ offices and staff.

## 11.   LIST OF ACRONYMS

| Acronym | Definition |
|---------|------------|
| A/E | Architectural and Engineering |
| AA/BD | Associate Administrator for Business Development |
| ANC | Alaska Native Corporation |
| ANCSA | Alaska Native Claims Settlement Act |
| BAT | Business Activity Target |
| BD | Office of Business Development |
| BOS | Business Opportunity Specialist |
| CDC | Community Development Corporation |
| CEO | Chief Executive Officer |
| CFR | Code of Federal Regulations |
| CMR | Commercial Market Representative |
| COC | Certificate of Competency |
| CODS | Central Office Duty Station – |
| CPA | Certified Public Account |
| DD | District Director |
| DDD | Deputy District Director |
| DFSC | Defense Fuel Supply Center |

US0051250

| | |
|---|---|
| DO | District Office |
| D/OCE | Director for the Office of Certification and Eligibility |
| D/OMTA | Director/Office of Management and Technical Assistance |
| D/OPR | Director/Office of Program Review |
| DSBS | Dynamic Small Business Search |
| FAR | Federal Acquisition Regulation |
| FPDS-NG | Federal Procurement Data System |
| GAO | General Accounting Office - GAO |
| GC | Government Contracting |
| GSA | General Services Administration |
| HQ | Headquarters |
| HUBZone | Historically Underutilized Business Zone |
| IRS | Internal Revenue Service |
| JV | Joint Venture |
| LBOS | Lead/Supervisory Business Opportunity Specialist |
| LLC | Limited Liability Corporation |
| NAICS | North American Industry Classification System |
| NHO | Native Hawaiian Organization |
| OCE | Office Certification and Eligibility |

Case 2:20-cv-00041-DCLC-CRW     Document 60-10     Filed 06/21/22     Page 5 of 27
PageID #: 916
US0051251

| | |
|---|---|
| OMTA | Office of Management and Technical Assistance |
| OHA | Office of Hearing and Appeals |
| OIG | Office of the Inspector General |
| OPR | Office of Program Review |
| PCR | Procurement Center Representative |
| RFP | Request for Proposal |
| SAM | System for Award Management |
| SASP | State Agency for Surplus Property |
| SBA | Small Business Administration |
| SBDC | Small Business Development Centers |
| SBIR | Small Business Innovative Research |
| SCORE | Formerly the "Service Corps of Retired Executives," now known simply as SCORE |
| SDB | Small Disadvantaged Business – done |
| SOP | Standard Operating Procedures |
| SOW | Statement of Work |
| T4C | Termination for Cause |
| T4D | Termination for Default |

Case 2:20-cv-00041-DCLC-CRW     Document 60-10     Filed 06/21/22     Page 6 of 27
PageID #: 917
US0051252

new organization, if the previous business is dissolved, and all other eligibility criteria has been met.

(5) In this case the new organization may complete the program term of the old organization. The request for the change of business form will be treated in accordance with 13 CFR § 124.105(i).

l. Wholesalers and Brokers. Please refer to Paragraph 13– "How Does the BOS Determine If the Applicant Concern and Its Principals Meet the Good Character and Other Eligibility Requirements?" of this Chapter regarding the assessment of wholesalers and brokers.

m. Unpaid Federal Financial Obligations. Please refer to Paragraph 13– "How Does the BOS Determine If the Applicant Concern and Its Principals Meet the Good Character and Other Eligibility Requirements?" of this Chapter regarding the assessment of unpaid federal financial obligations.

**18. What Are the Special Eligibility Rules that Apply to Concerns Owned by Native Hawaiian Organizations?**

a. Size. The size of the firm is determined independently without regard to its affiliation with the NHO or any other business enterprise owned by the NHO, unless the Administrator determines that one or more such NHO-owned business concerns have obtained, or are likely to obtain, a substantial unfair competitive advantage within a national industry category.

b. Social Disadvantage.

(1) A qualified NHO is deemed to be socially disadvantaged. A qualified NHO is any community service organization serving Native Hawaiians in the State of Hawaii which is a not-for-profit organization chartered by the State of Hawaii, controlled by Native Hawaiians, and whose business activities will principally benefit such Native Hawaiians

(2) The BOS should verify that the NHO's Articles of Incorporation were filed with the State of Hawaii and identify the NHO as a non-profit corporation.

(3) The BOS must review the NHO's Articles of Incorporation and corporate bylaws to determine whether it has members. If it has members, then at least 51 percent of the members have to be Native Hawaiian. If the NHO has no members, then a majority of the members of the board of directors

Case 2:20-cv-00041-DCLC-CRW    Document 60-10    Filed 06/21/22    Page 7 of 27
PageID #: 918
US0051339

## CHAPTER 3: SERVICING THE PARTICIPANT

1. **What Happens after a Firm Is Approved for Participation in the 8(a) BD Program?**

    a.  Once the AA/BD approves an application, the OCE will assign a case number to the applicant's file through the Certification Tracking System (CTS), forward the file to the servicing DO, and send a copy of the CTS memorandum to the processing CODS.

    b.  Upon receipt of a firm's file, the DDD, LBOS, or LBOS will:

        (1)  Assign a BOS to the firm;

        (2)  Ensure that application and approval information is correctly entered into the 8(a) electronic application system; and

        (3)  Send the firm a letter congratulating it on its approval along with the SBA Form 1010C (minimum requirements for business plan submission).

2. **What Assistance Does SBA Provide to Participants?**

    a.  Participants receive primary assistance through the BOS, Resource Partners (SCORE, PTAC, SBDC) and SBA website which includes the following training:

        (1)  Developing and maintaining business plans

        (2)  Seeking loans

        (3)  Accounting and bookkeeping

        (4)  Marketing

        (5)  Management practices

        (6)  Equity and debt financing

        (7)  Obtaining surety bonds

    b.  Additionally, SBA performs analysis and reports on the general causes of success and/or failure of 8(a) BD Participants.

3. **What Are the BOS's Responsibilities in Servicing the Participant?**

    a.  The BOS's on-going responsibility is to assist the Participant in developing its business to the fullest extent possible so that it attains competitive viability

Case 2:20-cv-00041-DCLC-CRW       Document 60-10       Filed 06/21/22       Page 8 of 27
PageID #: 919
US0051355

b.  Compile and analyze internal statistical data; *e.g.,* percentages of participants with/without contracts, agency patterns of contracting, percentages of contracts under particular NAICS codes, etc. to assist it in requirements management and planning;

c.  Notify the procuring activity of new types of firms in the portfolio to assist in marketing those firms to the activity;

d.  Contact procuring activities to identify and reserve requirements;

e.  Match open requirements to specific 8(a) Participants in the District portfolio considering equitable distribution where appropriate;

f.  Obtain capability statements for 8(a) Participants from their SAM profiles and forward to the appropriate procuring activities;

g.  Arrange for technical assessments of the capability and capacity of client firms to perform on specific requirements;

h.  Prepare necessary correspondence, such as search letters, requirement letters, and acceptance letters to procuring activities;

i.  Prepare, review, and approve Impact Determination, Suitability for 8(a) Contracting, and Contractor Selection Statements, and Requirement and Acceptance Forms; and

j.  Regularly verify Participants' compliance with 8(a) BD program regulations.

## 6.  How Are Requirements Identified?

A requirement may be identified by the BOS, a Procurement Center Representative (PCR), an 8(a) BD Participant, or the procuring activity itself. A PCR residing at or performing liaison responsibilities for a procuring activity is responsible for screening proposed procurements for possible 8(a) contracts in accordance with 13 CFR § 125.2.

## 7.  What Is a Search Letter?

A search letter is a general request from SBA to a procuring activity requesting the activity to identify and reserve requirements to support a particular firm's business plan. The letter outlines the Participant's capabilities and references its SAM profile.

US0051365

**58. Can an Award Be Made to a Firm Whose Program Term Has Expired?**

    a)  For a sole source 8(a) award, an 8(a) Participant must be an eligible Participant as of the date of award.

    b)  For competitive 8(a) requirements, an 8(a) Participant must be an eligible Participant as of the initial date specified for receipt of offers contained in the contract solicitation.

        1)  The initial date for the receipt of offers is the date that matters. Any amendments to the solicitation made by the procuring activity to extend the date for submission of offers do not affect the date for determining eligibility.

        2)  For a negotiated procurement, a Participant may submit revised offers, including a best and final offer, and still be awarded a competitive contract if it was eligible as of the initial date specified for the receipt of offers in the solicitation, even though its program term may have expired after that date.

**59. How Is a Participant's Size Determined For an 8(a) Contract?**

    a.  For purposes of 8(a) BD Program sole source requirements, when a size determination is required, the DD that services the Participant, or the AA/BD can request a formal size determination in accordance with 13 CFR 121.402(a).

    b.  To determine a Participant's size:

    (1)  The SBA will review the Participant's self-certification and determine if it is small for purposes of that contract, within 30 days of its receipt of a Participant's size self-certification for a particular 8(a) BD contract. The 8(a) BD program follows the regulations at 13 CFR § 121.603 for determining size.

    (2)  The SBA will review the concern's three most recent years of tax returns for revenue-based size standards or examine the average number of individuals employed by the concern over the preceding 12 months for employee-based size standards. Where three most recent years of tax returns are not available for determining the size of a Participant under a revenue-based size standard, SBA will rely on "the concern's regular books of account, audited financial statements, or information contained in

Case 2:20-cv-00041-DCLC-CRW    Document 60-10    Filed 06/21/22    Page 10 of 27
PageID #: 921
US0051385

## CHAPTER 10: LEAVING THE 8(a) PROGRAM

1.      **What Are the Ways a Participant May Leave the 8(a) BD Program?**

A Participant may leave the 8(a) BD program in the following ways:

    a.      Expiration of the program term established pursuant to 13 CFR §§ 124.2 and 124.112(f);

    b.      Voluntary withdrawal or voluntary early graduation;

    c.      Graduation pursuant to 13 CFR § 124.302;

    d.      Early graduation pursuant to the provisions set forth in 13 CFR §§ 124.302 and 124.304; or

    e.      Termination pursuant to the provisions set forth in 13 CFR §§ 124.303 and 124.304.

2.      **What Are Graduation and Term Completion?**

    a.      A Participant receives a program term of nine years from the date of SBA's approval letter certifying the concern's admission to the program.

    b.      A firm that has met the targets, objectives, and goals set forth in its business plan at the end of its nine-year term in the 8(a) BD Program will be considered to have graduated from the program. 13 CFR § 124.112(f).

    c.      A firm that has not met the targets, objectives, and goals set forth in its business plan at the end of its nine-year term in the 8(a) BD Program will <u>not</u> be considered to have graduated from the program, but rather to have merely completed its program term. 13 CFR § 124.112(f).

3.      **What Is Voluntary Withdrawal and Voluntary Early Graduation?**

    a.      A Participant may choose to withdraw from the program voluntarily at any time prior to the expiration of its program term.

        (1)      A voluntary early graduation occurs when a firm has met its targets, objectives, and goals in its approved business plan and wishes to leave the program early . (Entity-owned firms use this more often).

        (2)      A voluntary withdrawal occurs when a firm wishes to leave the program early whether it has met its targets, objectives, and goals in its approved business plan or not.

## CHAPTER 15: 7(j) MANAGEMENT AND TECHNICAL ASSISTANCE PROGRAM

1.     **What Is the 7(j) Management and Technical Assistance Program?**

   a.     Section 7(j)(1) of the Small Business Act, 15 U.S.C. §636(j)(1), authorizes the Agency to provide management and technical assistance to individuals and businesses eligible under sections 7(a)(11),7(j)(10) and 8(a) of the Small Business Act.

   b.     Management and technical assistance includes, but is not limited to, one-on-one consultant services (provided under Technical Direction Letters(TDL) discussed below), training, and specialized services. Specific types of service and method of delivery are driven by the needs of the Agency's clients. Functional areas of assistance frequently include, but are not limited to, strategic and operational planning and management, marketing, business development, and identification and capture of opportunities; accounting, bookkeeping, and financial analysis; contract management and compliance; information technology and systems development; and industry-specific requirements.

2.     **What Mechanisms Does SBA Use to Provide 7(j) Assistance?**

   a.     The Agency provides 7(j) assistance through the efforts of third-party for-profit and non-profit service providers. Depending on the types of service to be provided, the Agency enters into grants, cooperative agreements, and contracts with qualified service providers.

   b.     Contracts are infrequently used in providing 7(j) assistance. When they are, they are generally awarded for provision of services that are National in scope, and are managed by the OMTA. Therefore, this chapter focuses on procedures for management of grants and cooperative agreements which are more frequently used to provide assistance to the Agency's clients.

   c.     Effective provision of assistance to the Agency's clients, and efficient management of grants and cooperative agreements requires close collaboration among the OMTA, Regional Offices, DOs, and clients. On the rare occasions in which District or Regional Office are working with a 7(j) contract, they should consult with the Contracting Officer and Contracting Officer's Representative on a continuous basis.

3. **What Are the Differences among Grants, Cooperative Agreements, and Contracts?**

   a.   The Federal Grants and Cooperative Agreement Act of 1977 provides that a grant or cooperative agreement shall be used in lieu of a contract when "…the principal purpose of the relationship is to transfer a thing of value to the State or local government or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring… property or services for the direct benefit or use of the United States Government…."

   b.   A grant should be used when, "…substantial involvement is not expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement."

   c.   A cooperative agreement should be used when, "...substantial involvement is expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement."

   d.   Because 7(j) services are provided predominantly under cooperative agreements, significant and substantive engagement among Agency staff, clients, and service providers is expected and critical to ensure that the highest quality service is provided to the Agency's clients.

4. **Who Is Responsible for Coordinating and Formulating Policies and Procedures for 7(j) Assistance?**

In consultation with the DAA/BD and AA/BD, the D/OMTA is responsible for managing the 7(j) program, including formulation, coordination, and communication of relevant policies and procedures.

5. **Who Is Eligible for Services under the 7(j) Program?**

   To be eligible for 7(j) services, a client must be at least one of the following:

   a.   Small Disadvantaged Business; OR

   b.   8(a) Business Development Program Participant; OR

   c.   HUBZone Program Participant; OR

   d.   Women-Owned Small Businesses, Economically Disadvantaged Women-Owned Small Businesses, Veteran-Owned Small Business concerns, and Service-Disabled Veteran-Owned Small Business Concerns IF they are located

US0051502

in urban or rural areas with a high proportion of unemployed or low-income individuals, or which are owned by such low-income individuals.

6.    **What Are the Procedures for Obtaining Services From 7(j) Service Providers?**

   a.    Eligible individuals and firms that are interested in obtaining assistance from 7(j) service providers should contact the DO that services the area in which they are located.

   b.    For clients seeking one-on-one counseling or consultant services, assistance provided under TDLs may be appropriate. The BOS or District Technical Point of Contact should consult with the client to collaboratively determine what TDL type service assistance is appropriate to the firm. It is very important that the scope and substance of assistance to be provided be carefully developed to address the client's needs, and to communicate required consultant service needs to the service provider. To facilitate management of TDLs type services, significant and substantive collaboration, communication and coordination between the servicing DO staff, Regional offices, clients, 7(j) service providers and the OMTA is expected and critical to providing the highest quality 7(j) management and technical assistance to Agency clients.

   c.    Except for 8(a) certified firms, clients must certify, in writing, which of the 7(j) eligibility criteria they meet. The application and evaluation procedures depend on the particular type of 7(j) assistance requested, and the terms and conditions of the specific grant, cooperative agreement, or contract.

7.    **What Are 7(j) Competitive Awards?**

   a.    7(j) competitive awards are grants and cooperative agreements that are made as a result of competitive processes. These processes involves the Agency's issuance of notices of funding availability, generally called 'Program Solicitation Announcements,' and technical and financial evaluation of proposals submitted by prospective service providers, pursuant to those solicitations.

   b.    Program Solicitation Announcements include information on types of assistance needed, and how potential providers may apply, and how submissions will be evaluated. They are synopsized and published on FedBizOpps and Grants.gov web-sites, and include programmatic requirements, technical evaluation criteria, and instructions for submission. Responses to competitive Program Solicitation Announcements must be submitted electronically via the Grants.gov website.

Case 2:20-cv-00041-DCLC-CRW     Document 60-10     Filed 06/21/22     Page 14 of 27
PageID #: 925
US0051503

**8.    What Is an Unsolicited Proposal?**

a.    An unsolicited proposal is a submission to SBA for the purpose of obtaining a cooperative agreement, grant, or contract to provide management and technical assistance.

b.    The Agency considers unsolicited proposals from qualified individuals and public and private entities that represent innovative approaches to provision of management and technical assistance that are consistent with 7(j) authorizing legislation; controlling regulations; Agency policy, goals, and objectives; and client needs. As a matter of policy, the Agency considers unsolicited proposals for funding only after it has considered proposals made in response to competitive Program Solicitation Announcements.

c.    DO staff may obtain guidance from the D/OMTA, or his or her designee. DO staff should be prepared to provide guidance to the interested public on submission and processing of unsolicited proposals for possible funding.

**9.    To Which SBA Office Should An Unsolicited Proposal Be Sent?**

a.    The geographical service area of the proposed effort determines to which SBA office an unsolicited proposal should be submitted.

b.    If the geographical area to be served under the proposed effort is within the jurisdiction of a single SBA DO, the proposal should be submitted to the Director of that Office, via email, conventional mail, or hand delivery.

c.    If the geographical area to be served under the proposed effort falls within the jurisdiction of two or more DOs, or if the geographical area to be served under the proposed effort is nationwide, the unsolicited proposal should be sent to the D/OMTA, located at SBA HQ via email, conventional mail, or hand delivery.

**10.    How Are Unsolicited Proposals Processed?**

a.    Proposals must be submitted, and are reviewed, in accordance with FAR Subpart 15.6. The SBA will assign appropriate staff to review the unsolicited proposals.

b.    If an unsolicited proposal involves an effort to be performed within the jurisdiction of a single DO, the LBOS of that Office, or equivalent thereof, shall ensure review of the proposal in accordance with controlling regulations.

c.    If an unsolicited proposal involves an effort to be performed in the jurisdiction of more than one DO, the D/OMTA shall ensure review of the proposal in

Case 2:20-cv-00041-DCLC-CRW       Document 60-10       Filed 06/21/22       Page 15 of 27
PageID #: 926
US0051504

accordance with controlling regulations. In the event that the proposal is funded, the D/OMTA or his or her designee shall serve as the Grant Officer's Technical Representative on the award.

d.   The reviewer shall determine if:

(1)   The submission can be considered a valid unsolicited proposal as defined in FAR Subpart 15.6; and,

(2)   The submission contains sufficient technical and budgetary detail for the purpose of evaluation.

e.   The proposal will be returned to the offeror with brief letter of explanation if:

(1)   It cannot be considered a valid unsolicited proposal, pursuant to FAR Subpart 15.6; or,

(2)   It is not consistent with 7(j) authorizing legislation, controlling regulations, or Agency policy, goals, and objectives.

f.   The proposal will be returned to the offeror with an offer of further review, if the submission:

(1)   Can be considered a valid unsolicited proposal as defined in FAR Subpart 15.6; and

(2)   Is consistent with 7(j) authorizing legislation, controlling regulations, Agency policy, goals, and objectives, based on information at hand; but,

(3)   Does not contain sufficient technical and budgetary detail for the purpose of evaluation.

(4)   If the proposal is returned with an offer of further review and the proposer re-submits, the cognizant office shall conduct a review of any materials subsequently submitted for determination of the appropriateness of further processing.

g.   The initial reviewer will forward the proposal, with his or her recommendation, through the DD, to the D/OMTA, via email, conventional mail, or hand delivery, if the proposal:

(1)   Can be considered a valid unsolicited proposal, pursuant to FAR Subpart 15.6;

(2)   Contains sufficient technical and budgetary detail for the purpose of evaluation; and,

US0051505

      (3)      Is consistent with 7(j) authorizing legislation, controlling regulations, Agency policy, goals, and objectives.

    h.      Upon receipt of the proposal from the cognizant office, the D/OMTA, or his/her designee, shall convene a technical evaluation panel. Based upon the results of this evaluation, the D/OMTA shall forward the proposal, with his or her recommendation and the results of the technical review panel to OGC for review of legal sufficiency and concurrence. If OGC concurs in the recommendation, the D/OMTA, shall forward the proposal and supporting documentation through the DA/BD to the AA/BD for funding approval;

    i.      If the AA/BD concurs, he or she shall arrange for the proposal and funding documents to be electronically transmitted to the Office of Grants Management for financial negotiation, and issuance of Notice of Award and Terms and Conditions

    j.      If the AA/BD does not concur, he or she shall return the proposal to the D/OMTA. In turn, the D/OMTA, or his or her designee, shall return the proposal to the proposer, with a brief letter of explanation

## 11.    How Is the Grants Officer's Technical Representative Appointed?

    a.      The Grant Officer's Technical Representative is nominated by the Director of the cognizant program office and appointed by the Grants Management Officer.

    b.      The D/OMTA shall nominate the Technical Representatives for grants and cooperative agreements that are:

      (1)      Competitively awarded;

      (2)      National in scope; or

      (3)      Fall within the jurisdiction of more than one DO. (In this circumstance, the D/OMTA shall make his or her recommendation in consultation with involved DDs.)

    c.      The LBOS, or equivalent thereof, shall nominate the Technical Representative for awards that fall within the jurisdiction of his or her DO. The Assistant DD shall submit this nomination through the DD to the D/OMTA, who will, in turn, transmit the nomination to the Grant Officer.

    d.      The Grants Management Officer will notify the Technical Representative in writing of his or her appointment, and will provide him or her with a copy of the Notice of Award and Terms and Conditions

Case 2:20-cv-00041-DCLC-CRW    Document 60-10    Filed 06/21/22    Page 17 of 27
PageID #: 928

US0051506

**12.    What Are the Responsibilities of the Grants Officer's Technical Representative?**

a.    The Grant Officer's Technical Representative is responsible for the technical sufficiency of work performed under the 7(j) award. He or she establishes and maintains a file for each award which includes:

  (1)    Grant recipient's technical proposal;

  (2)    Notice of Award and Terms and Conditions;

  (3)    All monitoring reports; and

  (4)    All other relevant correspondence, including emails.

b.    Monitors and evaluates performance of the grant recipient to assure compliance with the technical requirements of the cooperative agreement.

c.    Notifies the grant recipient of deficient performance, recommends means of correcting deficiencies, and advises the grant recipient of the consequences of failure to correct deficiencies and/or improve performance.

d.    At the earliest opportunity, notifies the Grants Management Officer, the D/OMTA, and LBOS (if appropriate) of any deficiencies in performance is unsatisfactory, to assist the Grants Management Officer in protecting the Government's interest.

e.    Reviews and recommends approval or disapproval of financial and other reports requiring approval, notifies the Grants Management Officer if unsatisfactory reports have been rejected, advises the Grants Management Officer as to the appropriateness of payment for services rendered, and recommends termination of award when appropriate.

f.    Provides technical guidance to the awardee/recipient in the administration of the award.

g.    Advises the Grants Management Officer, through D/OMTA, or designee, of any misunderstanding in communication with the awardee/recipient, or of any matter that has the potential to become the basis of a claim against the Government.

h.    Conducts site visits to the grant recipient's facilities, as appropriate, to ensure that:

  (1)    Reported performance accurately reflects the actual accomplishment;

  (2)    Changes in financial condition that might impact technical performance or otherwise jeopardize service delivery under the award are identified; and

US0051507

(3)    The conditions of the award are met, through verification of work performance, number of employees charged to the award, and other expenses charged to the award.

i.    Makes recommendations in all matters involving expenditure of 7(j) award funds to the appropriate official and forwards them for approval by the Grants Management Officer.

j.    At the completion of the project, advises the approving official and the Grants Management Officer whether the:

(1)    Performance under the award is satisfactory, and has been accepted;

(2)    Grant recipient has complied with rights in data, patent rights, and royalty clauses contained in the Notice of Award; and

(3)    Disposition of any equipment supplied or purchased by the Government for the performance of a specific task is in compliance with appropriate Federal guidelines at the conclusion of the project period.

k.    The Technical Representative has no authority to bind the Government or change the contract. The Technical Representative must refrain from any statements that could be interpreted as promises.

## 13.    What Are the Procedures for Extensions, Revisions, and Modifications of 7(j) Contracts, Grants and Cooperative Agreements?

a.    Grant recipients may request, in writing, extensions, revisions, and modifications of cooperative agreements, grants and contracts. Such requests must be submitted in writing to the Grant Officer's Technical Representative.

b.    If the Grant Officer's Technical Representative is in the DO, he or she shall review the request and forward it with a recommendation through the DD, D/OMTA, Deputy Associate Administrator, and AA/BD to the Grants Officer for further processing.

c.    If the Technical Representative is in the OMTA, he or she shall forward it with a recommendation to the D/OMTA, through the Deputy Associate Administrator, and AA/BD to the Grants Officer for further processing.

d.    The Grants Office shall take final action and, if required, issue a revised or amended Notice of Award to the grant recipient with a copy to the Grant Officer's Technical Representative.

US0051508

14. **What Are the Ethical and Other Considerations Governing Recipients, Clients and Subcontractors?**

   a.   For 7(j) assistance to be fully effective, the integrity of the program must be preserved. Services must be rendered to clients equitably and efficiently. Further, there must be neither a conflict of interest nor an appearance of a conflict of interest in program operations.

   b.   Grant recipients and contractors must be held fully responsible for all work performed by their subcontractors.

   c.   Ethical violations will be referred to the OIG. *See* SOP 90 22.

   d.   The Agency's sole involvement in grant recipients' subcontract arrangements is its written approval, or disapproval, of each subcontractor. Therefore, the Agency will not become involved in any price negotiations or disputes between grant recipients and their subcontractors. Any complaints received from subcontractors will be referred to the grant recipient.

15. **How Are Protests Handled?**

   a.   All protests arising from actions taken in connection with the acquisition, administration, or provision of 7(j) assistance, transmitted by the GAO must be forwarded immediately to OGC for response and legal advice, with a copy to the Grants Management Officer, and the D/OMTA.

   b.   All other protests shall be forwarded directly to the Grants Management Officer, with a copy to the D/OMTA, for timely response.

16. **What Are the Agency Procedures for Issues Such as Suspension, Termination, and Resolution of Disputes With Regard to Grants and Cooperative Agreements?**

   a.   Noted deficiencies in a grant recipients performance will be thoroughly documented by the Technical Representative, and immediately reported to the AA/BD, through the Deputy Associate Administrator, D/OMTA, and DD (as appropriate).

   b.   Pursuant to Notice of Award, the Grants Officer will take appropriate suspension or termination action upon notification by the AA/BD of deficient performance.

   c.   Disputes arising pursuant to 7(j) awards will be resolved in accordance with the disputes resolution procedures of the SBA Grants/Cooperative Agreement

Appeals Committee. These procedures are outlined in each Notice of Award issued by the Office of Grants Management. *See* 2 C.F.R. Part 215.

**17. How Are One-on-One Counseling Services under Technical Direction Letters Managed?**

a. The BOS or District Technical Point of Contact should consult with the client to collaboratively determine what TDL assistance is appropriate to the firm. It is very important that the scope and substance of assistance to be provided be carefully developed to address the client's specific needs, and to communicate required consultant service needs to the service provider.

b. Based on consultation with the client, the servicing BOS or involved District Technical Point of Contact should prepare an initial TDL and forward it to the Regional Technical Point of Contact [The letter format found at Appendix 15-1 should be used]. NOTE: The 'Travel' category cannot exceed 20 percent of the total cost of the submitted TDL and, a single TDL cannot exceed $25,000.

c. Upon receipt of the TDL, the Regional Technical Point of Contact should review it, and if he or she:

(1) Concurs, forward it to the 7(j) cooperative agreement recipient.

(2) Does not concur, return it to the BOS or District Technical Point of Contact for revision or modification

d. Upon receipt from the Regional Technical Point of Contact, the 7(j) cooperative agreement recipient should review the TDL, and if he or she:

(1) Concurs, provide cost estimates, sign, and return it to the Regional Technical Point of Contact for review and signature.

(2) Does not concur, return it to the District Technical Point of Contact or BOS for revision or modification.

e. Upon receipt of the TDL from the 7(j) grant recipient, if the Regional Technical Point of Contact:

(1) Concurs, sign, date, and email a PDF of it to the assigned Program Analyst in the OMTA or his or her designee.

(2) Does not concur, consult with BOS or District Technical Point of Contact to resolve.

f. Upon receipt of the TDL from the Regional Technical Point of Contact, the assigned Program Analyst in the OMTA will review it, and if he or she:

Case 2:20-cv-00041-DCLC-CRW    Document 60-10    Filed 06/21/22    Page 21 of 27
PageID #: 932
US0051510

(1)     Concurs, approve, sign, date, log, and email a PDF of it to the 7(j) service provider, with copies to the BOS or District Technical Point of Contact and Regional Technical Point of Contact.

(2)     Does not concur, consult with Regional Technical Point of Contact, BOS or District Technical Point of Contact, as appropriate, to resolve.

g.     Upon receipt, the Regional Technical Point of Contact will add the approved TDL to their Regional Master List and track funds obligated. The BOS or District Technical Point of Contact and Regional Technical Point of Contact may visit SBA's YES Page to view the 7(j) Call Contracts FY 2014 folder under the tab 7(j) TDL Type Services. This spreadsheet will not reflect TDL approvals.

h.     The assigned Program Analyst in the OMTA will maintain files of approved TDLs.

Case 2:20-cv-00041-DCLC-CRW     Document 60-10     Filed 06/21/22     Page 22 of 27
PageID #: 933
US0051511

# CHAPTER 16: SURPLUS PROPERTY

**1.     What Is Surplus Property?**

If a Federal agency no longer has a need for personal property, it declares the property excess property, and the property is then made available to all other Federal agencies. If no Federal agency claims the excess property within a certain amount of time, it is declared surplus property.

**2.     Are 8(a) Participants Eligible to Receive Surplus Property?**

The Small Business Act provides that eligible 8(a) Participants are qualified to receive Federal surplus property on a priority basis. 15 U.S.C. § 636(j)(13)(F).

**3.     How Is Surplus Property Transferred to an 8(a) Participant?**

Surplus property is transferred to an 8(a) Participant by a State Agency for Surplus Property (SASP).

**4.     What Is a SASP?**

Every state has created a SASP, which is a state agency responsible for distributing surplus property to eligible recipients, monitoring its use, and managing the future return, transfer or disposal of the property, if appropriate.

**5.     Do 8(a) Participants Receive Any Special Priority From the SASP?**

Although the Small Business Act provides that surplus property may be transferred to 8(a) Participants on a priority basis, the SASP is responsible for equitably distributing property among all eligible recipients and does not afford 8(a) Participants a priority.

**6.     How May Surplus Property Be Used?**

Property must be used by the 8(a) Participant during the normal conduct of its business operations and may not be sold or transferred to any other party, including affiliates, until one year after the concern graduates from the 8(a) BD program. 15 U.S.C. § 636(j)(13)(F).

**7.     What Surplus Property Is Available?**

An 8(a) Participant can find out what surplus property is available by contacting the SASP in the state in which the Participant's principal place of business is located.

US0051512

8. **What Should an 8(a) Participant Do If It Identifies Surplus Property That It Wants?**

Once an 8(a) Participant identifies surplus property it wishes to acquire, it should send a letter to the SASP identifying the desired property and specifying how it will use the property. The Participant should also identify its servicing DO. In the letter the 8(a) Participant must certify the following:

    a. That it is eligible to receive surplus property, and that the intended use of the property is consistent with the Participant's business plan;

    b. That it will use the property in the normal conduct of its business operations, and that if it does not, it will be liable for the fair rental value of the property from the date of receipt;

    c. That it will not sell or transfer the property to any other party until one year after it graduates from the 8(a) BD program, unless directed to do so by the SASP or SBA;

    d. That it will, at its own expense, return the property to the SASP or transfer it to another Participant if directed to do so by the SASP or SBA;

    e. That it will return the property to the SASP or follow any other directions given by the SASP with regard to the disposition of the property if it is terminated from the 8(a) BD program;

    f. That, should it breach its agreement not to sell or transfer the property without the written consent of the SASP or SBA prior to one year after graduation, it will be liable to the Federal Government for the established fair market value or the sale price of the property, whichever is greater; and

    g. That it will give SBA and the SASP access to inspect the property and all records pertaining to it.

9. **What Will the SASP Do When It Receives the Participant's Letter Requesting Surplus Property?**

Once the SASP receives the Participant's letter, it will contact the servicing DO for a written determination that the firm is an eligible 8(a) Participant and that the proposed use of the property is consistent with the Participant's normal business operation and business plan.

10. **Who Decides Whether Certain Property Will Be Distributed to a Participant?**

The SASP is responsible for distributing property among eligible recipients, including 8(a) Participants.

US0051513

**11. Who Decides Whether a Participant Is Eligible for Surplus Property?**

The LBOS at the servicing DO is the official responsible for deciding whether a Participant is eligible for surplus property.

**12. What Date Is Used for Determining Eligibility?**

The proposed date of transfer, as specified by the SASP, is the date used for determining eligibility.

**13. What Should the LBOS Do If He or She Receives a Written Communication From a SASP Concerning a Proposed Surplus Property Transfer?**

Once the LBOS receives a written communication from a SASP concerning a proposed surplus property transfer, the ADD must:

    a.    Determine whether the proposed transferee is an eligible 8(a) Participant. The following Participants are not eligible to receive surplus property:

        (1)    Participants that have been suspended or terminated from the 8(a) BD program, or that are proposed for termination, suspension, or graduation;

        (2)    Participants that are not in compliance with SBA reporting requirements; and

        (3)    Participants who are debarred or suspended under the FAR.

    b.    Determine whether the proposed use of the property is consistent with the Participant's normal business operation and business plan. This is accomplished by reviewing the Participant's past business plans and annual reviews. If the LBOS does not have a full understanding of what the property is, what it does, or how it is used, he or she should contact the SASP and the 8(a) Participant for clarification. If it is unclear how the Participant will use the property in the normal conduct of its business operation, then the LBOS should require the participant to submit a written explanation.

**14. What Should the LBOS Do If He or She Determines That a Participant Is Not Eligible to Receive Surplus Property?**

If the LBOS determines that a Participant is not eligible to receive surplus property, the ADD must send the SASP a letter explaining why the Participant is not eligible, with a copy to the 8(a) Participant.

15. **What Should the LBOS Do If He or She Determines That a Participant Is Eligible to Receive Surplus Property?**

If the LBOS determines that a Participant is eligible to receive surplus property, he or she must send the SASP a letter indicating the Participant is eligible, with a copy to the 8(a) Participant.

16. **What Happens After the Servicing District Office Has Verified That a Participant Is Eligible to Receive the Identified Surplus Property?**

Once eligibility is verified, the SASP and Participant must agree on the fair market value of the property at the time of transfer. The SASP must provide SBA with a written record of the transfer, which must include the agreed fair market value. The Participant must execute all SASP transfer documentation and pay all associated transfer fees or costs.

17. **Should Any SBA Official Sign or Execute Any Form or Documentation That Gives SBA Title To or Responsibility For Surplus Property That Is to Be Used By an 8(a) Participant?**

Under no circumstances should any SBA official ever sign or execute any document that gives SBA title to or responsibility for surplus property that is to be used by an 8(a) Participant.

18. **Who Has Title to Surplus Property That Has Been Transferred to an 8(a) Participant?**

Title passes from the SASP to the 8(a) Participant when the Participant executes the applicable SASP documentation and receives possession of the property. However title is conditional, and the 8(a) Participant may not sell, transfer or otherwise dispose of the surplus property until one year after the Participant graduates from the 8(a) BD program, unless directed to do so, in writing, by SBA or the SASP.

19. **What Is the Servicing District Office's Role After Property Has Been Transferred?**

On at least an annual basis, the servicing DO must review whether the participant is using surplus property in accordance with all of the applicable terms and conditions. This review may include a site visit. In addition, if at any time the servicing DO receives credible information that surplus property is not being used in accordance with the applicable terms and conditions, it must conduct an investigation to determine the validity of the information.

US0051515

20. **What Should the Servicing District Office Do If a Participant No Longer Needs Surplus Property in its Possession?**

If a Participant no longer needs surplus property in its possession, the servicing DO should instruct the Participant to immediately contact the SASP for instruction. The servicing DO should not take possession of the property, nor should it assume any responsibility for the property. If the SASP does not request the Participant to return the property, then the Participant may sell, transfer, or otherwise dispose of the property.

21. **What Should the Servicing District Office Do If It Finds That Property Is Not Being Used in Accordance With Applicable Terms and Conditions?**

If the Servicing DO finds that property is not being used in accordance with applicable terms and conditions, the DO may:

    a.    Require that the property be placed in proper use within a specified time;

    b.    Require that the property be returned to the SASP, or be transferred to another participant;

    c.    Initiate proceedings to recover the fair rental value of the property, if requested by the SASP; and/or

    d.    Initiate proceedings to terminate the Participant from the 8(a) BD program.

22. **What Should the Servicing District Office Do If a Firm Sells or Disposes of Property in Violation of the Applicable Terms and Conditions?**

If a Participant sells or disposes of property in violation of the applicable terms and conditions, the servicing DO must immediately contact the SASP. In addition, it may:

    a.    Initiate proceedings to recover the fair market value of the property at the time of transfer, or the sale price, whichever is greater, if requested by the SASP;

    b.    Initiate proceedings to terminate the Participant from the 8(a) BD program.

    c.    Refer the matter to OIG.

23. **What Happens to Any Funds SBA Receives as a Result of the Participant's Misuse or Unauthorized Sale of Surplus Property?**

Any funds SBA receives as a result of the Participant's misuse or unauthorized sale of surplus property must be remitted to the United States Treasury as miscellaneous receipts.

Case 2:20-cv-00041-DCLC-CRW   Document 60-10   Filed 06/21/22   Page 27 of 27
PageID #: 938
US0051516