# EXHIBIT 15

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF TENNESSEE
2

       -------------------------------:
3    ULTIMA SERVICES CORPORATION,    :
                                       :
4             Plaintiff,             :
                                       :
5         vs.                        : Case No.:
                                       : 2:20-cv-00041-
6    U.S. DEPARTMENT OF AGRICULTURE,: DCLC-CRW
     et al.,                          :
7                                      :
               Defendants.           :
8    -------------------------------:
9

10

11        REMOTE DEPOSITION OF DANIEL CHOW
12

13   DATE:          March 10, 2022
14   TIME:          10:06 a.m.
15   LOCATION:      Rockville, Maryland
16   REPORTED BY:   Shari R. Broussard, RPR, CSR
                    Reporter, Notary
17

18

19

20

21         Veritext Legal Solutions
           1250 Eye Street, NW, Suite 350
22             Washington, D.C. 20005
```

1     A P P E A R A N C E S
2   On behalf of Plaintiff:
3       MICHAEL E. ROSMAN, ESQUIRE
        MICHELLE A. SCOTT, ESQUIRE
4       Center for Individual Rights
        1100 Connecticut Avenue, Northwest
5       Suite 625
        Washington, D.C. 20036
6       (202) 833-8400
        rosman@cir-usa.gov
7
    On behalf of Defendants:
8
        CHRISTINE DINAN, ESQUIRE
9       JULIET GRAY, ESQUIRE
        ANDREW BRANIFF, ESQUIRE
10      Department of Justice
        Civil Rights Division
11      Employment Litigation Section
        150 M Street, Northeast
12      Washington, D.C. 20530
        christine.dinan@usdoj.gov
13      juliet.gray@usdoj.gov
        andrew.braniff@usdoj.gov
14
15   ALSO PRESENT:
16      Josephine Arnold, Esquire, MBDA
17
18
19
20
21
22

1           C O N T E N T S
2   EXAMINATION BY:                    PAGE
3     Counsel for Plaintiff           4, 113
4     Counsel for Defendant            109
5
6
7   CHOW DEPOSITION EXHIBITS:   *       PAGE
8   Exhibit  1  Curriculum Vitae            5
9   Exhibit  2  Executive Order 12432      15
10  Exhibit  3  Update to the Assessment of Contracting
          Outcomes for Small Disadvantaged
11        Businesses, 2/7/22            33
12
13
14
15
16
17
18
19
20
21
22    (* Exhibits attached to transcript.)

1        P R O C E E D I N G S
2   WHEREUPON,
3           DANIEL CHOW
4   called as a witness, and having been sworn by the
5   notary public, was examined and testified as
6   follows:
7        EXAMINATION BY COUNSEL FOR PLAINTIFF
8   BY MR. ROSMAN:
9     Q   Good morning, Mr. Chow.  My name is
10  Michael Rosman.  I represent the plaintiff in the
11  lawsuit which you're about to give a deposition.
12        Have you ever been deposed before?
13    A   None before this one.
14    Q   Okay.  Why don't you just state your
15  name and address for the record, please.
16    A   My name is Daniel Chow, C-H-O-W.  My
17  address is 11910 Kings Bridge Way, Rockville,
18  Maryland 20852.
19    Q   Great.  Thank you.
20        So let me just explain.  This is a
21  proceeding before trial in a lawsuit.  You've been
22  sworn to tell the truth.  I'm going to ask a

1   series of questions which you should answer to the
2   best of your knowledge and ability.  If you don't
3   understand a question, if I've said something
4   confusing, you can ask for some clarification and
5   I might rephrase it.  If you need a break at some
6   point, you can ask me for that and we'll try to
7   arrange one as quickly as we can.
8        Do you have any questions about that?
9     A   None.  Thank you.
10        (Chow Exhibit Number 1 was
11        marked for identification.)
12  BY MR. ROSMAN:
13    Q   Okay.  I've marked as Plaintiff's
14  Exhibit 1 your CV or what was given to us as your
15  CV.
16        Could you just confirm that that is in
17  fact your CV?
18    A   Yes, this is my CV.
19    Q   Okay.  I just have a few questions about
20  it.  I noticed in the first position at the U.S.
21  Bureau of Labor Statistics it says that you
22  authored professional journal articles and I was

2 (Pages 2 - 5)

1  what extent our minority- and small-disadvantaged
2  firms are able to win or not win contracts.
3      Q    And what did you find?
4      A    We found that -- I found that SDBs that
5  are not in the 8(a) program are 30- -- about 37
6  percent less likely to win a contract compared to
7  firms in the 8(a) program, which are like twice as
8  likely to win a contract, and that there are other
9  characteristics of firms that seem to indicate
10  that there are differences in odds ratio for
11  winning contracts.
12     Q    In your study you control for a number
13  of factors in your regression analysis to
14  determine whether any of those factors could
15  impact the odds of a firm winning a contract.
16        Did you control for every factor that
17  the data allowed you to control for?
18     A    I controlled for as many factors as I
19  could within the design of the -- of the -- of the
20  study, yes.
21     Q    In your opinion, would the results from
22  your study be consistent with the presence of

1  discrimination?
2      A    Yes, in my expert opinion it is
3  consistent, yes.
4      Q    And why is that?
5      A    Well, again, we're looking at minority
6  firms and I looked at all of the variables that
7  are relevant in terms of, you know, determining
8  the differential impact on the odds of winning.
9  We're looking at minority firms and I can't
10  think of -- I can't think of any nondiscriminatory
11  factors.  And we know that discrimination exists
12  in various workplaces and marketplaces, so looking
13  at the fact that if an SDB is not in the 8(a)
14  program versus a firm that is in the 8(a) program,
15  we see a statistically significant difference
16  between those two.  So I -- I tend to look at that
17  as being consistent with some form of
18  discrimination.
19     Q    And that was after controlling for
20  certain nondiscriminatory factors like age and
21  gross receipts and things like that, correct?
22     A    Correct, those -- those factors are part

1  of these firms, so yes, they -- they are included
2  in the study.
3      Q    To your knowledge, were any individual
4  firms removed from the datasets that you were
5  given by SBA either by you or by SBA because of
6  their success in bidding in the federal
7  marketplace?
8      A    No.
9      Q    Are you aware of any economic study or
10  data that would indicate that registered
11  minority-owned firms bid less often on contracts
12  than registered non-minority firms --
13     A    I'm not aware of any.
14     Q    -- non-minority-owned firms?
15     A    I'm not aware of any.
16     Q    Let me look at my motes.  Just a moment.
17        Just back to what you were saying a
18  moment ago about the findings, when you indicated
19  that certain firms -- there were 37 percent less
20  likely -- had 37 percent less likely odds of
21  winning a contract as compared to other firms,
22  that was all firms with similar characteristics,

1  correct?
2      A    Correct.
3      Q    And that was not just in comparison to
4  firms in the 8(a) program; is that right?
5      A    Correct.
6        MS. DINAN:  I believe that is all that I
7  have.  Let me just double check.
8        No, I have no further questions thank
9  you.
10        MR. ROSMAN:  Just two quick follow-up
11  questions.
12        FURTHER EXAMINATION BY COUNSEL FOR
13        PLAINTIFF
14  BY MR. ROSMAN:
15     Q    You testified a moment ago that you
16  thought the results were consistent with
17  discrimination.
18        Does this mean that discrimination
19  cannot be eliminated as a possible cause for the
20  discrepancies that you found?
21     A    I would -- cannot be eliminated as -- I
22  would say so, yes.

29 (Pages 110 - 113)