# EXHIBIT 24

1  UNITED STATES DISTRICT COURT

2  EASTERN DISTRICT OF TENNESSEE

3  _____

4  ULTIMA SERVICES CORPORATION,

5        Plaintiff,

6     v.                                         Case No.

7  U.S. DEPARTMENT OF AGRICULTURE,                2:20-cv-00041-

8  U.S. SMALL BUSINESS                            DCLC-CRW

9  ADMINISTRATION, SECRETARY OF

10 AGRICULTURE, AND ADMINISTRATOR

11 OF THE SMALL BUSINESS

12 ADMINISTRATION,

13       Defendants.

14 _____

15          VIDEOCONFERENCE DEPOSITION OF

16                 HEIDI ATKINSON

17 DATE:           Wednesday, April 20, 2022

18 TIME:           9:44 a.m.

19 LOCATION:       Remote Proceeding

20                 Front Royal, Virginia

21 REPORTED BY:    Timothy Guevara, Notary Public

22 JOB NO.:        5192132

```
 1               A P P E A R A N C E S
 2      ON BEHALF OF PLAINTIFF ULTIMA SERVICES CORPORATION:
 3          MICHELLE SCOTT, ESQUIRE (by videoconference)
 4          Center for Individual Rights
 5          1100 Connecticut Avenue Northwest, Suite 625
 6          Washington, DC 20036
 7          scott@cir-usa.org
 8          (202) 833-8400
 9
10          MICHAEL E. ROSMAN, ESQUIRE (by videoconference)
11          Center for Individual Rights
12          1100 Connecticut Avenue Northwest, Suite 625
13          Washington, DC 20036
14          rosman@cir-usa.org
15          (202) 833-8400
16
17
18
19
20
21
22
```

```
 1            A P P E A R A N C E S (Cont'd)
 2    ON BEHALF OF DEFENDANTS U.S. DEPARTMENT OF
 3    AGRICULTURE, U.S. SMALL BUSINESS ADMINISTRATION,
 4    SECRETARY OF AGRICULTURE, and ADMINISTRATOR OF THE
 5    SMALL BUSINESS ADMINISTRATION:
 6         K'SHAANI SMITH, ESQUIRE (by videoconference)
 7         United States Department of Justice
 8         950 Pennsylvania Avenue, Northwest
 9         Washington, DC 20530
10         shaani.smith@usdoj.gov
11         (202) 598-6856
12
13         JULIET GRAY, ESQUIRE (by videoconference)
14         Department of Justice Civil Rights Division
15         Employment Litigation Section
16         150 M Street Northeast
17         Washington, DC 20530
18         juliet.gray@usdoj.gov
19
20
21
22
```

```
                      I N D E X
EXAMINATION:                                    PAGE
      By Ms. Scott                               8
      By Ms. Smith                             187
      By Ms. Scott                             214


                     E X H I B I T S

NO.             DESCRIPTION                      PAGE

Exhibit 0001    USDA Decision Memorandum for
                Acting Chief                      27

Exhibit 0002    USSBA Acceptance Letter - 8/22/19 76

Exhibit 0003    Letter from USDA to Teri Taylor
                at USSBA - 6/12/18                80

Exhibit 0004    Letter from NRCS to Jawanda
                Jones at USSBA - 6/24/19          85

Exhibit 0005    Letter from USSBA to Ryan Lorimer
                - 6/14/18                        118

Exhibit 0006    Email Correspondence            123

Exhibit 0007    Letter from USSBA to Terri Denison
                - 9/19/18                        131

Exhibit 0008    Letter from USSBA to Danny Mandell
                at USDA - 9/20/18                133
```

E X H I B I T S (Cont'd)

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 0009 | Solicitation/Contract/Order for Commercial Items | 139 |
| Exhibit 0010 | Letter from NRCS to Shuraie Mackin at USSBA - 8/24/18 | 141 |
| Exhibit 0011 | Letter from NRCS to Nancy Porzio at USSBA - 7/12/19 | 149 |
| Exhibit 0012 | Letter from USSBA to Danny Mandell at USDA - 8/12/19 | 157 |
| Exhibit 0013 | Letter from USDA to USSBA - 2/25/20 | 159 |
| Exhibit 0014 | Email from Howard Stover to Monet Chapman - 7/16/19 | 170 |
| Exhibit 0015 | Email from Howard Stover to Monet Chapman - 7/16/19 (Duplicate) | 172 |
| Exhibit 0016 | Emails between Monet Chapman and Howard Stover - 7/16/19 | 173 |
| Exhibit 0017 | Letter from USSBA to Howard Stover at USDA - 7/16/19 | 179 |
| Exhibit 0018 | Email Correspondence | 182 |

(Exhibits attached.)

1    A    I don't have that information in front of
2    me.  I believe that would have been provided via the
3    attorneys.
4    Q    Okay.  How many of the contracts that arose
5    after splitting up the IDIQs were awarded to
6    women-owned small business?
7    A    Again, I don't have that information in
8    front of me.  It would be in the records provided.
9    Q    Now we're going to move on to topic five
10   under 30(b)(6) matters, and it's, "Decisions to
11   utilize the 8(a) Business Development program for
12   providing administrative and technical services to
13   NRCS offices." Just to begin, who decides to utilize
14   the 8(a) program for a particular contract?
15   A    Just a moment.  Should I be moving from this
16   screen back to video?  Are we done with --
17   Q    Oh, yes.  You -- we're done with that
18   document for now, yes.
19   A    So could you please repeat the question?
20   Q    No problem.  Who decides to utilize the 8(a)
21   program for any particular contract with NRCS?
22   A    The contracting officer makes the award

1  decision for all contracts.
2      Q   Okay.  What are the criteria to put a
3  particular contract into the 8(a) program?
4      A   The Small Business Administration sets that
5  as far as placing it into the program.
6      Q   So are there any criteria relating to the
7  subject matter of the contract, the type of work
8  that's being done, geographical area?
9              MS. SMITH:  Objection.  Compound
10 question and ambiguous, but you can answer it.
11             THE WITNESS:  I was thinking the same
12 thing.  I wasn't sure what -- what the question really
13 meant --
14 BY MS. SCOTT:
15     Q   Okay.  Let me go back.
16     A   The Small Business Administration lists the
17 criteria, and you would be able to reference that in
18 the Small Business Administration handbook.  I -- I
19 don't have that off the top of my head.
20     Q   Okay.  Who decided to utilize the 8(a)
21 program to provide administrative and technical
22 services to NRCS after the IDIQs were broken up?

1   A   Any contracting officer that rewarded to an
2   8(a). There were multiple contracting officers, so
3   multiple contracting officers would have made the
4   decision. Not all contracts went to 8(a). So the
5   ones that did would have been made by the contracting
6   officer that awarded the contract.
7   Q   Okay. So are there limits as to how many
8   contracts a particular contracting officer can make
9   under the 8(a) program?
10  A   No.
11  Q   Has the 8(a) program been used to provide
12  other types of services to NRCS other than
13  administrative and technical services?
14  A   Yes.
15  Q   Can you tell me some of those types?
16  A   It falls under -- NRCS awards contracts for
17  an incredible variety of things. So just off the top
18  of my head, a few of them would be boundary surveys,
19  title searches, wetlands dredging, and those are only
20  examples. If you -- if you need exact, you would need
21  to ask those contract records.
22  Q   Okay. Before assigning a particular NRCS

1  Q   Okay. But I'm asking who sets the criteria
2  for which contracts can go into the 8(a) program?
3  A   The contracting officer determines if the
4  contract is eligible to go into the 8(a) program.
5  Q   Okay. And how does the contracting officer
6  make that determination?
7  A   I think we're going in circles with this
8  question. So by using the criteria that the Small
9  Business Administration sets and that -- that would be
10 on their criteria and I don't have that in front of
11 me.
12 Q   Okay. So is it your testimony that there
13 are -- the Small Business Administration has criteria
14 for which contracts can go into the 8(a) program;
15 correct?
16 A   No, they do not pre-state that these
17 contracts are eligible for the 8(a) program. They do
18 not state that. The contract has to be evaluated
19 first by the contracting officer.
20 Q   And what is the contracting officer
21 evaluating?
22 A   Whether or not the contract is eligible for

1  business decisions that were behind that.
2      Q   Did you ask her about the business decisions
3  to award those contracts in the 8(a) program?
4      A   There -- the decision was not made to award
5  contracts to the 8(a).  The -- that -- that was not a
6  centralized decision.  There were multiple
7  contractors -- not contractors, contracting officers.
8  There were multiple contracting officers making the
9  awards.  Each contracting officer made the award based
10 upon their own decision models.  Not all contracts
11 awarded were 8(a) and so she was not a part of that
12 decision-making nor was any other leader.  It was made
13 by the individual contracting officer making the award
14 and as I stated, there were multiples of those.
15     Q   And how many were not 8(a)?  How -- let me
16 go back.  I want to clarify this for you.  Out of the
17 regional -- the state and local contracts that came
18 about when the IDIQ regional contracts were broken up,
19 out of those contracts, how many were not 8(a)?
20              MS. SMITH:  Objection.  You can answer.
21              THE WITNESS:  I don't know that
22 number -- I don't know that number off the top of my

1    A    Yes, that is correct and those vary from
2    state to state.  So for example, in Utah, you might
3    have the snow surveys that are done, which would be
4    very different than, for example, the example I
5    already listed in Louisiana where they do dredging of
6    the bayous and that would be different than the rehab
7    of the Chesapeake Bay in Virginia.
8         And so the type of work that is done by the
9    program offices in the states vary drastically from
10   state to state for the conservation type programs they
11   run and so therefore the type of specialized skill
12   they need, while it fits under an umbrella category,
13   will be very different also from state to state.
14   Q    Moving to the second bullet on this page.
15   You could read this to yourself.  It's kind of wordy.
16   A    Okay.
17   Q    Do you see any reference to the 8(a)
18   Business Development program in that paragraph?
19   A    I do not.
20   Q    And to clarify does NRCS or USDA have a goal
21   specifically for the 8(a) program?
22   A    They do not.

```
 1    to utilize the 8(a) BD program for providing
 2    administrative and technical services to NRCS
 3    offices." You previously testified that criteria in
 4    the FAR -- sorry.  Sorry.  Okay.  Strike that.  You
 5    previously mentioned criteria in the FAR regarding use
 6    of the 8(a) BD program; is that correct?
 7         A    I'm not understanding that last word.  Are
 8    you saying B as in boy, D as in dog?
 9         Q    Yes.  Business Development program.
10         A    There you go.  Okay.  Thank you.  I wasn't
11    sure what we were talking about.  Okay.  So repeat the
12    question, please.
13         Q    Yes.  You previously mentioned that there's
14    criteria in the FAR regarding use of the 8(a) program;
15    is that correct?
16         A    That would be correct.
17         Q    Are there -- are the factors that
18    contracting officers consider when awarding contracts
19    through the 8(a) program contained in the FAR?
20         A    Yes, that would be in the simplified award
21    acquisition section of the FAR.
22         Q    Are there any other factors that contracting
```

1   officers consider?
2       A    Yes.  They consider the best needs of the
3   government as -- and that -- again, as I testified
4   earlier, that covers a big scope of -- of things and
5   are unique to each contract.
6       Q    Did NRCS award contracts for administrative
7   and technical services through the 8(a) program before
8   the 2017 IDIQs that Ultima was awarded?
9       A    Yes, they did.
10      Q    Was Ultima awarded any administrative and
11  technical services contracts before receiving the 2017
12  IDIQs?
13      A    Yes.
14      Q    Okay.  Now, you were shown several sole
15  source 8(a) offering letters from NRCS by plaintiff's
16  counsel; is that correct?
17      A    That is correct.
18      Q    Some of those letters stated that the offer
19  was for a new requirement; is that correct?
20      A    That is correct.
21      Q    Can you explain why those contracts were
22  considered new requirements?

1      CERTIFICATE OF TRANSCRIBER

2          I, KEARA CONTARTESI, do hereby certify that

3      this transcript was prepared from the digital audio

4      recording of the foregoing proceeding, that said

5      transcript is a true and accurate record of the

6      proceedings to the best of my knowledge, skills, and

7      ability; that I am neither counsel for, related to,

8      nor employed by any of the parties to the action in

9      which this was taken; and, further, that I am not a

10     relative or employee of any counsel or attorney

11     employed by the parties hereto, nor financially or

12     otherwise interested in the outcome of this action.

13

14

15                                KEARA CONTARTESI

16

17

18

19

20

21

22

1  Ultima Services Corporation v. US Department Of Agriculture
2                      Heidi Atkinson
3                       E R R A T A
4                       - - - - -
5     PAGE    LINE    CHANGE
6      15      11      11/2015
7     Reason: I recalled wrong date
8      15      13      11/2015
9     Reason: I recalled wrong date
10     17      10     ~~Stone~~ Change "Smith" to "Stonebraker"
11    Reason: I used wrong name
12     17      12     Change "Gaymullen Brown" to Gay Mullen-Brown
13    Reason: Corrected spelling
14     19     11+12   Change to Contractor Performance Assessment Reporting system
15    Reason: Correct name of the system
16     57    20,21+22  The size standard would be considered
17    Reason: I did not understand the question when asked
18     58      7      Change "No" to "yes"
19    Reason: I did not understand the question when asked
20     61     14      Change "No" to "yes"
21    I understood that she was asking about the vendor being awarded a contract, not the assignment of NAISC codes by the contractor to the contract in IAS
22     100    8+9     Correct to "Contractor Performance Assessment Reporting system" Reason: Change to correct name of the system.
       104    20      Change "intergovernmental" to "internal governmental"
              Reason: Correct pronunciation