# EXHIBIT 27

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF TENNESSEE

3   _____

4   ULTIMA SERVICES CORPORATION,

5          Plaintiff,

6     v.                              Case No.

7   U.S. DEPARTMENT OF AGRICULTURE,        2:20-cv-0041-

8   U.S. SMALL BUSINESS ADMINISTRATION,    DCLD-CRW

9   SECRETARY OF AGRICULTURE, and

10  ADMINISTRATOR OF THE SMALL BUSINESS

11  ADMINISTRATION,

12         Defendants.

13  _____

14          VIDEOCONFERENCE DEPOSITION OF

15               AMY STONEBRAKER

16  DATE:          Wednesday, May 25, 2022

17  TIME:          9:32 a.m.

18  LOCATION:      Remote Proceeding - DC

19                 Washington, DC 20005

20  REPORTED BY:   Timothy Guevara, Notary Public

21  JOB NO.:       5242863

22

Case 2:20-cv-00041-DCLC-CRW  Document 65-11  Filed 06/21/22  Page 2 of 20
PageID #: 1897

```
 1                   A P P E A R A N C E S
 2    ON BEHALF OF PLAINTIFF ULTIMA SERVICES CORPORATION:
 3         MICHAEL E. ROSMAN, ESQUIRE (by videoconference)
 4         MICHELLE SCOTT, ESQUIRE (by videoconference)
 5         Center for Individual Rights
 6         1100 Connecticut Avenue Northwest, Suite 625
 7         Washington, DC 20036
 8         rosman@cir-usa.org
 9         scott@cir-usa.org
10         (202) 833-8402
11
12    ON BEHALF OF DEFENDANTS U.S. DEPARTMENT OF
13    AGRICULTURE, U.S. SMALL BUSINESS ADMINISTRATION,
14    SECRETARY OF AGRICULTURE, AND ADMINISTRATOR OF THE
15    SMALL BUSINESS ADMINISTRATION:
16         JULIET GRAY, ESQUIRE (by videoconference)
17         Department of Justice Civil Rights Division
18         Employment Litigation Section
19         150 M Street Northeast
20         Washington, DC 20530
21         juliet.gray@usdoj.gov
22         (202) 514-3831
```

Case 2:20-cv-00041-DCLC-CRW   Document 65-11   Filed 06/21/22   Page 3 of 20
PageID #: 1898

1                    I N D E X

2   EXAMINATION:                                    PAGE

3        By Mr. Rosman                              6

4        By Ms. Gray                                99

5

6                   E X H I B I T S

7   NO.             DESCRIPTION                     PAGE

8   Exhibit 1      MS1 Status Emails               34

9   Exhibit 2      MS2 Status Emails               39

10  Exhibit 3      MS3 NRCS Request Letter, 9/6/18  43

11  Exhibit 4      MS4 Denison Adverse Impact Letter

12                 To USDA, 9/20/18                 45

13  Exhibit 5      Decision Memo                    56

14  Exhibit 6      VA1 PCI Offer Letter             76

15  Exhibit 7      VA2  PCI Contract (2021)         80

16  Exhibit 8      VA3 2019 Offer Letter            85

17  Exhibit 9      VA4 2019 Acceptance Letter       86

18  Exhibit 10     GA1 Rividium Contract            94

19                 (Exhibits attached.)

20

21

22

1    Q    Okay.  And do you recall what the subject
2    matter of that meeting was?
3    A    If I remember, she was making visits to her
4    staff that were working in the office as a check-in.
5    I think she did that -- made visits to several state
6    offices, maybe during that course of that year.  And
7    we, I think at that point, a lot of the IDIQs were, at
8    least my IDIQ, I think, was almost to its ceiling
9    amount.  And I think we discussed what would happen
10   for re-competition at that time.
11   Q    Do you recall what you said and what she
12   said?
13   A    I think she asked me -- if I recall, she
14   asked me what would be done, and I told her they would
15   -- once we received packages or requests to procure
16   new services from the states, then it would be up to
17   the contracting officer to determine method for
18   procurement.
19   Q    Did she ever express concern to you during
20   the course of this meeting that contracts were being
21   reserved for the 8(a) Business Development Program?
22   A    I think she asked me if they would be posted

Case 2:20-cv-00041-DCLC-CRW   Document 65-11   Filed 06/21/22   Page 5 of 20
PageID #: 1900

1   to FedBizOpps, I think was what it was called at the

2   time, and now it's SAM.gov.  And I told her that it

3   would depend on the contracting officer when -- the

4   timing of new requirements were received, and that

5   they would look at the path forward, either posting it

6   to FedBizOpps at that time, using GSA schedule, or

7   looking at 8(a) set-asides for forward procurement.

8              MR. ROSMAN:  Okay.  So could I ask you

9   to put the first two Mississippi documents in Exhibit

10  Share?

11      A    Sure.

12      Q    Do you have access to Exhibit Share, Ms.

13  Stonebraker?

14      A    I do.  Yes.  I have it open.

15      Q    At the time of your meeting with Ms.

16  Bennett, had a decision been made to reserve a

17  contract to provide administrative services to the

18  Mississippi NRCS office, to the 8(a) program?

19      A    Possibly.  That could have been the path

20  that the contracting officer had chosen at that time

21  for that requirement.  Based on timeframe of when it

22  was needed, that may have been the past selected.

1    Q    Okay.  And this specific email was referring

2  to a contract for Mississippi?

3    A    Yes.  It appears that is the case.

4    Q    I'm sorry.  I couldn't hear your answer.

5    A    Yes.  It appears that this one is

6  specifically related to Mississippi.

7    Q    And do you remember the process by which a

8  contract to provide administrative services to the

9  Mississippi NRCS office was set aside for the 8(a)

10  program at this time?

11    A    Well, I believe in the other exhibit,

12  Exhibit 2, we said we were setting aside -- hang on,

13  let me get back to Exhibit 1.  The contracting

14  officer, Danny, in Exhibit 1, in Celeste's email to me

15  said that contracting decided to set it aside for sole

16  source, and it appears it was based on timing of when

17  the new award needed to be in place.

18    Q    And what do you mean by timing?

19    A    Well, it was August of 2018 and the award

20  needed to be in place by 9/30 of 2018.  So that was 40

21  days, which would not have been enough time to post

22  the solicitation, receive offers, evaluate offers, and

1    make an award in 40 days.

2         Q    Okay.

3         A    If I recall, the Mississippi award was over

4    $250,000, which is our simplified acquisition

5    threshold, and that requires that it be posted for 30

6    days.

7         Q    Danny here is Mr. Mandell, Danny Mandell?

8         A    Yes.  Danny Mandell.

9         Q    Okay.  And did you have discussions with

10   Mr. Mandell about the process of setting aside this

11   particular requirement for the 8(a) program?

12        A    We may have had that discussion as part of

13   his decision process because of the timing of -- of

14   the requirement.

15        Q    Did he ever tell you that the SBA was

16   conducting an adverse impact analysis for purposes of

17   this particular contract?

18        A    I recall that there was an issue with the

19   8(a) firm that we initially -- or he initially was

20   going to seek approval to use.  I don't recall that it

21   was due to any adverse impact.

22        Q    Okay.

1      A     I don't recall the exact time that we

2    would've pulled the data down.

3      Q     But it was shortly before you think the memo

4    was written.  Right?

5      A     Yes.

6      Q     Okay.  And does this refresh your

7    recollection as to whether or not you had exercised

8    any options for Region 1?

9      A     Yes.  I believe at least one of the options

10   should have been exercised at that point.  As I said,

11   the Arkansas one was awarded in September of 2017.

12   This memo is dated March 2018.  So at least one of the

13   option periods would've been exercised in order to

14   even issue the task order for Arkansas, because it

15   exceeded the initial $2 million ceiling.

16     Q     You may not have heard my question

17   correctly.

18     A     Okay.

19     Q     I was asking about Region 1 and my question

20   was --

21     A     Oh, I'm sorry.

22     Q     My question was, does it refresh your

Case 2:20-cv-00041-DCLC-CRW  Document 65-11  Filed 06/21/22  Page 9 of 20
PageID #: 1904

1  recollection as to whether any options had been

2  exercised in Region 1?

3       A    It does not appear that we would've

4  exercised an option for Region 1 based on the

5  obligations that were made at that time, which is

6  under the $2 million.

7       Q    Thank you.  Okay.  Did you have any

8  discussions with anyone in leadership about moving

9  allocated money from one region to another?

10      A    No.  I would not have had a discussion like

11  that.

12      Q    Okay.  Do you have a discussion with anyone

13  about that topic?

14      A    No.

15      Q    Okay.  During the course of the operation of

16  the IDIQs, did you have any communications with

17  permanent staff at any NRC offices regarding Ultima

18  Services Corporation?

19      A    I'm sure that I did.

20      Q    Did you have any communications about the

21  work they were doing, whether it was satisfactory?

22      A    Usually, you don't hear a lot unless there's

1   awarding something for administrative support, whether

2   it would've been 8(a) or some other vehicle or path.

3         Q    Okay.  Well, how about the period from the

4   beginning of the IDIQ contracts to the time that you

5   left for the Department of Energy?  Did you ever use

6   the 8(a) program to fulfill a requirement of an NRCS

7   office for administrative support?

8         A    I don't recall having CO'd any admin support

9   requirements, new ones, prior to leaving and after the

10  decision memo, period.

11        Q    Okay.  Did anyone in leadership ever suggest

12  that you should use the 8(a) program to meet or

13  fulfill requirements for administrative support for

14  NRCS offices?

15        A    No.

16        Q    Okay.  Was there any plan that was

17  communicated to you to increase NRCS's use of the 8(a)

18  program?

19        A    No.

20        Q    Or FPACs?

21        A    No.  We have small business goals that are

22  provided to us each year by the department, and by

Case 2:20-cv-00041-DCLC-CRW  Document 65-11  Filed 06/21/22  Page 11 of 20
PageID #: 1906

1  department I mean, U.S. Department of Agriculture.

2  There is not a specific category or a goal for 8(a).

3       Q    Okay.  How about SDBs?

4       A    We do have a goal for SDB, but to my

5  knowledge, there's not a specific set-aside for SDB.

6  8(a)falls within the SDB set-aside, but I don't

7  believe there's a specific SDB set aside.

8       Q    I may not have understood your answer.  You

9  said the 8(a) falls within the SDB --

10       A    Well, 8(a) -- the 8(a) small business is

11  considered a disadvantaged small business, but they

12  are -- I don't believe -- the 8(a) has a set-aside.  I

13  don't be believe there's a actual SDB set-aside that's

14  called out in the FAR.  There's one -- like, there's

15  specific set-asides that they specifically address in

16  the FAR, which is like 8(a), woman-owned small

17  business, HUBZone small business, veteran-owned small

18  business.  There isn't one section specifically

19  targeting the disadvantaged small business.

20       Q    Right.  But there are goals for SDBs.

21  Right?

22       A    Correct.  Yes.  Those are set at -- at the

Case 2:20-cv-00041-DCLC-CRW   Document 65-11   Filed 06/21/22   Page 12 of 20
PageID #: 1907

1    USDA level.

2         Q    And a contract that is set aside for the

3    8(a) program would count towards the SDB goal.  Right?

4         A    It would -- it would, yes.

5         Q    Because all 8(a) participants are also SDBs.

6    Right?

7         A    Correct.

8         Q    Okay.  Okay.

9         A    But a woman-owned small business may also

10   qualify as an SDB and would also count towards SDB

11   goals.

12        Q    It might but it wouldn't necessarily.

13   Right?

14        A    It may not.  I don't know.  I'm not that

15   familiar with how the SDB is made up, but it's

16   possible that a company can be multiple -- fall in

17   multiple set-aside categories for their business.

18        Q    Right.  No, I understand that.  I was just

19   trying to understand that all 8(a) participants are

20   also going to --

21        A    Yes.  That is correct.  All 8(a) are

22   considered to be SDB.  Yes.

Case 2:20-cv-00041-DCLC-CRW  Document 65-11  Filed 06/21/22  Page 13 of 20
PageID #: 1908

1    Q    Okay.  So just briefly describe for me your
2  understanding what a contracting officer's discretion
3  is in awarding contracts under the 8(a) program.
4    A    Well the contracting officer, based on
5  market research, based on a requirement, based on
6  complexity dollar threshold, they would make a
7  determination on whether or not something would be set
8  aside, and if you would further set aside for specific
9  socioeconomic category, which would be 8(a) or
10  woman-owned or HUBZone.
11    Q    Okay.  And since your return to the USDA,
12  have contracting officers continued to use the 8(a)
13  program?
14    A    Once the requirement is in the 8(a) program,
15  it remains in the 8(a) program until the SBA releases
16  it from the program.
17    Q    Okay.  To your knowledge, have contracting
18  officers used the 8(a) program for requirements that
19  were not previously in the 8(a) program?
20    A    I would imagine they have, but I can't
21  answer that question.  I don't know what the others
22  have done.

1   letter, no.

2       Q    Okay.  Well, we'll look at something else in

3   a few minutes.  Let me just ask you a few more

4   questions.  You reviewed this document before you

5   signed it?

6       A    Yes.

7       Q    Okay.  And you made sure that it was all

8   accurate?

9       A    Yes.

10      Q    Okay.  So take a look briefly at the

11  paragraph that is numbered 8.

12      A    Okay -- okay.

13      Q    Okay.  So this is referencing another 8(a)

14  contract order.  Correct?

15      A    That's correct.

16      Q    Okay.  And this is an allusion to what you

17  were referring to previously, that the contract or the

18  requirement needs to be fulfilled if it was within the

19  8(a) program, unless the SBA releases that

20  requirement?

21      A    That's correct.

22      Q    Okay.  I think you said previously that it

1  was a new requirement.  Could you just take a look at

2  paragraph 10?

3      A    When I said new, I meant new as in a new

4  year.  We were doing a new requirement, but yes, it's

5  a follow-on to a previous award.  But in terms of it

6  coming to us, it came to us as a new action.  We

7  weren't -- it wasn't an option period to be exercised.

8  It was a new, fresh requirement.  It just happens to

9  be a follow-on to something that was already in place,

10  and the customer now says they want or still need

11  support, in terms of general clerk's support.

12      Q    Okay.  I'm not sure I understood then what

13  you meant by new requirement.  Could you explain that,

14  please?

15      A    Well, it was new in the year that it was

16  provided to us.  So it was new, as in we're starting

17  over new to make an award for admin support for

18  Virginia.  But it is, in essence, a follow-on contract

19  to same or similar services that was performed under

20  the contract that is referenced in Number 8 that's

21  expiring, which makes it then still fall within the

22  8(a).

1          CERTIFICATE OF DEPOSITION OFFICER

2              I, TIMOTHY GUEVARA, the officer before whom

3    the foregoing proceedings were taken, do hereby

4    certify that any witness(es) in the foregoing

5    proceedings, prior to testifying, were duly sworn;

6    that the proceedings were recorded by me and

7    thereafter reduced to typewriting by a qualified

8    transcriptionist; that said digital audio recording of

9    said proceedings are a true and accurate record to the

10   best of my knowledge, skills, and ability; that I am

11   neither counsel for, related to, nor employed by any

12   of the parties to the action in which this was taken;

13   and, further, that I am not a relative or employee of

14   any counsel or attorney employed by the parties

15   hereto, nor financially or otherwise interested in the

16   outcome of this action.

17                               TIMOTHY GUEVARA

18                     Notary Public in and for the

19                          District of Columbia

20

21   [X] Review of the transcript was requested.

22

```
1    Juliet Gray, Esquire

2    Juliet.gray@usdoj.gov

3                        May 28, 2022

4    Ultima Services Corporation  v. US Department Of Agriculture Et

5        5/25/2022, Amy Stonebraker (#5242863)

6        The above-referenced transcript is available for

7    review.

8        Within the applicable timeframe, the witness should

9    read the testimony to verify its accuracy. If there are

10   any changes, the witness should note those with the

11   reason, on the attached Errata Sheet.

12       The witness should sign the Acknowledgment of

13   Deponent and Errata and return to the deposing attorney.

14   Copies should be sent to all counsel, and to Veritext at

15   erratas-cs@veritext.com.

16

17    Return completed errata within 30 days from

18   receipt of testimony.

19     If the witness fails to do so within the time

20   allotted, the transcript may be used as if signed.

21

22                    Yours,

23                    Veritext Legal Solutions

24

25
```

1    Ultima Services Corporation  v. US Department Of Agriculture Et

2    Amy Stonebraker (#5242863)

3              E R R A T A  S H E E T

4    PAGE 11 LINE 7 CHANGE_____

5    _____From: 9 or and 11    To: 9 or an 11

6    REASON typo

7    PAGE 30 LINE 7 CHANGE_____

8    From: beyond 9/30 of 2018 To: 9/30 of 2019

9    REASON misstated ending year in discussion on 2 yr funds

10    PAGE 33 LINE 22 CHANGE_____

11    From: past selected    To: path selected

12    REASON misheard word used

13    PAGE 35 LINE 8 CHANGE_____

14    From: Let read that    To: Let me read that

15    REASON word left out of statement

16    PAGE 61 LINE 17 CHANGE_____

17    From: NRC    To: NRCS

18    REASON Wrong typed acronym

19    PAGE 84 LINE 21 CHANGE_____

20    From: 5611100    To: 561110

21    REASON NAICS code incorrectly typed

22    Page 86 Line 11 CHANGE- From: Temporary health services
                      To: Temporary help services

23    REASON Incorrect word typed in statement

24    Page 108 Line 13 CHANGE From: once the test orders
                      To: once the task orders

25    Reason Incorrect word typed

    Amy Stonebraker  AMY    Digitally signed by AMY  Date: 06/14/2022
                    STONEBRAKER  STONEBRAKER Date: 2022.06.14
                               08:06:05 -04'00'

Veritext National  Court Reporting Company
202-857-3376 302-571-0510  410-837-3027  610-434-8588 215-241-1000
Case 2:20-cv-00041-DCLC-CRW    Document 65-11    Filed 06/21/22    Page 19 of 20
PageID #: 1914

```
 1    Ultima Services Corporation  v. US Department Of Agriculture Et

 2    Amy Stonebraker (#5242863)

 3                   ACKNOWLEDGEMENT OF DEPONENT

 4        I, Amy Stonebraker, do hereby declare that I

 5    have read the foregoing transcript, I have made any

 6    corrections, additions, or changes I deemed necessary as

 7    noted above to be appended hereto, and that the same is

 8    a true, correct and complete transcript of the testimony

 9    given by me.

10    AMY                                           06/14/2022
      STONEBRAKER
11    _____    _____

12    Amy Stonebraker Date

13    *If notary is required

14                   SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                   _____ DAY OF _____, 20___.

16

17

18                   _____

19                   NOTARY PUBLIC

20

21

22

23

24

25
```

AMY STONEBRAKER Digitally signed by AMY STONEBRAKER Date: 2022.06.14 08:06:21 -04'00'