UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
-----------------------------------------------------------------------------x
ULTIMA SERVICES CORPORATION,                          :
                                                      :
      Plaintiff,                                    :
                                                      :
             -against-                         :
                                                      :
                                                      : No.2:20-cv-00041
                                                      : DCLC-CRW
U.S. DEPARTMENT OF AGRICULTURE,                       :
U.S. SMALL BUSINESS ADMINISTRATION,                   :
SECRETARY OF AGRICULTURE, and                         :
ADMINISTRATOR OF THE SMALL BUSINESS                   :
ADMINISTRATION,                                       :
                                                      :
      Defendants.                                   :
                                                      :
-----------------------------------------------------------------------------x


PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE TESTIMOMY OF PLAINTIFF'S
EXPERT DR. JONATHAN GURYAN

## I. Background

This is an action for discrimination in violation of the U.S. Constitution and federal law. Plaintiff alleges that Defendants have precluded Plaintiff from competing for contracts for administrative and technical services by reserving such contracts for the "8(a) Program," and that the 8(a) Program improperly discriminates and violates the equal protection component of the Fifth Amendment's Due Process Clause. The relevant compelling state interest necessary to justify the use of race-conscious remedies in such a program is past or present discrimination by the governmental agency implementing the program. *See, e.g., Richmond v. Croson*, 488 U.S. 469 (1989). The Defendants rely on various studies as a large component of their strong basis in evidence for the 8(a) program. *See* Doc. 62 at 13-18.

On February 7, 2022, Defendants disclosed the expert reports of Dr. Jon Wainright and Mr. Daniel Chow. On April 4, 2022, Plaintiff disclosed the report of Dr. Jonathan Guryan, its rebuttal expert.

Both of Defendants' experts rely on a combination of voluminous datasets, disparity studies, and statistical analysis to reach their opinions.[1]

---

1. At the outset, the extent to which Defendants apparently need to misdescribe (or omit facts from) their own experts' studies deserves mention. Defendants claim that Dr. Wainright "analyzed data from the only two national surveys dedicated to MBEs." Doc. 59 at 4 (referring to the Survey of Business Owners and the Annual Business Survey). There is nothing in the page cited from Dr. Wainright's report (or anywhere else) to suggest that

Dr. Guryan has given rebuttal opinions identifying flaws in the statistical methods used in those disparity studies and the questionable nature of the conclusions that were drawn from them.

## II. Dr. Guryan is Well Qualified to Offer Expert Testimony.

Dr. Guryan is eminently well-qualified in statistical analysis, including the use of statistics in quantifying the effects of racial discrimination in the labor markets. Rosman Stmt., par. 1, Ex. 1, Guryan Report at App. A, p.1-15. Briefly, Dr. Guryan received his B.A. in Economics from Princeton University in 1996 and his Ph.D. in Economics from the Massachusetts Institute of Technology in 2000. He is currently the Lawyer Taylor Professor of Education and Social Policy in the School of Education and Social Policy at Northwestern University. He is also a Faculty Fellow at the Institute for Policy Research and a member by courtesy of the Economics Department and the Kellogg School of Management at Northwestern University.

Dr. Guryan has served as an editor of the Journal of Labor Economics, and he regularly serves as a reviewer for several leading academic economic journals. In his role as editor, he has assessed the scientific quality of

---

these are sources "dedicated to MBEs." Defendants describe the "final section" of Dr. Wainwright's report (Doc. 59 at 5) without ever bothering to identify the data source he was using. They claim that Mr. Chow tried to determine whether small disadvantaged businesses "were more or less likely to win federal prime contracts relative to other small businesses" (*id.* at 6), but Mr. Chow did no such thing. Every analysis Mr. Chow did of small disadvantaged businesses *excluded* participants in the 8(a) program–a rather significant omission.

2

academic studies, he has chosen peer reviewers for studies, and based on the advice of these peer reviewers and on his own assessment, he has provided editorial guidance to authors and made decisions about whether submitted manuscripts were published.

Throughout his career, he has conducted research on topics related to labor economics and the economics of education. For example, he has researched racial differences in wages and earnings, and the relationship between black-white pay differences and racial prejudice.

In his research he often analyzes large datasets using regression analysis and other statistical techniques. His economic research has been published in leading peer-reviewed journals such as the American Economic Review, the Journal of Political Economy, the Quarterly Journal of Economics, Developmental Psychology, the Journal of Educational Psychology, and the Review of Economics and Statistics. In comparison, Dr. Wainwright has not been published in peer review journals, and Mr. Chow has had only two peer-reviewed articles published in a government publication. Rosman Stmt., par. 2, Ex. 2, Wainright Dep. Tr. at 6; Rosman Stmt., par. 3, Ex. 3, Chow Dep. Tr. at 6.

Dr. Guryan has taught Ph.D. level courses on statistical methods and regression analysis, and an undergraduate level course, called "The Economics of Inequality and Discrimination," both at Northwestern University. He has also previously taught graduate-level courses on

3
Case 2:20-cv-00041-DCLC-CRW   Document 67   Filed 07/05/22   Page 4 of 17
PageID #: 2178

microeconomics and labor economics at the University of Chicago Booth School of Business.

While Dr. Guryan is not an expert in minority business entity programs, the specific question Ultima seeks to answer is whether the statistical methodology of Defendants' experts reliably supports the conclusions they draw about discrimination. In a similar case challenging the racial preference component of certain federal and state highway construction programs, the district court for the Northern District of Illinois admitted Dr. Guryan's testimony critiquing the methodology of the government's experts. *Midwest Fence Corp. v. Dep't of Transportation*, 84 F. Supp. 3d 705, 724 (N.D. Ill. March 24, 2015) ("The Court finds that Dr. Guryan's background qualifies him to render opinions on the statistical methods Defendants use.")

### III. Dr. Guryan's Opinions

Contrary to Defendants' contentions, Dr. Guryan's opinions are not based upon his own subjective beliefs. Nor are Dr. Guryan's opinions unsupported speculation. Instead, Dr. Guryan's report gives fundamental explanations on the proper use of statistics. Dr. Wainwright and Mr. Chow's opinions essentially rely on their use and manipulation of data and statistics. Dr. Guryan assessed their methodology and found it lacking in many important ways. Guryan Rpt. at 1-3.

For example, disparities and discrimination are not the same thing, and the existence of a disparity in a particular market does not mean it was caused by discrimination in that same market. If a statistical analysis cannot rule out with a reasonable degree of certainty the possibility that factors other than discrimination in the market in question caused the disparity, then it cannot reject the hypothesis that the disparities are caused by things other than discrimination in the particular market. Guryan Rpt. at 1-3.

Dr. Guryan explained that many variables other than discrimination may account for disparities. One rather vital variable is capacity; *i.e.,* the type and dollar volume of work different contractors can perform. The lack of consideration of capacity in Dr. Wainwright's report gave rise to one of Dr. Guryan's criticisms of many of the disparity studies. The underlying disparity studies Dr. Wainwright relies upon estimate MBE availability in terms of the number of MBE firms compared to the total number of all firms who work in a given market without accounting for their capacity to do the work.

This failure to account for capacity leads to an overestimation of MBE availability compared to their utilization. This error is compounded by the comparison of availability as a percentage of MBEs to all contractors, to utilization as a percentage of dollars received by MBEs compared to dollars received by all contractors. Dr. Guryan also explained that the failure to

5

consider bidding behavior (i.e., whether firms actually submitted bids on contracts) precludes drawing the conclusions that both of Defendants' experts have drawn.

Defendants repeatedly assert that Dr. Guryan only claims that the omitted variables "could" explain the disparities that Defendants' experts attribute to discrimination. *E.g.*, Doc. 59 at 17. That is not the gist of his opinion. Rather, Dr. Guryan opines, based on statistical principles and authorities like the National Academy of Sciences critique of using regression analyses, that Defendants' experts themselves cannot draw any sound conclusions about the relationships between the disparities their statistics show and discrimination.

Defendants take issue with the fact that Dr. Guryan did not conduct his own independent statistical analysis, and that he has never performed a disparity or availability study. Defs. Mot. at 8. A rebuttal expert is not required to do either of those things. Dr. Guryan's rebuttal report and opinions easily satisfy the Sixth Circuit's standard for admissibility. Dr. Guryan's methodology is scientifically valid, and his testimony will aid the trier of fact in assessing Ultima's claim of discrimination. *See United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993)).

6
Case 2:20-cv-00041-DCLC-CRW   Document 67   Filed 07/05/22   Page 7 of 17
PageID #: 2181

## IV. A Rebuttal Expert May Criticize Opposing Experts' Techniques and Opinions Without Offering his Own Alternatives or Conducting Independent Tests.

The Defendants complain that Dr. Guryan does not have experience in disparity studies, missing the point that Dr. Guryan is an economist with statistical expertise criticizing the validity of the conclusions that Defendants' experts have drawn with their statistical analysis methods. Dr. Guryan teaches these methods and utilizes them in his own peer reviewed academic research. His "methodology" is the use of fundamental statistical principles and analysis from a highly respected source-- the National Academy of Sciences—and several other published academic studies. Guryan Rpt. at 8-11, 18, 23, and notes 10-12 (listing studies).

The Defendants also complain that Dr. Guryan did not conduct his own disparity study. This argument fails to take into account the fact that Dr. Guryan is a rebuttal expert who is not required to conduct his own disparity studies. Dr. Guryan's opinions criticize the validity of the conclusions reached by Defendants' experts, the very conclusions upon which Defendants base their claim of a compelling interest.

The purpose of rebuttal testimony is to "explain, repel, counteract, or disprove evidence of the adversary party." *Spire St. Louis Pipeline, v. 3.31 Acres*, 2021 U.S. Dist. LEXIS 41203, at *49 (E.D. Mo. March 5, 2021). *See also Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 759 (8th Cir. 2006) ("rebuttal evidence may be used to challenge the evidence or theory of an

opponent"). Necessarily, the proper role of rebuttal experts is to "critique the opposing experts' methodologies and point out potential flaws" in their expert reports. *Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, 829 F. Supp. 2d 802, 835 (D. Minn. 2011).

Accordingly, rebuttal expert witnesses are permitted to criticize other experts' theories and calculations without offering their own studies. Any number of courts have so held. *See Aviva Sports,*, 829 F. Supp. 2d at 834 (D. Minn. 2011) (denying the motion to exclude rebuttal experts who opined that opposing expert's opinions "did not meet generally accepted standards for valid and reliable experimental research and was unreliable" and that opposing expert "used inadequate data and unreliable methods," and "did not meet the standards for generally acceptable scientific methods and principles"); *Coquina Invs. v. Rothstein*, 2011 U.S. Dist. LEXIS 120267, at * 9 (S.D. Fla. Oct. 18, 2011) ("A rebuttal expert can testify as to the flaws that she believe[s] are inherent in another expert's report that implicitly assumes or ignores certain facts."); *Pandora Jewelers 1995, Inc.*, 2011 U.S. Dist. LEXIS 62969, at *19 (S.D. Fla. June 7, 2011) (admitting testimony from a rebuttal expert who "merely provides other factors that [the plaintiff's expert] should have considered in his report, based on her economics expertise," explaining that "[h]ighlighting such factors will be helpful for the jury to weigh the evidence presented at trial."); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 481 (E.D.N.Y. 2011) (refusing to exclude rebuttal

experts who focused on the reliability of plaintiff's expert's conclusions); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 63185, at *15 (D. Kan. June 9, 2009) (admitting testimony by rebuttal experts who "primarily critique[d] the methodology and scientific principles which plaintiffs' experts use[d] to arrive at their conclusions" and stating that "[s]uch evidence, which attacks the opposing expert's substantive testimony, is proper rebuttal"); *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65 (N.D. Ind. 1996) (allowing a rebuttal expert witness to criticize the plaintiff's damages theories and calculations without offering any alternatives). Contrary to Defendants' suggestion, "a rebuttal expert who critiques another expert's theories or conclusions need not offer his own independent theories or conclusions." *In re Cessna*, 2009 U.S. Dist. LEXIS 63185, at *16 . *See also Aviva Sports*, 829 F. Supp. 2d at 834-35.

Nor is Dr. Guryan is required to conduct any tests or studies of his own. *Clark v. Chrysler Corp.,* 310 F.3d 461, 467 (6th Cir. 2002) (affirming the trial court's decision to permit expert who did not perform his own tests to testify, "*Daubert* does not require an expert to come in and actually perform tests in any given situation"), *vacated on other grounds*, 540 U.S. 801 (2003); *W. Tenn. Chapter of Associated Builders & Contrs., Inc. v. City of Memphis*, 302 F. Supp. 2d 860, 865 (W.D. Tenn. 2004) ("Defendant's argument that Plaintiffs must conduct their own study is without merit. Plaintiffs have shown that they might be able successfully to rebut Defendant's compelling

9

interest evidence at trial."). Indeed, many courts have explained that a rebuttal expert can satisfy *Daubert* without conducting independent testing. *Boatman v. Comcast of the South*, 2020 U.S. Dist. LEXIS 24458, at *43 (E.D. Tenn. Feb. 12, 2020) ("With respect to the lack of any calculations, the Court finds this objection goes to the weight of Dr. Lundin's testimony and not to its admissibility."); *AmGuard Ins. Co. v. Fire Sys. of Michigan, Inc.*, 2019 U.S. Dist. LEXIS 127176, at *11 (E.D. Mich. July 31, 2019) ("testing of a hypothesis is not a requirement for reliability"); *Walter v. Auto Owners Mutual Ins. Co.*, 2018 U.S. Dist. LEXIS 128916, at *50 (E.D. Tenn. Aug 1, 2018) (explaining that expert testimony can satisfy *Daubert* without independent testing). *See also Erie Ins. Co. v. Sunbeam Prod., Inc.*, 2015 U.S. Dist. LEXIS 2437, at *7 (S.D. Ohio Jan. 8, 2015) (permitting testimony from an expert fire investigator who "did not perform physical experiments to test his hypothesis," but relied on deductive reasoning); *Travelers Indem. Co.*, 2006 U.S. Dist. LEXIS 43851, at *16 (E.D. Tenn. June 27, 2006) (permitting an expert fire investigator to testify without performing testing); *McCoy v. Whirlpool Corp.*, 2003 U.S. Dist. LEXIS 6909, at *10. (D. Kan. Apr. 21, 2003) (noting that "independent testing is not the *sine qua non* of admissibility under *Daubert*").

To require Ultima to commission and pay for its own disparity study in order to rebut the Defendants' experts' opinions would be to ignore the fact that *Defendants* have the burden to present a strong basis in evidence to

justify the 8(a) program--a burden that Ultima maintains Defendants have not met and cannot meet.

Defendants essentially argue that Dr. Guryan cannot criticize their experts unless he can identify better evidence. Thus, under their view, if the "best" evidence of discrimination is weak evidence, that is still good enough to support the constitutionally disfavored use of race preferences. Of course they point to no case supporting that proposition, because it is wrong as a matter of law.

## V. Dr. Guryan's Expert Opinions are Relevant Because They Will Assist the Court in Evaluating Defendants' Claimed Compelling Interest.

The relevance of Dr. Guryan's critique of Dr. Wainright and Mr. Chow's opinions is self-evident. Defendants argue that they have produced a strong basis in evidence to support the 8(a) program, relying on numerous disparity studies and the Wainright and Chow reports. Doc. 62 at 13-24. In a case like this, "[r]ebuttal evidence may consist of a neutral explanation for the statistical disparities." *Associated Builders & Contrs., Inc. v. City of Memphis*, 302 F. Supp. 2d 860, 864-865 (W.D. Tenn. 2004). *See also Coral Constr. Co. v. King County*, 941 F.2d 910, 921 (9th Cir. 1991). Challengers may present a neutral explanation for the government's evidence, present contrasting statistical data, or demonstrate that the evidence is flawed, insignificant, or not actionable. *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 242

(4th Cir. 2010). *See also Eng'g Contractors Ass'n v. Metro. Dade County*, 122 F.3d 895, 916 (11th Cir. 1997) (same); *Contractors Ass'n v. City of Phila.*, 6 F.3d 990, 1006 (3d Cir. 1993) (same); *Coral Constr. Co. v. King County,* 941 F.2d 910, 921 (9th Cir. 1991) (same). Statistical analysis that fails to "eliminate the most common nondiscriminatory explanations for the disparity" (*Holman v. Vilsack*, 2021 U.S. Dist. LEXIS 127334, at *19 (W.D. Tenn. July 8, 2021) (citations omitted)) cannot support a strong basis in evidence for remedial action.

Importantly, disparities and discrimination are not the same thing. This fact is particularly important in this case, where both Dr. Wainwright and Mr. Chow admit they cannot identify any particular *source* of discrimination, and Mr. Chow admits that his study did not make a finding that discrimination is the *cause* of the disparities he found, rather just that the disparities are "consistent with" discrimination. Wainright Dep. Tr. at 94, 132-33, 136; Chow Dep. Tr. at 98, 108-09, 110-111, 113. Since the Defendants have the burden to prove discrimination (not just the existence of a disparity) within a given market in order to establish a compelling interest, this is obviously a critical point. Moreover, here Dr. Guryan's testimony will assist the court in certain statistical principles not evident in Dr. Wainright and Mr. Chow's reports. *See Midwest Fence Corp. v. Dep't of Transportation*, 84 F. Supp. 3d 705, 724-725 (N.D. Ill. March 24, 2015) ("Dr. Guryan's testimony may have additional value in educating the fact-finder about basic

statistical principles.").

Furthermore, Dr. Guryan's opinions are consistent with case law. For instance, Dr. Wainright admittedly failed to account for a major variable: capacity. Wainwright Dep. Tr. at 87, 108-09. And courts have agreed that the failure to consider capacity can be a fatal error. *See e.g., Rothe Development Corp. v. Dep't of Defense*, 545 F.3d 1023, 1042-43 (Fed. Cir. 2008) ("We are even more troubled, however, by the failure of five of the studies to account sufficiently for potential differences in size, or *relative capacity*, of the businesses included in those studies."); *Eng'g Contractors Ass'n of S. Fla. v. Metro. Dade County*, 122 F.3d 895, 917 (11th Cir. 1997) (both holding that disparity studies that failed to account for capacity were insufficient to prove discrimination). *Cf. Michigan Road Builders Asss'n, Inc. v. Milliken*, 834 F.2d 583, 594 (6th Cir. 1987) (concluding that Michigan legislature lacked evidence to support set aside for Minority Business Enterprises where MBEs "are generally small in size and have difficulty in competing for state contracts as *a result of their size*.") (emphasis in original).

Likewise with Dr. Guryan's opinions on bias due to omitted variables. As the Supreme Court noted in *Croson* "[w]hen special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value." *Croson*, 488 U.S. at 501 (citations omitted). In other words, the Court has said that simple disparities

are only helpful in discerning discrimination when comparing similar groups. If special qualifications are needed to perform a type of work, then comparisons can only be valid when comparing groups with those qualifications.

The present case is quite similar to *Midwest Fence Corp. v. Dep't of Transportation*, 84 F. Supp. 3d 705, 724 (N.D. Ill. March 24, 2015). There, the government defendants complained that Dr. Guryan offered mere speculation about flaws in their experts' methodology, rather than providing an independent analysis of the data. Likewise there, the defendants argued that "Dr. Guryan speculates that certain impacting variables were omitted from NERA's analysis, but he has not conducted any statistical analysis whatsoever demonstrating any actual bias—big or small—in the results due to any purportedly omitted variables." *Id.* But the court explained "[d]efendants' argument, however, goes to the probative weight of Dr. Guryan's broad-based criticism rather than to its admissibility." *Id. See also EEOC v. Morgan Stanley & Co.*, 324 F.Supp.2d 451, 460 (S.D.N.Y. 2004) ("From an admissibility perspective . . . experts' critiques and analyses of [a] statistical case are sufficient. More affirmative analyses are not required . . . .").

Here, just like in *Midwest Fence*, the principles on which Dr. Guryan relies are some of the fundamental rules of social science and statistical analysis, learned during his long career as a labor economist. His opinions

will assist the court in determining whether the Defendants have met their burden to establish a strong basis in evidence.

## VI. Defendants' Other Arguments Lack Merit.

Throughout their motion, Defendants repeatedly assert that Dr. Guryan is making legal arguments. *E.g.*, Doc. 59 at 13 (Guryan's criticism of disparity studies because they do not provide "direct evidence of discrimination or an individual decisionmaker's discriminatory intent" are "misplaced . . . legal arguments"); *id.* ("courts have contradicted Dr. Guryan's legal opinion here"); *id.* at 24 (Guryan's opinions are "based on incorrect beliefs about the relevant legal standards in this case"). Yet Defendants never point to any part of Dr. Guryan's report or deposition in which he actually expressed a legal opinion. To the contrary, he was quite careful *not* to express an opinion about any legal standard, but only about the standards of social science. Rosman Stmt., par. 4, Ex. 4, Guryan Dep. Tr. at 20, 39, 39-40, 74-75, 97.

Finally, in a strategic "best-defense-is-a-good-offense" argument, Defendants also complain that Dr. Guryan misunderstood some of Mr. Chow's analysis. Doc. 59 at 23. This, of course, is quite true, but it is because (as set forth at length in Plaintiff's motion to exclude Mr. Chow's testimony) Mr. Chow failed to identify, or even refer to, a key dataset in his report and then testified falsely (whether intentionally or not) about it in his deposition.

Defendants claim that their belated provision of still-incomplete information should have prompted Plaintiff to incur yet more expense on *its own* expert. (They have not offered to pay for this additional analysis.) They cite no authority for this proposition. In any event, most of Dr. Guryan's criticisms of Mr. Chow's analysis are not dependent on Mr. Chow's misleading disclosures.

## VII. Conclusion

For the foregoing reasons, Ultima respectfully requests this court deny Defendants' motion to exclude the testimony and opinions of Dr. Jonathan Guryan.

Respectfully submitted,

*/s/ Michael E. Rosman*
Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400

M. Dale Conder, Jr.
RAINEY KIZER REVIERE & BELL PLC
209 E. Main St.
Jackson, TN 38301
(731) 426-8130