# EXHIBIT 5

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF TENNESSEE
 2

    -------------------------------:
 3  ULTIMA SERVICES CORPORATION,    :
                                    :
 4              Plaintiff,          :
                                    :
 5         vs.                      : Case No.:
                                    : 2:20-cv-00041-
 6  U.S. DEPARTMENT OF AGRICULTURE,: DCLC-CRW
    et al.,                         :
 7                                  :
                Defendants.         :
 8  -------------------------------:
 9
10
11         REMOTE DEPOSITION OF DANIEL CHOW
12
13  DATE:            March 10, 2022
14  TIME:            10:06 a.m.
15  LOCATION:        Rockville, Maryland
16  REPORTED BY:     Shari R. Broussard, RPR, CSR
                     Reporter, Notary
17
18
19
20
21           Veritext Legal Solutions
            1250 Eye Street, NW, Suite 350
22              Washington, D.C. 20005
```

1  A P P E A R A N C E S
2  On behalf of Plaintiff:
3     MICHAEL E. ROSMAN, ESQUIRE
   MICHELLE A. SCOTT, ESQUIRE
4     Center for Individual Rights
   1100 Connecticut Avenue, Northwest
5     Suite 625
   Washington, D.C. 20036
6     (202) 833-8400
   rosman@cir-usa.gov
7
  On behalf of Defendants:
8
   CHRISTINE DINAN, ESQUIRE
9     JULIET GRAY, ESQUIRE
   ANDREW BRANIFF, ESQUIRE
10    Department of Justice
   Civil Rights Division
11    Employment Litigation Section
   150 M Street, Northeast
12    Washington, D.C. 20530
   christine.dinan@usdoj.gov
13    juliet.gray@usdoj.gov
   andrew.braniff@usdoj.gov
14
15 ALSO PRESENT:
16    Josephine Arnold, Esquire, MBDA

1         C O N T E N T S
2  EXAMINATION BY:              PAGE
3    Counsel for Plaintiff       4, 113
4    Counsel for Defendant       109
5
6
7  CHOW DEPOSITION EXHIBITS:  *      PAGE
8  Exhibit 1  Curriculum Vitae       5
9  Exhibit 2  Executive Order 12432    15
10 Exhibit 3  Update to the Assessment of Contracting
        Outcomes for Small Disadvantaged
11        Businesses, 2/7/22       33

22 (* Exhibits attached to transcript.)

1         P R O C E E D I N G S
2  WHEREUPON,
3       DANIEL CHOW
4  called as a witness, and having been sworn by the
5  notary public, was examined and testified as
6  follows:
7      EXAMINATION BY COUNSEL FOR PLAINTIFF
8  BY MR. ROSMAN:
9    Q  Good morning, Mr. Chow. My name is
10 Michael Rosman. I represent the plaintiff in the
11 lawsuit which you're about to give a deposition.
12     Have you ever been deposed before?
13   A  None before this one.
14   Q  Okay. Why don't you just state your
15 name and address for the record, please.
16   A  My name is Daniel Chow, C-H-O-W. My
17 address is 11910 Kings Bridge Way, Rockville,
18 Maryland 20852.
19   Q  Great. Thank you.
20     So let me just explain. This is a
21 proceeding before trial in a lawsuit. You've been
22 sworn to tell the truth. I'm going to ask a

1  series of questions which you should answer to the
2  best of your knowledge and ability. If you don't
3  understand a question, if I've said something
4  confusing, you can ask for some clarification and
5  I might rephrase it. If you need a break at some
6  point, you can ask me for that and we'll try to
7  arrange one as quickly as we can.
8      Do you have any questions about that?
9    A  None. Thank you.
10     (Chow Exhibit Number 1 was
11     marked for identification.)
12 BY MR. ROSMAN:
13   Q  Okay. I've marked as Plaintiff's
14 Exhibit 1 your CV or what was given to us as your
15 CV.
16     Could you just confirm that that is in
17 fact your CV?
18   A  Yes, this is my CV.
19   Q  Okay. I just have a few questions about
20 it. I noticed in the first position at the U.S.
21 Bureau of Labor Statistics it says that you
22 authored professional journal articles and I was

Page 110

1  what extent our minority- and small-disadvantaged
2  firms are able to win or not win contracts.
3      Q   And what did you find?
4      A   We found that -- I found that SDBs that
5  are not in the 8(a) program are 30- -- about 37
6  percent less likely to win a contract compared to
7  firms in the 8(a) program, which are like twice as
8  likely to win a contract, and that there are other
9  characteristics of firms that seem to indicate
10 that there are differences in odds ratio for
11 winning contracts.
12     Q   In your study you control for a number
13 of factors in your regression analysis to
14 determine whether any of those factors could
15 impact the odds of a firm winning a contract.
16     Did you control for every factor that
17 the data allowed you to control for?
18     A   I controlled for as many factors as I
19 could within the design of the -- of the -- of the
20 study, yes.
21     Q   In your opinion, would the results from
22 your study be consistent with the presence of

Page 111

1  discrimination?
2      A   Yes, in my expert opinion it is
3  consistent, yes.
4      Q   And why is that?
5      A   Well, again, we're looking at minority
6  firms and I looked at all of the variables that
7  are relevant in terms of, you know, determining
8  the differential impact on the odds of winning.
9  We're looking at minority firms and I can't
10 think of -- I can't think of any nondiscriminatory
11 factors. And we know that discrimination exists
12 in various workplaces and marketplaces, so looking
13 at the fact that if an SDB is not in the 8(a)
14 program versus a firm that is in the 8(a) program,
15 we see a statistically significant difference
16 between those two. So I -- I tend to look at that
17 as being consistent with some form of
18 discrimination.
19     Q   And that was after controlling for
20 certain nondiscriminatory factors like age and
21 gross receipts and things like that, correct?
22     A   Correct, those -- those factors are part

Page 112

1  of these firms, so yes, they -- they are included
2  in the study.
3      Q   To your knowledge, were any individual
4  firms removed from the datasets that you were
5  given by SBA either by you or by SBA because of
6  their success in bidding in the federal
7  marketplace?
8      A   No.
9      Q   Are you aware of any economic study or
10 data that would indicate that registered
11 minority-owned firms bid less often on contracts
12 than registered non-minority firms --
13     A   I'm not aware of any.
14     Q   -- non-minority-owned firms?
15     A   I'm not aware of any.
16     Q   Let me look at my motes. Just a moment.
17     Just back to what you were saying a
18 moment ago about the findings, when you indicated
19 that certain firms -- there were 37 percent less
20 likely -- had 37 percent less likely odds of
21 winning a contract as compared to other firms,
22 that was all firms with similar characteristics,

Page 113

1  correct?
2      A   Correct.
3      Q   And that was not just in comparison to
4  firms in the 8(a) program; is that right?
5      A   Correct.
6      MS. DINAN: I believe that is all that I
7  have. Let me just double check.
8      No, I have no further questions thank
9  you.
10     MR. ROSMAN: Just two quick follow-up
11 questions.
12     FURTHER EXAMINATION BY COUNSEL FOR
13     PLAINTIFF
14 BY MR. ROSMAN:
15     Q   You testified a moment ago that you
16 thought the results were consistent with
17 discrimination.
18     Does this mean that discrimination
19 cannot be eliminated as a possible cause for the
20 discrepancies that you found?
21     A   I would -- cannot be eliminated as -- I
22 would say so, yes.

29 (Pages 110 - 113)

Case 2:20-cv-00041-DCLC-CRW   Veritext Legal Solutions   Filed 07/05/22   Page 4 of 4
215-241-1000 ~ 610-434-8588   PageID #: 2302   2-571-0510 ~ 202-803-8830