*Vitolo*, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
------------------------------------------------------------------------------x

ULTIMA SERVICES CORPORATION,                    :

    Plaintiff,                                   :

       -against-                              :    No. 2:20-cv-00041-
                                                                                                                 DCLC-CRW

U.S. DEPARTMENT OF AGRICULTURE,                 :
U.S. SMALL BUSINESS ADMINISTRATION,
SECRETARY OF AGRICULTURE, and ADMINISTRATOR     :
OF THE SMALL BUSINESS ADMINISTRATION,
                                                                                                          :

    Defendants.
                                                                                                          :
------------------------------------------------------------------------------x

## STATEMENT OF CELESTE BENNETT

Celeste Bennett hereby states:

1.     I am the President and sole owner of Plaintiff Ultima Services Corporation ("Ultima"). I submit this statement in opposition to defendants' motion for summary judgment.

2.     In September 2018, I received a letter from Robert Ware of the Small Business Administration ("SBA"), dated September 12, 2018, apprising me that the SBA was conducting an adverse impact analysis related to Ultima. A copy of that letter accompanies this statement as Exhibit A. At the time, Ultima was providing administrative and technical support services to National Conservation Resource Service ("NRCS") offices in Mississippi, and the letter stated that there was a proposal to have that requirement reserved for a contractor qualified for the 8(a) program. The letter requested a significant amount of financial and other information concerning Ultima, including whether it would bid on the contract were it open to competition.

1

3. Judging from an email exchange produced by defendants in this action (a copy of which accompanies this statement as Exhibit B), and to the best of my recollection, I probably received Mr. Ware's letter on the same date, September 12, 2018. Ms. Uneeda Collins of the SBA was communicating with me at that time and asked me to respond rather quickly to Mr. Ware's letter. As indicated in the email exchange, my sister had just died and, accordingly, I asked for a short extension of time (one week). The SBA pressed me for a quick response because the agency (the Department of Agriculture) wanted to award the contract before the end of the fiscal year (September 30).

4. I agreed to do as much as I could as quickly as possible and responded to Mr. Ware's letter with a significant amount of information about Ultima on September 17, 2018. A copy of my letter (without the accompanying data) accompanies this statement as Exhibit C.

5. I never heard back from the SBA after that. As the email chain in Exhibit B reflects, I wrote to Mr. Ware and Ms. Collins on October 11, 2018, asking for any update about the adverse impact analysis. I also left at least one voicemail message for Ms. Collins. I did not receive any response.

6. In their papers supporting their motion for summary judgment, defendants imply that registering with the General Services Administration (GSA) for the GSA Supply Schedule is a fairly simply thing. *See* Doc. 62 at 5 (PageID # 1599). I have not found that to be the case. I have tried to register another company of mine, LUSA Associates, Inc. ("LUSA"), for the GSA Supply Schedule. The forms to do so are quite voluminous. Firms are required to meet past performance requirements in the area they would like to perform under the GSA schedule. There are consultants who get paid significant sums to assist companies with filling out those

2

Case 2:20-cv-00041-DCLC-CRW   Document 70-2   Filed 07/12/22   Page 2 of 5   PageID #: 2464

forms, and, in fact, LUSA already has paid two consultants $ 32,000 for assistance. And, despite that, the GSA still required more information from LUSA. (When I finally get LUSA registered with the GSA, I hope to use that experience to register Ultima without using a consultant.)

7. Accordingly, I disagree with defendants that the four "GSA Supply Schedule" contracts identified by Amy Stonebraker were "open" to offers from any business. Doc. 61-7.

8. Defendants argue that firms can easily switch the kind of work it does within a very wide range of businesses, and point out that Ultima has had contracts for alarm monitoring and other services not related to administrative or technical support. While it is true that Ultima had some different kinds of contracts shortly after my purchase of the company, but the services we provided were soon taken "in house" by the agency (the Army). Ultima's work providing administrative and technical services for NRCS offices began in 2004. We were successful because we provided good service at a fair price, and learned over time how to provide that specific agency with the services it wanted. It was because of that experience that we obtained the four IDIQ contracts in 2017. In my opinion, we could not have obtained those contracts had we not developed that expertise over the prior 14 years working with the agency, and we cannot simply enter into an entirely different line of work with no established past performance or relationships and expect the same kind of success that we had with those contracts.

9. As defendants state, Ultima did slow down its applications and bids after this lawsuit commenced, at least in part out of my sincere concern for retaliation, especially as it related to past performance reviews. But that certainly was not the only reason. A significant, maybe the most significant reason, for the slow down was that there simply were no contracts open to total small business competition that I thought played to Ultima's expertise in providing

3

Case 2:20-cv-00041-DCLC-CRW   Document 70-2   Filed 07/12/22   Page 3 of 5   PageID #: 2465

administrative and technical support services for NRCS offices. As I stated in my last statement (Doc. 60-4 at 2-4, PageID ## 856-58, ¶¶ 17-19), there were contracts reserved for the 8(a) program that Ultima would have bid on had they been open to competition, including a few that were placed after this lawsuit commenced. I was well aware that every contract that Ultima had performed in the past was no longer available for it to bid on. Ultima has, in fact, bid for a few contracts since the commencement of this lawsuit, but it has not been successful.

10. Defendants point out that Ultima was fully-owned by LUSA when this lawsuit commenced, and was thus not eligible to be an 8(a) contractor at that time. This is no longer the case. After my divorce in late 2021, I obtained all of the equity in both companies and restructured them so that I am now the sole owner of both. In any event, I could have done that restructuring at an earlier time to aid Ultima in becoming an 8(a) contractor, but I thought then, and still think, that it would be futile to rearrange Ultima's business structure solely to apply for a program that would discriminate against it because of my race.

11. Similarly, while it is true that Ultima has never applied for the 8(a) program, that is also because I believed it would be futile given the discriminatory structure of the program (as well as defendants' denial in this lawsuit that they have discriminated against me because of my race). If the 8(a) program is enjoined, and/or if defendants replace or reform the 8(a) program as a result of this lawsuit, Ultima likely would apply to any race-neutral program for which it is eligible. I believe that Ultima meets all of the non-race-based requirements of the 8(a) program at this time.

12. LUSA has obtained some contracts to provide administrative and technical support services for NRCS offices in recent years, but nowhere near the volume that Ultima was

receiving earlier. From the period January 1, 2019 to December 31, 2022, I anticipate that LUSA will receive a bit more than $8.5 million in revenue from such contracts.

I state under penalty of perjury that the foregoing is true and correct. Executed on July 12, 2022.

_____<br>Celeste Bennett