IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| ULTIMA SERVICES CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00041-DCLC-CRW |
| | ) |
| U.S. DEPARTMENT OF AGRICULTURE, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
THE TESTIMONY AND OPINIONS OF
PLAINTIFF'S EXPERT DR. JONATHAN GURYAN**

Plaintiff's Brief in Opposition to Defendants' Motion to Exclude Testimony of Plaintiff's Expert Jonathan Guryan ("Plaintiff's Response") fails to establish that Dr. Guryan's testimony is based on reliable methodology or that it will assist the trier of fact in understanding the evidence produced by Defendants related to discrimination in federal government contracting, as determined by the expert report and testimony of Daniel Chow (*see* Dkt. 59-2, Update to the Assessment of Contracting Outcomes for Small Disadvantaged Businesses ("Chow Rpt.")) or discrimination in state and local government contracting, as determined by the expert report and testimony of Dr. Jon Wainwright. *See* Dkt. 59-1, Expert Report of Jon Wainwright, Ph.D. ("Wainwright Rpt."). While Defendants do not dispute that Dr. Guryan is qualified as an expert by his knowledge and education, his testimony and opinions should be excluded under Fed. R. Evid. 702 because they are neither reliable nor relevant.

1

### A. Dr. Guryan's Opinions Are Not Reliable

"The first prong of the *Daubert* examination, reliability, requires the Court to assess carefully the methodology, reasoning, or technique employed by the expert." *Wynacht v. Beckman Instruments, Inc.*, 113 F. Supp. 2d 1205, 1207 (E.D. Tenn. 2000). Courts have consistently rejected expert testimony if it lacks a sufficient foundation, regardless of how impressive a witness's general knowledge and credentials may be. *See, e.g., Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 479 (6th Cir. 2008) (excluding testimony of expert as to defect in a car's airbag because he had not physically inspected the vehicle); *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.").

Plaintiff's expert report should be excluded because it lacks sufficient factual foundation, as Dr. Guryan has conceded that he has not reviewed all of the facts and data underlying Defendants' expert reports. As noted in Defendants' *Daubert* motion, Plaintiff's expert has ignored half of the data provided to Plaintiff that was used in the Chow Report—namely, the identifying list of all companies eligible to bid on federal government contracts. *See* Dkt. 59, Defendants' Motion to Exclude Testimony and Opinions of Plaintiff's Expert Dr. Jonathan Guryan ("Def. *Daubert* Motion"), at 22-23; Dkt. 68, Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Exclude Testimony of Defendants' Expert Daniel Chow ("Def. Opp."), at 5-6, 10-11. Dr. Guryan reviewed only the data pertaining to federal government contract awards, and then concluded that Mr. Chow's analysis was flawed because every firm in the database had won an award. Def. Opp. at 11. Plaintiff attempts to place the blame for this omission entirely on Defendants, and makes no effort to explain Dr. Guryan's illogical assumption that this data would

be used to estimate the odds of a firm winning a contract, nor his decision to classify half the data Defendants produced as superfluous.

Plaintiff now continues to misrepresent the expert testimony presented in the reports of Mr. Chow and Dr. Wainwright. In Plaintiff's Response, Plaintiff states that, based on its understanding of the Chow Report, "[e]very analysis Mr. Chow did of small disadvantaged businesses excluded participants in the 8(a) program—a rather significant omission." *See* Plaintiff's Response at 1-2, n.1. This is false. As is plainly stated in Mr. Chow's Report, he analyzed multiple sets of contracting data which *included* participants in the Small Business Administration's 8(a) program ("8(a) program"):

- The odds of winning contracts for "[m]inority-owned firms (which include minority-owned small businesses, SDBs that are minority-owned, **and minority-owned 8(a) participants**)." Chow Rpt. at 2 (emphasis added).

- The odds of winning contracts for **firms in the 8(a) program**. Chow Rpt. at 9, Table 3.

The report separated small disadvantaged businesses ("SDBs") that were not in the 8(a) program from those that were in the program because the 8(a) program includes a mechanism to set aside contracts outside of full and open competition, and thus would necessarily skew the odds of winning a contract. The results in Mr. Chow's report are thus consistent with the 8(a) program's goals and operations. He found the "odds of winning contracts for SDBs not participating in the 8(a) business development program are estimated to be roughly 37 percent lower relative to the odds of winning contracts by firms that were not identified as SDBs." Chow Rpt. at 2. He also found that "[t]he difference was statistically significant at the 95 percent significance level." *Id*. at 3. Meanwhile, he found that 8(a) firms (which are necessarily also SDBs) are 2.6 times as likely as non-8(a) firms to win a contract based in part on the 8(a) program, all else being equal. *Id*. at 9 (Table 3). The results also show that the 8(a) program itself is not enough to even the playing field

3

for small disadvantaged businesses. The study examines "minority-owned firms"—which include both 8(a) and non-8(a) SDBs and also largely receive the presumption of disadvantage to qualify for the 8(a) program—and finds that these firms still face "roughly 15 percent lower odds of winning a contract than other small firms." *Id.* at 3. This means that even with a subset of minority-owned firms having a significant advantage (2.6 times greater odds) in federal contracting due to the 8(a) program, minority-owned firms overall are still significantly less likely to receive a federal contract when compared to non-minority-owned firms like Ultima or Lusa.

Moreover, as Defendants have set forth in their motion, Dr. Guryan's opinions rest entirely on speculative assertions and untested hypotheses, which Courts in this Circuit have consistently rejected as failing to meet the *Daubert* standard.[1] *See, e.g.*, *United States v. Lang*, 717 F. App'x 523, 535 (6th Cir. 2017) ("Like a hunch, an untested and unvalidated hypothesis may be correct, but it cannot be knowledge, since it is not based on sufficient facts or data and is not the product of reliable methods."); *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (rejecting expert testimony that is "at most a working hypothesis, not admissible scientific 'knowledge'" because "Rule 702 requires 'more than subjective belief or unsupported speculation'"); *Hayes Outdoor Media, LLC v. S. Trust Ins. Co.*, No. 120-CV-01213-STA-jay, 2021 WL 5746678, at *4 (W.D. Tenn. Dec. 2, 2021) (excluding expert testimony because it "lacks a reliable foundation" and is "at most a working hypothesis"); *Wynacht*, 113 F. Supp. 2d at 1209-10 (excluding opinion of expert who "[had] not personally undertaken any testing that would support her conclusion"). Although Plaintiff cites to a number of cases in which courts have admitted expert testimony

---

[1] Contrary to Plaintiff's contention, Defendants' main criticism of Dr. Guryan's report is not that he has failed to offer "better" evidence, rendering theirs superior by default – it is that Dr. Guryan has failed to offer *any evidence* whatsoever. Defendants maintain that Dr. Guryan's critiques lack merit because they are hypothetical and untested, and he has failed to offer any actual evidence to support them.

4

without the expert providing independent analysis, several are distinguishable, and some contain caveats and limits on the testimony that do not apply here. Taken as a whole, they do not undermine the fact that experts—rebuttal or otherwise—are not permitted to speculate.

For example, Plaintiff cites *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993)), as standing for the proposition that Dr. Guryan's testimony is admissible expert testimony that will be helpful to the trier of fact, even though he failed to perform any independent statistical analysis. But *Smithers* does not support that contention. In *Smithers,* the Sixth Circuit reversed a trial court's exclusion of expert opinions on witness identification testimony because the trial court had not performed the proper *Daubert* analysis. *See id.* at 318. Here, in contrast, Defendants contend that Dr. Guryan's report is found wanting pursuant to the *Daubert* standard and should be excluded.

Plaintiff also cites to *Aviva Sports, Inc. v. Fingerhut Direct Marketing*, *Inc*., 829 F. Supp. 2d 802 (D. Minn. 2011), as standing for the proposition that "a number" of courts have admitted rebuttal testimony without the expert having performed any independent calculations or analysis. However, in that case the Court permitted the rebuttal reports only after finding that the "experts sufficiently applied their expertise to the facts and methodologies used by each of [opposing party's] experts in forming their conclusions" and that "their testimony is not unduly speculative." *Id.* at 835. Neither of those factors is present in this case. Dr. Guryan does not criticize the regression methods used by opposing experts Chow and Wainwright—indeed, he uses the same methods himself. *See* Dkt. 59-4, Expert Report of Jonathan Guryan, Ph.D., at 4 ("In my research, I often analyze large datasets using regression analysis and other statistical techniques."). Nor does Dr. Guryan apply his expertise to the facts used by Mr. Chow, as he did not even consider half of the data used in Mr. Chow's analysis. *Id*. at 27 (identifying only one of the data sets produced by

5

Defendants). Similarly, Dr. Guryan admitted that he did not review all of the disparity studies that Dr. Wainwright analyzed. *See* Dkt. 59-5, Deposition of Jonathan Guryan, at 139:3-140:2. And he admits that he has never personally created a disparity study. *Id*. at 131:17-132:5.

Finally, in *West Tennessee Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 300 F. Supp. 2d 600 (W.D. Tenn. 2004), the Court admitted the expert report of Dr. George Lanoue to dispute the conclusions contained in a disparity study, but noted that Dr. Lanoue's opinion would only be allowed within the area of his expertise as "a political scientist," and because he had not himself ever created a disparity study, his opinion would be limited "to the disparity study as it relates to his expertise." *Id*. at 606. Also, in that matter, there was no indication that Dr. Lanoue had failed to read the disparity study. Here, Plaintiff is not offering Dr. Guryan as a limited public policy analyst, but instead has proffered his testimony as evidence that Dr. Wainwright's and Mr. Chow's reports are unreliable based upon purported flaws in their methodology. This is despite Dr. Guryan never having reviewed all of the disparity studies that Dr. Wainwright reviewed in preparing his report, and despite Dr. Guryan having failed to review all of Mr. Chow's data.

### B. Dr. Guryan's Opinions Are Not Relevant

"Expert testimony is relevant, and therefore admissible under Rule 702, when it is helpful to the trier of fact." *Wynacht*, 113 F. Supp. 2d at 1210 (citing *Daubert*, 509 U.S. at 591). *Daubert* tells us that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." 509 U.S. at 591. Dr. Guryan's testimony is replete with conclusions that have no bearing on any issues in this case, as he repeatedly critiques Defendants' experts for failing to meet evidentiary standards that do not apply in this case. Such testimony is not only not helpful, but it risks adding significant confusion.

6

In his report and testimony, Dr. Guryan offers the legal conclusion that disparities and discrimination are not the same thing, which is not in dispute. Dr. Guryan is critical of the disparity studies Dr. Wainwright analyzed because he believes that they do not provide direct evidence of discrimination or an individual decisionmaker's discriminatory intent, but these critiques amount to legal arguments, not expert opinion, and thus are irrelevant to this case.[2] More troublingly, they also misstate the relevant legal standards. Defendants are neither required to provide direct evidence of discrimination by specific government actors, nor required to prove that discrimination was the sole *cause* of the numerous statistical disparities identified by Dr. Wainwright and Mr. Chow. *See, e.g., Foster v. Michigan*, 573 F. App'x 377, 392 (6th Cir. 2014) (intentional discrimination can be proven through direct or circumstantial evidence); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002) (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)) (same); *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (a "strong basis in evidence" is that "approaching a prima facie case of a constitutional or statutory violation"); *H.B. Rowe Co., Inc. v. Tippett*, 615 F.3d 233, 241 (4th Cir. 2010) (the government need not "conclusively prove the existence of past or present racial discrimination to establish a strong basis in evidence"); *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 945 (7th Cir. 2016) (same).

This would not be the first time that Dr. Guryan's testimony has been excluded because a court determined he was making a legal conclusion. In *Simpson v. Dart*, No. 18-cv-0553, 2021

---

[2] Plaintiff denies that Dr. Guryan has expressed any legal opinions because, in his deposition, Dr. Guryan repeatedly asserted that he was not a legal expert and was not offering legal opinions. But this does nothing to ameliorate the fact that Dr. Guryan criticized Defendants' expert reports for failing to adhere to a *legal* standard—namely, the sufficiency of the evidence needed to prevail in this case—that is plainly wrong. Attempting to couch his opinions in terms of the standards of social science does nothing to blunt this error.

7

Case 2:20-cv-00041-DCLC-CRW   Document 71   Filed 07/12/22   Page 7 of 11
PageID #: 2931

WL 1906469 (N.D. Ill. May 12, 2021), a hiring discrimination case brought under Title VII, the Court excluded Dr. Guryan's testimony with regard to "the legal conclusion that [Plaintiff's experts] analyses 'cannot be the result of discrimination' or any other legal conclusion about 'discrimination' as understood as a legal term of art." *Id.* at *2. The Court also specifically excluded Dr. Guryan's opinions that the hiring mechanism in the case "could not be the result of discrimination" because he took "too great of an analytic leap between him not being aware of the tests being discriminatorily administered and his legal conclusion." *Id.* at *3. In contrast, Dr. Guryan had conducted his own regression analysis to determine whether the hiring outcomes in that case could be the result of some factor other than discrimination (precisely what he failed to do in the present case) and the Court permitted that portion of his expert opinion to remain. *Id*. Similarly, in *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2022 WL 783941 (N.D. Cal. Mar. 15, 2022), the Court excluded Dr. Guryan's opinions in part, finding that they were based on a method that was "incorrect as a matter of law" and also prohibited him from testifying as to a legal question involved in the dispute. *Id.* at *17.

Finally, Plaintiff's reliance on the Court's opinion in *Midwest Fence Corp. v. U.S. Dep't of Transportation*, 84 F. Supp. 3d 705, 724 (N.D. Ill. March 24, 2015), in which Dr. Guryan's report and testimony were admitted despite Defendants' *Daubert* challenge, is misplaced. Notably, the Court described Dr. Guryan's criticisms of Defendants' evidence as "broad-based," reliant on "basic ground rules of social science" and "general" principles, essentially conceding that Dr. Guryan was speculating and could not point to specific flaws in Defendants' methodology that would have changed the results. *Id.* at 725. Nevertheless, the Court determined that Dr. Guryan's testimony would be helpful in assisting the trier of fact in understanding basic statistical principles. *Id*. But Dr. Guryan's report and testimony in this case go far beyond offering general opinions

about basic statistical principles. Indeed, he asserts, without having reviewed all of the underlying data and without any actual new evidence, that the conclusions that Mr. Chow and Dr. Wainwright have drawn from their analyses are "inappropriate." He repeatedly and incorrectly insists that their failure to marshal direct evidence of intentional discrimination in the (undefined) market in which Ultima operates renders their analyses invalid. The Court's holding in *Midwest Fence* does not dictate that such testimony be admitted under FRE 702 and *Daubert*.

## CONCLUSION

Dr. Guryan's testimony and report fail to meet the requirements of FRE 702, and none of the arguments put forth in Plaintiff's Response cast any doubt on that conclusion. For all of the reasons discussed in Defendants' Motion to Exclude the Testimony and Opinions of Plaintiff's Expert Dr. Jonathan Guryan and in this Reply Brief, Defendants respectfully request that the Court exclude Dr. Guryan's expert report, testimony, and opinions at summary judgment and trial.

Dated: July 12, 2022

Respectfully submitted,

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

OF COUNSEL:

David A. Fishman
Assistant General Counsel for Litigation

ANDREW BRANIFF (IN Bar No. 23430-71)
Deputy Chief

Eric S. Benderson
Associate General Counsel for Litigation
U.S. Small Business Administration

By: */s/ Christine T. Dinan*
Juliet E. Gray (D.C. Bar No. 985608)
K'Shaani Smith (N.Y. Bar 5059217)
Christine T. Dinan (D.C. Bar No. 979762)

Amar Shakti Nair

9

| | |
|---|---|
| Attorney Advisor | Senior Trial Attorneys |
| | Employment Litigation Section |
| Ashley Craig | Civil Rights Division |
| Attorney Advisor | United States Department of Justice |
| U.S. Department Of Agriculture | 150 M Street, N.E. |
| | Washington, D.C. 20002 |
| | (202) 598-1600 |
| | Juliet.Gray@usdoj.gov |
| | K'Shaani.Smith@usdoj.gov |
| | Christine.Dinan@usdoj.gov |

10

## **CERTIFICATE OF SERVICE**

   I hereby certify that on July 12, 2022, I electronically filed the above document with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

                */s/ Christine T. Dinan*
                Christine T. Dinan
                Trial Attorney