IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| ULTIMA SERVICES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00041-DCLC-CRW |
| | ) | |
| U.S. DEPARTMENT OF AGRICULTURE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants submit the following response to Plaintiff Ultima Services Corporation's

Statement of Undisputed Material Facts As To Which There Is No Genuine Issue.

Where, as here, the parties have submitted cross-motions for summary judgment, "the

court must evaluate each party's motion on its own merits, taking care in each instance to draw

all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich

Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Taft Broadcasting Co. v.

United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Summary judgment should be granted when

"the movant shows that there is no genuine dispute as to any material fact and that the movant is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). Thus, the existence of a non-material factual dispute or a mere

scintilla of evidence in support of one side's position is not sufficient to defeat the opposing

side's summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48,

1

251-52 (1986).

Defendants submit that the respective cross-motions in the instant case present no genuinely disputed material facts that would preclude the use of summary judgment procedure to resolve this case. Defendants do not, however, agree with all of the assertions contained in Plaintiff's statement of facts, or that all such assertions are material to the resolution of the case. In particular, Defendants do not agree with plaintiff's arguments and conclusions of law (including arguments and legal conclusions presented as facts), or plaintiff's characterizations of the evidence, except to the extent actually supported by facts of record. Nevertheless, defendants believe that none of the parties' disagreements involves a *genuine* dispute of *material* fact, and that the issues presented by the case may and should be resolved as a matter of law. *See* Fed. R. Civ. P. 56(c).

Subject to the foregoing, defendants hereby respond to plaintiff's statement of facts, using the same abbreviations contained therein:

A.    Plaintiff

1.    Plaintiff Ultima is a small business that competes for federal service contracts.   It was incorporated in 1999 and, in 2002, purchased by Celeste Bennett, a white woman. Statement of Celeste Bennett ("Bennett St.") ¶ 2.

**RESPONSE:** Defendants object that paragraph 1 does not comply with the Court's Scheduling Order requiring that "[e]ach fact shall be set forth in a separate, numbered paragraph." Doc. 34 at 3. Disputed that Plaintiff has qualified as a small business during all times relevant to this matter in the North American Industry Classification System ("NAICS") code applied to the majority of its contracts with USDA, including the four IDIQ contracts identified

2

in Plaintiff's Complaint. *See* Doc. 60-4, Statement of Celeste Bennett ("Bennett Statement") ¶ 17; Doc. 63, Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment ("Def. SOF") ¶ 6. The remaining facts in paragraph 1 are undisputed.

2.     Currently, Ultima is 100% owned and operated by Ms. Bennett, who is in charge of its operations.   Bennett St. ¶ 3.

**RESPONSE:** Undisputed.

3.     Beginning in 2004, Ultima has won contracts from defendants United States Department of Agriculture ("USDA") for providing administrative and technical support to offices of the Natural Resources Conservation Service ("NRCS"), an agency within USDA. Bennett St. ¶ 4.

**RESPONSE:** Undisputed.

4.     Until recently, Ultima had been successful in procuring such contracts, largely through competition with other small businesses.   Bennett St. ¶ 5.

**RESPONSE:** Undisputed.

5.     In 2017, it won four regional Indefinite Delivery Indefinite Quantity ("IDIQ") contracts to provide administrative services to NRCS offices, covering all of the United States. These contracts each had one base year with four option years available.   Each year (and each option) was for $2 million.   Accordingly, the total funds committed for each contract was $10 million.   Bennett St. ¶ 6.

**RESPONSE:** Defendants object that paragraph 5 does not comply with the Court's Scheduling Order requiring that "[e]ach fact shall be set forth in a separate, numbered

3

paragraph." Doc. 34 at 3. Disputed that the total funds for each contract were "committed." Defendants aver that the funds were obligated. The remaining facts in paragraph 5 are undisputed.

6.      Contracting officers with the USDA could issue task orders pursuant to the IDIQ for services in particular NRCS state offices.   Bennett St. ¶ 7; Statement of Michael Rosman ("Rosman St.") Ex. 29 (Stover Dep. Tr.) 52-53.

**RESPONSE:** Undisputed.

7.      In two of the regions (Region II and III), demand for Ultima's services was quite high, and the issued task orders soon depleted the funds available for the base year.   Bennett St. ¶ 8; Rosman St. Ex. 1 (Int. No. 4).

**RESPONSE:** Undisputed.

8.      The USDA exercised options early for those regions.   In fact, within the first year, all or almost all of the options for Regions II and III were exercised, and the funds allocated to those contracts were significantly (although not completely) expended.   Bennett St. ¶ 9; Rosman St. Ex. 1 (Int. No. 4).

**RESPONSE:** Defendants object that paragraph 8 does not comply with the Court's Scheduling Order requiring that "[e]ach fact shall be set forth in a separate, numbered paragraph." Doc. 34 at 3. Undisputed.

9.      In the other two regions (Regions I and IV), few, if any, options were exercised and substantial funds remained unspent. Bennett St. ¶ 10; Rosman St. Ex. 27 (Stonebraker Dep. Tr.) 60-61.

**RESPONSE:** Undisputed.

4

10.    In 2018, the USDA decided not to exercise any further options for all four regional contracts.   Answer ¶ 10; Bennett St. ¶ 11.

**RESPONSE:** Undisputed, except Defendants aver that there were no available options to exercise for the IDIQs for Regions II and III. *See* Deposition of Amy Stonebraker ("Stonebraker dep.") at 64:19-65:9 (attached to Defendants' Motion for Summary Judgment as Exhibit 5); Decision Memorandum, at 1 (attached to Defendants' Motion for Summary Judgment as Exhibit 4).

11.    This had the effect of precluding the USDA from exercising any previously unexercised options on task orders issued pursuant to the IDIQ contracts or issuing any new task orders.   Bennett St. ¶ 12.

**RESPONSE:** Undisputed for purposes of summary judgment.

12.    Where funds had been committed under the task orders, though, Ultima completed its obligations as required thereunder.   Bennett St. ¶ 13.

**RESPONSE:** Undisputed.

13.    After the USDA ended the IDIQ contracts, it still had to provide services for the NRCS offices.   In some instances, it did so by using sole source contracts with companies qualified under the program described in 13 C.F.R. Part 124, Subpart A (the "8(a) Program"). Bennett St. ¶¶ 14-15; Answer ¶ 10.

**RESPONSE:** Defendants object that paragraph 13 does not comply with the Court's Scheduling Order requiring that "[e]ach fact shall be set forth in a separate, numbered paragraph." Doc. 34 at 3. Disputed that the USDA "ended" the IDIQ contracts, and this statement is not supported by a citation to the record. Undisputed that in some instances, the

5

USDA has awarded sole source contracts, including through the 8(a) program, for services contracts to NRCS offices.

14.     Because Ultima is not a participant in the 8(a) Program, it was completely precluded from bidding on those contracts.   Bennett St. ¶ 16.

**RESPONSE:** Undisputed.

15.     From the period 2018-21, there were contracts for the provision of administrative and technical services to NRCS offices, including the ones identified in Bennett Statement paragraph 18, that Ultima was ready, willing, and able to perform, but could not bid on because they were reserved for the 8(a) Program.   Bennett St. ¶¶ 17-19.

**RESPONSE:** Undisputed that Ultima could not bid on contracts set aside for the 8(a) program. Disputed that Ultima was ready, willing, and able to perform such contracts because Ultima did not bid on similar contracts during the same time frame that were not set aside for the 8(a) program. Declaration of Amy Stonebraker ("July 2022 Stonebraker Decl.") ¶¶ 2-3 (Exhibit 1 to Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."). Defendants also object that this is not a fact, and it is not supported by anything other than Ms. Bennett's contention.

16.     Ultima remains ready, willing, and able to perform such contracts in the future. Bennett St. ¶ 20.

**RESPONSE:** Disputed that Ultima is ready, willing, and able to perform such contracts because Ultima has not bid on similar contracts in recent years that were not set aside for the 8(a) program. July 2022 Stonebraker Decl. ¶¶ 2-3. Defendants also object that this is not a fact, and it is not supported by anything other than Ms. Bennett's contention.

6

17. Because contracts to provide administrative and technical support to NRCS offices constituted (and still constitutes) a significant portion of Ultima's business, the reservation of such contracts for the 8(a) Program has caused a significant drop in Ultima's revenues, and will continue to reduce its revenues in the future.   Bennett St. ¶ 21.

**RESPONSE:** Disputed. The record shows that much of Ultima's loss in revenue can be contributed to other factors, namely (1) that USDA changed its business model from awarding to a single company four regional contracts for administrative and technical support services for NRCS offices to awarding contracts to multiple different businesses on a statewide basis to better serve the interests of the government, see Decision Memorandum, at 1 3–4; (2) that Ultima has stopped bidding on contracts while it awaits the results of this litigation, *see* Bennett dep. 105:11-106:8; 106:17-107:10 (Exhibit 2 to Def. Mem.); and (3) that Ultima was ineligible to bid on a number of contracts because its revenue exceeded the size threshold to qualify as a small business under NAICS 561110. Bennett Statement ¶ 17; Def. SOF ¶ 6.

18. Today, Ultima meets the size standards for almost all NAICS codes, and certainly all NAICS codes relevant to the performance of contracts providing administrative and technical support for NRCS offices. Bennett St. ¶ 22.

**RESPONSE:** Disputed. There are thousands of six-digit NAICS codes and Plaintiff has provided no evidence to support its assertion that it meets the size standards for "almost all" of these codes or for any particular code.

B.    The Small Business Administration And Reports On The 8(a) Program

19. Under the statute passed by Congress, the Administrator of the Small Business Administration ("SBA") must submit a report to Congress each April 30 regarding various

7

aspects of the program created under 15 U.S.C.§§ 636(j) and 637(a), including a listing of all participants and the race or ethnicity of the disadvantaged owners.   15 U.S.C.§ 636(j)(16). These are called 408 reports.   Rosman St. Ex.6 (FY 2015 408 Report) p. 1 & Ex. 23 (Klein Dep. Tr.) 21.

**RESPONSE:** Undisputed.

20.     In this lawsuit, defendants produced 408 Reports for Fiscal Years 2015, 2016, and 2017.   Rosman St. ¶ 7 & Exs. 6-8.

**RESPONSE:** Undisputed, but objects that this is not a material fact.

21.      Although the SBA has drafted reports for at least two more recent fiscal years, it has not sent them to Congress.   Rosman St. Ex. 23 (Klein Dep. Tr.) 22.

**RESPONSE:** Undisputed for purposes of summary judgment, but Defendants aver that the drafts of the 408 Reports for Fiscal Years 2018 and 2019 are not final. *See* Rosman St. Ex. 23 (Klein Dep. Tr.) at 21:19-22:20.

22.     Defendants have claimed deliberative process privilege with respect to the more recent reports and have not produced them in discovery. Rosman St. ¶ 8 & Ex. 9.

**RESPONSE:** Undisputed, but object that this is not a material fact.

23.     The Office of Business Development and Government Contracting is a division of the SBA currently headed by Bibi Hidalgo that supervises government contracting, the 8(a) Program, and various other special contracting programs.   Rosman St. Ex. 23 (Klein Dep. Tr.) 11-12.

**RESPONSE:** Undisputed, but object that this is not a material fact.

24.     The Office of Business Development is a suboffice within the Office of Business

8

Development and Government Contracting.   The current Associate Administrator for Business Development, Donna Peebles, reports to Ms. Hidalgo.   Rosman St. Ex. 23 (Klein Dep. Tr.) 13-14.

**RESPONSE:** Undisputed, but object that this is not a material fact. Defendants also object that paragraph 24 does not comply with the Court's Scheduling Order requiring that "[e]ach fact shall be set forth in a separate, numbered paragraph." Doc. 34 at 3.

25.     In administering the 8(a) Program, the SBA identifies those firms that qualify for the program.   Other agencies, like the USDA rely on the SBA's determination of which companies are 8(a) firms in utilizing the 8(a) Program and offering contracting opportunities to companies under that program.   Complaint (D.E. 1) ¶ 17; Answer (D.E. 35) ¶ 17.

**RESPONSE:** Undisputed.

C.     Social and Economic Disadvantage for Individuals

26.     Firms seeking to become qualified to participate in the 8(a) Program, and that are owned by individuals, must be 51% owned by individuals who are socially and economically disadvantaged.   15 U.S.C.§ 637(a)(4).

**RESPONSE:** Undisputed.

27.     Regulations governing the 8(a) Program state that there is a "rebuttable presumption" that certain individuals who are members of specified minority groups are "socially disadvantaged."   13 C.F.R.§ 124.103(b)(1).

**RESPONSE:** Undisputed.

28.     Regulations governing the 8(a) Program state that the "rebuttable" presumption "may be overcome with credible evidence to the contrary."   13 C.F.R. 124.103(b)(3).

9

**RESPONSE:** Undisputed.

29.     The SBA has no process for a third party to question someone's social disadvantage status as part of the application process.   Rosman St. Ex. 23 (Klein Dep. Tr.) 111.

**RESPONSE:** Disputed for purposes of summary judgment as the cited testimony does not support the statement in paragraph 29. When asked "[i]s there a form for challenging someone's claim of social disadvantage," Mr. Klein responded: "There's no process for a third party to question someone's social disadvantage as part of the application process. . . . Although SBA's regulations do, in fact, talk about that, you know, anyone with information that questions the eligibility of participant [sic], once you're in the program, to continue, they can give SBA information and the SBA will consider that information." Rosman St. Ex. 23 (Klein Dep. Tr.) 111:4-25.

30.     No one has ever successfully challenged the presumption of social disadvantage for someone whose identification as one of the enumerated racial and ethnic minorities is clear. Rosman St. Ex. 1 (Int. No. 7) & Ex. 23 (Klein Dep. Tr.) 113-14.

**RESPONSE:** Disputed. Defendants deny this statement because the SBA has excluded individuals from the 8(a) program where evidence showed that they had not actually held themselves out as a member of a designated group. *See In the Matter of: DCS Elecs., Inc.*, SBA No. MSBE-91-10-4-26, 1992 WL 558961, at *3 (SBA Office Hearings App. May 8, 1992).

31.     No one has even challenged the presumption of social disadvantage for someone whose identification as one of the enumerated racial and ethnic minorities is clear.   Rosman St. Ex. 23 (Klein Dep. Tr.) 113-14.

**RESPONSE:** Disputed. Defendants deny this statement because the SBA has excluded

individuals from the 8(a) program where evidence showed that they had not actually held themselves out as a member of a designated group. *See In the Matter of: DCS Elecs., Inc.*, SBA No. MSBE-91-10-4-26, 1992 WL 558961, at *3 (SBA Office Hearings App. May 8, 1992).

32.     Individuals in the presumed groups need not provide any narrative to support the proposition that they have been victims of racial or ethnic prejudice or cultural bias because of their identities as members of those groups.   Rosman St. Ex. 23 (Klein Dep. Tr.) 66-67.

**RESPONSE:** Undisputed.

33.     It would be difficult for such individuals to do so with the current online application process.   Rosman St. Ex. 23 (Klein Dep. Tr.) 66-67.

**RESPONSE:** Undisputed.

34.     Defendants do not have any database to compare the access to capital of owners of applicants to, or participants in, the 8(a) Program to others in the same or similar lines of business who are not deemed socially disadvantaged.   Answer (D.E. 35) ¶¶ 23-24; Rosman St. Ex. 23 (Klein Dep. Tr.) 81, 186-87.

**RESPONSE:** Undisputed.

35.     When companies apply for the 8(a) Program, the SBA does not compare the access to capital or credit of the owners claiming to be socially disadvantaged to the access to capital or credit of individuals who are not socially disadvantaged in the same or similar line of business.   Rosman St. Ex. 23 (Klein Dep. Tr.) 77.

**RESPONSE:** Undisputed that Defendants do not make a direct comparison in each case, but Defendants aver that all 8(a) program participants must qualify as economically disadvantaged and the thresholds for economic disadvantage were established to evaluate this

11

factor. *See* 13 C.F.R. § 124.104.

36. The SBA looks at the individual financial circumstances of the owners and managers claiming social disadvantage. 13 C.F.R.§ 124.104(b).

**RESPONSE:** Undisputed.

37. The criteria for determining economic disadvantage are the same regardless of the particular industry or line of business in which the applicant does business. Rosman St. Ex. 23 (Klein Dep. Tr.) 81.

**RESPONSE:** Undisputed.

D.    Group Petitions

38. Under SBA regulations, groups can apply to be included as one of the "presumptive" groups. 13 C.F.R.§ 124.103(d).

**RESPONSE:** Undisputed.

39. The SBA accepted the petitions of the following two groups who sought status as socially disadvantaged groups: Asian Pacific Americans in 1979 and Asian Indian Americans (now called Subcontinent Asian Americans) in 1982. Rosman St. Ex. 3 (Int. No. 1).

**RESPONSE:** Undisputed.

40. On March 23, 1989, the SBA proposed an amendment to the then-relevant regulation identifying the groups whose members are deemed presumptively socially disadvantaged to (among other things) include Indonesian Americans as Asian Pacific Americans. 54 Fed. Reg. 12057 (March 23, 1989).

**RESPONSE:** Undisputed.

41. The SBA is not sure that Indonesian Americans had made an official application.

Rosman St. Ex. 23 (Klein Dep. Tr.) 108-09.

**RESPONSE:** Undisputed, but aver that Mr. Klein testified that he was not sure if it was a formal petition or an informal request.

42.     To the extent that Indonesian Americans made an application to be included among the groups either deemed Asian Pacific Americans or to be included as a group whose members are deemed presumptively socially disadvantaged, it was made on April 27, 1989. Rosman St. Ex. 3 (Int. No. 1).

**RESPONSE:** Undisputed.

43.     Aside from those applications mentioned in the previous four paragraphs, all other group applications pursuant to Section 124.103(d) (or its predecessor regulations) have been denied.   There has not been an application since 1999. Rosman St. Ex. 3 (Int. No. 1).

**RESPONSE:** Undisputed, but Defendants aver that Tongan Americans were included as a subgroup of Asian Pacific Americans after the SBA had denied an earlier petition to afford Tongan Americans a presumption of social disadvantage submitted pursuant to 13 C.F.R. § 103(d) or its predecessor regulations.   *See* Rosman St. Ex. 3 (Int. No. 1); 13 C.F.R. § 124.103(b).

44.     Rosman Exhibit 13 is the SBA decision denying an application on behalf of women.   Rosman St. ¶ 12 & Ex. 13.

**RESPONSE:** Undisputed.

45.     Rosman Exhibit 14 is the SBA decision denying an application on behalf of disabled veterans.   Rosman St. ¶ 12 & Ex. 14.

**RESPONSE:** Undisputed.

13

46.     Rosman Exhibit 15 is the SBA decision denying an application on behalf of Hasidic Jews.   Rosman St. ¶ 12 & Ex. 15.

**RESPONSE:** Undisputed.

47.     No racial or ethnic group ever has been removed from the list on the ground that that group is no longer adversely affected by the present effects of discrimination.   Answer ¶ 40; Rosman St. Ex. 2 (Req. To Adm. No. 7).

**RESPONSE:** Undisputed that no racial or ethnic group has been removed from list of presumed socially disadvantaged groups.

48.     The SBA has no identified criteria by which it could make a determination that a group should be removed for any reason from the list of groups whose members are presumed to be socially disadvantaged.   Answer ¶¶ 38-39.

**RESPONSE:** Undisputed that the statute and regulations establishing the 8(a) program do not include specific criteria for the SBA to determine that the rebuttable presumption of social disadvantage should no longer apply to specific racial groups, but Defendants aver that they do include criteria for the SBA to determine that the rebuttable presumption does apply to a specific group, 13 C.F.R. § 124.103(d), from which it can be inferred when the group no longer qualifies.

E.     Graduation And Completion Of Participation

49.     Upon entry into the 8(a) Program, a participant must submit a business plan.   15 U.S.C.§ 636(j)(10)(D)(i).   The SBA must approve the business plan prior to the participant being eligible for a contract under the program.   *Id.*

**RESPONSE:** Undisputed.

50.     There are various requirements of the business plan, including the identification

14

of "[s]pecific targets, objectives, and goals."  15 U.S.C.§ 636(j)(10)(D)(ii)(III).

**RESPONSE:** Undisputed.

51.    After nine years, the eligibility of a participant in the 8(a) Program ends, although it may still complete contracts that it entered into prior to that time and even receive competitive 8(a) contracts that it submitted a bid prior to that time.   Rosman St. Ex. 5 (p. 168).

**RESPONSE:** Undisputed.

52.    The 8(a) Program distinguishes between "graduation" and completion of the term. Rosman St. Ex. 5 (p. 243) & Ex. 23 (Klein Dep. Tr.) 120.

**RESPONSE:** Undisputed.

53.    Graduation is defined in the statute as "successfully completing the program by substantially achieving the targets, objectives, and goals contained in the concern's business plan thereby demonstrating its ability to compete in the marketplace without assistance . . ." 15 U.S.C.§ 636(j)(10)(H).

**RESPONSE:** Undisputed, but Defendants aver that a firm may also graduate from the 8(a) program because "[o]ne or more of the disadvantaged owners upon whom the Participant's eligibility is based are no longer economically disadvantaged." 13 C.F.R. § 124.302(a)(2).

54.    At the end of a nine-year program term, the SBA does not always assess whether a firm has achieved the objectives of its business plan.   Rosman St. Ex. 23 (Klein Dep. Tr.) 124.

**RESPONSE:** Undisputed, but Defendants aver that a firm may graduate from the 8(a) program because "[o]ne or more of the disadvantaged owners upon whom the Participant's eligibility is based are no longer economically disadvantaged" and an assessment of a firm's achievement of the objectives of its business plan is not required. *See* 13 C.F.R. § 124.302(a)(2).

15

55.     The SBA's 408 Report to Congress for Fiscal Year 2015 stated that the vast majority of firms that completed their nine-year program term in fiscal years 2012, 2013, and 2014 did not graduate.   Rosman St. Ex. 6 (FY 2015 408 Report) Table III, p. 12 & Ex. 23 (Klein Dep. Tr.) 123.

**RESPONSE:** Undisputed that the Fiscal Year 2015 408 Report only lists a small number under the "Graduated/Early Graduated" category. Disputed that this means that the vast majority of the firms did not achieve the objectives of their business plan because firms may graduate from the 8(a) program because "[o]ne or more of the disadvantaged owners upon whom the Participant's eligibility is based are no longer economically disadvantaged" and an assessment of a firm's achievement of the objectives of its business plan is not required. *See* 13 C.F.R. § 124.302(a)(2); Deposition of John Klein ("Klein dep.") at 124:1-126:25 (attached hereto as Exhibit 1). Further, the 30(b)(6) witness for the SBA testified that the chart in the 408 Report to Congress for Fiscal Year 2015, as referenced above, reflects a small number of firms in the "Graduated/Early Graduated" category due to "imprecise wording" and the category likely only reflects firms that graduated early. Klein dep. at 124:1-126:25. Going forward, subsequent 408 Reports to Congress for Fiscal Years 2016 and 2017 combined the number of firms that completed the program, graduated, or graduated early into one category. *See* Rosman St. Ex. 7 (FY 2016 408 Report) Table III, p. 12 (US0050797) & Ex. 8 (FY 2017 408 Report) Table III, p. 12 (US0050965).

56.     The vast majority of firms that completed their nine-year program term in fiscal years 2012, 2013, and 2014 did not graduate.   Rosman St. Ex. 6 (FY 2015 408 Report) Table III, p. 12 (US0051108).

16

**RESPONSE:** Disputed. Firms may graduate from the 8(a) program because "[o]ne or more of the disadvantaged owners upon whom the Participant's eligibility is based are no longer economically disadvantaged" and an assessment of a firm's achievement of the objectives of its business plan is not required. *See* 13 C.F.R. § 124.302(a)(2); Klein dep. at 124:1-126:25. Further, the 30(b)(6) witness for the SBA testified that the chart in the 408 Report to Congress for Fiscal Year 2015 that Plaintiff relies on here reflects a small number of firms in the "Graduated/Early Graduated" category due to "imprecise wording" and the category likely only reflects firms that graduated early. Klein dep. at 124:1-126:25. Going forward, subsequent 408 Reports to Congress for Fiscal Years 2016 and 2017 combined the number of firms that completed the program, graduated, or graduated early into one category. *See* Rosman St. Ex. 7 (FY 2016 408 Report) Table III, p. 12 (US0050797) & Ex. 8 (FY 2017 408 Report) Table III, p. 12 (US0050965).

57.　　The SBA's 408 Reports to Congress for Fiscal Years 2016 and 2017 did not distinguish between those exiting businesses that graduated and those that simply completed their term.　Rosman St. Ex. 7 (FY 2016 408 Report) Table III, p. 12 (US0050797) & Ex. 8 (FY 2017 408 Report) Table III, p. 12 (US0050965).

**RESPONSE:** Undisputed.

F.　　Reserving Contracts For The 8(a) Program

58.　　There are a variety of ways that the fulfillment of an agency requirement can be identified for the 8(a) Program; the most common way is for the procuring agency to send an offering letter to the SBA.　Rosman St. Ex. 5 (p. 148) & Ex. 23 (Klein Dep. Tr.) 23, 33-34.

**RESPONSE:** Undisputed, but Defendants object that this is not a material fact.

59.　　With respect to sole source contracts, the offering letter identifies a specific 8(a)

17

Program participant and asks that the requirement be fulfilled by a contract in the 8(a) Program with that participant.   13 C.F.R.§§ 124.502(c).

**RESPONSE:** Undisputed.

60.     The offering letter should also identify any small business contractors which have performed on this requirement during the previous 24 months. 13 C.F.R.§§ 124.502(c)(10).

**RESPONSE:** Undisputed.

61.     Rosman Statement Exhibit 16 are offering letters produced by defendants in this lawsuit in which either (1) Ultima is identified as a business that performed the service within the previous 24 months or (2) the letter states that the service was performed pursuant to one of the IDIQ contracts. Rosman St. ¶ 13 & Ex. 16.

**RESPONSE:** Undisputed.

62.     The SBA grants procuring agencies the right to contract directly with Section 8(a) firms. Complaint (D.E. 1) ¶ 13; Answer (D.E. 35) ¶ 13.

**RESPONSE:** Undisputed.

63.     This is done through a Partnership Agreement that delegates that authority. Rosman St. Ex. 23 (Klein Dep. Tr.) 23-24.

**RESPONSE:** Undisputed that this is one way that procuring agencies may contract with Section 8(a) firms. Disputed to the extent that procuring agencies have discretion to solicit and award contracts to 8(a) firms through full and open competition, or any program set aside for small businesses generally, 15 U.S.C. § 644(j)(1); those owned and controlled by women ("WOSB"), *id.* § 637(m); small businesses owned and controlled by service-disabled veterans, *id.* § 657f; small businesses located in historically underutilized business zones, *id.* § 657a; and

18

small businesses owned and controlled by "socially and economically disadvantaged" individuals, *i.e.*, the 8(a) program, *id.* § 637(a).

64.     Rosman Statement Exhibit 10 is the current Partnership Agreement between the USDA and the SBA.   Rosman St. ¶ 9 & Ex. 10.

**RESPONSE:** Undisputed.

65.     Defendants will utilize the 8(a) Program in any industry and with any contractor if that contractor is an available 8(a) participant who can meet the agency's needs. 48 C.F.R. 19-804-1; Rosman St. Ex. 24 (Atkinson Dep. Tr.) 201-02.

**RESPONSE:** Disputed that Defendants "will" utilize the 8(a) program in the circumstances described, and object that neither citation supports the statement in paragraph 65. Defendants aver that procuring agencies have discretion to solicit and award contracts to 8(a) firms through full and open competition, or any program set aside for small businesses generally, 15 U.S.C. § 644(j)(1); those owned and controlled by women ("WOSB"), *id.* § 637(m); small businesses owned and controlled by service-disabled veterans, *id.* § 657f; small businesses located in historically underutilized business zones, *id.* § 657a; and small businesses owned and controlled by "socially and economically disadvantaged" individuals, *i.e.*, the 8(a) program, *id.* § 637(a). Defendants further aver that all contracting by the USDA, including contracting under the 8(a) program, is required to be conducted in accordance with the Federal Acquisition Regulations ("FAR"), which comprise a comprehensive and highly detailed body of contracting regulations. *See* 48 C.F.R. Parts 1-53, 201–53.

66.     The SBA and the U.S. Department of Agriculture ("USDA") do not examine whether any racial group is underrepresented in the industry relevant to a particular contract in

determining whether a USDA contract qualifies for the 8(a) Program.   Answer ¶ 28.

**RESPONSE:** Undisputed.

67.     At the USDA, individual contracting officers typically make the determination to ask the SBA's permission to reserve a contract for the 8(a) Program.   Rosman St. Ex. 1 (Int. No. 2) & Ex. 24 (Atkinson Dep. Tr.) 36-38, 48, 51.

**RESPONSE:** Undisputed, but Defendants aver that all contracting by the USDA, including contracting under the 8(a) program, is required to be conducted in accordance with the FAR. *See* 48 C.F.R. Parts 1-53, 201–53. Defendants also object that this is not a material fact.

68.     They are frequently motivated by time constraints.   Rosman St. Ex. 27 (Stonebraker Dep. Tr.) 41-42 & Ex. 28 (Mandell Dep. Tr) 52-54, 69-70, 103, 109-11, 127-29.

**RESPONSE:** Disputed that the cited material establishes that time constraints are a "frequent" motivating factor. Undisputed that the cited material establishes that time may be a factor. Defendants aver that all contracting by the USDA, including contracting under the 8(a) program, is required to be conducted in accordance with the FAR. *See* 48 C.F.R. Parts 1-53, 201–53. Defendants also object that this is not a material fact.

69.     A sole source contract through the 8(a) Program takes considerably less time to effect than a contract for which the agency seeks bids.   Rosman St. Ex. 28 (Mandell Dep. Tr.) 52-54, 109-10 & Ex. 29 (Stover Dep. Tr.) 37-39, 68-69.

**RESPONSE:** Undisputed that the citations provided support that a sole source contract may take less time to effect than a contract for which the agency seeks bids. Defendants also object that this is not a material fact.

70.     Once a contract has been placed in the 8(a) Program, any "follow on" contract—

20

one that involves substantially the same work—must remain in the 8(a) Program unless the SBA agrees to release it. Rosman St. Ex. 27 (Stonebraker Dep. Tr.) 74, 78-79.

**RESPONSE:** Undisputed.

71. The presumption is that a follow-on contract will remain in the 8(a) Program. Rosman St. Ex. 23 (Klein Dep. Tr.) 142 & Ex. 29 (Stover Dep. Tr.) 58-60.

**RESPONSE:** Undisputed.

72. Absent release from the SBA, a follow-on contract must remain in the 8(a) Program even if the specific contractor that had performed the contract is no longer eligible to participate in the 8(a) Program. Rosman St. Ex. 23 (Klein Dep. Tr.) 142 & Ex. 29 (Stover Dep. Tr.) 62-63.

**RESPONSE:** Undisputed.

G.  Goals

73. Although the SBA once required agencies to have goals for the 8(a) Program, it no longer does. Rosman St. Ex. 1 (Int. No. 3) & Ex. 23 (Klein Dep. Tr.) 42-43.

**RESPONSE:** Undisputed.

74. The USDA does not have goals for the 8(a) Program. Rosman St. Ex. 1 (Int. No. 3) & Ex. 24 (Atkinson Dep. Tr.) 198.

**RESPONSE:** Undisputed.

75. Defendants do have goals for small, disadvantaged businesses ("SDBs"), and the 8(a) Program is included within that goal. Rosman St. Ex. 1 (Int. No. 3) & Ex. 25 (Taylor Dep. Tr.) 54-55.

**RESPONSE:** Undisputed.

21

76.     An SDB not participating in the 8(a) Program self-certifies that it meets the qualifications, which are the same as for the 8(a) Program.   Rosman St. Ex. 23 (Klein Dep. Tr.) 44-45 & Ex. 27 (Stonebraker Dep. Tr.) 73.

**RESPONSE:** Undisputed that an SDB not participating in the 8(a) program self-certifies that it is an SDB, but Defendants aver that the SDB makes such certification under the penalty of perjury. Klein dep. at 58:12-59:11. Disputed that the qualifications for an SDB are the same as for the 8(a) program and this proposition is not supported by the citations provided.

77.     The overall goal for the federal government for SDBs set by statute is not less than 5%. 15 U.S.C.§ 644(g)(iv).

**RESPONSE:** Undisputed, but Defendants aver that this contracting goal is aspirational, with no penalty imposed for failing to meet the goal.

78.     President Biden recently set the SDB goal at 11% because the federal government had recently reached 10%. Rosman St. Ex. 23 (Klein Dep. Tr.) 205-06.

**RESPONSE:** Undisputed, but Defendants aver that this contracting goal is aspirational, with no penalty imposed for failing to meet the goal.

79.     In a speech in June 2021, President Biden stated that he intended to increase the share of federal dollars going to SDBs, "including Black and Brown small businesses," from 10% to 15%.   Rosman St. Ex. 4 (Req. To Adm. No. 19) & Ex. 25 (Taylor Dep. Tr.) 44.

**RESPONSE:** Undisputed.

80.     Until recently, the SDB goal for the USDA was 5%.   Rosman St. Ex. 25 (Taylor Dep. Tr.) 53-54.

**RESPONSE:** Undisputed, but aver that the statutory goal continues to be not less than

5%. 15 U.S.C.§ 644(g)(iv).

81.     The USDA typically exceeded that SDB goal by a substantial amount.   Rosman
St. ¶ 11 & Ex. 12.

**RESPONSE:** Defendants object to Plaintiff's use of the word "substantial" as vague and
ambiguous and note that Plaintiff only cites to goal information for fiscal years 2018, 2019, and
2020. Undisputed that in those three fiscal years, USDA exceeded its SDB goal.

82.     Recently, pursuant to an executive order requiring overall increases in SDB goals,
the SDB goal for the USDA was raised to 21.5%.   Rosman St. Ex. 25 (Taylor Dep. Tr.) 25, 43-
44, 53.

**RESPONSE:** Undisputed, but Defendants aver that this contracting goal is aspirational,
with no penalty imposed for failing to meet the goal.

83.     The SDB goal for NRCS is likely higher.   Rosman St. Ex. 25 (Taylor Dep. Tr.)
26-27.

**RESPONSE:** Undisputed, except to aver that the testimony cited states that the SDB
goal is likely higher for Farm Production and Conservation Business Center ("FPAC"), which is
a sub-agency of USDA that oversees contracting for NRCS, as well as the Farm Service Agency
and the Risk Management Agency. Rosman St. Ex. 25 (Taylor Dep. Tr.) 26-27.

84.     There is no requirement that contracts to meet the SDB goal be spread out among
different or diverse NAICS ("North American Industry Classification System") codes, industries,
or geographic areas.   Rosman St. Ex. 25 (Taylor Dep. Tr.) 21-24, 31 & Ex. 26 (Warren Dep.
Tr.) 24-25.

**RESPONSE:** Undisputed.

85.    There are no goals relating to particular industries or NAICS codes.    Rosman St.

Ex. 25 (Taylor Dep. Tr.) 16.

**RESPONSE:** Undisputed.

86.    The 8(a) Program has no sunset or termination date.    Answer ¶ 37.

**RESPONSE:** Undisputed.

H.    <u>Executive Orders</u>

87.    Plaintiff sought a Rule 30(b)(6) witness on behalf of both the SBA and the USDA

to testify concerning their efforts to implement Executive Orders 12432 and 11625.    Neither

defendant could produce a witness to so testify.    Rosman St. ¶ 14 & Exs. 17-18, 20.

**RESPONSE:** Undisputed for purposes of summary judgment, but object that this is not a

material fact.

I.    <u>Evidence of Past Discrimination</u>

88.    Defendants have not identified a specific contracting officer employed by the

USDA who, since 2011, has engaged in intentional racial or national origin discrimination in the

award of federal contracts against any member of a group listed in 13 C.F.R.§ 124.103(b)(1).

Rosman St. Ex. 4 (Req. To Adm. 16).

**RESPONSE:** Undisputed.

89.    The work done by Department of Justice attorneys in support of the document

authored by the DOJ entitled The Compelling Interest to Remedy the Effects of Discrimination

in Federal Contracting: A Survey of Recent Evidence (2022) was at least in part for purposes of

this litigation.    Rosman St. ¶ 15 & Ex. 21.

**RESPONSE:** Undisputed that the work performed by attorneys at the Department of Justice after Plaintiff's Complaint was filed and through publication in the Federal Register in January 2022 was performed for use in this litigation as well as for other purposes, but Defendants aver that the DOJ report was begun in December 2019, before this lawsuit was filed. Rosman St. Ex. 21 (Stipulation Regarding *The Compelling Interest to Remedy the Effects of Discrimination in Federal Contracting: A Survey of Recent Evidence*).

J.     Race-Neutral Alternatives

90.     The SBA has not considered any race-neutral alternatives since 1986 or considered how the 8(a) Program would operate in the absence of the presumption in Section 124.103(b)(1).   Rosman St. Ex. 23 (Klein Dep. Tr.) 191-93.

**RESPONSE:** Undisputed to the extent that Plaintiff means that the SBA has not considered any race-neutral alternatives for the rebuttable presumption of disadvantage since 1986, but Defendants aver that the SBA implements and enforces a number of race-neutral programs to aid small disadvantaged businesses and other small businesses. *See* 15 U.S.C. § 644(j)(1) (program for small businesses generally); *id.* § 637(m) (program for small businesses owned and controlled by women); *id.* § 657a (program for small businesses located in historically underutilized business zones); *id.* § 657f (program for small businesses owned and controlled by service-disabled veterans); *see also id.* §§ 636(j) (program providing management and technical assistance to small businesses; *id.* § 657r (program providing mentorship to small businesses).

Dated: July 12, 2022

Respectfully submitted,

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division
OF COUNSEL:                                         United States Department of Justice

David A. Fishman                                    ANDREW BRANIFF (IN Bar No. 23430-71))
Assistant General Counsel for Litigation            Deputy Chief

Eric S. Benderson
Associate General Counsel for Litigation            By: */s/ K'Shaani Smith*
U.S. Small Business Administration                  Juliet E. Gray (D.C. Bar No. 985608)
                                                    K'Shaani Smith (N.Y. Bar 5059217)
Amar Shakti Nair                                    Christine T. Dinan (D.C. Bar No. 979762)
Attorney Advisor                                    Senior Trial Attorneys
                                                    Employment Litigation Section
Ashley Craig                                        Civil Rights Division
Attorney Advisor                                    United States Department of Justice
U.S. Department Of Agriculture                      150 M Street, N.E.
                                                    Washington, D.C. 20002
                                                    (202) 598-1600
                                                    Juliet.Gray@usdoj.gov
                                                    K'Shaani.Smith@usdoj.gov
                                                    Christine.Dinan@usdoj.gov

26

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on July 12, 2022, I electronically filed the above document and with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

*/s/ Juliet E. Gray*_____
 Juliet E. Gray
 Senior Trial Attorney
