# EXHIBIT 1

```
1            UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF TENNESSEE
2

     -------------------------------:
3    ULTIMA SERVICES CORPORATION,    :
                                     :
4              Plaintiff,            :
                                     :
5          vs.                       : Case No.:
                                     : 2:20-cv-00041-
6    U.S. DEPARTMENT OF AGRICULTURE,: DCLC-CRW
     et al.,                         :
7                                    :
              Defendants.            :
8    -------------------------------:
9
10
11         REMOTE DEPOSITION OF DANIEL CHOW
12
13   DATE:            March 10, 2022
14   TIME:            10:06 a.m.
15   LOCATION:        Rockville, Maryland
16   REPORTED BY:     Shari R. Broussard, RPR, CSR
                      Reporter, Notary
17
18
19
20
21          Veritext Legal Solutions
            1250 Eye Street, NW, Suite 350
22             Washington, D.C. 20005
```

| | |
|---|---|
| 1 | A P P E A R A N C E S |
| 2 | On behalf of Plaintiff: |
| 3 | MICHAEL E. ROSMAN, ESQUIRE |
| | MICHELLE A. SCOTT, ESQUIRE |
| 4 | Center for Individual Rights |
| | 1100 Connecticut Avenue, Northwest |
| 5 | Suite 625 |
| | Washington, D.C. 20036 |
| 6 | (202) 833-8400 |
| | rosman@cir-usa.gov |
| 7 | |
| | On behalf of Defendants: |
| 8 | |
| | CHRISTINE DINAN, ESQUIRE |
| 9 | JULIET GRAY, ESQUIRE |
| | ANDREW BRANIFF, ESQUIRE |
| 10 | Department of Justice |
| | Civil Rights Division |
| 11 | Employment Litigation Section |
| | 150 M Street, Northeast |
| 12 | Washington, D.C. 20530 |
| | christine.dinan@usdoj.gov |
| 13 | juliet.gray@usdoj.gov |
| | andrew.braniff@usdoj.gov |
| 14 | |
| 15 | ALSO PRESENT: |
| 16 | Josephine Arnold, Esquire, MBDA |

C O N T E N T S

EXAMINATION BY: PAGE
  Counsel for Plaintiff          4, 113
  Counsel for Defendant          109

CHOW DEPOSITION EXHIBITS: * PAGE
Exhibit 1  Curriculum Vitae                              5
Exhibit 2  Executive Order 12432                        15
Exhibit 3  Update to the Assessment of Contracting
           Outcomes for Small Disadvantaged
           Businesses, 2/7/22                           33

(* Exhibits attached to transcript.)

P R O C E E D I N G S

WHEREUPON,

DANIEL CHOW

called as a witness, and having been sworn by the notary public, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. ROSMAN:

Q Good morning, Mr. Chow. My name is Michael Rosman. I represent the plaintiff in the lawsuit which you're about to give a deposition.

Have you ever been deposed before?

A None before this one.

Q Okay. Why don't you just state your name and address for the record, please.

A My name is Daniel Chow, C-H-O-W. My address is 11910 Kings Bridge Way, Rockville, Maryland 20852.

Q Great. Thank you.

So let me just explain. This is a proceeding before trial in a lawsuit. You've been sworn to tell the truth. I'm going to ask a

series of questions which you should answer to the best of your knowledge and ability. If you don't understand a question, if I've said something confusing, you can ask for some clarification and I might rephrase it. If you need a break at some point, you can ask me for that and we'll try to arrange one as quickly as we can.

Do you have any questions about that?

A None. Thank you.

(Chow Exhibit Number 1 was marked for identification.)

BY MR. ROSMAN:

Q Okay. I've marked as Plaintiff's Exhibit 1 your CV or what was given to us as your CV.

Could you just confirm that that is in fact your CV?

A Yes, this is my CV.

Q Okay. I just have a few questions about it. I noticed in the first position at the U.S. Bureau of Labor Statistics it says that you authored professional journal articles and I was

|   | Page 30 |   | Page 32 |
|---|---|---|---|
| 1 | A  It should, yes. | 1 | MR. ROSMAN:  Fine. |
| 2 | Q  What kind of information? | 2 | MS. DINAN:  Thank you. |
| 3 | A  I would say that it would say whether or | 3 | BY MR. ROSMAN: |
| 4 | not they had a contract, how many of those | 4 | Q  So my understanding was Dr. Rubinovitz |
| 5 | contracts. | 5 | only looked at small businesses in his study. |
| 6 | Q  Okay.  Anything else? | 6 | Did you have a different understanding? |
| 7 | A  Not that I'm aware of. | 7 | A  My understanding is consistent with his. |
| 8 | Q  I think in your report you said that the | 8 | The non-small businesses, again, may have had some |
| 9 | FPDS files you were given contained information | 9 | change in status at some point, so it was -- and |
| 10 | about the SDB status of firms; is that right? | 10 | the data was not provided to me from SBA presorted |
| 11 | A  Correct. | 11 | for just small businesses, so I essentially had to |
| 12 | Q  And it contained information about the | 12 | do the work in order to get at those small |
| 13 | SDB status of firms for both the small and the | 13 | businesses. |
| 14 | non-small files? | 14 | Q  Okay.  I'm trying to understand this. |
| 15 | A  Correct. | 15 | You say they gave you two files, one with small |
| 16 | (Discussion off the record.) | 16 | businesses and one with not small businesses, but |
| 17 | (Whereupon, Ms. Arnold entered the | 17 | you also just testified that there was no sorting |
| 18 | proceedings.) | 18 | of businesses into small and not small and I'm |
| 19 | BY MR. ROSMAN: | 19 | trying to reconcile those two statements. |
| 20 | Q  Were there any SDBs in the file of firms | 20 | A  I think what I'm trying to tell you is |
| 21 | that were not small? | 21 | that they did not filter out and remove the |
| 22 | A  I believe so, yes. | 22 | non-small businesses, it was simply given to me as |

|   | Page 31 |   | Page 33 |
|---|---|---|---|
| 1 | Q  So the not small -- I'm calling it the | 1 | one large dataset.  I had to do the work to find |
| 2 | not small file, but you had a -- one of the two | 2 | out which ones were small and separate them from |
| 3 | files you were given were about firms that were | 3 | the non-small. |
| 4 | not deemed small businesses, right? | 4 | Q  Okay.  Were you given one file or two |
| 5 | A  Correct. | 5 | files of FPDS data? |
| 6 | Q  But some of them were small and | 6 | A  I was given I believe one file at that |
| 7 | disadvantaged businesses; is that right? | 7 | time. |
| 8 | A  So I did not dissect that data in such | 8 | Q  Okay.  I'm going to ask you to look at |
| 9 | detail in order to determine distribution of | 9 | your report.  Give me a second then. |
| 10 | small, not small.  The number of not small | 10 | (Chow Exhibit Number 3 was |
| 11 | companies may have at one point been small and may | 11 | marked for identification.) |
| 12 | have been SDBs as well, so -- the not small | 12 | BY MR. ROSMAN: |
| 13 | companies may have also been minority owned as | 13 | Q  Okay.  If I did that correctly, |
| 14 | well, so it was -- SBA simply gave me that data | 14 | something that is stamped Plaintiff's Exhibit 3 |
| 15 | and it is consistent with I believe what was done | 15 | should somehow have magically appeared in people's |
| 16 | in the previous Rubinovitz report. | 16 | Exhibit Share. |
| 17 | Q  Okay. | 17 | A  Yes, I see it. |
| 18 | MS. DINAN:  Michael, I just want to let | 18 | Q  Okay.  So if you could look down at page |
| 19 | the record reflect that Josephine Arnold, counsel | 19 | three or if you happen to have a copy with you in |
| 20 | for MBDA, has joined.  Sorry about that.  I should | 20 | hard copy, you can just look at that. |
| 21 | have done that when she joined.  I don't mean to | 21 | On page three of your report you wrote, |
| 22 | interrupt. | 22 | "SBA also provided two datasets from the Federal |

| | |
|---|---|
| 1 Q Well, okay, but I asked whether that | 1 A To all other firms that -- |
| 2 meant they were two and-a-half times more likely? | 2 Q That don't have that characteristic. |
| 3 A I would say so, yes. | 3 Even if they fall into some other like, you |
| 4 Q Okay. And in an earlier part of your | 4 know -- |
| 5 report on page seven you say, "The odds of winning | 5 A Right. |
| 6 a contract for SDBs who do not participate in the | 6 Q -- an 8(a) firm? |
| 7 8(a) program is about 37 percent less than for | 7 A So it would be, for instance for the SDB |
| 8 other firms." And I just want to make sure I | 8 non-8(a), it would be an odds ratio of all those |
| 9 understand who the other firms are in this | 9 firms that had that characteristic, non-SDB, |
| 10 context. | 10 non-8(a), versus all the other firm types shown in |
| 11 A Okay. | 11 Table 3. |
| 12 Q Would the other firms be 8(a) firms, | 12 Q Okay. And that is true even though SDB |
| 13 non-SDB firms, minority-owned firms that are not | 13 not 8(a) firms may also be minority-owned firms, |
| 14 SDB firms? Is all of that in your calculation | 14 right? |
| 15 there? | 15 A There will be some overlap. I don't |
| 16 A Yes. This -- this result says that SDBs | 16 know to what extent that occurs. But if there is |
| 17 that are not 8(a) are -- have odds ratios that are | 17 a firm that is overlapping with some other |
| 18 less than one given that the other types of | 18 categories as you pointed out, that would be |
| 19 firms -- in this case the other categories, the | 19 accounted for. |
| 20 8(a)s, the minority-owned, the women-owned, et | 20 Q And what do you mean by "accounted for"? |
| 21 cetera -- are accounted for. | 21 A Meaning if I did a regression of SDB not |
| 22 Q Okay. So the other firms in your | 22 8(a) versus, say, women-owned firms that are |

| | |
|---|---|
| 1 sentence included 8(a) businesses, right? | 1 HUBZones, okay, so the regression would account |
| 2 A Yes. | 2 for the fact that minority-owned -- women-owned |
| 3 Q They would include women-owned firms | 3 firm in a HUBZone, you know, their data is |
| 4 that are not non- 8(a) SDBs, right? | 4 included as part of the regression. |
| 5 A Yes, to the extent that the women-owned | 5 Q Okay. |
| 6 category includes them, yes. | 6 A Now, there may be other firms that are |
| 7 Q Okay. And that sort of leads to my next | 7 women owned but not in a HUBZone that would be |
| 8 question. Are these categories mutually | 8 included for the SDB not 8(a) odds ratio. |
| 9 exclusive? Obviously 8(a) and SDB non-8(a) are | 9 Q They would be included as long as they |
| 10 mutually exclusive, but a firm can be both women | 10 are not SDBs who are not 8(a)s, right? |
| 11 owned and an 8(a) firm, right? | 11 A Yes. |
| 12 A Correct. | 12 Q Okay. I think I got that. |
| 13 Q Okay. And it can be both a | 13 All right. Do you have an opinion about |
| 14 minority-owned firm and an 8(a) firm, right? | 14 what the relevant market is in this case? |
| 15 A Correct. | 15 A In this legal case? |
| 16 Q And it can be both a minority-owned firm | 16 Q Yes, in this legal case. |
| 17 and an SDB not 8(a) firm, right? | 17 A I have -- no, I -- I don't know. |
| 18 A Yes. | 18 Q Okay. |
| 19 Q Okay. So when we see an odds ratio, it | 19 A I don't have an opinion. I don't know |
| 20 is a comparison of that -- the firms with that | 20 what the relevant market is in this case. |
| 21 characteristic to all other firms that don't have | 21 Q Okay. Do you know what industry Ultima, |
| 22 that characteristic, right? | 22 the plaintiff, operates in? |

27 (Pages 102 - 105)