# EXHIBIT 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

_____

ULTIMA SERVICES CORPORATION,

       Plaintiff,

   v.                                       Case No.

U.S. DEPARTMENT OF AGRICULTURE,     2:20-cv-0041-

U.S. SMALL BUSINESS ADMINISTRATION,  DCLD-CRW

SECRETARY OF AGRICULTURE, and

ADMINISTRATOR OF THE SMALL BUSINESS

ADMINISTRATION,

       Defendants.

_____

            VIDEOCONFERENCE DEPOSITION OF

                 AMY STONEBRAKER

DATE:         Wednesday, May 25, 2022

TIME:         9:32 a.m.

LOCATION:     Remote Proceeding - DC

              Washington, DC 20005

REPORTED BY:  Timothy Guevara, Notary Public

JOB NO.:      5242863

Veritext National Court Reporting Company
202-857-3376 302-571-0510    410-837-3027    610-434-8588 215-241-1000
Case 2:20-cv-00041-DCLC-CRW   Document 75-1   Filed 07/19/22   Page 2 of 4
PageID #: 3103

5242863-2

Page 2

APPEARANCES

ON BEHALF OF PLAINTIFF ULTIMA SERVICES CORPORATION:

    MICHAEL E. ROSMAN, ESQUIRE (by videoconference)
    MICHELLE SCOTT, ESQUIRE (by videoconference)
    Center for Individual Rights
    1100 Connecticut Avenue Northwest, Suite 625
    Washington, DC 20036
    rosman@cir-usa.org
    scott@cir-usa.org
    (202) 833-8402

ON BEHALF OF DEFENDANTS U.S. DEPARTMENT OF AGRICULTURE, U.S. SMALL BUSINESS ADMINISTRATION, SECRETARY OF AGRICULTURE, AND ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION:

    JULIET GRAY, ESQUIRE (by videoconference)
    Department of Justice Civil Rights Division
    Employment Litigation Section
    150 M Street Northeast
    Washington, DC 20530
    juliet.gray@usdoj.gov
    (202) 514-3831

Page 3

INDEX

| EXAMINATION: | PAGE |
|---|---|
| By Mr. Rosman | 6 |
| By Ms. Gray | 99 |

EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | MS1 Status Emails | 34 |
| Exhibit 2 | MS2 Status Emails | 39 |
| Exhibit 3 | MS3 NRCS Request Letter, 9/6/18 | 43 |
| Exhibit 4 | MS4 Denison Adverse Impact Letter To USDA, 9/20/18 | 45 |
| Exhibit 5 | Decision Memo | 56 |
| Exhibit 6 | VA1 PCI Offer Letter | 76 |
| Exhibit 7 | VA2 PCI Contract (2021) | 80 |
| Exhibit 8 | VA3 2019 Offer Letter | 85 |
| Exhibit 9 | VA4 2019 Acceptance Letter | 86 |
| Exhibit 10 | GA1 Rividium Contract | 94 |

(Exhibits attached.)

Page 4

PROCEEDINGS

    THE REPORTER: Good morning. My name is Timothy Guevara; I am the reporter assigned by Veritext to take the record of this proceeding. We are now on the record at 9:32 a.m.

    This is the deposition of Amy Stonebraker taken in the matter of Ultima Services Corporation against U.S. Department of Agriculture, U.S. Small Business Administration, Secretary of Agriculture, and Administrator of the Small Business Administration, Case Number 2:20-cv-00041-DCLC-CRW, on May 25, 2022, taken remotely via Zoom.

    I am a notary authorized to take acknowledgements and administer oaths in the District of Columbia. Parties agree that I will swear in the witness remotely outside of her presence.

    Additionally, absent an objection on the record before the witness is sworn, all parties and the witness understand and agree that any certified transcript produced from the recording, virtually, of this proceeding:

    - is intended for all uses permitted

Page 5

under applicable procedural and evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and

    - shall constitute written stipulation of such.

    At this time will everyone in attendance please identify yourself for the record. We can begin with you, Mr. Rosman.

    MR. ROSMAN: I'm Michael Rosman. I'm representing the plaintiff in this matter.

    THE REPORTER: Ms. Scott.

    MS. SCOTT: I'm Michelle Scott. I represent the plaintiff in this matter.

    THE REPORTER: Ms. Gray.

    MS. GRAY: I'm Juliet Gray. I represent the defendants in this matter.

    THE REPORTER: Thank you. And Ms. Stonebraker, will you please just identify yourself for the record, please?

    MS. STONEBRAKER: Yes. My name is Amy Stonebraker.

1  **Q** Has anyone ever told you that they used the
2  8(a) program to meet an SDB goal?
3  **A** I have never had anyone indicate that they
4  used it to meet a goal, no.
5  **Q** We looked at a couple of different contracts
6  in which you indicated that the wrong NAICS code was
7  used. Do you recall that?
8  **A** Yes -- yes.
9  **Q** I understand you aren't the one who issued
10 those contracts, so you can't speak to them in
11 particular, but do you have any understanding of how
12 that might happen?
13 **A** The NAICS codes, I think I mentioned, have a
14 general description of what's covered within the
15 NAICS. And so the contracting officer read -- has to
16 read and interpret and determine that that NAICS code
17 would be appropriate for a specific requirement. It
18 does not give detailed information or breakdown, labor
19 types, for you to have a very defined, you know, clear
20 pinpointed, this is the one. So it's possible that a
21 CO may choose one that they felt was appropriate, that
22 maybe there was one that was more appropriate.

Page 111

1  **Q** So in your experience, do COs or contract
2  specialists sometimes make mistakes in picking NAICS
3  codes?
4  **A** Sure. Absolutely. Well we've seen it twice
5  today.
6  **Q** Are you familiar with any situation in which
7  a CO used the NAICS code in order to get a higher
8  small business-size threshold or to use the NAICS code
9  that would have a higher small business-size
10 threshold?
11 **A** I am not aware of anyone that has ever done
12 that in order to change the -- the dollar threshold.
13 **Q** In your experience is the cost of using the
14 8(a) program any higher or lower than using other
15 methods of procurement?
16 **A** I have never seen a difference in -- in the
17 cost to award 8(a). Generally, when you're buying
18 admin support services, it's -- it's a Service
19 Contract Act wage determination driven for the rates
20 that are paid to the contractor employees. And I
21 generally see that the contractor offers the minimum
22 rate that's established in those wage determinations.

Page 112

1  Where the difference occurs is in profit and overhead
2  rates. But I haven't seen where they are charging a
3  fee that isn't in line with non-8(a) companies
4  performing the same type of services.
5      MS. GRAY: Okay. I have no further
6  questions.
7      MR. ROSMAN: Nothing on my end.
8      THE REPORTER: Before we go off the
9  record, I just want to verify the orders for the
10 transcript. So Mr. Rosman, I just want to verify,
11 would you order the transcript of today's deposition?
12     MR. ROSMAN: Yes.
13     THE REPORTER: Okay. Is physical copy
14 okay or any specific type?
15     MR. ROSMAN: Physical copy?
16     THE REPORTER: Paper transcript.
17     MR. ROSMAN: I didn't know anyone made
18 physical copies before. Whatever we've been getting
19 in the past, the PDF.
20     MS. SCOTT: Electronic.
21     MR. ROSMAN: Michelle will take over
22 here. Go ahead.

Page 113

1      MS. SCOTT: Just the electronic is what
2  we've been getting, so that's fine.
3      THE REPORTER: Okay. And for Ms. Gray,
4  a copy of the transcript for you as well?
5      MS. GRAY: Yes. And I think we've
6  already ordered it to be expedited.
7      THE REPORTER: Yes, okay. I did see
8  the note for that. Okay. And will you be reading and
9  signing?
10     MS. GRAY: Yes.
11     MR. ROSMAN: If you are sending to them
12 early, could you just notify us when it's being sent
13 so we can keep track of the time?
14     THE REPORTER: Yes. Our office will
15 reach out as soon as it's being sent.
16     MR. ROSMAN: No. I'm asking if you can
17 let us know when it's being sent to the defendants.
18     THE REPORTER: Oh, yes. They will
19 notify you as soon as anything is being sent to
20 anyone. They will reach out to your office.
21     MR. ROSMAN: Thank you.
22     THE REPORTER: Okay. We are off the