IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

| | |
|---|---|
| ULTIMA SERVICES CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00041-DCLC-CRW |
| | ) |
| U.S. DEPARTMENT OF AGRICULTURE, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

The Honorable Clifton L. Corker:

Pursuant to this Court's December 8, 2022 Order (ECF No. 81), Defendants submit this letter addressing whether a potential decision by the Supreme Court overruling *Grutter v. Bollinger*, 539 U.S. 306 (2003), would impact the issues in this case and, if so, whether this matter should remain stayed until the Supreme Court releases its decision in *Students for Fair Admissions, Inc. v. University of North Carolina*, No. 21-707 (2022) ("*UNC*"), and *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199 (2022) ("*Harvard College*") (collectively, "the SFFA cases"). The short answer is no.

*Grutter* and the SFFA cases, while also challenging race-conscious programs, involve fundamentally different questions than those before the Court here. The compelling interest at issue here—a remedial program designed to level the playing field for small business contractors impeded by discrimination and its lingering effects—is fundamentally different than the interest in attaining the educational benefits that flow from a diverse student body, which is at issue in the SFFA cases. Not only do the issues differ, but so do the legal bases for the challenged actions. SFFA alleges that UNC's and Harvard's consideration of race to attain the educational benefits of

1

a diverse student body violates the equal protection clause of the Fourteenth Amendment and section 601 of Title VI of the Civil Rights Act of 1964, respectively. *See* Brief for Petitioner at i, 4, *Harvard College* and *UNC*, Nos. 20-1199 and 21-707. On the other hand, Ultima alleges that Congress's enactment of section 8(a) of the Small Business Act to remedy documented race discrimination in public contracting violates the equal protection clause of the Fifth Amendment, a challenge that has failed twice. Defs.' Mem. Supp. Summ. J. 1, 10-14, ECF No. 62.

### A. The Compelling Interest at Issue in *Grutter* and the SFFA Cases Differs Entirely From the Compelling Interest at Issue Here.

The compelling interest in *Grutter* and the SFFA cases—attaining the educational benefits that flow from a diverse student body—is fundamentally different from the compelling interest here—remedying race discrimination. *Compare Grutter*, 539 U.S. at 328 ("Today, we hold that the Law School has a compelling interest in attaining a diverse student body."), *with* Defs.' Mem. Supp. Summ. J. 8, ECF No. 62 ("There is no question that remedying the effects of past discrimination constitutes a compelling governmental interest.") (quoting *Associated Gen. Contractors of Ohio v. Drabik*, 214 F.3d 730, 735 (6th Cir. 2000)). Both the Supreme Court and the Sixth Circuit are clear that the government "has a compelling interest in assuring that public dollars . . . do not serve to finance the evil of private prejudice." *Drabik*, 214 F.3d at 735 (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989)); *see also Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021) ("[I]f the government 'show[s] that it had essentially become a "passive participant" in a system of racial exclusion practiced by elements of [a] local . . . industry,' then the government can act to undo the discrimination.") (quoting *Croson*, 488 U.S. at 492). In *Grutter*, the Court expressly recognized the compelling interest in attaining a diverse student body as a permissible justification for race-based governmental action *in addition to* the already accepted compelling interest in remedying past discrimination. 539 U.S. at 328 ("It is true that

2

some language in [prior] opinions might be read to suggest that remedying past discrimination is the only permissible justification for race-based governmental action. But we have never held that the only governmental use of race that can survive strict scrutiny is remedying past discrimination.") (citation omitted). Even Plaintiff acknowledges that remedying race discrimination is a compelling interest, provided there is a strong basis in evidence establishing the existence of discrimination. Pl.'s Mem. Supp. Summ. J. 21, ECF No. 60-2.

Moreover, the parties to the SFFA cases expressly acknowledge that the remedial justification for race-conscious action is not at issue in those cases. Neither UNC nor Harvard College contend that their admissions process is justified by the need to remedy past discrimination in which they participated. Brief for Respondent at 28-34, *Harvard College*, No. 20-1199; Brief for University Respondents at 37-40, *UNC*, No. 21-707. The student intervenors in the UNC case likewise argue that UNC's only compelling interest is in diversity. Brief for Student Respondents at 4, 36-38, *UNC*, No. 21-707. Similarly Petitioner SFFA explicitly disputes only the compelling interest in diversity recognized by *Grutter*. *See* Brief for Petitioner at 50-55, *Harvard College* and *UNC*, Nos. 20-1199 and 21-707.

During oral argument, the parties emphasized the distinction between the compelling interest in achieving student body diversity in higher education in dispute on the one hand, and the well-settled compelling interesting in remedying race discrimination on the other. In *Harvard College*, counsel for SFFA made clear that the compelling interest in remedying race discrimination is not at issue there:

> [T]he remedial exception is still good law. It was one of the two stated things that justified the use of race in education that this Court identified in *Parents Involved* [*in Community Schools v. Seattle School District No. 1*, 551 U.S. 701 (2007)]. However, Harvard has not made that argument and has no factual record that you would need to support that argument. It does not justify its use of race based on its own prior discrimination against Blacks and Hispanics.

Oral Argument at 16:16, *Harvard College*, No. 20-1199, https://www.oyez.org/cases/2022/20-1199. In *UNC*, counsel for SFFA said that: "even in the educational context, remediation is an acceptable compelling interest." Oral Argument at 5:45, *UNC*, No. 21-707, https://www.oyez.org/cases/2022/21-707.

Some members of the Court also indicated during oral arguments that the use of race as a remedial measure was not at issue. *See* Oral Argument at 2:36:25, *UNC*, No. 21-707 (Justice Amy Coney Barrett: "So I entirely agree with you and it's established in our precedent that it's not always illegal to take race-conscious measures. Remedial measures, you know, are—an example of that."); Oral Argument at 14:03, *Harvard College*, No. 20-1199 (Justice Neil Gorsuch: "[T]he language of the Fourteenth Amendment doesn't purport to bar remedial measures or classifications by Congress . . . ."); Oral Argument at 1:36:40, *Harvard College*, No. 20-1199 (Justice Amy Coney Barrett: "there's not a remedial justification on the table here").

The parties' disagreement concerning the compelling interest in *Ultima* concerns whether a strong basis in evidence supports the remedial compelling interest. Since *Grutter* does not involve a remedial justification, it has nothing to say about how to evaluate the evidence submitted to establish such a justification. This is precisely why neither party cites *Grutter* in addressing the compelling interest. Nor does *Vitolo*. 999 F.3d at 360-63.

### B. The Narrow Tailoring Analysis is Case Specific.

Similarly, the Supreme Court's analysis as to whether UNC's and Harvard's admissions programs are narrowly tailored to achieve that goal will provide little guidance here because of the vastly different context. While the broad contours of the narrow tailoring analysis are well-settled, its application is highly context- and fact-specific. As the Supreme Court noted in *Grutter*, the narrow tailoring inquiry "must be calibrated to fit the distinct issues raised by the use of race to

4

achieve student body diversity in public higher education." 539 U.S. at 333-34; *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 228 (1995) (explaining that "strict scrutiny *does* take 'relevant differences' into account—indeed, that is its fundamental purpose"). To illustrate, the SFFA cases challenge *Grutter*'s finding that universities can reject race-neutral alternatives that would compromise their reputation for academic excellence. Brief for Petitioner at 50-56, *Harvard College*, No. 20-1199; *see also Grutter*, 539 U.S. at 339. This standard, which pertains to university admissions, is not at issue in this case involving government contracting.

It is because the narrow tailoring analysis is so dependent on context that neither the United States nor Ultima rely on *Grutter* in any substantial way. Ultima cites *Grutter* only once in any of its pleadings and that is for the proposition—established well before *Grutter*—that the government must show "serious, good faith consideration of workable race-neutral alternatives." Pl.'s Mem. Supp. Summ. J. 28, ECF No. 60-2 (quoting *Grutter*, 539 U.S. at 339). The United States also quotes *Grutter* in support of an identical proposition related to considering workable race-neutral alternatives. Defs.' Mem. Supp. Summ. J. 26, ECF No. 62.; *see also* Defs.' Mem. Opp. Pl.'s Mot. Summ. J. 32, ECF No. 72. In sum, the parties do not cite to *Grutter* for any principle that is unique to that case. Instead, the parties cite to *Grutter*, as well as a host of cases from the Sixth Circuit and other courts, for the purpose of identifying the well-settled narrow tailoring factors.

How the Supreme Court rules in the SFFA cases—and whether the Court upholds or overrules *Grutter*—should have no bearing on the resolution of the issues in this case. Accordingly, the Court should not stay its decision on the parties' motions for summary judgment until the Supreme Court releases its decisions in the SFFA cases.[1]

---

[1] Defendants believe that the Court's Order (ECF No. 79) staying all other case deadlines pending a decision on the parties' motions for summary judgment should remain in place.

Dated: December 22, 2022

Respectfully Submitted,

*/s/ Juliet E. Gray*
Juliet E. Gray (D.C. Bar No. 985608)
Christine T. Dinan (D.C. Bar No. 979762)
Senior Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M. Street, N.E.
Washington, D.C. 20002
(202) 598-1600
Juliet.Gray@usdoj.gov
Christine.Dinan@usdoj.gov