```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
--------------------------------------------------------------------------------x

ULTIMA SERVICES CORPORATION,                                      :

        Plaintiff,                                                :

                -against-                                         :         No. 2:20-cv-00041-
                                                                            DCLC-CRW
U.S. DEPARTMENT OF AGRICULTURE,                                   :
U.S. SMALL BUSINESS ADMINISTRATION,
SECRETARY OF AGRICULTURE, and ADMINISTRATOR                       :
OF THE SMALL BUSINESS ADMINISTRATION,
                                                                  :
        Defendants.
                                                                  :
--------------------------------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM OF LAW WITH RESPECT TO EQUITABLE RELIEF**

Plaintiff Ultima Services Corporation ("Ultima") submits this memorandum of law in response to this Court's request for briefing on additional equitable relief and defendants' compliance with the current order and its motion for the additional relief requested herein. Doc. 92. Because of the concerns raised in this memorandum, Ultima requests that the Court temporarily enjoin (until a resolution of this request for additional relief) defendants from awarding, completing, modifying, or exercising options on any contracts through the Section 8(a) Program to 8(a) participants who received the benefit of the rebuttable presumption (regardless of whether the SBA subsequently approved a "narrative of social disadvantage").

Background

The Court is now familiar with the facts of this case and, accordingly, this Background section will highlight only those aspects relevant to the remaining issues. Capitalized terms will have the same meaning that they had in the summary judgment briefing.

A.  This Action

This is an action for discrimination in violation of federal law. Plaintiff's complaint ("Compl." or the "Complaint") alleges that Ultima has bid on contracts to provide services for the Natural Resources Conservation Service ("NRCS"), an agency of the U.S. Department of Agriculture ("USDA"), to provide administrative and/or technical support for NRCS programs that are designed to improve agricultural conservation and protect the environment. Compl. ¶ 7. It further alleges that Ultima was, in the past, reasonably successful in obtaining these contracts, and NRCS was sufficiently satisfied with its work that it renewed contracts under which Ultima provided these services. *Id.* ¶¶ 8-9. Beginning in 2018, however, the USDA not only did not renew any of Ultima's contracts, but reserved many NRCS contracts for the Section 8(a) Program, which precluded Ultima (and many other small businesses) from bidding. *Id.* ¶ 10; Doc. 86, Memorandum Opinion and Order ("Op."), 3. By Ultima's count, there were over 50 contracts for administrative and technical support to NRCS offices reserved to the 8(a) Program in the ensuing years. Docs. 60-6 (PageID ## 879-91), 66-3, 66-4, 70-8 (¶¶ 7-8), 70-18, and 70-19. Defendants contended that there

were *five* contracts for administrative or technical support for NRCS offices that were open to competition after the IDIQs were not renewed. Doc. 61-7, Stonebraker Declaration ¶ 3 (PageID # 1074). There were *zero* prior to this lawsuit being filed. *Id.*, PageID # 1077. Plaintiff actually disputed that four of these five (ones on a General Services Administration supply schedule) were "open to competition." Doc. 70-2 ¶¶ 6-7.

The Complaint alleges that the vast majority of Section 8(a) firms are owned and controlled by members of the racial or ethnic groups advantaged by the racial presumption. Compl. ¶ 35; *see also* Doc. 61-17 (PageID # 1547 (Dep. Tr. 88-89)); Doc. 64-2, pp. 20-21 (PageID ## 1701-02). It further alleges that the USDA has had a racial motive in utilizing the Section 8(a) Program for contracts in Ultima's industry. Compl. ¶ 35. Accordingly, the Complaint seeks "[i]njunctive relief precluding defendants from reserving NRCS contracts for the Section 8(a) Program." *Id.* 10 (¶ B). It also seeks "[a]ny other relief that is appropriate." *Id.* 11 (¶ F).

The parties each moved for summary judgment on June 21, 2022. Ultima's motion sought an injunction precluding defendants from reserving contracts for administrative and technical support to the 8(a) Program. Doc. 60. Thus, the relief sought in the summary judgment motion was somewhat broader than that sought in Paragraph B of the Complaint's request for relief (albeit consistent with Paragraph F of that request). *See also* Transcript of Hearing on August 31, 2023 at 6 (noting that relief in the motion was broader).

B. <u>This Court's Opinion</u>

In its July 19 Memorandum Opinion and Order, this Court concluded that defendants' use of the rebuttable presumption of social disadvantage violated the Fifth Amendment to the United States Constitution. Specifically, this Court held that (1) defendants lack a compelling governmental interest to meet strict scrutiny for the Section 8(a) Program because (a) defendants' lack of goals and analyses of whether particular racial groups are underrepresented in particular industries preclude any meaningful analysis of whether the rebuttable presumption is remedying the present effects of past discrimination (Op. 24), (b) defendants' failure to identify specific instances of intentional

2

discrimination, and their reliance on disparities that might be explained by other variables precluded a finding that they had a strong basis in evidence that remedial measures were needed (Op. 26-28), and (c) defendants failed to show that they were either active or passive participants in any discrimination (Op. 29-30); and (2) the Section 8(a) Program was not narrowly-tailored because (a) the "rebuttable" nature of the presumption was more theoretical than real (Op. 32-33), (b) the Section 8(a) Program had no temporal limit or logical end point (Op. 33-34), (c) the Section 8(a) Program did not have any specific objective linked to their use of the presumption, (d) the racial categories in the program are imprecise (rendering the program underinclusive) and the presumption sweeps broadly by including all members of specified minority groups regardless of industry (rendering it overinclusive) (Op. 36-37), (e) defendants have failed to review race-neutral alternatives (Op. 38-39), and (f) defendants failed to consider the impact of the presumption on third parties like Ultima, noting that Ultima "operates within a specific set of industries and [contracts in those industries] represent a substantial amount of revenue" (Op. 40).

As a consequence of these holdings, this Court enjoined defendants "from using the rebuttable presumption for social disadvantage in administering Defendant SBA' 8(a) program." Op. 41. A hearing was held on August 31, 2023 to establish a schedule for resolving any other form of equitable relief. This Court subsequently issued an order for the briefing on those issues. Doc. 92.

C. <u>Applications To The 8(a) Program</u>

Applications to the 8(a) Program go through a thorough four-part review process. The SBA maintains two branches of the Office of Certification and Eligibility ("OCE"), one in Philadelphia and one in San Francisco, whose task it is to review all applications to the Section 8(a) Program. Supplemental Statement of Michael Rosman ("Rosman Supp. St."), Ex. 1 (Klein Dep. Tr. 11, 15-16). Applications are first reviewed by a line Business Opportunity Specialist in OCE, who makes a recommendation, and then by an OCE supervisor. *Id.* (Klein Dep. Tr. 63-64, 75-76, 94-95). It then goes to the head of OCE at the SBA who reviews the recommendation. Finally, the Associate Administrator for Business Development ("BD Associate Administrator") reviews the application

and makes a final decision, subject to an internal appeal. *Id.* (Klein Dep. Tr. 94-95). Applications by those not entitled to a presumption of social disadvantage would include the evidence required by 13 C.F.R. § 124.103(c).

The role of OCE in reviewing applications is one mandated by Congress, which created that office. 15 U.S.C. § 636(j)(11)(F).[1]

As this Court noted in its opinion, the regulations governing the evidence of social disadvantage are fairly rigorous. Op. 7-8 (citing various sections of 13 C.F.R. 124.103(c)). This includes satisfying a "preponderance of the evidence" standard, presumably meaning that the evidence must make it more likely than not that the individual has been hampered in business development by the effects of specific discrimination.

The SBA takes up to ninety (90) days after completion of an application to review it. Rosman Supp. St. Ex. 1 (Klein Dep. Tr. 75-76).

D.  <u>Defendants' Notice of Compliance</u>

On August 29, 2023, defendants filed a "Notice of Compliance" (the "Notice") that identified the steps defendants are taking to comply with this Court's order. Doc. 88. The Notice states that "SBA suspended the acceptance and processing of new applications to the 8(a) program and also suspended the issuance of final decisions on pending applications that relied on the rebuttable presumption." Doc. 88 at 1 (¶ 3); Doc. 88-1 at 2 (¶¶ 2-3).

The Notice states that the SBA is "developing a revised process for establishing social disadvantage that will not rely on the rebuttable presumption of social disadvantage," and that, "[u]ntil the revised procees is in place," it "will make all determinations of social disadvantage for individual-owned small business owners . . . using the existing process that SBA has used to

---

[1] The statute refers to the Division of Program Certification and Eligibility. 15 U.S.C. § 636(j)(11)(F). The SBA apparently changes its name in different administrations. Rosman Supp. St. Ex. 1 (Klein Dep. Tr. 16). *See also* 15 U.S.C. §§ 633(b), 636(j)(10) (creating position of "Associate Administrator for Minority Small Business and Capital Ownership Development" that supervises the Section 8(a) Program); Rosman Supp. St. Ex. 1 (Klein Dep. Tr. 14-15) (that position is now called "Associate Administrator for Business Development"); Doc. 60-2, p. 6 (PageID # 811) n.3.

evaluate" companies whose owners and operators did not qualify for the presumption. (Defendants presumably mean that the SBA wants to change the process by which companies whose principals are not entitled to a presumption of social disadvantage present the evidence to demonstrate such disadvantage as required by 13 C.F.R. § 124.103(c). They did not provide a reason for this desired change.) Doc. 88 at 2 (¶¶ 4-5); Doc. 88-1 at 2-3 (¶¶ 4-5).

Defendants' Notice asserts that "[f]ederal agencies can take various actions after SBA approves a new requirement . . . that do not constitute new contracting actions," such as "finaliz[ing] and sign[ing] contracts with the previously approved 8(a) awardees or exercis[ing] priced options and in-scope modifications." Doc. 88 at 3 (¶ 10). According to Defendants, these agency actions "do not involve the use of the rebuttable presumption." *Id. See also* 88-1 at 9 (PageID # 3313) (advising that "most future actions" on existing contracts "such as issuing priced options and in-scope modifications, may continue as usual").

Defendants' Notice also states that the SBA issued guidance to all government agencies on August 18, 2023 and attaches that guidance as an exhibit. Doc. 88 at 4 (¶ 11); Doc. 88-1 at 3 (¶ 10), 6-9. The guidance states that "[u]ntil the new process outlined below is in place, SBA will process individual claims of social disadvantage under the existing (narrative) process. SBA has already done that in several instances and turned those cases around within only a few days." Doc. 88-1, p. 7 (PageID # 3311). It is unclear (to Plaintiff at least) what "[t]he new process outlined below" is, or how it will become "in place." The guidance further states that "SBA anticipates that it should be able to complete this process and, if social disadvantage is established, to authorize the award in 5 business days." *Id.* at 8 (PageID # 3312).

The guidance also states that "SBA will communicate directly to existing 8(a) participants the method and procedures for establishing social disadvantage . . . on Monday, August 21, 2023." Doc. 88-1, p. 8 (PageID # 3312). SBA appears to have provided a "guide" to writing social disadvantage narratives on or around that date. Doc. 88-1, p. 12. Plaintiff is unaware of any previous "guidance" that SBA provided to those required to submit evidence of social disadvantage other than

5

the regulations in Section 124.103(c), which says nothing about "narratives."

John Klein, an Associate Counsel at SBA and its Rule 30(b)(6) designee in this case, participated in a webinar sponsored by the National 8(a) Association in mid-August. https://www.youtube.com/watch?v=uWmH_Ol6dBM ("Recording"). According to Mr. Klein the narratives of social disadvantage from those who were previously presumed disadvantaged would "come straight to Headquarters" and SBA Headquarters would "affirmatively find you to be disadvantaged." Recording at approximately 5:40. *See also* Recording at approximately 7:35 ("We'll try to make this as easy as possible for everyone."). Mr. Klein also indicates that the advice that was placed on the SBA website for the benefit of those who had received the presumption of social disadvantage for completion of the narrative of social disadvantage is new. Recording at 5:20 ("SBA will soon put up on its knowledge-base site some guidance and questions that will help you guide in your narrative until the questions are actually changed . . .").

According to the Washington Post, the SBA apprised it that it is training additional staff to review narratives. Julian Mark, *Ruling Tilts SBA Minority Program*, Washington Post, Sept. 8, 2023, A1 at A16 (online version available at https://www.washingtonpost.com/business/2023/09/07/sba-8a-program-ruling-affirmative-action/).

Argument

Ultima disagrees with Defendants' interpretation of the existing injunction. It believes that contracting (including the exercise of options and completion of tentative agreements) through the Section 8(a) Program with 8(a) participants who entered the program with the benefit of the rebuttable presumption is "using" that presumption even if SBA's role was in the past. Further, Plaintiff seeks an additional injunction protecting it from Section 8(a) set asides within the industry in which it participates, the administrative and technical support industry. The Court should grant such relief because Ultima is still suffering from the lingering effects of defendants' discrimination. Finally, Ultima believes that prophylactic relief of some kind is warranted to ensure that defendants

6

are not simply "establish[ing] through application essays or other means the regime [this Court] h[e]ld unlawful" on July 19. *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2176 (2023). To permit the Court to examine that issue, Ultima requests a temporary halt to contract approvals until its application for resolution of the scope of the July 19 injunction and its request for additional equitable relief is resolved.

I. APPROPRIATE INTERPRETATION OF THE COURT'S JULY 19 ORDER

In its July 19, 2023 order, this Court enjoined defendants from "using the rebuttable presumption of social disadvantage in administering Defendant SBA's 8(a) program." Op. 41. *See also* Recording at approx. 0:50 ("They [i.e., the Court] didn't say in entering the program. They didn't say in terms of applications. They said in administering the 8(a) Program."). Defendants' notice of compliance makes several assumptions regarding that order with which Ultima disagrees.

Conspicuously, although labeled "Defendants' Notice of Compliance," the Notice does not say anything at all about what (if anything) Defendant USDA is doing to comply. Further, Defendants appear to take the position that exercising options or taking other actions to extend or modify Section 8(a) Program contracts with 8(a) contractors that received the benefit of the presumption of social disadvantage is not "using" the presumption in administering the program. Doc. 88 at 3 (¶ 10). Plaintiff disagrees. (Apparently, so do some agencies. Recording at approx. 14:25.) To "use" the presumption in *administering* the program is not merely to make it, but to take advantage of it. Exercising an option is a choice, and choosing to exercise an option on an 8(a) reserved requirement with firms whose owners received the benefit of the presumption is a choice to take advantage of that presumption rather than find another 8(a) contractor or compete the contract among all small businesses. That the exercise of the option does "not require an SBA eligibility determination" (Doc. 88 at 3 (¶ 10)) is irrelevant. Indeed, the USDA was able to reserve so many contracts to the Section 8(a) Program because it declined to exercise the options on Ultima's IDIQ contracts and underlying task orders. Op. 3.

The other matter of concern is the SBA's apparent effort to expedite review of any narratives

7

of social disadvantage. As noted previously, the SBA has used four layers of review of applications, *viz.*, Business Opportunity Specialist in OCE, a supervisor in that office, the Director of OCE, and the BD Assistant Administrator. The requirement that OCE review any application – and evidence of social disadvantage is part of the application – is mandated by Congress, which created the Division of Program Certification and Eligibility by statute and gave it the responsibility of "receiv[ing], review[ing], and evaluat[ing] applications for certification." Section 201(a) of Pub. L. 100-656, 15 U.S.C. § 636(j)(11)(E), (F). SBA's suggestion that it will be able to turn narratives around in five business days or less gives reason for concern. It is unclear, for example, whether pending applications from non-minorities (Doc. 88-1, p. 2 (¶ 2)) are given any expedited treatment.

If 8(a) participants that received the presumption are not being required to go through the same processes and standards that other applicants went through (*i.e.*, submitting evidence of social disadvantage meeting the preponderance of the evidence standard), that is "using" the presumption, because it is easing the burden on those (and only those) that received the presumption.

II.  THIS COURT SHOULD PRECLUDE THE USE OF THE SECTION 8(a) PROGRAM IN PLAINTIFF'S INDUSTRY

A court's equitable powers are generally broad, and this is particularly so in cases involving discrimination. *People Who Care v. Rockford Bd. of Educ., Sch. Dist. #205*, 851 F. Supp. 905, 932 n.16 (N.D. Ill. 1994) ("A federal court in a school desegregation case has broad remedial authority and may employ its full equitable powers upon determining that intentional systemwide segregation or discrimination has occurred."). A court that has found illegal discrimination of any kind can use its equitable authority to take reasonable actions to both prevent future discrimination and eliminate any lingering effects of past discrimination. *Local 28 of Sheet Metal Workers' International Association v. EEOC*, 478 U.S. 421, 445 (1986) (plurality op.) (Court may properly order race-conscious relief in the face of egregious discrimination "or where necessary to dissipate the lingering effects of pervasive discrimination."); *id.* at 495 (O'Connor, J., concurring and dissenting) (to meet the requirements of Title VII, goals can serve to measure compliance with Title VII or eliminating the lingering effects of past discrimination); *Mhany Management, Inc. v. Incorporated Village of*

8

*Garden City*, 4 F. Supp. 3d 549 (E.D.N.Y. 2014) (requiring city that discriminated by changing certain zoning categorizations, *inter alia*, to implement fair housing training, to participate in a consortium to obtain federal funds for affordable housing, and to require developers to set aside 10% of units for affordable rates).

Here, Plaintiff is not seeking any race-conscious remedy at all, but simply an order precluding defendants from using the 8(a) Program in her industry. Plaintiff was precluded from gaining work because of defendants' discrimination. As noted earlier, the number of NRCS contracts that defendants set aside for the 8(a) Program in Plaintiff's industry, administrative and technical support, appears to greatly outnumber the contracts in that industry that were available for competition, either among all firms or all small businesses. Accordingly, Plaintiff's income dropped significantly. Doc. 60-4, p. 4 (PageID # 858) ¶ 21.

But even outside NRCS contracts, the federal government utilizes contracts in Plaintiff's industry for the Section 8(a) Program to a substantial degree. The three NAICS codes that have been most frequently associated with the administrative and technical support industry – 541611 (Administrative Management and General Management Consulting Services), 561110 (Office Administrative Services), and 561320 (Temporary Help Services) – were all in the top twenty NAICS codes used by the Section 8(a) Program according to the SBA's 408 Report in 2017. Rosman Supplemental Statement Ex. 2 .[2] *See also* Doc. 60-4 at 3-4 (PageID ## 857-58) ¶ 18. As this Court noted in its July 19 Opinion, Ultima "operates within a specific set of industries and

---

[2] The "408 Report" is mandated by 15 U.S.C. § 636(j)(16), which was first promulgated by Section 408 of the 1988 Amendments to the Small Business Act, known as the Business Opportunity Development Reform Act of 1988. Pub. L. 100-656. According to the SBA, the 408 Reports also contain the report from the Director of OCE to the BD Associate Administrator required by Section 201(a) of that same 1988 Act. 15 U.S.C. § 636(j)(11)(I); Rosman Supp. St. Ex. 1 (Klein Dep. Tr. 204).

As noted earlier in this litigation, defendants produced 408 Reports only for Fiscal Years 2015-17, and withheld drafts of more recent such reports on deliberative process grounds. Doc. 60-5 at 2 (¶ 9); Doc. 64-3. Although defendants indicated that the reports would be publicly available when finished, Doc. 64-3, Plaintiff has been unable to find any more recent reports on the internet. Rosman Supp. St. ¶ 4.

[contracts in its industry] represent a substantial amount of revenue" (Op. 40).

Finally, it deserves mention that the injunction Plaintiff proposes here is very similar to the injunction ordered by the Court in *DynaLantic Corp. v. United States Dep't of Defense*, 885 F. Supp. 2d 237, 293 (D.D.C. 2012). The Court in *DynaLantic* provided a much narrower basis for its conclusion that the application of the Section 8(a) Program was unconstitutional in DynaLantic's industry. It held only that the Section 8(a) Program was unconstitutional as applied to the military simulation industry because the defendants had not supplied a compelling governmental interest for its use in that industry (while upholding its use more generally). *Id.* at 280-83. Nonetheless, it did not limit injunctive relief to precluding defendants there from using the presumption of social disadvantage in the industry. Rather, it "enjoined [defendants] from awarding procurements for military simulators under the Section 8(a) program without first articulating a strong basis in evidence for doing so." *Id.* at 293. Thus, under the *DynaLantic* injunction, defendants could not award contracts through the Section 8(a) Program in the relevant industry, even to 8(a) participants who had not benefitted from the presumption of social disadvantage.[3]

Given the much broader flaws that this Court found in the Section 8(a) Program, it stands to reason that a significant number of non-8(a) firms (including non-8(a) SDBs) were harmed by the Section 8(a) Program. The effect on Ultima in its industry has been significant. And Ultima is not seeking a leg up on any other competitors (8(a) or otherwise), just an opportunity to compete. Under Ultima's proposal, Section 8(a) contractors can compete for and bid on any contracts for which they are qualified (just as they could for any military simulation contracts in *DynaLantic*).

Accordingly, an order precluding defendants from utilizing the 8(a) Program in Ultima's industry would be an appropriate use of this Court's equitable authority.

---

[3] The parties in *DynaLantic* eventually settled the matter, continuing the Court's injunction with somewhat greater specification. Doc. 25-1. The defendants in that case (including the SBA) have not articulated a strong basis in evidence for application of the Section 8(a) Program to the industry there, and, accordingly, it is still in effect. Rosman Supp. St. ¶ 5.

### III. PROPHYLACTIC MEASURES ARE APPROPRIATE

Given the SBA's desire to make compliance with this Court's order "as easy as possible for everyone," and its apparent inability to produce the reports on the Section 8(a) Program required by Congress, Plaintiff believes that certain prophylactic measures are appropriate to ensure good-faith compliance with the Court's order. Specifically, this Court either (a) should appoint a monitor to review the SBA's certification of 8(a) participants that previously had received the benefit of the rebuttable presumption or (b) make the narrative essays of social disadvantage (along with SBA's response) public with appropriate redaction of identifying information. In this fashion, the Court and the public may be assured that the SBA is applying the same rigorous review of social disadvantage narratives that it required for the "evidence" standard under Section 124.103(c) for others prior to this Court's order.

Further, for many years, the SBA operated a presumption that was "rebuttable" in name only. It also promulgated regulations that made eligibility-for-an-award challenges impossible. 13 C.F.R. § 124.517(a). Now, the SBA is conflating eligibility for the Section 8(a) Program with eligibility for a specific award: it will determine eligibility for an award at the same time as it determines eligibility for the program itself (by review of the narratives of social disadvantage). Thus, the SBA appears to be moving the review of social disadvantage to a place where it cannot be challenged.

SBA's efforts to eliminate the presumption should involve openness and substantial disclosure.

At the very least, the SBA should be required to identify how many narratives of social disadvantage have been approved, and how many rejected, since the July 19 order – for both pending applications from non-minorities and the additional narratives from those who previously benefitted from the presumption.

### IV. THIS COURT SHOULD TEMPORARILY HALT THE REVIEW OF NARRATIVES

Finally, Ultima requests that this Court temporarily halt the SBA's review of narratives. Given the concerns identified in this memorandum regarding the apparently-accelerated process for

such review, a temporary halt will preserve the status quo until this Court can rule on the application. In the absence of such a temporary halt, the Court may be forced to unwind additional approvals and/or contracts made since the July 19 order.

Conclusion

For the foregoing reasons, this Court should (1) make clear that its prior injunction (a) enjoins defendants from exercising options or making similar modifications to Section 8(a) Program contracts with contractors that received the rebuttable presumption and (b) precludes the SBA from providing a shortened or less rigorous review of narratives of social disadvantage than was applied to submission of evidence under Section 124.103(c) prior to this Court's July 19 injunction, (2) enjoin defendants from using the Section 8(a) Program in the administrative and technical support industry, and (3) either appoint a monitor to review the SBA's certification of 8(a) participants that previously had received the benefit of the rebuttable presumption or make the narrative essays of social disadvantage (and the SBA's decision with respect to each of them) public with appropriate redaction of identifying information.

In addition, Ultima requests that this Court temporarily enjoin (until a resolution of this request for additional relief) defendants from awarding, completing, modifying, or exercising options on any contracts through the Section 8(a) Program to 8(a) participants who received the benefit of the rebuttable presumption (regardless of whether the SBA subsequently approved a "narrative of social disadvantage").

Respectfully submitted,

/s/ Michael E. Rosman
Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave, NW, Ste. 625
Washington, D.C. 20036
(202) 833-8400

12

M. Dale Conder, Jr.
RAINEY KIZER REVIERE & BELL PLC
209 E. Main St.
Jackson, TN 38301
(731) 426-8130