IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| ULTIMA SERVICES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00041-DCLC-CRW |
| | ) | |
| U.S. DEPARTMENT OF AGRICULTURE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR ADDITIONAL EQUITABLE RELIEF

"This case concerns whether, under the Fifth Amendment's guarantee of equal protection, [Defendants] may use a 'rebuttable presumption' of social disadvantage for certain minority groups to qualify them for inclusion" in the 8(a) program. Mem. Op. & Order 1, Doc. 86. The Court ruled that Defendants could not do so consistent with Plaintiff's equal protection rights, *id.* at 40-41, and Defendants have taken significant actions to comply with that directive at the 8(a) program application stage and beyond, *see* Notice of Compliance, Doc. 88. But now Plaintiff seeks even more—essentially, the total and permanent shutdown of the 8(a) program in certain industries. *See* Doc. 93-1 at 9. This would bar not just Defendants—but *every* federal agency— from using the 8(a) program in three of the largest industries used by the program. It also would prevent 8(a) participants who never even benefitted from the presumption—and those that did but have since established social disadvantage without it—from fully participating in a lawful federal contracting program. There is no basis in the Court's order or federal law for such relief.

1

Nor has Plaintiff presented anything more than conjecture to justify the drastic and extraordinary remedies of appointing a monitor to oversee a federal agency's application of a regulation not even challenged here and a temporary injunction barring Defendants' ongoing efforts to implement the Court's order. Plaintiff's Motion for Additional Equitable Relief should be denied in its entirety.

## BACKGROUND

At summary judgment, the parties disputed whether SBA "may use a 'rebuttable presumption' of social disadvantage" "to qualify" small businesses owned by members of certain designated groups into the 8(a) program. Doc. 86 at 1. The Court concluded that Ultima was injured by the "imposition of [a] barrier"—the use of the rebuttable presumption—at the application stage. Doc. 86 at 15 (quoting *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)). The Court further held that "Defendants' use of the rebuttable presumption violates Ultima's Fifth Amendment right to equal protection of the law." *Id.* at 40. To remedy this violation, the Court enjoined Defendants from "using the rebuttable presumption of social disadvantage in administering Defendant SBA's 8(a) program," *id.* at 41, thus "remov[ing] the race-based barrier that injures Ultima," *id.* at 16-17.

Defendants have fully complied with the Court's order. *See* Doc. 88. SBA stopped accepting new applications to the 8(a) program and issuing final decisions on any pending applications while it worked on implementing the Court's order. *Id.*, ¶ 3. SBA reopened the portal to accept new applications and resumed issuing final determinations on pending applications, without using the presumption, on September 29, 2023. *See* Klein Decl. ¶ 10. SBA has traditionally made an affirmative or negative finding of a business owner's social disadvantage only at the initial application stage, i.e., when deciding whether to "qualify" them for the program. However,

in response to the Court's order, SBA has taken actions to ensure that, going forward, only program participants who qualify as socially disadvantaged without the use of the presumption are eligible to participate. Thus, Defendants advised the Court that SBA will require all participants in the 8(a) program who were admitted based on the presumption to establish social disadvantage through an individual narrative consistent with the process that non-presumptively disadvantaged applicants have long been required to use under 13 C.F.R. § 124.103(c). *Id.*, ¶ 7. Further, until such reviews are complete, SBA will not approve the award of any new contract until it has determined that the potential awardee satisfies the requirements for social disadvantage without reliance on the presumption. *Id.*, ¶ 6. These efforts require a significant investment of SBA resources.

## ARGUMENT

### I. Defendants Are Fully Complying with the Court's Injunction

The Court "enjoined [Defendants] from using the rebuttable presumption of social disadvantage in administering Defendant SBA's 8(a) program." Doc. 86 at 41. Defendants have undertaken significant efforts to fully implement that directive as swiftly as possible given the size and scope of the 8(a) program. Defendants have been transparent with the Court, Ultima, 8(a) participants, federal agencies, and the public about the steps being taken to comply with the Court's injunction. *See* Doc. 88; Doc. 88-1 at 6-12; Klein Decl. ¶¶ 8, 14. Those efforts are consistent with both the letter and spirit of the Court's injunction.[1]

---

[1] Plaintiff asserts that the Notice of Compliance "conspicuously" does not mention what USDA is doing to comply with the injunction. Doc. No. 93-1, at 8. SBA is the only agency that makes 8(a) social disadvantage eligibility determinations—and thus "uses" the presumption—and is the only agency that "administers" the 8(a) program. USDA—and all other federal agencies—are still impacted by the injunction and thus they are complying with the new procedures established by SBA in response to the injunction. For instance, no federal agency, including USDA, may award new contracts through the 8(a) program unless SBA advises that any potential awardee who initially relied on the presumption has established social disadvantage without reliance on the presumption. *See* Doc. 88 ¶ 6.

3

By and large, Plaintiff makes no complaint about Defendants' efforts. It identifies only two "matter[s] of concern": how SBA reviews current participants' efforts to re-establish social disadvantage without the presumption and how Defendants address options on contracts awarded before the Court's order. Doc. 93-1 at 7-8. Defendants' actions are consistent with the injunction on both points.

### A. SBA is Appropriately Evaluating the Social Disadvantage of All 8(a) Participants Admitted to the Program Based on the Presumption.

Plaintiff's expressed concern about how SBA is reviewing current program participants' efforts to establish social disadvantage appears to stem from its misunderstanding of the 8(a) program and of what SBA is doing to comply with the injunction.

Previously, individuals who were not members of presumptively disadvantaged groups had to submit evidence showing, "by a preponderance of the evidence," that they were socially disadvantaged, 13 C.F.R. § 124.103(c)(1), while individuals who were members of those designated groups could rely on the rebuttable presumption, *id.* § 124.103(b). Following the Court's order, SBA will require all new applicants, regardless of membership in designated groups, to establish social disadvantage by a preponderance of the evidence in the same way, pursuant to 13 C.F.R. § 124.103(c). *See* Klein Decl. ¶ 2. Thus, there is no improper race-based barrier to any applicant seeking to qualify for the 8(a) program, including Plaintiff, because SBA is not and will not be "using" the presumption in qualifying any applicants.

Out of an abundance of caution, SBA has treated the Court's order as requiring more than eliminating the presumption at the application stage. *See* Doc. 88 at ¶¶ 6-7. SBA ordinarily does not review a firm's social disadvantage after the initial application stage, but its regulations do require it to confirm that a participant is "eligible" for the program when approving a new award and when conducting annual business development reviews. *See* 13 C.F.R. §§ 124.112(b),

124.501(g), 124.507(b). To ensure complete compliance with the Court's order, SBA is requiring all current 8(a) participants who were admitted to the program based on the presumption to submit evidence establishing social disadvantage if they have not already done so in connection with a potential contract award. Doc. 88 at ¶ 7; Klein Decl. ¶ 8. Until SBA has completed reviewing these submissions under the preponderance of the evidence standard, SBA is requiring potential awardees admitted to the program based on the presumption to make such a showing before any contract award is made.[2] Doc. 88 at ¶ 6; Klein Decl. ¶ 4. SBA has devoted significant additional resources to reviewing these submissions to ensure agencies do not suffer an interruption in essential goods and services, appropriated funds are timely obligated, and properly eligible participants receive 8(a) mentoring services. *See* Klein Decl. ¶¶ 5, 9.

Plaintiff's suggestion (Doc. 93-1 at 8) that current participants who previously relied on the presumption will not be held to the same standard as other applicants is without merit. Since the Court's order, all social disadvantage determinations have been made using the standard previously used for applicants who were not members of the designated groups entitled to rely on the presumption. *See* 13 C.F.R. § 124.103(c); Klein Decl. ¶ 2. As provided in 13 C.F.R. § 124.103(c), individuals must establish each of the following elements of social disadvantage by a preponderance of the evidence:

      i.    ***At least one objective distinguishing feature*** that has contributed to social disadvantage, such as race, ethnic origin, gender, identifiable disability, long-term

---

[2] Plaintiff misinterprets the relevant regulations in asserting that evaluating a participant's social disadvantage before approving a contract award makes a challenge to the determination impossible. Doc. 93-1 at 12. SBA regulations provide that "[a]nyone with information questioning the eligibility of a Participant to continue participation in the 8(a) BD program or for purposes of a specific 8(a) contract may submit such information to SBA under § 124.112(c)." 13 C.F.R. § 124.517(e). The subsection of the regulation that Plaintiff relies on merely states that the appropriate forum for such a challenge is not through "a bid or other contract protest." *Id.* § 124.517(a).

residence in an environment isolated from the mainstream of American society, or other similar causes not common to individuals who are not socially disadvantaged;

ii.    The individual's social disadvantage must be ***rooted in treatment which he or she has experienced in American society***, not in other countries;

iii.   The individual's social disadvantage must be ***chronic and substantial***, not fleeting or insignificant; and

iv.    The individual's social disadvantage must have ***negatively impacted his or her entry into or advancement in the business world***. SBA will consider any relevant evidence assessing this element, including experiences relating to education, employment and business history (including experiences relating to both the applicant firm and any other previous firm owned and/or controlled by the individual), where applicable.

13 C.F.R. § 124.103(c)(2)(i)-(iv) (emphasis added). The regulation provides additional guidance and information as to factors SBA considers in making the social disadvantage determinations, the type of evidence firms must provide, and examples of the type of evidence that would be insufficient to establish social disadvantage. *Id.* § 124.103(c). SBA is applying these standards to all formerly presumptive participants, and will apply them to all new applicants, regardless of their race.[3]

Plaintiff's concern (Doc. 93-1 at 7-8) with SBA's process for reviewing the submissions SBA is now requiring—including Plaintiff's concern with whether the review involves one or four layers and whether it occurs in 5 or 90 days—is likewise misplaced. Plaintiff attempts to compare SBA's review of these submissions to its review of an initial 8(a) application. But an initial application to participate in the 8(a) program requires SBA to assess much more than social disadvantage and is therefore significantly more complex than the submissions SBA is now

---

[3] To support its insinuations of impropriety, Plaintiff selectively quotes from a webinar that SBA participated in to help explain to federal agencies and 8(a) participants what changes SBA was making to comply with the Court's order. The entire webinar is publicly available, and the full context of Plaintiff's selective quotations does not show that SBA is making the process for current participants to establish social disadvantage "easy" as compared to participants who applied without the presumption, as Plaintiff implies. *See* Klein Decl. ¶ 14.

6

requiring to ensure that a participant is socially disadvantaged without reliance on the presumption. When a small business applies to be admitted to the 8(a) program, SBA must determine that the business meets all eligibility requirements for the program, including:

- U.S. Citizenship - 13 C.F.R. § 124.101;
- Size - 13 C.F.R. § 124.102;
- Social disadvantage - 13 C.F.R. § 124.103;
- Economic disadvantage - 13 C.F.R. § 124.104;
- Ownership - 13 C.F.R. § 124.105;
- Control and management - 13 C.F.R. § 124.106;
- Potential for success - 13 C.F.R. § 124.107; and
- Other eligibility requirements (including good character) - 13 C.F.R. § 124.108.

Determination of a business's size, ownership, management, and control, and the business owner's economic disadvantage, involves a time-intensive review of extensive financial and business records, including "financial data and statements, copies of filed Federal personal and business tax returns, individual and business bank statements, personal history statements," and any other documents SBA deems necessary. 13 C.F.R. § 124.203. By contrast, the social disadvantage determination under 13 C.F.R. § 124.103(c) usually involves only the evaluation of the business owner's narrative of the basis for his or her social disadvantage, *see* Klein Decl. ¶ 3, and thus, takes significantly less time to complete than the evaluation of all of the remaining eligibility requirements, in particular a business's size and its owner's economic disadvantage. Plaintiff provides no basis to assume that SBA devotes less time to its social disadvantage evaluation for current participants than for new applicants as part of the much larger initial applicant review. And nothing in SBA's Notice of Compliance suggests that SBA's evaluation of evidence of social disadvantage is truncated in any way for firms who were previously covered by the rebuttable presumption.

SBA, moreover, has devoted significant additional resources to completing these reviews to ensure full compliance with the Court's order and to avoid significant disruptions in light of the

approaching end of the fiscal year. *See* Klein Decl. ¶¶ 5, 9. The federal government relies on small businesses to provide essential goods and services. SBA, USDA, and other agencies must ensure that appropriated funds are properly obligated before September 30 in order to carry out vital federal programs.[4]

SBA has devoted substantial resources to conduct over 1,000 reviews of firms' social disadvantage without use of the presumption by the end of the fiscal year. It has done so to meet vital federal procurement needs for the upcoming fiscal year while fully complying with the Court's order. *See* Klein Decl. ¶¶ 5, 9. SBA's extraordinary resource-intensive efforts demonstrate its good faith and thorough compliance—not, as Plaintiff insinuates without foundation, any effort to skirt the injunction.

**B. Defendants Appropriately Determined that Exercising Priced Options Does Not Involve Use of the Presumption.**

Plaintiff's contention that the Court's injunction prohibits Defendants from exercising options on contracts awarded before the Court's July 19 order is inconsistent with the Court's order and federal law. The Court enjoined Defendants from "using the rebuttable presumption of social disadvantage in administering Defendant SBA's 8(a) program." Doc. 86, at 41. Defendants carefully reviewed the program and concluded that Defendants can only be considered to use the presumption in administering the program at the initial application stage or when SBA otherwise makes an eligibility determination for the program. *See supra* pg. 4. Accordingly, Defendants informed the Court that SBA would require participants who previously relied on the presumption

---

[4] Plaintiff's lack of clarity regarding "whether pending applications from non-minorities . . . are given any expedited treatment" is perplexing. Doc. 93-1 at 8. Only participants who were admitted to the program based on the rebuttable presumption must make this submission to maintain their eligibility following the Court's order. And they must successfully do so before they can obtain a contract award. Doc. 88 ¶ 6. All new and pending applications will be treated in the same way regardless of the race of the business owner. *See* Klein Decl. ¶ 2.

to establish social disadvantage in accordance with 13 C.F.R. § 124.103(c) at those stages. Defendants also were transparent with the Court that they do not interpret the injunction to apply to contracts awarded prior to the Court's July 19 order or to the exercise of priced options or in-scope modifications on such contracts. Doc. 88 ¶¶ 9-10.

Defendants are not arbitrarily picking and choosing points in the 8(a) program at which to apply a social disadvantage review, but instead have interpreted the injunction consistent with longstanding federal regulations. Those regulations, including both SBA regulations and the Federal Acquisition Regulations ("FAR"),[5] are explicit about the circumstances when SBA must make eligibility determinations (and thus potentially use the presumption) and when it does not. They provide that SBA must make an eligibility determination when accepting sole source contracts into the program, 13 C.F.R. § 124.501(g), when approving a competitive acquisition, *id.* § 124.507(b), when reviewing participants' annual submissions, *id.* § 124.112(b), and when procuring authorities seek to exercise unpriced options and out-of-scope modifications, *id.* § 124.514(a), (c).[6] SBA is not required to make such a determination when an agency exercises a priced option or an in-scope modification.[7] Plaintiff would have the Court ignore this careful

---

[5] The Federal Acquisition Regulation ("FAR"), jointly issued by the Department of Defense, the General Services Administration, and the National Aeronautics and Space Administration, is the primary regulation for use by all executive agencies in their acquisition of supplies and services with appropriated funds.

[6] Other actions that require an eligibility determination include: follow-on or repetitive contracts; substitutions (i.e., transferring a contract to a different business); novations; each task or delivery order issued under a Blanket Purchasing Agreement or a Basic Ordering Agreement; task or delivery order contracts, including multiple-award contracts; any sole source award; task or delivery orders under multiple-award contracts not initially set-aside at least partially for competition among 8(a) firms; and sole-source awards. *See* Klein Decl. ¶ 6.

[7] As defined in the FAR, an "option" is "a unilateral right in a contract by which, for a specified time, the Government may elect to purchase additional supplies or services called for by the contract, or may elect to extend the term of the contract." *See* 48 C.F.R. § 2.101. Priced options are evaluated as part of the initial solicitation and competition and are included in the terms of the

delineation of SBA's role in the contracting process without any basis in law. The Court should decline to do so.

## II.    <u>There Is No Basis For Imposing "Prophylactic Measures"</u>

Plaintiff's request for "certain prophylactic measures" to ensure Defendants' compliance with the Court's order is extraordinary and unfounded, especially considering SBA's actions to comply with the Court's injunction. Doc. 93-1 at 11. Plaintiff asks the Court to (1) appoint a monitor to review SBA's certification of 8(a) participants that previously relied on the rebuttable presumption or to make the social disadvantage narratives—and SBA's decision on each of them—public; (2) temporarily enjoin defendants from awarding, completing, modifying, or exercising options on any contracts through the Section 8(a) Program to 8(a) participants who benefited from the rebuttable presumption even if SBA has already established the participant's social disadvantage without reliance on the presumption; and (3) temporarily halt SBA's review of current participants' social disadvantage pending resolution of Plaintiff's motion. Doc. 93 at 1. Plaintiff does not cite any source to support imposing these measures on the federal agency defendants, nor does Plaintiff identify any evidence of improper conduct that might justify such measures. Accordingly, the Court should deny the requested relief.

First, the Court should reject Plaintiff's request that the Court appoint a monitor to oversee SBA's social disadvantage determinations of 8(a) participants that previously relied on the

---

contract. 48 C.F.R. §§ 17.203(a), 17.204. Priced options also are included in the total value of a contract. 13 C.F.R. § 124.502(c). Since priced options are part of the terms of a contract, they do not constitute a new contract and do not exceed the initial terms of the contract. There is thus no basis to treat the exercise of priced options on already existing contracts any differently than the continuation of an existing contract. Other types of actions that do not involve an eligibility determination include: in-scope modifications; competed task orders and delivery orders issued under an 8(a) multiple award contract already accepted by SBA (e.g., GSA government-wide IDIQ and GSA 8(a) STARS III GWAC); and task and delivery orders issued under GSA Federal Supply Schedule contracts already accepted by SBA. *See* Klein Decl. ¶ 7.

presumption. Plaintiff has not challenged SBA's application of 13 C.F.R. § 124.103(c)—which does not involve a racial classification—and Plaintiff has presented no evidence of any constitutional violation related to SBA's determinations under 13 C.F.R. § 124.103(c). Plaintiff cites no precedent where a court has appointed a monitor to oversee federal agency operations in like circumstances over the agency's objection, and Defendants are aware of none. In the rare circumstances in which a federal court has appointed a monitor to oversee a federal agency's operations, it has been through agreement of the parties, after a finding of contempt, or, at minimum, where there is evidence of substantial misconduct by the government. *See Cobell v. Babbitt*, 91 F. Supp. 2d 1, 55 (D.D.C. 1999) (noting that a citation for civil contempt and "the most egregious governmental misconduct that it has ever seen" prompted the court to appoint a monitor to ensure the Department of Interior's compliance with discovery duties). Plaintiff does not make, much less support, any similar allegations here. The Court should not impose such extraordinary relief based on pure speculation, particularly given the significant separation-of-powers implications raised by Plaintiff's requested relief. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (appropriately limiting injunctive relief to a plaintiff's actual injury to "prevent courts from undertaking tasks assigned to the political branches"); *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 111 F.3d 528, 533 (7th Cir. 1997) (noting that when injunctive relief "is addressed to a branch of government rather than to private persons, it must be formulated with sensitivity to the separation of powers").

Plaintiff's alternative request—that the Court require SBA to make the social disadvantage narratives public along with SBA's determination on them—has no more merit. The narratives (and other eligibility materials a business owner submits to SBA to establish eligibility for the 8(a) program) are part of a "system of records" protected from disclosure by the Privacy Act. *See* 5

U.S.C. § 552a(b); *see also* §§ 552a(a)(4) (defining record) and 552a(a)(5) (defining system of records). As required by the Privacy Act, SBA has published a Systems of Record Notice in the Federal Register that covers these materials. *See* https://www.govinfo.gov/content/pkg/FR-2023-01-17/pdf/2023-00623.pdf. Additionally, the online portal that 8(a) applicants and participants use to submit eligibility materials includes a notice that "SBA will protect the information you provide in accordance with the Privacy Act of 1974 and will only share information provided as required by law." *See* Klein Decl. ¶ 13.

While a Court may order the disclosure of records protected under the Privacy Act, in making such a determination, courts balance the requesting party's need for disclosure against the potential harm to the subject of the disclosure. *See, e.g.*, *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1447 (11th Cir. 1984).[8] Here, Plaintiff has offered only unfounded speculation to support its "need" for this protected information. On the other hand, the harm to small business owners would be significant. Evidence of social disadvantage submitted by business owners contains highly sensitive and personal information about discrimination and bias they have faced. Requiring such information to be released publicly may dissuade small business owners from applying to the program out of fear that their personal experiences of discrimination and bias would be available for public consumption and judgment. Plaintiff does not specify whether this large-scale release of Privacy Act protected information would apply to all social disadvantage narratives submitted to SBA or only those of 8(a) participants that previously relied on the presumption. If the latter, the result would be that only business owners of certain races would be made to submit

---

[8] Plaintiff's request is unusual in that rather than seeking the disclosure of records through discovery or some other Court-managed process, Plaintiff is asking the Court to make the narratives "public." Plaintiff provides no basis for the Court to order such relief.

to such scrutiny. The Court should outright reject this request, which Plaintiff fails to support with any legal authority.

Second, the Court should reject Plaintiff's request to "temporarily enjoin" (until a resolution of this motion) Defendants from "awarding, completing, modifying, or exercising options on any contracts through the Section 8(a) Program to 8(a) participants who benefited from the rebuttable presumption" even if SBA subsequently approved a "narrative of social disadvantage." Doc. 93 at 1-2. Plaintiff mentions this request in the introduction and conclusion of its supporting brief, but never addresses or supports this request or cites a standard by which the Court should evaluate it. That failure is reason enough to deny the request. It is unclear whether Plaintiff's request for the Court to "temporarily enjoin" certain actions is a request for a temporary restraining order or some other relief. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 571-72 (6th Cir. 2002) (treating a motion for a temporary injunction as a request for a preliminary injunction, but noting that "[b]ecause the Federal Rules of Civil Procedure do not recognize the existence of a 'temporary injunction,' the district court treated the motion as a motion for a temporary restraining order"). To the extent the Court treats Plaintiff's vague request as one for a temporary restraining order, Plaintiff provides no basis for this "extraordinary remedy" for which the movant must establish that "the circumstances clearly demand it." *Blount Pride, Inc. v. Desmond*, --- F.Supp.3d ---, 2023 WL 5662871, at *3 (E.D. Tenn. Sept. 1, 2023).

But even if the Court considered this vague request, it should reject it. Plaintiff's failure to support this request with any argument or discussion conceals the profound implications it would have. If granted, SBA would be prevented from approving the award of an 8(a) contract in *any* industry by *any* federal agency only to businesses owned by individuals of certain races—even if those business owners have since established social disadvantage without reliance on the

13

presumption. Meanwhile, SBA would be permitted to approve 8(a) contract awards to business owned by individuals of other races.

As to Plaintiff's request that the Court temporarily enjoin Defendants from "completing" any contracts, it is unclear whether Plaintiff is asking the Court to prohibit USDA from finalizing and signing contracts already approved for award by SBA or to require USDA to issue stop work orders on the hundreds of 8(a) contracts through which it is receiving goods and services department-wide. These include contracts providing goods and services in industries unrelated to those in which Plaintiff operates. Such a prohibition would dramatically disserve the public interest. The relief Plaintiff seeks would halt all such contracts, regardless of the drastic effects this could have on the American public. Plaintiff provides no basis for such interference and offers no reason to conclude that such extraordinary relief is necessary to effectuate the Court's order. The Court has found no constitutional defect in the 8(a) program beyond SBA's use of the presumption; SBA has now halted all use of the presumption, so there is no basis for the Court's remedy to go any farther.

Third, the Court should reject Plaintiff's request that the Court "temporarily halt" SBA's review of social disadvantage of current participants, i.e., the remedial action required by the Court's order. Plaintiff offers no evidence to support this request. Such relief has no basis in this Court's order, and it would prevent federal agencies that are not a party to this litigation from filling vital procurement needs for goods and services through the 8(a) program. It also would prevent only 8(a) participants owned by members of certain races from receiving contracts through the program—even if they have already established social disadvantage without the rebuttable presumption or may be fully capable of doing so—while participants owned by other races are free to receive 8(a) contract awards. Plaintiff offers no justification to disqualify only minority-owned

businesses from receiving 8(a) awards, solely on the basis that they received the presumption through no fault of their own.

In sum, Plaintiff has given the Court no basis to presume that Defendants have violated or will violate this Court's order or that SBA will violate the standards in its own regulation for determining social disadvantage. Plaintiff provides the Court with no evidence of any wrongdoing, much less the level of misconduct that might justify the prophylactic measures it seeks. Thus, the Court should permit Defendants to continue to fully implement the Court's injunction.

## III. The Court Should Not Expand the Scope of the Injunction Further Than Necessary to Remedy the Equal Protection Violation Found by This Court

Plaintiff is not satisfied with having an equal chance to apply to the 8(a) program or to compete for contracts without the use of the rebuttable presumption. It now wants the Court to bar all federal agencies from using the program in the administrative and technical support industries[9] altogether—even without the presumption. Doc. 93-1 at 6. Plaintiff already made this request in its motion for summary judgment (Doc. 60) and supporting memorandum (Doc. 60-2 at 2), but the Court appropriately limited the injunction to the aspect of the program the Court found impermissible—the rebuttable presumption. And to the extent the Court agrees with Defendants that the current order does not cover options exercised on contracts awarded before that order, Plaintiff asks the Court to expand the injunction to apply in that manner. The Court should decline both requests as they exceed what is necessary to remedy Plaintiff's injury, are contrary to law, and would harm the public interest.

---

[9] Plaintiff defines the administrative and technical support industries as consisting of work in NAICS codes 541611 (Administrative Management and General Management Consulting Services), 561110 (Office Administrative Services), and 561320 (Temporary Help Services). Even if the Court were to consider Plaintiff's request, it should not enjoin use of the 8(a) program in NAICS 561320 because Temporary Help Services encompasses services broader than just administrative and technical support. *See* https://www.bls.gov/oes/current/naics5_561320.htm.

15

## A. Prohibiting Use of the 8(a) Program Even without the Presumption Reaches Further Than Necessary to Remedy Plaintiff's Injury.

The Sixth Circuit has made clear that "[d]istrict courts 'should not issue relief that extends further than necessary to remedy the plaintiff's injury.'" *L.W. v. Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023) (citing *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023)). That is precisely what the expanded injunction Plaintiff seeks would do, and the Court should reject it.

In determining that Plaintiff had standing, the Court determined that Plaintiff was injured when the rebuttable presumption "impos[ed]" an unconstitutional "barrier" to qualifying for the 8(a) program, Doc. 86 at 15, and that this injury was redressable because "[a] judgment prohibiting Defendants from using the rebuttable presumption based on race would remove the race-based barrier that injures Ultima," *id.* at 16-17. The Court did just that when it enjoined Defendants from using the presumption in administering the 8(a) program. *Id.* at 41.

The Court's ruling is consistent with how Plaintiff characterized its challenge to racial discrimination in the program. In its Complaint, Ultima alleged that the 8(a) program discriminates based on race "[b]y presuming that members of certain racial groups are socially disadvantaged." Doc. 1 ¶ 41. In moving for summary judgment, Plaintiff asserted that "defendants must demonstrate that the *presumption* is a narrowly-tailored means of achieving a compelling governmental interest." Doc. 60-2 at 21 (emphasis added). And in ruling on the merits, the Court found that "Defendants' use of the rebuttable presumption violates Ultima's Fifth Amendment right to equal protection of the law." Doc. 86 at 40. As a result, Plaintiff may apply to the 8(a) program on the same basis as all other applicants to the program, regardless of race.[10] Indeed,

---

[10] SBA reopened its portal to accept new applications to the 8(a) program on September 29, 2023. *See* Klein Decl. ¶ 10. The revised application for all applicants includes a questionnaire process—as opposed to an open essay format—for submitting a narrative to establish social disadvantage for processing purposes. *See* Klein Decl. ¶¶ 11-12. The information and evidence required to be

16

Plaintiff has asserted that "the most obvious race-neutral alternative" would be "eliminating any presumption," Doc. 70 at 24, and that "[e]ven if 'Plaintiff cannot show it is likely that a favorable decision would prevent the government from setting aside contracts for disadvantaged businesses,' the elimination of a *race-based* barrier is sufficient to afford Ultima relief." *id.* at 33 (internal citations omitted).

Now Plaintiff wants more. Plaintiff asks the Court to preclude Defendants from using the 8(a) program in the industries in which Plaintiff operates.[11] Doc. 93-1 at 10. But it cannot demonstrate it is entitled to an injunction eliminating a program that does *not* use a race-based presumption or classification. Most importantly, it has not shown it suffers any cognizable harm from an 8(a) program that operates without use of a rebuttable presumption. Any injury that Plaintiff allegedly suffers now—by not being able to compete for contracts under a program that does not use any race-based presumption—does not flow from the practice the Court found to be a constitutional violation. Nor has Plaintiff alleged that SBA improperly has or will deny its entry into the program under the post-July 19 procedures. Further, a challenge to a presumption-free 8(a) program is not before the Court, and any such challenge would be subject to rational basis review, which it easily would survive. *See Rothe Dev. Corp. v. Dep't of Def.*, 836 F.3d 57, 72-73 (D.C. Cir. 2016).

---

submitted and the preponderance-of-the-evidence standard used for reviewing applications are unchanged. *See id.* ¶ 2; *see* 13 C.F.R. § 124.103(c).

[11] Plaintiff does not limit its request to NRCS contracts, even though Plaintiff alleged that its inability to compete for NRCS contracts was the basis for its standing. Indeed, Ultima has repeatedly represented to the Court that the contracts Ultima has competed for and remains ready, willing, and able to compete for, provide administrative and technical support not just to USDA, but specifically to NRCS, an agency within USDA. Doc. 1 at 2; Doc. 60-1, ¶¶ 15-16; Doc. 60-4 at ¶¶ 17, 20-21.

In urging the Court to issue a more expansive injunction, Plaintiff cites the general principle that a district court's equitable powers in fashioning relief are broad. Doc. 93-1 at 9. That maxim is of little value without a discussion of the appropriate limits placed on those powers. Indeed, Plaintiff cites an out-of-circuit district court case to encourage the Court to expand its injunction, but neglects to inform the Court that much of the relief granted in that decision was reversed upon review by the Seventh Circuit. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 111 F.3d 528, 533 (7th Cir. 1997) (confirming that the "discretionary power of a district court to formulate an equitable remedy for an adjudicated violation of law is broad. . . . But equitable discretion is not unlimited, and a number of principles have emerged to guide its exercise") (citations omitted). There, the Seventh Circuit found that much of the injunctive relief granted by the district court violated precepts that guide the appropriate scope of equitable relief, including avoiding enmeshing the federal court in the administration of a government program and tailoring the remedy to the violation, "rather than the violation's being a pretext for the remedy." 111 F.3d at 534. The new relief Plaintiff seeks here would do the same.

Plaintiff also cites *Dynalantic Corp. v. Department of Defense*, 885 F. Supp. 2d 237 (D.D.C. 2012), where the United States District Court for the District of Columbia held that the 8(a) program is constitutional on its face, but not as applied by SBA and the Department of Defense ("DOD") to award contracts in the military simulation industry. Doc. 93-1 at 11. There, the court enjoined SBA and DOD from awarding procurements for military simulators under the 8(a) program without first articulating a strong basis in evidence for doing so. *Dynalantic*, 885 F. Supp. 2d at 293. But the Court in *Dynalantic* did not enjoin use of the rebuttable presumption, as this Court did. Thus, the race-conscious element remained in the program. Here, having enjoined use

of the presumption, there is no basis for the Court to further enjoin use of the program because the race-conscious element has been eliminated for *every* industry.

The injunction issued in *Dynalantic* also was much narrower than the injunction issued by the Court in this case because it involved military equipment. Thus, the injunction in *Dynalantic* was effective only as to the Defendant in that matter, DOD. In other words, it was tailored to extend no further than necessary to afford that plaintiff complete relief. By contrast, Plaintiff asks for a remedy here that would apply to every federal agency, including agencies that are not parties to this case. Every federal agency needs administrative and technical support services, so the scope of an injunction "tailored" as Plaintiff urges here would dwarf that in *Dynalantic*. In *Dynalantic*, Defendant DOD could implement the injunction by restricting a small and easily identifiable subset of DOD procurement from the 8(a) program. Plaintiff's request here would require government-wide sequestration from the 8(a) program of multiple types of services and awards in multiple industries with multiple NAICS codes with no set end date.[12] It would preclude all 8(a) participants, even entity-based participants like Indian tribes and Alaska Native Corporations that never relied on the presumption—and that the parties agree were not affected by the Court's July 19 order—from contract awards in these industries through the 8(a) program. Such relief would extend far beyond Plaintiff's injury and the constitutional violation identified. Plaintiff's efforts to have the Court expand its injunction to reach nonparty federal agencies and small businesses contravenes Sixth Circuit authority holding that "[a]court order that goes beyond the injuries of a

---

[12] On September 19, 2023, counsel for Defendants conferred with Plaintiff's counsel to clarify the scope of the relief Plaintiff is seeking. Plaintiff's counsel explained that if SBA is involved, which it would be to approve the award of any contract through the 8(a) program, then it considers that a use of the program by Defendants.

19

particular plaintiff to enjoin government action against nonparties exceeds the norms of judicial power." *Skrmetti*, 73 F.4th at 415.

### B. Prohibiting USDA from Exercising Options on Contracts Would Unnecessarily Interfere with the Provision of Necessary Goods and Services and Extends Beyond Plaintiff's Injury.

The Court premised its determination that Ultima demonstrated standing based on Plaintiff's alleged injury of being unable to compete for contracts on equal footing and Ultima's request for prospective relief to level the playing field going forward. Doc. 86 at 17. By enjoining Defendants from using the rebuttable presumption, Plaintiff is now able to apply to the 8(a) program on an equal basis and is not precluded from competing equally for contracts based on race—the criterion the Court found impermissible in its order. But Plaintiff now asks that the Court not only level the playing field to allow it to compete equally for contracts going forward, but to reach back and interfere with contracts already awarded to other small businesses. This includes businesses performing work in industries unrelated to those in which Ultima operates and for parts of USDA with which Ultima has never sought to contract. The Court should decline this request, which would be contrary to well-established equitable principles governing the proper scope of an injunction. *See, e.g.*, *Skrmetti*, 73 F.4th at 415; *Kentucky v. Biden*, 57 F.4th at 556.

The relief Plaintiff seeks would go far beyond anything needed to redress Plaintiff's injury. It would also unnecessarily interfere with the vital and uninterrupted provision of goods and services to USDA. The FAR provides that one of the primary justifications for including options in a contract is the recognition of the government's need for continuity of operations and the potential cost of disruptions to support. 48 C.F.R. § 17.202(d). For these reasons, the regulations require that if an 8(a) participant is deemed no longer eligible for the 8(a) program while performing work on a contract—whether the participant graduates from the program, is suspended, or is terminated—the participant must keep performing work until the completion of the contract,

20

including any priced options that may be exercised. 13 C.F.R. §§ 124.304(f)(1), 124.305(h)(7); 48 C.F.R. § 19.816(a) ("Except as provided in paragraph (c) of this section, when a contractor exits the 8(a) program, it is no longer eligible to receive new 8(a) contracts. However, the contractor *remains under contractual obligation to complete existing contracts, and any priced options that may be exercised*.") (emphasis added). Precluding USDA—or any other federal agency—from exercising options on existing contracts would contravene existing regulations intended to avoid disruptions to federal government operations, even though Ultima has neither challenged those regulations nor suggested that Plaintiff is injured by them in any way.

Were Plaintiff to succeed in all respects in its request to modify the Court's injunction, it would significantly limit the functions and efficacy of the 8(a) program, far beyond what is required to excise the presumption this Court deemed unlawful. The Court should not exercise its equitable authority to bring much of the 8(a) program—well beyond the sole aspect of the program that Ultima has challenged in this case—to a sudden halt.

## **CONCLUSION**

For these reasons, this Court should deny Plaintiff's motion to expand the Court's injunction and deny Plaintiff's request for prophylactic measures related to Defendants' implementation of the injunction.

Dated: September 29, 2023

Respectfully submitted,

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

OF COUNSEL:

David A. Fishman
Assistant General Counsel for Litigation

Eric S. Benderson
Associate General Counsel for Litigation
U.S. Small Business Administration

Stephanie Moore
Senior Counsel

Angela Boyd Matthews
Associate Regional Attorney
U.S. Department Of Agriculture

ANDREW BRANIFF (IN Bar No. 23430-71)
Deputy Chief


By: */s/ Juliet E. Gray*
Juliet E. Gray (D.C. Bar No. 985608)
Christine T. Dinan (D.C. Bar 979762)
Kacie S. Candela (N.Y. Bar No. 6013106)
Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 598-1600
Juliet.Gray@usdoj.gov
Christine.Dinan@usdoj.gov
Kacie.Candela@usdoj.gov

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2023, I electronically filed the above document with the Clerk of the Court using the ECF System, which will send notification of such filing to all counsel of record.

/s/ Juliet E. Gray
Juliet E. Gray
Senior Trial Attorney