UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
-----------------------------------------------------------------------x
ULTIMA SERVICES CORPORATION,                    :
                                                :
    Plaintiff,                                  :
                                                :
        -against-                              :
                                                :
                                                : No.2:20-cv-00041
                                                : DCLC-CRW
U.S. DEPARTMENT OF AGRICULTURE,                 :
U.S. SMALL BUSINESS ADMINISTRATION,             :
SECRETARY OF AGRICULTURE, and                   :
ADMINISTRATOR OF THE SMALL BUSINESS             :
ADMINISTRATION,                                 :
                                                :
    Defendants.                                 :
                                                :
-----------------------------------------------------------------------x

PLAINTIFF'S REPLY MEMORANDUM WITH RESPECT TO
EQUITABLE RELIEF

Introduction

Defendants' opposition to Ultima's motion for additional equitable relief is more conspicuous for what it does not say than what it does. To wit:

- Defendants do not dispute that they have not made any 408 Reports available to the public since Fiscal Year 2017. *See* Plaintiff's Memorandum Of Law With Respect To Equitable Relief ("Pl's Memo.") 9 (PageID # 3344) n.2.

- Defendants do not dispute that, prior to July 19, 2023, narratives of social disadvantage (along with the rest of the application) went through a four-level review process (Pl's Memo. 3-4, PageID # 3338-39). They do not assert anywhere that they have been using the same four-part process to review the new narratives of social disadvantage from companies that received the benefit of the presumption of social disadvantage.

- Defendants do not dispute that the new narratives of social disadvantage – part of the application process from which members of certain races were unconstitutionally excused -- have been getting expedited treatment while pending applications from non-minorities have not. They are "perplex[ed]" (Defendants' Memorandum of Law In Opposition To Plaintiff's Motion For Additional Equitable Relief ("Dfs' Memo.") 8 n.4 (PageID #3396) how anyone could be concerned that partial applications from

1

certain preferred races are getting expedited treatment while full applications from members of other races are apparently being placed in the back of the line.[1]

- Defendants do not dispute that one purpose of equitable relief is to remedy the lingering effects of past discrimination, not merely to ensure that discrimination does not take place in the future. Nor do they dispute that Ultima was deprived of many opportunities even to compete for contracts because of Defendants' extensive use of the 8(a) Program in its industry. Dfs' Memo. 1 (PageID # 3389) ("three of the largest industries used by the program").[2]

- Defendants do not dispute that the guidance for narratives of social disadvantage that they published in August 2023 is new. Pls' Memo. at 4-6 (PageID ## 3339-41).

---

1. Defendants state that they reopened the portal for applications on September 29, 2023, the same date that they filed their opposition. Dfs' Memo. 2 (PageID # 3390). Prior to that time, though, they were still processing completed applications from those who had not relied upon the presumption (*i.e.*, including those who submitted a narrative). Doc. 88-1 at 2 (PageID # 3306) ¶2. Thus, while it is technically true that "[o]nly participants who were admitted to the program based on the rebuttable presumption must make this submission to *maintain* their eligibility" and "before they can obtain a contract award," Dfs' Memo. 8 (PageID # 3396) n.4 (emphasis added), those individually-owned companies with pending applications had to make the very same submission to *obtain* eligibility and procure contract awards.

2. For their part, the *amici* acknowledge that Ultima "sought relief over the course of this litigation that impacts 8(a) contracts for Indian tribes and ANCs." Doc. 100 at 13 (PageID # 3475). Given that, one might have expected some explanation for why they waited until the eleventh hour to assert their position.

2

- Defendants finally try to explain the desire for a new process for evaluating whether an applicant's owner(s) are socially disadvantaged. Doc. 94-1 at 4 (PageID # 3415) ¶ 11 ("revised slightly"). *Id.* ¶12. The new system, which "includes prompts for applicants to focus the social disadvantage responses," *id.*, is designed to "reduce the need for SBA to go back to the applicant and request additional information," (Doc. 94-1 at 5 (PageID # 3416) ¶12. Defendants do not explain why avoiding such needless back-and-forth was not a concern when only non-minorities were required to submit narratives.

As shown below, for these and other reasons, additional equitable relief is warranted.

## Argument

I. DEFENDANTS' CONTENTION THAT ONLY THE SBA CAN "USE" THE REBUTTABLE PRESUMPTION IS WRONG.

Defendants' assertion that various contract actions, like the exercise of priced options or the issuance of task orders in a multiple contract award, are not "using" the rebuttable presumption in the administration of the Section 8(a) Program is more of an *ipse dixit* contention than an analysis of the word "use." *E.g.*, Df's Memo. 3 (PageID # 3391) n.1 ("SBA is the only agency that . . . 'uses' the presumption"); *id.* at 8 (PageID # 3396) ("Defendants . . . concluded that Defendants can only be considered to use the presumption in administering the program at the initial application stage or when SBA

3

otherwise makes an eligibility determination for the program."); Klein Declaration, Doc. 94-1 at 3 (PageID # 3414) ¶7. In short, Defendants equate "using" the rebuttable presumption in the "administration" of the 8(a) program with the SBA making an eligibility determination.

Thus, according to Defendants, this Court's decision to enjoin the USDA from "using" the presumption was pointless because the USDA *never* uses the presumption, at least not on its own. But why should this be so? If it issues a task order in the 8(a) Program pursuant to a multiple award contract, it is bestowing a benefit on the contractor. If that contractor is in the 8(a) Program because of the presumption of social disadvantage, the agency is using that presumption to obtain some service that it needs that it would otherwise have to get through some other means (including through open bidding or through an 8(a) contractor that did not enter the Program with a presumption). *E.g.*, *Smith v. United States*, 508 U.S. 223, 225 (1993) (holding that proposing to trade a gun for drugs constituted "use" of a gun for federal criminal statute purposes). *See* Dfs' Memo. 9 (PageID # 3397) n.7 (noting that the definition of "option" in the regulations involves the Government "elect[ing] to purchase additional supplies or services . . . or . . . elect[ing] to extend the term of the contract.").

II. ULTIMA IS ENTITLED TO RELIEF WITHIN ITS INDUSTRY.

In its moving memorandum, Ultima demonstrated that a court that has found illegal discrimination can use its equitable powers both to prevent

4

future discrimination and to eliminate lingering effects of past discrimination. Pl's Memo. 8 (PageID # 3343). Neither Defendants nor the *amici* bother to address this dual purpose of equitable relief. Instead, their argument proceeds as if preventing future discrimination were the only possible objective of such relief. *E.g.*, Dfs' Memo. 17 (PageID # 3405) ("Any injury that Plaintiff allegedly suffers *now* . . . does not flow from the practice the Court found to be a constitutional violation.") (emphasis added).

The use of equitable relief here to ameliorate the lingering effects of discrimination is particularly important given that a damages remedy is unavailable under this Court's prior rulings.

Defendants' efforts to distinguish *DynaLantic v. Dep't of Defense*, 885 F. Supp. 2d 237 (D.D.C. 2012) are meritless. (The *amici* ignore this case altogether.) Although they concede (as they must, *see id.* at 242) that SBA was a defendant in that case (Dfs' Memo. 18 (PageID # 3406)), Defendants claim that the injunction there "was effective only as to the Defendant in that matter, DOD." *Id.* at 19 (PageID # 3407). Defendants offer no explanation for this omission.[3] Nor do they explain why the injunction there, prohibiting the

---

3. Perhaps Defendants are claiming that only the Department of Defense would use the services of a military training company, but they do not make that claim explicit, much less try to defend it. It seems quite likely that agencies like the FBI, CIA, IRS, ICE, DEA, and BATF might have some need for training in "military" equipment. In any event, the SBA was a defendant in *DynaLantic* and was (and is) limited by the injunction whenever it might have used the 8(a) Program with some other federal agency. And, despite Defendants' efforts to inflate Ultima's proposal "to every federal agency, including agencies that are not parties to this case," Dfs' Memo. 19 (PageID #

5

use of the 8(a) Program in an entire industry, *including by the SBA*, "extend[ed] no further than necessary to afford that plaintiff complete relief," *id.*, but a near identical one here would not. As Ultima pointed out in its moving memorandum, the constitutional flaw in *DynaLantic* was *the use of race* in a particular industry without a proper justification. Defendants here do not (and presumably cannot) explain why an injunction precluding the *DynaLantic* defendants from contracting only with those 8(a) participants in the relevant industry who received the presumption of social disadvantage would not have sufficed to "afford that plaintiff complete relief."[4]

Defendants offer several additional, yet not-fully-developed arguments against an injunction remedying the lingering effects of their past discrimination. First, they suggest that the proposed injunction "would require government-wide sequestration from the 8(a) program of multiple types of services and awards in multiple industries with multiple NAICS codes with no set end date." Dfs' Memo. 19 (PageID # 3407). But they do not

---

3407), what Ultima is asking for here is no different from the injunction ordered by the court in *DynaLantic*. Nor is it different, at least in the respect of the breadth of its effect, from the July 19 Order, which also had an indirect effect (through the SBA) on every federal agency. *See* Doc. 86 at 41 (PageID # 3296) n.10.

4. Defendants assert that "the race-conscious element remained in the program," Dfs' Memo. 18 (PageID # 3406), but this is simply circular reasoning. They do not explain why the court there did not simply eliminate the race-conscious element (instead of the use of the 8(a) Program in general) in the affected industry. As Defendants argue it, the narrower flaw in *DynaLantic* justified a broader injunction (affecting the entire industry and not just those who received a racial benefit) whereas the broader flaws this Court found can only justify a narrower injunction. Ultima submits that this is counterintuitive.

6

identify these multiple "services," "industries," or "NAICS codes" beyond the few that Ultima proposed in its moving memorandum. *See* Dfs' Memo. 15 (PageID # 3403) n.9 (disputing that one of the three NAICS codes proposed by Ultima should be deemed part of the administrative and technical support industry).

Nor can Defendants plausibly allege that not using the Section 8(a) Program will be a severe hindrance to the government's ability to obtain administrative and technical support. All any agency would have to do is follow the normal procedures for government contracting: create a requirement and invite interested contractors to bid.

Second, Defendants (and the *amici*) point out that the injunction would affect all 8(a) participants, even those not benefitted in the past by the presumption of social disadvantage,[5] while the *amici* point out that ANCs and Native American tribes that participate in the 8(a) program would be affected. This is so, but it is a standard application of equitable principles

---

5. Defendants assert that entity-based participants "never relied on the presumption." Dfs' Memo. 19 (PageID # 3407). This is a bit misleading. Entity-owned participants do not have to prove social disadvantage (and Alaska Native Corporations need not prove social or economic disadvantage). 13 C.F.R. § 124.109(a)(4) (individuals controlling ANC-owned participants need not show social or economic disadvantage). Presumably, Defendants are asserting that there is no *racial* distinction, although this too is debatable at best. 43 U.S.C. § 1602(b) (defining "Alaska Native" by "minimum blood quantum"); 43 U.S.C. § 1606(g) (shares of stock in ANCs distributed to Alaska Natives). None of the cases that *amici* cite on pages 7-8 of their brief (PageID ## 3469-70) to support the proposition that tribal classifications are political involved ANCs. The specific blood requirement for Alaskan Natives distinguishes ANCs from Indian Tribes. *Id.* at 9 (PageID # 3471) n.8.

7

that equitable relief to remedy discrimination will sometimes affect third parties who were not responsible for the discrimination. When crafting a properly tailored remedy to cure the effects of prior discrimination, "a sharing of the burden" by innocent parties is permissible. *Fullilove v. Klutznick*, 448 U.S. 448, 484 (1980); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 777 (1976). This is the case with the Court's July 19 Order as well; those benefiting from the presumption of social disadvantage did not themselves engage in discrimination. And, here, it is hardly a heavy burden such third parties are being asked to carry, particularly when one considers the scope of contracts in administrative and technical services compared with the plethora of overall federal contracting opportunities. Ultima is not asking this Court to give it an advantage over any 8(a) participant. It is merely asking that it *not* be put at a *dis*advantage. Participants in the Section 8(a) Program, whether they received the benefit of the presumption of social disadvantage or not, are free to bid against Ultima (or anyone else) for any contract in the administrative and technical support industry. Moreover, even if SBA is enjoined from reserving contracts in administrative and technical services to the 8(a) program, Ultima will still find itself in an inferior position than it would have been in in the absence of discrimination. The relief Ultima seeks--while a more complete form of relief than the July 19 Order awarded--in no sense constitutes complete relief.

### III. PROPHYLACTIC RELIEF IS APPROPRIATE.

Ultima's moving papers demonstrate that Defendants have rushed to qualify those who previously benefitted from the presumption of social disadvantage and may have cut a few corners to do so. Specifically, Ultima questioned whether the complete four-level review of applications (part of which is Congressionally mandated) is being followed. Remarkably, while Defendants claim that the standard that they are following has not changed, they say very little about the process.

What little is said raises more questions than it answers. While Defendants are correct that the narrative of social disadvantage is only one part of the application process and should not take as long as a review of an entire application, five or fewer days for review by four-different government employees in different offices (including the Director of the Office of Certification and Eligibility ("OCE") and the BD Associate Administrator, both of whom previously reviewed and approved *all* applications of those not benefitted by the presumption) would be a remarkable bureaucratic feat. And Defendants give no assurance that the narratives of social disadvantage are receiving the same levels of scrutiny as those previously submitted by companies whose owners were not members of the preferred races. *E.g.* Dfs' Memo. 6 (PageID # 3394) ("Plaintiff's concern with whether the review involves one or four layers . . . is . . . misplaced."). Using the rebuttable

9

presumption to identify those applications that will have fewer people review the narratives is still using the rebuttable presumption.

A total of 34 attorneys have apparently been assigned from SBA's Office of General Counsel ("OGC") to review evidence of social disadvantage: four to assist the Office of Certification and Eligibility ("OCE") with narratives related to contract actions and thirty (30) to conduct such review for existing 8(a) participants unrelated to contract actions (as part of a larger "task force" that includes OCE personnel). Klein Decl. 2-3 (PageID ## 3413-3414) ¶¶ 5, 9. The latter were given three trainings, but nothing is said about any training for the former. *Id.* Given the high percentage of contract dollars committed in August and September, *id.* ¶ 5, this seems a rather odd omission. Moreover, Defendants assert that the task force is conducting the evaluations in "the same manner as OCE personnel conducting social disadvantage determinations associated with contract awards" (*id.* ¶ 9), which is conspicuous in its omission of the four OGC lawyers (the ones for whom no training is mentioned) supposedly working on the same thing (narratives related to contract actions) as the referenced OCE personnel.

All of this is questionable under federal law because it is OCE (and not OGC) which is tasked by Congress to "receive, review, and evaluate applications for certification pursuant to paragraph[] . . . 5 of section 637(a)" (defining "socially disadvantaged" persons). *See* 5 U.S.C. § 636(j)(11)(E), (F). Moreover, there is no discussion of the four-level review that applied to the

10

narratives that were part of the applications that individuals not benefited by the presumption of social disadvantage previously submitted.

These lingering questions surrounding this process demand some sort of prophylactic relief, whether it be disclosure of the narratives or monitoring the process. Ultima has asked this Court to make the narratives available *with redactions to protect the identities of the authors*,[6] and thus Defendants' Privacy Act objections are irrelevant.[7] Ultima's moving papers also argued that "[a]t the very least, the SBA should be required to identify how many narratives of social disadvantage have been approved, and how many rejected, since the July 19 order. . ." Pl's Memo. 11 (PageID # 3346). Since Defendants did not provide that information (and have not given any indications that they intend to do so), this Court should consider either

---

6. Courts often utilize redaction to satisfy Privacy Act concerns when ordering disclosure of government records. *See, e.g.*, *Dayton Newspapers, Inc. v. Dep't of the Air Force*, 35 F. Supp. 2d 1033, 1035 (S.D. Ohio 1998) (ordering disclosure of a military wide database collecting medical malpractice information with redactions of "claimants' names, social security numbers, home addresses, home/work telephone numbers and places of employment" so as not to create "an unwarranted invasion of an individual's privacy" under the Privacy Act); *Savada v. United States Dep't of Defense*, 755 F. Supp. 6, 7-9 (D.D.C. 1991) (ordering production of certain documents to employee who was denied a security clearance, noting that information revealing the identity of confidential sources protected by the Privacy Act can be redacted "but the balance of these documents must be released.").
7. Echoing their defense of the racial presumption of social disadvantage, Defendants repeat again that those with "credible information" that an individual is not socially disadvantaged can submit that information. Dfs' Memo. 5 (PageID # 3393) n.2. But that technical possibility is no more realistic than it was with respect to the racial presumption (Doc. 86 at 32-33 (PageID ## 3287-88)) if the narratives are not available to review.

11

requiring them to do so or adopting one of the other prophylactic measures identified in Ultima's moving papers.[8]

Conclusion

For the foregoing reasons, and the reasons set forth in Ultima's moving papers, its motion for additional equitable relief should be granted.

>Respectfully submitted,
>
>*/s/ Michael E. Rosman*
>Michael E. Rosman
>Michelle A. Scott
>CENTER FOR INDIVIDUAL RIGHTS
>1100 Connecticut Ave, NW, Ste. 625
>Washington, D.C. 20036
>(202) 833-8400
>
>M. Dale Conder, Jr.
>RAINEY KIZER REVIERE & BELL PLC
>209 E. Main St.
>Jackson, TN 38301
>(731) 426-8130

---

8. Defendants express uncertainty about whether the temporary measure that Ultima proposed would include stopping work on existing, executed contracts. Dfs' Memo. 14 (PageID # 3402). It did not. In any event, the temporary measures that Ultima proposed were only until this motion is resolved. Doc. 93. If the Court resolves the motion before addressing that request for temporary relief, it will be moot.

12