Lynette T. Stevenson
Founder of DALS Credit Solutions Co.
5767 Albany GRN
Westerville, Ohio 43081

Date: September 20, 2024

Clifton L. Corker, United States District Judge
United States District Court
Eastern District of Tennessee
Greeneville
Division
220 West Depot Street, Suite 416
Greeneville, TN 37743

**Re: Motion to Intervene in Ultima Services Corp. v. U.S. Department of Agriculture, Case No. 2:20-cv-00041**

Dear the Honorable Clifton L. Corker

We, Lynette T. Stevenson, DALS Credit Solutions Co. Founder, and Nicole Stewart, respectfully submit this **Motion to Intervene** in *Ultima Services Corp. v. US Department of Agriculture* under **Rule 24 of the Federal Rules of Civil Procedure**. As a Black-owned business, my company has suffered significant economic harm due to the **Small Business Administration's (SBA)** failure to enforce this Court's ruling in *Ultima*, which held that the automatic presumption of social disadvantage for **Alaskan Native Corporations (ANC)**, **National Hawaiian Organizations (NHO)**, and **Community Development Corporations (CDC)** violates the **Equal Protection Clause**.

Despite this ruling, the SBA continues to allow these entities to benefit from federal contracting preferences without requiring them to comply with the exact social disadvantage narrative requirements imposed on other 8(a) program participants. This failure by the SBA has perpetuated systemic inequities in federal contracting, which have disproportionately impacted Black-owned businesses like mine. I respectfully request intervention as of right under **Rule 24(a)(2)** or permissive intervention under **Rule 24(b)(1)(B)** to ensure that the *Ultima* ruling is adequately enforced and that all disadvantaged businesses receive fair access to federal contracting opportunities.

This is a crucial political year, with the fiscal year quickly approaching. Since 2021, we have consistently raised concerns about the systemic inequalities faced by Black-owned businesses in federal contracting. Our ongoing efforts have revealed the algorithm and mechanisms that have perpetuated these disparities, and we now have the evidence needed to seek appropriate remedies. Despite numerous discussions and prolonged conversations with relevant individuals, there has been little action to correct these injustices. However, we are resolute in our pursuit of equity and justice, and we intend to ensure that Black-owned businesses are made whole.

Further reinforcing the urgency of this issue, Lynette T. Stevenson, Founder of DALS Credit Solutions Co., will be speaking at this year's conference on October 27-29, addressing these very concerns and the path forward for disadvantaged businesses in federal contracting. This platform provides yet another opportunity to highlight the disparities and call for immediate change.

**Statement of Interest:** The SBA's failure to ensure compliance has had devastating consequences for Black-owned businesses. These firms have been systematically deprived of fair competition in federal contracting due to the SBA's unwillingness to hold ANC firms accountable. DALS Credit Solutions Co., as a Black-owned business, along with many other black-owned businesses has been directly harmed by the SBA's ongoing failure to apply the *Ultima* decision across the board.

ANC-backed firms, NHOs, and CDCs under FAR 19-Small Business Programs, continue to receive favorable treatment in federal contracting without meeting the exact eligibility requirements as other 8(a) participants without designations. This unequal application of the rules violates the **Equal Protection Clause**, and the harm to my business and others is ongoing. According to [District Court Rules SBA Presumption of Social Disadvantage Is Unconstitutional - Schwabe](#) They are deemed, by statute, to be socially disadvantaged ([15 U.S.C. § 637(a)(4)](#)), and that classification is a political (*[Morton v. Mancari, 417 U.S. 535 (1974)](#)*), [District Court Rules SBA Presumption of Social Disadvantage Is Unconstitutional - Schwabe](#)

However; **Alaskan Native Corporations (ANC), National Hawaiian Organizations (NHO)**, and **Community Development Corporations (CDC)** are backed by investors Home - Small Business Investor Alliance (sbia.org) with Small Business Investment Companies. Further, the **Small Business Investment Company (SBIC) program** has compounded these inequities by allocating disproportionate federal capital to these firms, who have leveraged significant financial advantages without complying with the required submission of social **disadvantage narratives**. Bond issuances such as the **SBIC 2023-10A debenture ($1.737 billion)** and similar past issuances illustrate how ANC-backed firms have continued to dominate federal funding opportunities while Black-owned businesses are systematically excluded. In addition, many departments within the Small Business Administration has failed to ensure Black-owned-Business participation was considered

**Timeliness and No Risk of Delay:** This motion is timely, as the SBA's non-compliance with the *Ultima* ruling continues to cause harm to disadvantaged businesses. I respectfully submit that allowing my intervention will not cause delay or complicate the proceedings. On the contrary, my involvement will bring **critical facts and legal perspectives** to light that will assist the Court in reaching a comprehensive and fair resolution and restitution of financial losses.

Specifically, I will provide the Court with: **Direct insights into how the SBA's failure to enforce the *Ultima* ruling has impacted Black-owned businesses**, particularly in the context of continued preferential treatment for ANC-backed by Small Business Invest Company firms in federal contracting.

**New legal and factual evidence**, including the SBA's lack of response to multiple FOIA requests, such as **FOIA Request No. SBA-2024-005961**, which has prevented the disclosure of documents critical to understanding ANC firms' compliance with the social disadvantage narrative requirements.

**Evidence of systemic failures within the SBIC program** illustrates how bond issuances and federal funding continue to disproportionately benefit ANC-backed firms while Black-owned businesses are denied equitable access to these resources. Small Business Investment Companies (SBICs) can leverage **up to $3 of federal leverage for every $1 of private capital** they raise, with a maximum cap of **$175 million in federal leverage**. The number and value of contracts an SBICs can access or support through this leverage depends on the amount of private capital raised and the total leverage they can utilize.

**Example SBIC Raising $58.33 Million in Private Capital**

**Private Capital Raised**: If an SBIC raises $58.33 million in private capital (which is the maximum amount allowed to receive $175 million in federal leverage based on the 3:1 ratio).**Federal Leverage**: The SBA provides up to **$175 million in federal leverage**, which is the maximum the SBIC can receive under current regulations. **Total Investment Capital**: The SBIC would have a total of: $58.33 million (private capital) + $175 million (federal leverage) = **$233.33 million** in total capital available for investment.
A SBIC can invest 10Million in 20-ANC companies or 5Million in 40-ANC companies.

**Being exempt of the Volker Rule:** Since SBIC's exempt from the Volcker rule, the investment is low risk. SBICs amplify their private capital through SBA leverage, while ANCs use the capital infusion to expand and win more federal business**.** The ANC's steady government contracts ensure a reliable revenue stream. The ANC's growth allows the SBIC to see a strong return on investment, as the ANC secures additional contracts and expands its business. The SBIC can continue to leverage federal programs like the SBA's SBIC leverage, multiplying its private capital to invest in more companies like the ANC

By contributing this additional evidence and perspective, my intervention will assist the Court in fully understanding the ongoing violations and the implications of the SBA's actions. This will **clarify the scope of the SBA's non-compliance** and ensure that the Court has all the necessary information to enforce the *Ultima* ruling comprehensively.

**Grounds for Intervention as of Right (Rule 24(a)(2))**

I respectfully submit that I am entitled to intervene as of right under **Rule 24(a)(2)** because: **Interest in the Subject Matter**: My company has a direct and significant interest in ensuring that the SBA enforces compliance with the *Ultima* ruling. The continued preferential treatment of ANC-backed firms, without requiring them to meet the same eligibility standards, directly impairs my ability to compete for federal contracts, and the unequal treatment of Black-owned businesses must be addressed.

**Impairment of Interest**: Without intervention, my interests, along with the interests of other Black-owned businesses, will remain unprotected. The SBA's ongoing failure to implement the *Ultima* decision continues to impair our ability to access federal contracting opportunities, particularly as ANC-backed firms enjoy preferential treatment.

**Inadequate Representation**: The original plaintiffs have focused on broad constitutional challenges but have yet to fully address the **specific harm to Black-owned businesses** resulting from the SBA's failure to apply the *Ultima* ruling across all 8(a) program participants. My intervention is necessary to ensure that the perspectives of Black-owned businesses are adequately represented before the Court.

**Permissive Intervention (Rule 24(b)(1)(B))**

Alternatively, I seek permissive intervention under **Rule 24(b)(1)(B)**, as my claims share common questions of law and fact with the existing case. My involvement will not unduly delay or prejudice the original parties' rights adjudication. Instead, my intervention will give the Court **a clearer understanding of the SBA's broader systemic failures**, particularly the SBA's violations of **Federal Acquisition Regulations (FAR)** and the **unequal treatment of Black-owned businesses** in federal procurement.

**FOIA Non-Compliance and Transparency Concerns**

FOIA requests have further obstructed efforts to ensure compliance with the *Ultima* ruling. **FOIA Request No. SBA-2024-005961, SBA FOIA Request No. SBA-2023-004712,** and **USDA FOIA Control No. 2024-FPAC-BC-07320-F**: Requesting documentation of SBA policy changes related to post-Ultima enforcement actions. Requesting records of contracts awarded to ANC firms over the past three years specifically sought documents demonstrating ANC firms' compliance with social disadvantage requirements, but the SBA still needs to provide the requested information. With this information, businesses like mine can assess whether ANC backed firms comply with the legal standards outlined in the *Ultima* ruling. **FOIA Non-Compliance and the SBA's Lack of Transparency.**

The SBA's lack of transparency and failure to respond to FOIA requests further demonstrate its refusal to enforce the Ultima ruling. Despite federal requirements under 5 U.S.C. § 552(a)(6)(B)(iii)(II) and 13 C.F.R. § 102.5, the SBA has delayed or outright refused to provide documents requested through FOIA that would demonstrate ANC-backed firms' compliance with social disadvantage narrative requirements.

**Section Two SBA FOIA Request No. SBA-2023-0047** of the specific request: In addition, Review the fund's investment strategies and their impact on small businesses, particularly those from underserved communities. Investigate any potential conflicts of interest or ethical breaches. Detailed Review of SBIC Relationships: For each SBIC involved, I am requesting an in-depth analysis of their relationships with the funded businesses. This includes:

**Siguler Guff SBIC Fund II, L.P. (8/18/2023, 2.0x)**

**Champlain Capital Partners IV, L.P. (9/21/2023, 2.0x):**

**Firmament Partners SBIC IV, L.P. (9/21/2023, 2.0x):**

**I.M.B. Partners SBIC I, L.P. (10/17/2023, non-leveraged):**

**USDA FOIA Control No. 2024-FPAC-BC-07320-F**: Requesting documentation of SBA policy changes related to post-Ultima enforcement actions. The lack of federal oversight and accountability regarding ANC contracting practices has compounded the issue. Unlike federally recognized tribes (NHO), Native Indian Tribes; ANCs operate as corporations, making them eligible for unique exemptions from competitive regulations, while Black-owned businesses are subject to strict limitations under the SBA 8(a) & WOSB 8 (m) program. This disparity has resulted in substantial losses for Black-owned companies, limiting their access to federal contracting opportunities and contributing to long-standing economic inequities.

**Non-receipt of FOIA from Department of Interior** sent **08/22/2024**: To seek information regarding their Native status, bloodline requirements, and compliance with ANCSA's eligibility criteria, particularly in light of concerns about their places of birth and potential migration from other countries before the establishment of ANCSA 1971, The founders in question are **Iliodor Philemonof, Lillie McGarvey, Charles Hoff, Michael Swetzof, and original founder(Alvin Osterback)- Relatives: Oskar Alfred Osterback Finland 1876-1976: Feckia Emma Verskin-1886-1976, Pelagia "Pauline" Verskin, and Peter Verskin.**

My intervention will bring these transparency concerns before the Court and ensure that the **SBA is held accountable** for its failure to provide critical information that impacts the fairness of federal contracting decisions.

**Violation of the Rule of Two and FAR Regulations**

The **USDA Farm Production and Conservation (FPAC) division** has further compounded the harm to Black-owned businesses by violating the **Rule of Two** under **FAR 19.502-2(b)**. This rule requires federal contracts to be set aside for small businesses when at least two qualified small businesses can perform the work. However, FPAC has ignored this requirement, awarding contracts to ANC-backed firms without conducting market research to consider eligible Black-owned businesses.

The failure to comply with **FAR regulations** is not isolated but systemic, as demonstrated by the following violations:

**FAR 19.502-2(b):** Failure to implement the Rule of Two, denying small businesses, including Black-owned firms, the opportunity to compete for contracts.

**FAR 19.202-2 and FAR 19.202-5**: Failure to conduct market research and follow **Procurement Center Representatives (PCRs)** recommendations regarding small business set-asides.

**FAR 19.203 and FAR 10.001**: Failure to prioritize small business set-asides and conduct proper market research.

**FAR 19.203 – Prioritization of Small Business Set-Asides**: This provision mandates that small business set-asides take priority over full and open competition. Failure to prioritize small business contracts, including those for Black-owned businesses, violates this regulation.

**FAR 10.001 – Market Research Requirements**: Contracting officers must conduct thorough market research before soliciting contracts. Ignoring this requirement, particularly when it would have revealed capable Black-owned businesses, violates this provision.

**FAR 19.501(c) – Priority for Small Business Set-Asides**: If contracting officers do not prioritize small business set-asides, they violate this provision, mainly if Black-owned businesses are eligible.

**FAR 1.602-2 – Responsibilities of the Contracting Officer**: Contracting officers must ensure fair, impartial treatment of all businesses. Failing to consider Black-owned businesses violates their responsibility under this provision.

**ECR-124.504 – Removal of Contracts from the 8(a) Program**: Contracting officers must work with the SBA to remove contracts no longer qualifying for the 8(a) program. Failure to do so violates this regulation.

**Federal Laws Violated by SBA's and USDA (FPAC) Practices: Beyond the constitutional and FAR violations,** the SBA's failure to provide equitable opportunities for Black-owned businesses violates several key federal laws, including:

**Small Business Act (15 U.S.C. § 644):** This act mandates that small businesses, including minority-owned businesses, receive maximum practicable participation in federal procurement. Failing to consider Black-owned businesses for set-asides while favoring ANC firms directly violates the intent of this act.

**Competition in Contracting Act (CICA):** While CICA promotes full and open competition, it also mandates small business set-asides when the Rule of Two is met. Bypassing these set-asides in favor of ANC firms violates CICA.

**Civil Rights Act of 1866 (42 U.S.C. § 1981):** Discriminatory contracting practices that disadvantage Black-owned businesses in favor of ANC firms may violate this act, prohibiting racial discrimination in contract formation.

**Equal Protection Clause (Fifth Amendment):** The unequal treatment of Black-owned businesses under the SBA's 8(a) program may violate the Equal Protection Clause if ANC companies receive disproportionate benefits to exclude other minority-owned businesses.

**Small Business Act (15 U.S.C. § 644): Violation**: This act mandates that small businesses receive the **maximum practicable participation** in federal procurement. Ignoring the Rule of Two or failing to consider **Black-owned businesses** for set-asides directly violates the intent of the **Small Business Act.**

**Competition in Contracting Act (CICA): Violation**: While the **Competition in Contracting Act (CICA)** encourages full and open competition, it also allows for small business set-asides when the Rule of Two applies. Ignoring set-asides in favor of open competition when small businesses, especially minority-owned businesses, can perform the contract violates CICA.

**Federal Procurement Policy (41 U.S.C. Chapter 17): Violation**: **41 U.S.C. Chapter 17** requires federal agencies to ensure that small businesses receive a fair opportunity to compete for federal contracts. By not properly applying the Rule of Two or considering minority-owned businesses, including Black-owned businesses, the contracting officer violates this policy.

**National Defense Authorization Act (NDAA): Violation**: The **NDAA** includes provisions to increase the participation of small businesses in federal contracting, particularly in defense contracts. Ignoring these provisions when minority-owned businesses or Black-owned businesses could compete under set-asides is a violation of the **NDAA**.

**Service-Disabled Veteran-Owned Small Business (SDVOSB) Act (15 U.S.C. § 657f): Violation**: If the contracting officer fails to apply the Rule of Two and overlooks **Service-Disabled Veteran-Owned Small Businesses (SDVOSBs)** when they can meet contract requirements, they violate this law.

**Women-Owned Small Business (WOSB) Program (15 U.S.C. § 637(m)): Violation**: Similarly, failure to set aside contracts for **Women-Owned Small Businesses (WOSBs)**, when applicable, violates this statute.

**Small Business Regulatory Enforcement Fairness Act (SBREFA): Violation**: **SBREFA** requires that small businesses, particularly socially disadvantaged businesses, are treated fairly in regulatory processes. Failing to apply the Rule of Two or consider Black-owned businesses in contracting decisions can constitute a violation of this act.

**Civil Rights Act of 1964 (Title VI) (42 USC § 2000d)**: If oversight practices disproportionately scrutinize Black-owned businesses, leading to unequal access to relief funds, it could violate Title VI.

**Administrative Procedure Act (APA) (5 USC § 551 et seq.):** Disproportionate oversight targeting Black-owned businesses could be viewed as arbitrary and capricious, violating the APA's standards.

**Due Process Clause of the Fifth Amendment:** If OIG oversight disproportionately penalizes Black-owned businesses without adequate procedural protections, it could violate their due process rights.

**Administrative Procedure Act (A.P.A.) (5 U.S.C. § 706):** The APA allows for challenges to arbitrary, capricious, or unlawful agency actions. The USDA and SBA's contract awards to ANCs, mainly when ANC eligibility is suspect, may violate the APA by favoring ANC over other minority businesses without proper justification—failed practices from Procurement Center Representatives not advocating for Small Businesses. **The January 2024 Executive Order 14091**, Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.

**Equal Protection Clause (Fifth Amendment):** The ANC contracting advantages may violate the Equal Protection Clause of the Fifth Amendment if they disproportionately harm Black and Brown-owned businesses. Constitutional protections come into play when one group benefits to the exclusion of others based on unequal standards. **Equal Protection Clause**.

**42 U.S.C. § 1981: The Civil Rights Act of 1866** prohibits racial discrimination in contract formation. The persistent disadvantage faced by Black-owned businesses in favor of ANCs that may not meet federal standards could violate § 1981. Discriminatory contracting practices must be called out and corrected.

These **systemic violations** further emphasize the need for judicial intervention to ensure fair and equal access to federal contracting opportunities.

**A Systematic Failure of Leadership and Policy-Small Business Investment Companies:** Under the leadership of Administrator Isabella Casillas Guzman, the Small Business Administration (SBA) has not only failed to support Black-owned businesses but has actively perpetuated their marginalization. The data from 2023 reveals a troubling pattern: Black-owned businesses are systematically excluded from the benefits and resources the SBA is supposed to provide. This exclusion is not merely accidental; it results from deliberate policy failures, inadequate oversight, and a lack of accountability at the highest levels of the SBA.

**SBIC Agency Licensing Committee: A Catalyst for Inequality** the SBIC (Small Business Investment Company) program, which should serve as a vital source of capital for small businesses, has instead become a mechanism for reinforcing existing disparities. The SBIC Agency Licensing Committee, comprising the SBA Office of the General Counsel (OGC) Representative, Director of Policy, Director of IT & Data Strategy, and the Director of Investment and Innovation Ecosystem Development & Manager, has utterly failed in its mandate to ensure equitable distribution of SBIC funds.

**Critical Disparities with Key Committee Members:**

**SBA Office of the General Counsel (OGC) Representative: Disparities:** The OGC's inaction in enforcing legal safeguards against discrimination in fund distribution has allowed SBIC investments to favor ANC (Alaska Native Corporation) companies disproportionately. This neglect is a clear dereliction of duty, enabling systemic bias to persist unchecked.

**Director of Policy: Disparities:** The Director of Policy has yet to implement or advocate for equity-driven policies within the SBIC program. The lack of proactive measures to correct funding disparities is not just a policy failure—it reflects an institutional disregard for racial equity.

**Director of IT & Data Strategy: Disparities:** The Director of IT & Data Strategy needs to utilize data analytics to expose and address inequities in SBIC fund distribution. This oversight has kept systemic exclusion under the radar, allowing inequities to persist.

**Director of Investment and Innovation Ecosystem Development & Manager: Disparities:** The Director's oversight of the innovation ecosystem has been fundamentally flawed, prioritizing well-connected ANC companies over Black-owned startups. This has stifled innovation and economic growth within the Black community.

**Impact of SBIC Policy Mismanagement: 2023 Data**: Less than 1% of SBIC investments were allocated to Black-owned businesses—approximately $500 million out of $50 billion in total SBIC investments. In stark contrast, ANC companies received a significant portion of these investments, fueling their growth and allowing them to dominate both federal and private sectors.

**Result:** The exclusion from SBIC investments has directly contributed to a 10% decline in Black-owned startups between 2015 and 2023. This inequitable distribution of capital reflects a broader systemic failure within the SBA, particularly under the oversight of Administrator Guzman.

**Office of Capital Access (OCA): Entrenched Bias and Economic Exclusion:** The OCA's administration of SBA loan programs has been fundamentally biased against Black-owned businesses. In 2023, Black-owned companies received only 1.9% of the total SBA loan volume, which amounts to approximately $1.3 billion out of $68 billion in SBA-backed loans. This disparity does not merely reflect market conditions; it indicates systemic bias within the SBA's lending practices.

**Divisions of the United States Small Business Administration Contributions to Disparities:**

**Office of Capital Access (OCA)- 2023 Data:**

**Urgent Issue:** The OCA's administration of SBA loan programs in 2023, including the 7(a) and 504 loans, has created a pressing issue. Black-owned businesses needing financial support received less than 2% of the total loan volume. Meanwhile, ANC companies, benefiting from systemic advantages, secured substantial funding. This reliance on traditional credit models and stringent collateral requirements is perpetuating financial disparities rooted in historical discrimination, demanding immediate attention and action.

**Historical Context:** Black-owned businesses have faced systemic barriers in accessing capital for decades, with discriminatory practices like redlining and biased credit assessments being historically prevalent. The SBA's failure to address these issues perpetuates a legacy of exclusion.

**Accountability and Transparency:** The SBA's failure to publicly track or report the racial distribution of its loan approvals is a significant oversight, allowing these disparities to persist without the necessary transparency and accountability.

**Office of Disaster Assistance (ODA)- 2023 Data:**

**Critical Failure:** The ODA's management of disaster relief funds during the COVID-19 pandemic was marked by significant disparities. Black-owned businesses, despite being disproportionately affected by the pandemic, received less than 1.5% of the Economic Injury Disaster Loans (EIDL) and Paycheck Protection Program (PPP) funds. Meanwhile, ANC companies secured a much larger

share of these funds, stabilizing and expanding their operations. The 2024 OIG report highlighted these inequities, noting that the SBA failed to implement measures to ensure equitable distribution.

**Historical Context:** During the COVID-19 pandemic, Black-owned businesses received less than **1.5%** of the Economic Injury Disaster Loans (EIDL) and Paycheck Protection Program (PPP) funds, translating to roughly **$2.25 billion** out of a total **of $150 billion** in SBA disaster assistance. Black-owned businesses have historically been underfunded in disaster relief efforts, contributing to higher closure rates during economic downturns and crises.

**Lack of Engagement:** The SBA needed to conduct targeted outreach to ensure that Black-owned businesses were aware of and could access these critical relief programs.

**ANC Companies:** In contrast, ANC companies secured a much larger share of these relief funds, allowing them to stabilize and grow during widespread economic hardship.

**Impact:** The inadequate distribution of disaster relief funds contributed to the closure of over **41%** of Black-owned businesses during the pandemic, compared to **17%** of white-owned companies. This disproportionate impact highlights the SBA's failure to support the most vulnerable small businesses during crises.

**Office of Entrepreneurial Development (OED)- 2023 Data:**

**Critical Failure:** The OED's programs, including Small Business Development Centers (SBDCs) and Women's Business Centers (WBCs), failed to adequately support Black-owned businesses. In 2023, the participation rate of Black-owned firms in these programs was significantly lower than that of ANC companies. The 2024 OIG report highlighted the lack of culturally relevant support and outreach as significant barriers, resulting in Black entrepreneurs' continued underutilization of SBA resources.

**Historical Context:** Black entrepreneurs have long been excluded from business development resources, limiting their ability to scale and compete.

**Outreach and Engagement:** The SBA's outreach efforts need to be increased. They fail to build trust or effectively inform Black entrepreneurs about available resources.

**Office of Government Contracting and Business Development (OGCBD)- 2023 Data:**

**Critical Failure:** The OGCBD's administration of the 8(a) Business Development Program and other federal contracting programs has heavily favored ANC companies over Black-owned businesses. In 2023, ANC companies secured over $15 billion in federal contracts, while Black-owned businesses received only 1.61%- of the total contracting dollars. The 2024 OIG report emphasized the systemic favoritism towards ANC companies, which has marginalized Black-owned businesses and limited their access to federal contracts.

**Impact:** The lack of access to federal contracts has significantly limited the growth potential of Black-owned businesses, contributing to their declining market share and economic influence. This disparity underscores the SBA's failure to create a level playing field within the federal contracting space.

**Historical Context:** Federal contracting has historically excluded Black-owned businesses, and despite programs like 8(a), these businesses continue to be underrepresented.

**Accountability:** There needs to be more accountability for ensuring that federal contracts are distributed equitably among minority-owned businesses.

**Office of Investment and Innovation (OII)- 2023 Data:**

**Critical Failure:** The OII's management of the Small Business Investment Company (SBIC) Program has been particularly detrimental to Black-owned businesses. In 2023, most SBIC investments were directed toward ANC companies, leaving Black entrepreneurs with minimal access to the capital necessary for innovation and expansion. The 2024 OIG report highlighted the lack of oversight and accountability in the SBIC Program, which has allowed a small group of well-connected companies to dominate the market at the expense of small businesses, particularly those owned by Black entrepreneurs.

**Historical Context:** Black-owned businesses have historically had limited access to venture capital and other forms of equity investment, further restricting their growth potential.

**Lack of Equity:** The SBA must ensure that SBIC investments are distributed equitably, exacerbating existing disparities.

**Office of International Trade (OIT)- 2023 Data:**

**Critical Failure:** The OIT has largely neglected Black-owned businesses in its international trade programs. In 2023, Black entrepreneurs were significantly underrepresented in SBA's international trade initiatives, which favored ANC companies. The 2024 OIG report criticized the OIT for lacking targeted outreach and support for Black-owned businesses, resulting in their exclusion from lucrative global opportunities.

**Historical Context:** Black-owned businesses have historically been underrepresented in international trade, limiting their growth and global competitiveness.

**Lack of Targeted Support:** The SBA needs to provide the necessary resources or guidance to help Black-owned businesses navigate the complexities of international trade.

**Office of Advocacy-2023 Data:**

**Critical Failure:** The Office of Advocacy must consistently represent Black-owned businesses' interests in federal policymaking. Instead, the office has disproportionately focused on advocating for ANC companies, who already benefit from extensive federal support. The 2024 OIG report highlighted a significant gap in advocacy efforts, noting that Black-owned businesses' specific needs and challenges should have been more addressed.

**Historical Context:** Black-owned businesses have long been underrepresented in federal advocacy efforts, limiting their ability to influence policy changes that could benefit them.

**Lack of Advocacy:** The SBA needs to effectively champion the needs of Black-owned businesses in legislative and regulatory processes.

**Office of Inspector General (OIG)-2023 Data:**

**Critical Failure:** The OIG's oversight practices have disproportionately targeted Black-owned businesses, subjecting them to excessive scrutiny and punitive audits. The 2024 OIG report acknowledged these disparities, noting that Black-owned companies were more likely to face intense investigations, discouraging participation in SBA programs. Meanwhile, ANC companies faced less scrutiny, allowing them to operate with greater freedom and less fear of punitive oversight.

**Historical Context:** Black-owned businesses have historically been subjected to more intense regulatory scrutiny, limiting their ability to grow and thrive.

**Bias in Oversight:** The SBA's oversight mechanisms have not been applied equitably, with Black-owned businesses bearing the brunt of disproportionate audits and investigations.

**Office of General Counsel (OGC)- 2023 Data:**

**Critical Failure:** The OGC needs to protect Black-owned businesses from systemic legal barriers, such as discriminatory lending practices and exclusion from federal contracting opportunities. The 2024 OIG report highlighted the OGC's inaction in addressing these issues, allowing these barriers to persist and further disadvantage Black entrepreneurs.

**Historical Context:** Black-owned businesses have faced significant legal and regulatory challenges that federal agencies must adequately address.

**Lack of Legal Support:** The SBA must provide legal protections or advocacy to ensure that Black-owned businesses compete on a level playing field.

**Office of Communications and Public Liaison (OCPL)-2023 Data:**

**Critical Failure:** The OCPL's communication strategies have failed to reach Black-owned businesses effectively. The 2024 OIG report criticized the OCPL for lacking targeted outreach and culturally relevant messaging, resulting in low awareness and participation in SBA programs among Black entrepreneurs.

**Historical Context:** Black-owned businesses have often been included in essential communications and outreach efforts, limiting their awareness of available resources.

**Ineffective Communication:** The SBA's communication strategies must be tailored to reach and engage Black-owned businesses effectively.

**Office of Diversity, Inclusion, and Civil Rights (ODICR) -2023 Data:**

**Critical Failure:** The ODICR needs to advance diversity and inclusion within the SBA. The 2024 OIG report highlighted the office's ineffectiveness in addressing the systemic inequities that have long disadvantaged Black-owned businesses. Despite its mandate, the ODICR has done little to close the gaps that continue to marginalize Black entrepreneurs.

**Historical Context:** Efforts to promote diversity and inclusion within federal programs have historically fallen short, particularly for Black-owned businesses.

**Failure to Address Systemic Bias:** The SBA has not effectively tackled the systemic biases that prevent Black-owned businesses from accessing federal resources equitably.

**Office of Native American Affairs (ONAA)- 2023 Data:**

**Critical Failure:** While important, the ONAA's disproportionate focus on ANC companies has overshadowed the needs of other minority-owned businesses, particularly Black-owned businesses. The 2024 OIG report pointed out that the overwhelming support for ANC companies has marginalized other small businesses, especially those owned by Black entrepreneurs, reducing their access to crucial SBA resources.

**Historical Context:** While ANC companies have been effectively supported through federal programs, Black-owned businesses have often been excluded from similar levels of support.

**Imbalanced Resource Allocation:** The SBA's focus on ANC companies has left Black-owned businesses with fewer opportunities to access federal resources.

**Office of Performance Management and the Chief Operating Officer (OPMCO)- 2023 Data:**

**Critical Failure:** The OPMCO needs to ensure that SBA operations are implemented equitably across all demographics. The 2024 OIG report emphasized that the lack of accountability and oversight has allowed systemic biases to persist, disproportionately harming Black-owned businesses while favoring ANC companies.

**Historical Context:** The failure to implement equitable operational practices has long hindered Black-owned businesses from accessing federal support.

**Lack of Accountability:** The SBA has not held its programs accountable for their impact on Black-owned businesses, allowing disparities to persist.

Grouped as **"minorities"** to mask the problem. The Small Business Administration utilized disaggregated data to display "Small Business Participation with Federal contracting. However, the data consist of 1099s not Federal Contracts issued by w2s Federal employees. The data supports all individuals who are 1099s within Small Business Administration and other agencies. This is an illusion of inclusion.

**There are several key personnel who are considered w2 within the SBA:**

**Administrator:** As the highest-ranking official within the SBA, responsible for overseeing all programs and policies.

**Deputy Administrator:** Assists the Administrator in managing SBA operations and strategies.

**Chief Financial Officer (CFO):** Manages the financial operations of the SBA, ensuring compliance with budgeting and federal regulations.

**Regional Administrators:** Oversee SBA operations in specific geographical regions.

**Program Directors:** Responsible for managing specific programs, such as the 8(a) Business Development Program or the HUBZone program.

**Procurement Center Representatives (PCRs):** Federal employees who ensure small businesses get fair opportunities in federal contracting.

**General Counsel:** Legal advisor to the SBA, overseeing legal matters affecting the agency's operations. All other special advisors and beyond are 1099- FY 2023 disaggregated data | U.S. Small Business Administration (sba.gov)

Based on the data under the Small Business Administration African American participation is 17% are those who are 1099s. An illusion in which Black-owned businesses are not thriving or barely surviving.

**The Data from 2023 Tells a Story of Systemic Failure:**

Less than 1% of SBIC investments went to Black-owned businesses.

1.9% of SBA loan volume was allocated to Black-owned businesses.

Black-owned businesses received 1.5% of disaster relief funds.

Black-owned businesses secured 1.61% of federal contracting dollars.

These figures are not just numbers—they represent the lives, livelihoods, and economic futures of countless Black entrepreneurs who have been systematically excluded from the opportunities and resources they need to succeed. The SBIC benefits from a strong, low-risk investment with substantial returns, thanks to the stability of the ANC's federal contracts. The SBIC can use the proceeds from this investment to repay the SBA-backed leverage and continue investing in other small, disadvantaged businesses. As the SBA announces, "Small Businesses are thriving", while the crowds chants, "we are not going back" Administrator Guzman and Senior legal team, are we going forward?

**Request for Judicial Relief**

To restore fairness and ensure compliance with federal laws and regulations, I respectfully request that the Court:

**Require Immediate Compliance**: Order the SBA to enforce the submission of social disadvantage narratives for all ANC, NHO, and CDC firms within **15 days**, ensuring they meet the same eligibility standards as other 8(a) participants based on Federal Acquisition Regulation (FAR 19-Small Business Program Eligibility).

**Audit Contract Awards**: Direct the SBA to audit all federal contracts awarded to ANC, NHO, and CDC firms since the issuance of the *Ultima* ruling, with a **report due to the Court within 20 days** to determine whether these firms improperly benefited from non-compliance.

**Respond to FOIA Requests**: Compel the SBA to respond to all outstanding FOIA requests, including **SBA FOIA Request No. SBA-2024-005961**, and **USDA FOIA Control No. 2024-FPAC-BC-07320-F**, within **15 days**, ensuring complete transparency regarding ANC compliance with social disadvantage requirements.

**Enforce FAR Compliance**: Require the SBA and USDA to review and revise their procurement practices to ensure full compliance with **FAR 19.502-2 (Rule of Two)** and other relevant regulations, with **semi-annual reports** to the Court on the progress of these reforms and remedies.

**Conclusion:** Allowing my intervention will not complicate or delay the proceedings; instead, it will provide the Court with **vital insights** and **critical legal perspectives** necessary to address the SBA's non-compliance with the Ultima ruling fully. The systemic inequities in federal contracting, compounded by the SBA's refusal to respond to FOIA requests and violations of FAR regulations, continue to harm Black-owned businesses. Judicial intervention is necessary to restore fairness and equal opportunity in federal procurement, and I respectfully urge the Court to grant my motion to intervene.

Thank you for your attention to this matter. I look forward to your prompt consideration of this motion.

Respectfully submitted,

[Your Signature]

**Lynette T. Stevenson**-Founder, DALS Credit Solutions Co.

Nicole Stewart-Anue Strategy Group

[Your Signature]