Date: October 14th, 2024,
Clifton L. Corker, United States District Judge
United States District Court Eastern District of Tennessee
Greeneville Division 220
West Depot Street, Suite 416 Greeneville, TN 37743


Case No. 2:20-cv-00041

ULTIMA SERVICES CORPORATION,
Plaintiff,

Vs.                                          Case No. 2:20-cv-00041-DCLC-CRW

UNITED STATES DEPARTMENT OF AGRICULTURE,
Defendant.


LYNETTE T. STEVENSON and NEIKO STEWART,
Movants.

---

### REPLY IN SUPPORT OF MOTION TO THE INTERVENE, REQUEST FOR TEMPORARY RESTRAINING ORDER (TRO), STRUCTURED SETTLEMENT, AND IN OPPOSITION TO DEFENDANT'S MEMORANDUM OF LAW

Filed by: Lynette T. Stevenson, Founder of DALS Credit Solutions Co. and Neiko Stewart

#### Introduction

Dear the Honorable Clifton L. Corker as the Founder of **DALS Credit Solutions Co.,** a Black-owned and Woman-Owned Small Business (WOSB), I am compelled to seek full intervention in this case to address the ongoing systemic inequities and failures by the SBA, USDA, and LUSA Associates to comply with this Court's July 19, 2023, ruling in *Ultima Services Corp.* Despite the Court's mandate enjoining the SBA from using the rebuttable presumption of social disadvantage in administering its 8(a) program, these entities continue to circumvent compliance requirements, favoring ANC-backed firms and others without requiring necessary social disadvantage narratives. My intervention is essential to uphold constitutional principles, enforce statutory compliance, and restore integrity to the federal procurement process.


## _The Argument_

#### Timeliness and Necessity for Immediate Intervention

Defendants assert that our motion is untimely, arguing that on **July 19, 2023,** the Court explicitly enjoined the SBA from using the rebuttable presumption of social disadvantage in administering its 8(a) program **(Doc. No. 86 at 41).** Despite this, the SBA's subsequent Notice of Compliance and the Treasury Report dated **August 18, 2023,** introduced deviations from the Federal Acquisition Regulations (FAR), specifically **FAR 19.804-3** and **FAR 52.219-18,** which have allowed ANC-backed firms to obtain federal contracts without providing a social disadvantage narrative. Such deviations directly undermine the Court's order and have caused ongoing harm to the interests of **Black-owned businesses.** Our motion is timely because it addresses specific, recent failures by the SBA to comply with the Court's decision, as new deviations have emerged since the initial ruling.

### I. Movants' Motion is Timely considering SBA's Ongoing Non-Compliance

**The Sixth Circuit** has consistently held that intervention remains timely when a party's rights are adversely affected by an agency's non-compliance. In *Stotts v. Memphis Fire Department*, **679 F.2d 579, 584 (6th Cir. 1982),** the Court emphasized that timeliness is "assessed by considering all relevant circumstances," including "prejudice to the intervenors' interests." Intervention is timely when ongoing harm persists, especially where non-compliance with a court directive continues to inflict damage on a protected group. Judicial intervention is required to prevent further harm and to ensure that the SBA adheres to the principles of equity and fairness. Allowing intervention at this stage will not prejudice the SBA but will instead promote accountability and ensure adherence to the Court's order.

As recognized in *United States v. Tennessee*, **260 F.3d 587, 592 (6th Cir. 2001),** intervention is timely when it addresses "new and significant issues." The SBA's ongoing violations of federal contracting regulations—including deviations from **41 U.S.C. § 6305** and FAR provisions—present new compliance failures that warrant immediate intervention to protect affected parties.

**Ongoing Harm Justifies Timeliness:** The harm caused by the SBA's non-compliance is not historical; it is continuing. The agency's interpretation of the Court's order has allowed entity-owned firms to benefit from federal contracts under conditions not available to Black-owned businesses. Our motion seeks to address these recent deviations and ensure that the injunction's equitable principles are applied consistently.

**No Prejudice to Defendants:** Allowing intervention at this stage does not prejudice the SBA or delay final resolution. Instead, it ensures accountability in implementing the Court's order and addresses inequities affecting disadvantaged businesses.

### II. Movants Have a Substantial and Legally Protectable Interest

Defendants argue that Movants lack legally protectable interest in this litigation because the Court's injunction supposedly did not cover entity-owned firms. This mischaracterizes both the scope of the injunction and Movants' interest.

**Direct Impact on Black-Owned Businesses:** The Court's order directly affects the SBA's administration of the 8(a) program, which includes the conditions under which disadvantaged businesses can participate. Movants have a substantial interest in ensuring that the SBA's compliance with the Court's ruling does not result in ongoing disadvantages to black-owned firms.

**Scope of the Court's Injunction:** The SBA's current practices allow ANC-backed entities to participate in the 8(a) program without adhering to the requirements imposed by the Court's ruling, effectively granting preferential access to federal contracts. This creates an uneven playing field, undermining the very purpose of the Court's injunction. Movants' intervention is necessary to ensure that these discrepancies are addressed.

Movants' interest in ensuring fair access to federal contracting opportunities for all disadvantaged businesses, including Black-owned businesses, qualifies as a significantly protectable interest under the standards set forth by the **Sixth Circuit in cases like** *Grainger v. Ottawa County*, **90 F.4th 507 (6th Cir. 2024).**

### III. Permissive Intervention Promotes Judicial Efficiency and Consistency

Permissive intervention under **Federal Rule of Civil Procedure 24(b)** is appropriate because Movants' claims share common questions of law and fact with the existing litigation. The SBA's compliance with the Court's injunction is central to both the original case and the issues raised by Movants.

**Common Legal and Factual Issues:** The core issue remains the SBA's administration of the 8(a) program in compliance with the Court's order. The Movants' intervention is focused on ensuring that the Court's injunction is adequately enforced, and that SBA's recent actions do not undermine its intent.

**Promoting Judicial Economy:** Addressing these issues within the existing litigation is far more efficient than requiring separate lawsuits, which could lead to inconsistent rulings and prolong the resolution of

related matters. Justice and efficiency are best served by addressing these interconnected issues in a single proceeding.

### IV. Denying Intervention Would Impair Movants' Ability to Protect Their Interests

Contrary to the Defendant's suggestion that Movants could pursue separate litigation, denying intervention would significantly impair Movants' ability to protect their interests.

**Risk of Conflicting Interpretations:** If Movants are forced to initiate a separate action, it risks creating conflicting interpretations of the Court's order, particularly about the scope of the SBA's compliance. This could undermine the uniform application of the Court's ruling across all disadvantaged businesses.

### Significant Legal Interest and Right to Intervene

The SBA argues that we lack a significant legal interest. However, as a Black-owned business excluded from fair federal contracting opportunities due to the SBA's preferential treatment of ANC-backed entities, we have a direct and protectable interest. *Federal Rule of Civil Procedure 24(a)(2)* grants intervention rights to those who "claim an interest relating to the property or transaction that is the subject of the action." *The Sixth Circuit* has established that such an interest need not be identical to the primary party's claim but must be "directly affected by the outcome" of the case *(Jansen v. City of Cincinnati, 904 F.2d 336, 341 (6th Cir. 1990))*.

The **U.S. Supreme Court** has reinforced the requirement of narrow tailoring and strict scrutiny for race-based classifications in federal contracting. In **Adarand Constructors, Inc. v. Peña, 515 U.S. 200 (1995)**, the Court held that federal preferences based on race must be "narrowly tailored to serve a compelling governmental interest." The SBA's actions—granting contractual preferences to ANC-backed firms without subjecting them to the same scrutiny applied to other minority groups—violate this principle and undermine the equal protection standards established by the Court's ruling.

*Adarand Constructors, Inc. v. Peña, 515 U.S. 200 (1995), and Dynalantic Corp. v. U.S. Department of Defense, 885 F. Supp. 2d 237 (D.D.C. 2012)* reinforces the principle that racial classifications in federal contracting must satisfy strict scrutiny and serve a compelling governmental interest. The SBA's actions, which grant ANC-backed firms' preferential treatment without subjecting them to the same scrutiny applied to other minority groups, violate this principle. Our intervention is necessary to rectify these practices, ensuring that the SBA's actions align with the Court's mandate for equal protection and fair access to contracting opportunities

According to District Court Rules SBA Presumption of Social Disadvantage Is Unconstitutional - Schwabe They are deemed, by statute, to be socially disadvantaged *(15 U.S.C. § 637(a)(4))*, and that classification is a *political (Morton v. Mancari, 417 U.S. 535 (1974))*, District Court Rules SBA Presumption *of Social Disadvantage Is Unconstitutional* –Under the ruling *Ultima vs USDA Case No. 2:20-cv-0004.* The social narrative ruled "ALL within the *FAR 19 Small Business program*" The ruling undue the presumption of being socially disadvantage under the **Alaska Native Claims Settlement Act (ANCSA) of 1971** and the entities are not *Federally recognized*.

*Stotts v. Memphis Fire Department, 679 F.2d 579, 584 (6th Cir. 1982),* indicates that intervention is timely when addressing ongoing harm, especially where discriminatory practices continue unchecked. Additionally, *United States v. Tennessee, 260 F.3d 587, 592 (6th Cir. 2001),* emphasized that intervention remains timely when it addresses new and significant issues. Given the SBA's ongoing violations of federal contracting regulations—specifically, non-compliance with **41 U.S.C. § 6305** and key FAR provisions—our intervention is crucial to ensure the SBA's accountability in administering the 8(a) program equitably.

Moreover, *Dynalantic Corp. v. U.S. Department of Defense, 885 F. Supp. 2d 237 (D.D.C. 2012),* emphasized that any race-based preferences in the 8(a) program must meet strict constitutional standards. Our intervention is not merely about oversight; it is necessary to rectify SBA practices that

continue to violate equal protection for Black-owned businesses by unjustly favoring ANC-backed entities. The discrepancies between the SBA's actions and the Court's previous injunction reveal that further judicial oversight is warranted.

**Impairment of Our Ability to Protect Our Interests**

The SBA asserts that our interests are not impaired because we can pursue separate litigation. However, *the Sixth Circuit in Coalition to Defend Affirmative Action v. Granholm, 501 F.3d 775, 779 (6th Cir. 2007),* clarified that intervention is appropriate when an intervenor's ability to protect its interests may be impaired by the outcome of existing litigation. Given the SBA's repeated failure to address systemic inequities in its 8(a) program, our intervention here is necessary to prevent further erosion of our competitive opportunities in federal contracting.

Moreover, *Blount-Hill v. Board of Education of Ohio, 195 Fed. App'x 482 (6th Cir. 2006),* supports that economic and competitive interests, particularly when directly linked to a constitutional equal protection claim, qualify as protectable interests under **Rule 24.** The SBA's preferential treatment of ANC-backed firms impedes our ability to compete for federal contracts, making intervention essential for safeguarding our rights.

**Significant Legal Interest and Right to Intervene**

The SBA argues that we lack a significant legal interest. However, as a Black-owned business excluded from fair federal contracting opportunities due to the SBA's preferential treatment of ANC-backed entities, we have a direct and protectable interest. *Federal Rule of Civil Procedure 24(a)(2)* grants intervention rights to those who "claim an interest relating to the property or transaction that is the subject of the action." The Sixth Circuit has established that such an interest need not be identical to the primary party's claim but must be "directly affected by the outcome" of the case (*Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990)).

The U.S. Supreme Court has reinforced the requirement of narrow tailoring and strict scrutiny for race-based classifications in federal contracting. In *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200 (1995), the Court held that federal preferences based on race must be "narrowly tailored to serve a compelling governmental interest." The SBA's actions—granting contractual preferences to ANC-backed firms without subjecting them to the same scrutiny applied to other minority groups—violate this principle and undermine the equal protection standards established by the Court's ruling.

**Adarand Constructors, Inc. v. Peña, 515 U.S. 200 (1995),** and **Dynalantic Corp. v. U.S. Department of Defense, 885 F. Supp. 2d 237 (D.D.C. 2012)** reinforces the principle that racial classifications in federal contracting must satisfy strict scrutiny and serve a compelling governmental interest. The SBA's actions, which grant ANC-backed firms' preferential treatment without subjecting them to the same scrutiny applied to other minority groups, violate this principle. Our intervention is necessary to rectify these practices, ensuring that the SBA's actions align with the Court's mandate for equal protection and fair access to contracting opportunities

According to District Court Rules SBA Presumption of Social Disadvantage Is Unconstitutional - Schwabe They are deemed, by statute, to be socially disadvantaged *(15 U.S.C. § 637(a)(4)),* and that classification is a *political (Morton v. Mancari, 417 U.S. 535 (1974)),* District Court Rules SBA Presumption *of Social Disadvantage Is Unconstitutional* –Under the ruling *Ultima vs USDA Case No. 2:20-cv-0004.* The social narrative ruled "ALL within the FAR 19 Small Business program" The ruling undue the presumption of being socially disadvantage under the Alaska Native Claims **Settlement Act (ANCSA) of 1971** and the entities are not *Federally recognized*.

*Stotts v. Memphis Fire Department, 679 F.2d 579, 584 (6th Cir. 1982)*, indicates that intervention is timely when addressing ongoing harm, especially where discriminatory practices continue unchecked. Additionally, *United States v. Tennessee, 260 F.3d 587, 592 (6th Cir. 2001),* emphasized that intervention remains timely when it addresses new and significant issues. Given the SBA's ongoing violations of federal contracting regulations—specifically, non-compliance with **41 U.S.C. § 6305** and key FAR provisions—our intervention is crucial to ensure the SBA's accountability in administering the 8(a) program equitably.

Moreover, *Dynalantic Corp. v. U.S. Department of Defense,* 885 F. Supp. 2d 237 (D.D.C. 2012), emphasized that any race-based preferences in the 8(a) program must meet strict constitutional standards. Our intervention is not merely about oversight; it is necessary to rectify SBA practices that continue to violate equal protection for Black-owned businesses by unjustly favoring ANC-backed

entities. The discrepancies between the SBA's actions and the Court's previous injunction reveal that further judicial oversight is warranted.

Additionally, *the United States v. Tennessee, 260 F.3d 587, 592 (6th Cir. 2001),* emphasized that intervention remains timely when it addresses "new and significant issues." Given the SBA's ongoing violations of federal contracting regulations (e.g., non-compliance with **41 U.S.C. § 6305** and FAR provisions), our intervention is crucial to ensure SBA's accountability in administering the 8(a) program equitably.

**Permissive Intervention and Relevance to the Case:** As an alternative basis for intervention, we also seek permissive intervention under **Rule 24(b)(1)(B)**, which permits intervention if the intervenor's claims share common questions of law or fact with the main action. Our claims share substantial legal and factual questions with Ultima's, particularly regarding the SBA's compliance with federal contracting laws and constitutional requirements.

In *Rothe Development Corp. v. U.S. Department of Defense,* **413 F.3d 1327 (Fed. Cir. 2005)**, the Court held that federal preferences must be subject to strict scrutiny and cannot be based on broad racial classifications. By intervening, we bring forth evidence that the SBA has failed to apply such scrutiny to ANC-backed firms. The ongoing application of different standards, favoring ANC-backed entities without requiring compliance with the social disadvantage narrative requirement, directly undermines the Court's mandate for equal protection.

Additionally, the SBA's ongoing failure to respond to FOIA requests relating to 8(a) program compliance not in full—requests explicitly for documentation of ANC-backed firms' eligibility—further justifies our intervention. The lack of transparency and failure to fulfill these requests perpetuate a climate of discrimination and unequal treatment for Black-owned businesses. Our involvement will provide the Court with critical insights into these systemic issues, ensuring that the scope of the Court's equal protection ruling is fully realized.

**Legal and Economic Interest Discrimination and Economic Harm for Black Owned Businesses**

The selective exemptions granted by the Small Business Administration, USDA to ANC-backed firms directly contradict the constitutional requirements for federal contracting, violating **the Equal Protection Clause**. In *Adarand Constructors, Inc. v. Peña,* **515 U.S. 200, 227 (1995)**, the Supreme Court held that racial classifications must undergo strict scrutiny and be narrowly tailored to serve a compelling governmental interest. The SBA's allowance for ANC-backed firms to bypass social disadvantage narratives fails to meet these criteria, instead enabling preferential treatment that disadvantages other minority-owned businesses, particularly Black-owned firms.

Additionally, in *Shaw v. Reno,* **509 U.S. 630 (1993),** the Court emphasized that racial classifications must serve a compelling interest and be narrowly tailed. *Grutter v. Bollinger,* **539 U.S. 306 (2003), further requires that racial preferences be "limited in time"** and subject to regular review to ensure constitutional alignment. The SBA's actions contravene these precedents, perpetuating economic disparities and denying equitable opportunities to Black-owned businesses. The ongoing preferential treatment undermines the principles established by these rulings and necessitates immediate judicial intervention.

**The Real-World Impact of SBA's Non-Compliance and Violations of the FAR**

The SBA's disregard for key FAR provisions, including the **"Rule of Two" (FAR 19.502-2(b))** and market research requirements under **FAR 10.001**, has significant implications for fair competition. The Rule of Two mandates that contracts be set aside for small businesses when two or more can fulfill the contract requirements. Yet, the SBA has selectively favored ANC-backed firms, excluding Black-owned businesses from these opportunities. This deviation directly contradicts the requirements for fair competition established by federal contracting rules.

Since 2021, **DALS Credit Solutions Co** have submitted over twenty opportunities to Federal Agencies who continue to ignore the **Rule of Two**, while responding "Acquisition Strategies unknown post Market Research under FAR 10.001. In *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* **463 U.S. 29 (193),** the Supreme Court emphasized federal agencies' need for reasoned decision-making.

The SBA's selective enforcement and preferential treatment of ANC-backed firms lack an additional basis and fail to meet the standards of reasoned decision-making. Additionally, the decision in *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493-494 (1989) mandates that governmental actions must address identifiable discrimination, not perpetuate it. The SBA's practices, however, continue to favor ANC-backed entities without requiring the same verification of social disadvantage imposed on other minority-owned businesses, warranting judicial intervention to ensure fairness and compliance.

**Non-Compliance with LUSA Associates, USDA, and SBA with the Court's Order**

Since October 2023, LUSA Associates, USDA, and SBA have not provided updates regarding compliance with the Court's July 19, 2023, order. The Treasury's August 18, 2023, report highlights that ANC-backed firms continue to secure contracts without submitting social disadvantage narratives, directly contravening the Court's directive. The July 2023 Doc number..... This non-compliance has enabled LUSA Associates to benefit from practices that circumvent the regulatory requirements of **FAR 19 and 41 U.S.C. § 6305**, which mandates proper novation agreements for contract transfers.

**Treasury Report and Deviation from Court Mandate:** The Treasury's August 18 report highlighted deviations from critical FAR provisions, including *FAR 19.804-3 and FAR 52.219-18*, which were intended to ensure a level playing field in federal contracting. Instead of enforcing uniform compliance, the Treasury's policies permitted ANC-backed firms to maintain their participation in the 8(a) program without submitting social disadvantage narratives, directly violating the Court's July 19, 2023, ruling.

The SBA's selective exemptions for ANC-backed firms violate the **Equal Protection Clause** by allowing these entities to maintain program eligibility without meeting the same standards required of other 8(a) participants, including Black-owned businesses. This selective enforcement is not merely an oversight but a deliberate deviation from constitutional requirements and federal acquisition regulations. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995), mandates that race-based preferences in federal contracting must be narrowly tailored, yet the SBA's actions continue to prioritize certain groups without the necessary scrutiny, perpetuating systemic inequities.

In, Adarand *Constructors, Inc. v. Peña*, 515 U.S. 200, 227 (1995), the Supreme Court held that racial classifications must undergo strict scrutiny and be narrowly tailored to serve a compelling governmental interest. The SBA's allowance for ANC-backed firms to bypass social disadvantage narratives fails to meet these criteria, instead enabling preferential treatment that disadvantages other minority-owned businesses, particularly Black-owned firms.

Additionally, in *Shaw v. Reno*, 509 U.S. 630 (1993), the Court emphasized that racial classifications must serve a compelling interest and be narrowly tailed. *Grutter v. Bollinger*, 539 U.S. 306 (2003), further requires that racial preferences be "limited in time" and subject to regular review to ensure constitutional alignment. The SBA's actions contravene these precedents, perpetuating economic disparities and denying equitable opportunities to Black-owned businesses. The ongoing preferential treatment undermines the principles established by these rulings and necessitates immediate judicial intervention.

**Balanced and Fair Oversight:** Implement fair oversight measures that do not disproportionately burden Black-owned businesses. This would help ensure compliance with **Title VI of the Civil Rights Act, the APA, and the Fifth Amendment's Due Process Clause** from the Small Business Administration agencies.

**Selective Compliance and Lack of Transparency:** Despite the Court's explicit injunction, the **S.B.A.'s** August 29, 2023, Notice of Compliance indicated that certain entities, including A.N.C.s, N.H.O.s, and C.D.C.s, would not be subjected to the same compliance requirements as other 8(a) participants. This selective compliance undermines the Court's authority and perpetuates inequities in the 8(a) program. This failure to alert the Court to the deviations, as required by *Motor*

Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983), further demonstrates the S.B.A. and USDA's need for reasoned decision-making.

*Direct Impact on Black-Owned Businesses*: By allowing these deviations, the **S.B.A.** and USDA have effectively excluded Black-owned businesses from competing on an equal footing, perpetuating economic harm. This violates the Equal Protection Clause as affirmed in *Adarand* Constructors, Inc. v. Peña, 515 U.S. 200 (1995), which requires strict scrutiny of racial classifications in federal contracting. The S.B.A.'s actions fall short of these constitutional requirements and fail to ensure fairness in the federal procurement process.

*Systematic Exclusion and Marginalization of Black-Owned Businesses*-The exclusion of Black-owned businesses is not an oversight but a deliberate outcome of systemic failures and policy biases. The evidence points to the following:

*Unbalanced Advocacy and Lack of Equity*: **The S.B.A.'s Office of Advocacy,** instead of championing the interests of all small businesses, has disproportionately supported ANC-backed firms. This lack of balanced representation has left Black-owned businesses needing a seat at the policy table, contributing to their ongoing economic marginalization.

*Disregard for Equity Goals*: The S.B.A.'s actions directly conflict with the goals of *Executive Order 14091,* which seeks to increase opportunities for underserved communities. The continued prioritization of ANC-backed firms contradicts the principles of fairness and transparency that should guide federal programs.

**Executive Order 14091 and Its Intended Goals: Executive Order 14091,** Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government, was issued in 2024 to ensure that all federal programs and policies promote equity and support for underserved communities. However, the disparities highlighted above indicate that implementing this Executive Order needs to catch up, particularly in federal contracting.

**Contradiction with Executive Order 14091**: The data from 2023 shows that ANC-backed entities secured a disproportionate share of federal contracting opportunities, directly contradicting the equity goals of **Executive Order 14091.** On the other hand, black-owned businesses saw their share of federal contracts decline, further marginalizing them.

**Neglect of Executive Order 14091:** Issued in **2024, Executive Order 14091** mandates federal agencies to promote racial equity and support underserved communities. Despite this, data shows that ANC-backed entities have continued to receive a disproportionate share of federal contracts, directly contradicting the objectives of the Order. Black-owned businesses, in contrast, have seen a decline in their share of federal contracts, further exacerbating economic disparities.

**Systematic Exclusion:** The exclusion of Black-owned businesses from federal contracts is not an accidental oversight—it reflects institutional racism that has been allowed to fester within the SBA. The dominance of ANC companies in federal contracting, facilitated by SBA policies, clearly indicates the SBA's misplaced priorities. Failure to Enforce Equity: The SBA needs to enforce equity within federal contracting programs, allowing ANC companies to monopolize opportunities while Black-owned businesses struggle to gain a foothold.

**Impact:** The systemic exclusion of Black-owned businesses from federal contracts has severely limited their growth, leading to a continued decline in their market share and economic influence. This exclusion is a significant factor in the overall decline of small business diversity within federal contracting.

**Office of Advocacy**: Abandoning the Interests of Black-Owned Businesses the Office of Advocacy, which is supposed to represent the interests of small businesses in federal policy discussions, has primarily abandoned Black-owned businesses. Instead, the office has disproportionately focused on advocating for ANC companies, leaving Black entrepreneurs without a voice in critical policy decision Deliberate Marginalization

**Lack of Effective Advocacy:** The Office of Advocacy needs to effectively represent the interests of Black-owned businesses, allowing policies that favor ANC companies to dominate. This failure is not just a lapse in judgment—it is a deliberate marginalization by black-owned companies within the federal policy framework.

**Neglect of Critical Issues:** The lack of advocacy for issues that disproportionately affect Black owned businesses, such as access to capital and federal contracting opportunities, has further entrenched economic disparities.

**Impact:** The absence of effective advocacy has resulted in policy outcomes that perpetuate the exclusion of Black-owned businesses from federal support. This has contributed to their declining competitiveness and overall market presence.

**Disenfranchisement:** The SBA, under the leadership **of Administrator Isabella Casillas Guzman,** has failed Black-owned businesses at every turn. From the systemic biases, lack of advocacy according to the following: Since 1988, the federal government has maintained annual goals for small and small "disadvantaged" business participation in federal contracting.                                        At that time, Congress required that small businesses receive "not less than 20 percent of the total value of all prime contract awards for each fiscal year" and that small, disadvantaged business (those owned and controlled by socially and economically disadvantaged individuals) receive "not less than 5 percent of the total value of all prime contract and subcontract awards for each fiscal year" **(P.L. 100- 656).** Congress has since increased the small business contracting goal.

**Goal Setting per Congressional and SBA** According to the "Federal Small Business Contracting Goals Updated May 14, 2024" **The Small Business Administration negotiates with agencies** to create small business and SDB goals **(SBA added SDB goals to the negotiation process in FY2022, per the Office of Management and Budget Memorandum M-22-03).**

**SBA sets agency goals for HUBZone businesses, WOSBs, and SDVOSBs at the statutory level;** it bases subcontracting goals on recent attainment levels. Since The Small Business Administration (SBA) oversees small business procurement goal-making for individual agencies.

SBA is supposed to consult with agencies to establish annual goals for small business participation in contracting that collectively add up to the government-wide goals, as required by **Section 15(g)(2) of the Small Business Act.** Goal Negotiation and Guidelines According to Congressional data SBA's **"Goaling Guidelines"** describe the goal negotiation process. **According to the FY2023 Guidelines,** "Before the beginning of the fiscal year, SBA provides agencies with a proposed goal, and agencies respond with an acceptance of the proposed goal or a counter-proposed goal."

The SBA will then "determine if these individual agency goals, in the aggregate, meet or exceed the government-wide statutory goals." If an agency and the SBA cannot agree on an agency's goals, the agency "may submit the case to the Office of Federal Procurement Policy at the Office of Management and Budget for resolution." If the SBA is part of negotiations with federal agencies, the exclusion of Black-owned business declines, we request all plans of action in addition to SBA-FOIA request for reasons why threshold, not met?

**Aspirational Goal Attainment:** Since there is no accountability, no punitive consequences for agencies' failure to meet goals. The SBA creates annual Small Business Procurement Scorecards, and the GSA produces annual reports, which can attract scrutiny of contracting practices.                                Any agency that does not achieve a goal must submit a "corrective action report" to the SBA, denoting the reasons it failed to achieve the goal and proposing a "corrective action plan." This correlates with the disenfranchised businesses without designations. Failure of the SBA & agencies did not see growth due to the lack of fair negotiations by the Small Business Administration at the beginning of the Fiscal year — or inactions—have contributed to a significant decline in Black-owned businesses.

**The Correlation of Events Leading to the Decline of Non-ANC Small Businesses Black Owned Small Businesses.**

The decline of Black-owned businesses and other non-designated small businesses in federal contracting is not merely coincidental; it stems from systemic deviations in policy and practice that have been permitted to continue unchecked for decades. Below is a detailed timeline of these critical issues:

**Reason I: The A.N.C. Privilege Under the Alaska Native Claims Settlement Act (ANCSA) of 1971**

The ANCSA, codified in 43 U.S.C. § 1602(b), which is political, grants Alaska Native Corporations (A.N.C.s) unique privileges, enabling them to secure federal contracts through mechanisms that other 8(a) participants cannot access without stringent qualifications. FAR 19 includes these special provisions, allowing A.N.C.s to secure sole-source agreements worth up to $100 million without facing competitive bidding requirements. This privilege, while intended to support Alaska Natives, has become a tool for perpetuating inequities in federal contracting, especially when compared to the requirements placed on Black-owned businesses.

**Unaddressed Verification Gaps:** Under the ANCSA, eligibility verification, including blood quantum and native status, has not been uniformly applied. My FOIA request, dated August 22, 2024, sought documentation verifying the qualifications of crucial A.N.C. founders, explicitly inquiring about their fulfillment of the one-quarter Alaska Native blood quantum requirement. The lack of response from the Department of the Interior underscores a systemic issue in transparency and verification, which disadvantages other minority-owned businesses that are required to submit extensive documentation to prove their social status.

**Reason II: The Small Business Investment Company (SBIC) Program's Disparate Impact**

Established in 1953, the SBIC program is intended to promote competition and support small businesses through private investment. However, the program has primarily favored ANC-backed firms due to their ability to provide high returns, facilitated by their federal contracting privileges. SBICs operate under a 3:1 federal leverage structure, which allows them to amplify their investment capacity significantly. Although available to all SBICs, this structure has disproportionately benefited A.N.C.s due to their stable revenue streams from federal contracts.

**Investment Bias and A.N.C. Dominance:** ANC-backed firms have leveraged their access to SBIC investments to secure more federal contracts, using their privileged status within the 8(a) program to dominate the market. For example, *an SBIC raising $58.33 million in private capital can receive up to $175 million in SBA-backed leverage, creating a total investment pool of $233.33 million. This capital is often directed toward ANC-backed entities, creating a cycle where these firms continue to win contracts, grow their market share, and increase their influence.* In contrast, non-designated businesses like Black-owned firms are marginalized and unable to access similar opportunities.

**Regulatory Lapses and Disparate Impact:** While SBICs are meant to be a tool for economic equity, their preferential investment in ANC-backed firms has further entrenched disparities in federal contracting. Despite responding to RFIs, R.F.P.s, and RFQs, black-owned businesses are consistently sidelined in favor of ANC-backed firms, which benefit from streamlined investment processes and direct federal awards.

**Reason III: Systemic Failures in Policy Leadership and Accountability:** The leadership within the S.B.A. needs to ensure equitable support for all small businesses. The SBIC Agency Licensing Committee, responsible for overseeing investment distribution, has prioritized ANC-backed firms over Black-owned businesses despite federal mandates for equity and inclusivity. The 2023 data reveals a glaring disparity: less than 1% of SBIC investments went to Black-owned businesses, while a significant portion was funneled to ANC-backed firms.

**The data from 2023 reveals a troubling pattern:**

*Black-owned businesses are systematically excluded from the benefits and resources the SBA is supposed to provide. This exclusion is not merely accidental; it results from deliberate policy failures, inadequate oversight, and a lack of accountability at the highest levels of the SBA.*

*SBIC Agency Licensing Committee:* A Catalyst for Inequality the SBIC (Small Business Investment Company) program, which should serve as a vital source of capital for small businesses, has instead become a mechanism for reinforcing existing disparities. *The SBIC Agency Licensing Committee, comprising the SBA Office of the General Counsel (OGC) Representative, Director of Policy, Director of IT & Data Strategy, and the Director of Investment and Innovation Ecosystem Development & Manager,* has utterly failed in its mandate to ensure equitable distribution of SBIC funds.

**Critical Disparities with Key Committee Members:**

**SBA Office of the General Counsel (OGC) Representative: Disparities:** The OGC's inaction in enforcing legal safeguards against discrimination in fund distribution has allowed SBIC investments to favor ANC (Alaska Native Corporation) companies disproportionately. This neglect is a clear dereliction of duty, enabling systemic bias to persist unchecked.

**Director of Policy: Disparities:** The Director of Policy has yet to implement or advocate for equity driven policies within the SBIC program. The lack of proactive measures to correct funding disparities is not just a policy failure, it reflects an institutional disregard for racial equality.

**Director of IT & Data Strategy: Disparities:** *The Director of IT & Data Strategy must utilize data analytics to expose and address inequities in SBIC fund distribution. This oversight has kept systemic exclusion under the radar, allowing inequities to persist.* Due to being unable to track according to **the 2024 OIG reports, Black-owned Businesses** continue to be **paralyzed** with **Federal Opportunities.**

**Director of Investment and Innovation Ecosystem Development & Manager: Disparities:** *The Director's oversight of the innovation ecosystem has been fundamentally flawed, prioritizing well connected ANC companies over Black-owned startups.*

This has stifled innovation and economic growth within the Black community. Impact of SBIC Policy Mismanagement: **2023 Data: Less than 1% of SBIC** investments were allocated to Black-owned businesses—approximately **$500 million** out of **$50 billion** in total SBIC investments. In stark contrast, ANC companies received a significant portion of these investments, fueling their growth and allowing them to dominate both federal and private sectors. Result: The exclusion from SBIC investments has directly contributed to a **40% decline** in Black owned startups between **2015** and **2023.**

**Accountability and Transparency:** The SBA's failure to publicly track or report the racial distribution of its federal contracts is an intentional ongoing oversight. The SBA's failure to address these issues perpetuates a legacy of exclusion.

**Broad Implications and Future Considerations:** The disparities in federal contracting have far reaching implications for Black-owned businesses, the broader economy, and society. These inequities: Perpetuate Economic Inequality: The underrepresentation of Black-owned businesses in federal contracting contributes to the broader wealth gap between Black Americans.

**Undermine Public Trust:** When federal programs consistently favor certain groups over others, they undermine public trust in the government's ability to administer programs fairly and equitably. This can lead to a loss of confidence in public institutions, particularly among marginalized communities.

**Stifle Innovation and Competitiveness:** By excluding Black-owned businesses from high-tech and innovative sectors, the federal government risks stifling innovation and reducing the overall competitiveness of the US economy. Diverse perspectives and approaches are critical to driving innovation, and excluding Black-owned businesses limits the pool of ideas and talent.

Furthermore, the SBA's relationship as a trustee for ANC-backed firms, combined with the Treasury's deviation allowing a **3:1** leverage structure for Small Business Investment Companies (SBICs), exacerbates the disparities.

This financial structure has enabled ANC-backed firms to leverage significant capital advantages through SBIC programs, disadvantaged other minority-owned businesses that do not receive the same exemptions. As the *2024 OIG Report* indicates, systemic issues in compliance persist, compounding the harm to Black-owned businesses. The USDA's and Department of Interior's failure to comply with FOIA requests further obscures the true extent of non-compliance.

This failure to adhere to the Court's ruling has allowed **LUSA Associates** to benefit from non-compliant practices, avoiding the regulatory requirements of **FAR 19 and 41 U.S.C. § 6305,** which mandates proper novation agreements for contract transfers. Furthermore, the SBA's relationship as a trustee for ANC-backed firms, combined with the Treasury's deviation allowing a **3:1 leverage** structure for **Small Business Investment Companies (SBICs),** exacerbates the disparities. This financial structure has enabled

ANC-backed firms to leverage significant capital advantages through SBIC programs, disadvantaged other minority-owned businesses that do not receive the same exemptions.

**Legal Concerns: Small Business Act (15 USC § 631 et seq.):** The Act mandates equitable support for all small businesses, particularly those economically disadvantaged. The continued concentration of funds among ANC-backed entities, with Black-owned businesses receiving only a fraction, could violate the Act's intent.

**Equal Credit Opportunity Act (ECOA) (15 USC § 1691):** The effective exclusion of Black-owned businesses from equitable access to capital may constitute de facto discrimination under the ECOA. This is a federal violation of the **Civil Rights Act of 1866.**

**Equal Protection Clause of the Fourteenth Amendment:** The exclusion of Black-owned businesses from innovation programs could violate their equal protection rights**.**

**Executive Order 14091 and Its Intended Goals: Executive Order 14091,** Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government, was issued in 2023 to ensure that all federal programs and policies promote equity and support for underserved communities.

**Contradiction with Executive Order 14091:** The data from **2023** shows that ANC-backed entities secured a disproportionate share of federal contracting opportunities, directly contradicting the equity goals of **Executive Order 14091.** On the other hand, black-owned businesses saw their share of federal contracts decline, further marginalizing them.

**Small Business Act (15 U.S.C. § 644): Violation:** This act mandates that small businesses receive the maximum practicable participation in federal procurement. Ignoring the **Rule of Two** or failing to consider Black-owned businesses for set-asides directly violates the intent of the Small Business Act.

**Competition in Contracting Act (CICA): Violation:** While the **Competition in Contracting Act (CICA)** encourages full and open competition, it also allows small business set-asides when the Rule of Two applies. Ignoring set-asides in favor of open competition when small businesses, especially Black-owned businesses, can perform the contract violates CICA.

**Federal Procurement Policy (41 U.S.C. Chapter 17): Violation:** 41 U.S.C. Chapter 17 requires federal agencies to ensure that small businesses receive a fair opportunity to compete for federal contracts. By not properly applying the Rule of Two or considering minority-owned businesses, including Black-owned businesses, the contracting officer violates this policy.

**National Defense Authorization Act (NDAA): Violation:** The NDAA includes provisions to increase the participation of small businesses in federal contracting, particularly in defense contracts. Ignoring these provisions when minority-owned businesses or Black-owned businesses could compete under set-asides is a violation of the NDAA.

**Women-Owned Small Business (WOSB) Program (15 U.S.C. § 637(m)):** Violation: Similarly, failure to set aside contracts for **Women-Owned Small Businesses (WOSBs),** when applicable, violates this statute, your honor, **138 sole source** awards given to those who are backed by ANC's to continues to demarginalize black-owned businesses.

**Small Business Regulatory Enforcement Fairness Act (SBREFA): Violation:** SBREFA requires that small businesses, particularly socially disadvantaged businesses, are treated fairly in regulatory processes. Failing to apply the **Rule of Two** or consider Black-owned businesses in contracting decisions can constitute a violation of this act.

**Civil Rights Act of 1964 (Title VI) (42 USC § 2000d):** If oversight practices disproportionately scrutinize Black-owned businesses, leading to unequal access to relief funds, **violates Title VI. Administrative Procedure Act (APA) (5 USC § 551 et seq.):** Disproportionate oversight of targeting Black-owned businesses should be viewed as arbitrary and capricious, violating the APA's standards.

**Due Process Clause of the Fifth Amendment:** Since the **SBA** and **USDA** failed to comply with the ruling, this is considered an ongoing oversight disproportionately penalizes Black owned businesses without adequate procedural protection, which violated our due process rights.

**Administrative Procedure Act (A.P.A.) (5 U.S.C. § 706)** Your Honor, The APA allows for challenges to arbitrary, capricious, or unlawful agency actions. The USDA and SBA's contract awards to ANCs, mainly when ANC eligibility is suspect, violates the APA by favoring ANC over other minority businesses without proper justification—failed practices from Procurement Center Representatives not advocating for Small Businesses.

**Adherence to the Court's ruling and FAR requirements.**

**The Rule of Two. FAR 19.202-2** – Market Research for Small Business Set-Asides.
**FAR 19.202-5** – PCR Review and Recommendations.
**FAR 19.203** – Prioritization of Small Business Set-Asides.
**FAR 10.001** – Market Research Requirements.
**FAR 19.501(c) –** Priority for Small Business Set-Asides.
**FAR 1.602-2** – Responsibilities of the Contracting Officer (Fair and Impartial Treatment).
**ECR-124.504** -Failure to work with SBA regarding removing contracts from the 8(a) program The Rule of Two, as outlined in

**FAR 19.502-2(b),** is a fundamental principle in federal procurement that mandates contracts be set aside for small businesses if market research shows that: At least two responsible small businesses can fulfill the contract's requirements, and the contract can be awarded at a fair market price. Contracting officers must conduct market research to determine if Rule of Two applies. If the **Rule of Two** is met, they must set aside the contract for small businesses, including businesses in designated set-aside programs such as **8(a), HUBZone, Service-Disabled Veteran-Owned (SDVOSB), and Women-Owned Small Businesses (WOSB).**

**SBA, USDA and LUSA Associates failed to comply FAR 19.502-2(b) – The Rule of Two: Violation**: If a contracting officer fails to conduct proper market research and does not set aside a contract for small businesses when two or more small businesses can perform the work, they violate **FAR 19.502-2(b).** This is the core provision of the Rule of Two and is mandatory for contracts exceeding the simplified acquisition threshold.

**FAR 19.202-2 – Market Research Requirements: Violation**: Contracting officers must conduct adequate market research to determine if there are small businesses capable of fulfilling the contract. Failure to perform this research, or ignoring the presence of qualified small businesses, violates **FAR 19.202-2.** If contracting officers do not consider Black-owned businesses during market research, they could also be neglecting equity requirements under emerging procurement guidelines.

**FAR 19.202-5 – PCR Review and Recommendations: Violation:** If a Procurement Center Representative (PCR) recommends a small business set-aside and the contracting officer ignores the recommendation without justification, they are violating **FAR 19.202-5**-Reasons for the Executive Order 14091. The PCR's role is to ensure that small business opportunities are fully considered, and bypassing their recommendation can lead to regulatory breaches, especially if the recommendation involves Black-owned businesses or other minority-owned small businesses.

 **FAR 19.203 – Priorities for Set-Asides: Violation:** This FAR provision establishes the order of precedence for set-asides, requiring contracting officers to prioritize small business set-asides over full and open competition. If the officer fails to set aside contracts for 8(a), HUBZone, SDVOSB, WOSB, or other small business categories when the **Rule of Two** is met, they are violating **FAR 19.203. FAR 10.001**

 **Market Research: Violation: FAR 10.001** requires contracting officers to perform market research before soliciting offers for contracts exceeding the simplified acquisition threshold. Since SBA, USDA Ignoring or inadequately performing market research that would have revealed the capacity of Black-owned or other small businesses is a direct violation.                **FAR 19.501(c) –**
**Small Business Set-Asides: Violation:** This provision mandates that contracting officers set aside contracts for small businesses when the Rule of Two is met. If the contracting officer does not properly consider small businesses, including those owned by Black entrepreneurs, they are violating **FAR 19.501(c).**                **FAR 1.602-2 – Responsibilities of the**
**Contracting Officer: Violation:** This regulation requires contracting officers to ensure fair, impartial, and equitable treatment of all contractors, including small businesses. If the contracting officer fails to consider small businesses, particularly those from socially disadvantaged backgrounds such as Black-owned businesses, they breach their duty to ensure fair competition and compliance with federal regulations.

**Specific Request for an Immediate Injunction Temporary Restraining Order (TRO)**

**Justification**: Given the ongoing harm to Black-owned businesses, I respectfully request an immediate injunction or TRO to halt all 8(a) contract awards to ANC-backed firms until a comprehensive compliance audit is completed and the SBA demonstrates full adherence to the Court's July 19, 2023, ruling.

**Legal Basis**: As established in *Winter v. Natural Resources Defense Council*, **555 U.S. 7 (2008),** the Court may grant a TRO when there is a likelihood of irreparable harm and a likelihood of success on the merits. The SBA's ongoing non-compliance with FAR and the Court's order presents clear and present harm to Black-owned businesses, necessitating immediate judicial intervention to prevent further discrimination.

### Immediate Request for Discovery of MAX. v Records

To substantiate these non-compliance and selective enforcement claims, I request that the Court order the immediate discovery of MAX.gov records as part of the compliance audit. These records will provide insight into how the SBA and USDA have tracked compliance with social disadvantages or lack thereof—for ANC-backed firms and other exempt entities. Access to these records is crucial to uncover the extent of non-compliance and deviations from the Court's directive.

### Additional Requests for the Status Conference

In the upcoming status conference, I request that the Court **require SBA, USDA, and LUSA Associates** to address the following specific questions to ensure a comprehensive and productive discussion: **Status of LUSA Associates as an 8(a) Participant**: Clarify whether LUSA Associates meets all current compliance standards to participate in the 8(a) program.

**Failure to Inform the Court of Direct Awards**: Explain why USDA and SBA have yet to alert the Court about direct awards made under the Treasury deviation, which may conflict with the Court's injunction since the ruling.

**Justification for Treasury's Deviation**: Provide a rationale for the Treasury's deviation from the Court's order and its impact on maintaining the 3:1 profit ratio structure for SBIC-backed entities, including all those who are in the FAR 19 Small Business Program.

**Role of the 3:1 Leverage Structure**: Explain how this ratio affects compliance with FAR regulations and how it impacts equal opportunities for disadvantaged businesses, especially Black Women Own Small Businesses under the FAR 19 Small Business program.

**Compliance with Executive Order 14091:** Detailed steps were taken to fulfill the racial equity mandates within Executive Order 14091due to the decline of Black-owned Businesses.

### Request for Specific Relief

To restore fairness, transparency, and accountability in the federal contracting process, I respectfully request the following:

**Grant Full Intervention**: Allow DALS Credit Solutions Co. to participate fully in this case, addressing SBA's discriminatory practices and ensuring the 8(a) and 8(m) under Federal Regulation Acquisition (FAR-19 Small Business Program) adheres to constitutional and statutory standards.

**Immediate Pause on All 8(a) Contract Awards**: Issue an injunction to **halt all 8(a) program** contract awards until a full compliance audit confirms adherence to the Court's ruling, ensuring that Black-owned businesses are not further harmed.

**Expedite FOIA Compliance with Adverse Inferences for Delays**: Require SBA, USDA, and the Department of the Interior to fulfill all outstanding FOIA requests. Draw adverse inferences against the agencies should further delays occur, assuming the withheld information supports non-compliance claims.

**Require Periodic Compliance Reporting**: Order SBA, USDA, and Treasury to submit monthly or quarterly compliance reports detailing:

**Adherence to the Court's ruling and FAR requirements.** Lists of contracts awarded to Alaskan Native Corporations (ANC), National Hawaiian Organizations (NHO), and Community Development Corporations

(CDC) backed firms, and other entities exempt from social disadvantage narratives. The 298 companies awarded in 2023 backed by Small Business Investment Companies.

**Efforts to address any identified non-compliance issues.**

**Application of Strict Scrutiny to All 8(a) Participants:** Given SBA's selective enforcement, strict scrutiny is required for all 8(a) participants to ensure fair treatment aligned with constitutional principles.

**Conclusion**

To reiterate your Honor, **USDA and SBA's Non-Compliance with the Court's Ruling** which violates the **Equal Protection Clause.** On August 29, 2023, the SBA's Notice of Compliance claimed adherence to the injunction by ceasing to use the presumption of social disadvantage for individual applicants. However, it also stated that ANC-backed firms, CDCs, and NHOs would only continue participating in the 8(a) program if they met the social disadvantage narrative requirements, to date, no Social Narratives provided. This selective compliance directly contradicts the **intent and spirit of the Court's ruling.**

**Failure to Provide Social Disadvantage Narratives:** LUSA Associates, USDA, and the SBA have failed to update the courts, enforce the requirement for **social disadvantage narratives,** any changes with new contracting opportunities, novation agreements from Ultima to LUSA Associates. Thereby allowing certain entities to benefit from contracts without the same level of scrutiny which continues to exclude Black-owned Businesses. This practice is at odds with **FAR requirements** and **41 U.S.C. § 6305,** which emphasize transparency and fairness in the awarding of federal contracts.

**Implications of SBIC and ANC Relationships:** The Treasury's deviation also ties into the **3:1 profit leverage structure** under the **Small Business Investment Company (SBIC) program.** As trustees, the SBA facilitates a system where ANC-backed firms, supported by **significant federal capital through SBIC leverage,** can outcompete other disadvantaged businesses without proving their compliance. This arrangement raises concerns about the **integrity of the federal contracting process,** as it enables certain entities to leverage federal advantages without equivalent compliance obligations.

**Failure to Fulfill FOIA Requests:** The **USDA** and **Department of the Interior's** failure to fulfill **Freedom of Information Act (FOIA),** SBA failed to fulfill the entire FOIA request as the burden of proof will fall on DALS Credit Solutions Co which have already experienced and continue to experience a drastic loss of revenue due to non-compliance of ruling. Requests further obstruct transparency. The refusal to provide records prevents a full assessment of the extent of non-compliance and selectively applied standards. Such a lack of transparency directly contradicts the principles of **accountability** and **open government** that FOIA is intended to protect.

The SBA's ongoing systemic failure to comply with federal procurement **laws, 41 U.S.C. § 6305,** and constitutional mandates fundamentally undermines the federal contracting system and excludes Black-owned businesses from participating equitably. **In** *Parents Involved in Community Schools v. Seattle School District No. 1,* **551 U.S. 701, 7 8 (2007),** the Court emphasized that ending race-based discrimination requires the cessation of discriminatory practices.

I respectfully request the Court grant this motion for full intervention, issue an immediate injunction, mandate a comprehensive compliance audit, enforce FOIA requirements, and apply strict scrutiny to all 8(a) participants. These actions are crucial to restoring fairness, integrity, and accountability within federal contracting.

Respectfully, your Honor

Lynette T. Stevenson.

Neiko Stewart

**522304111**

# LUSA ASSOCIATES INC.
# Employer Identification Numbers Registry

Employer Identification Number (EIN) is a unique identification number that is assigned to a business entity so that it can easily be identified by the Internal Revenue Service (IRS). The Employer Identification Number is commonly used by employers for the purpose of reporting taxes. The EIN is also known as a Federal Tax Identification Number. When it is used to identify a corporation for tax purposes, it is commonly referred to as a Tax Identification Number.

## LUSA ASSOCIATES INC.

| EIN | 522304111 |
| --- | --- |
| | An Employer Identification Number (EIN) is also known as a Federal Tax Identification Number, and is used to identify a business entity. Generally, businesses need an EIN. |
| Business Name | LUSA ASSOCIATES INC. |
| | Conformed submission company name, business name, organization name, etc |
| CIK | N/S |
| | Company's Central Index Key (CIK). The Central Index Key (CIK) is used on the SEC's computer systems to identify corporations and individual people who have filed disclosure with the SEC. |
| State of Incorporation | N/S |
| | Company's State of Incorporation. The state of incorporation is the state where the entity has a domestic entity registration. I.e. the entity was first registered, NOT necessarily where the entity does business. |
| Phone | 2404988574 |
| | Business address telephone number |

## BUSINESS ADDRESS

| Address Line 1 | N/S |
| --- | --- |
| | Business Address Line 1 |
| Address Line 2 | N/S |
| | Business Address Line 2 |
| City | N/S |
| | Business Address City |
| State | N/S |
| | Business Address State |
| ZIP | N/S |
| | Business Address Postal Code (ZIP) |

## MAILING ADDRESS

| | |
|---|---|
| *Address Line 1* | 1104 TUSCULUM BLVD. |
| | Mailing Address Line 1 |
| *Address Line 2* | SUITE 306 |
| | Mailing Address Line 2 |
| *City* | GREENEVILLE |
| | Mailing Address City |
| *State* | TN |
| | Mailing Address State |
| *ZIP* | 37745 |
| | Mailing Address Postal Code (ZIP) |

# FEDERAL TAX IDENTIFICATION NUMBER: 522304111 (ADDITIONAL INFORMATION)





# LUSA ASSOCIATES, INC.

Sponsored Links

ᴬᵈ▷×



**STATE RECORDS**

Due to the sensitive nature of the
you may find, please review & agre
statement below to continue your

I will not use this service or the
provides to make decisions about
employment, insurance, or any pur|
requires FCRA compliance

**I Agree**

There are 24 companies that go by the name of Lusa Associates, Inc..

These companies are located in Albany NY, Baltimore MD, Columbus OH, Espanola NM, Flowood MS, Frankfort KY, Georgetown TX, Glendale CA, Greeeneville TN, Greeneville TN, Greenville TN, Jacksonville FL, Knoxville TN, Lawrenceville GA, Little Rock AR, Madison WI, Midvale UT, Olympia WA, Phoenix AZ, Pierre SD, Raleigh NC, Rocky River OH, Topeka KS, West Trenton NJ, and Yuma AZ.

**LUSA ASSOCIATES, INC.**
ARIZONA FOREIGN FOR-PROFIT (BUSINESS) CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd 306 Greeneville, TN 37745 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | March 27, 2019 |
| File Number: | 1970355 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
ARKANSAS FOREIGN FOR-PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd Ste 306 Greeneville, TN 37745 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | December 06, 2019 |
| File Number: | 811226391 |

Contact Us About The Company Profile For Lusa Associates, Inc.

Sponsored Links

ᴬᵈ▷×



**STATE RECORDS**

Due to the sensitive nature of the
you may find, please review & agre
statement below to continue your

I will not use this service or the
provides to make decisions about
employment, insurance, or any pur|
requires FCRA compliance

**I Agree**

⌄

NOTICE: Due to the sensitive nature of the records you may find
please review & agree to the statement below to continu
I will not use this service or the info it provides to make decision:
employment,insurance, or any purpose that requires FCRA compliance.

**LUSA ASSOCIATES, INC**
CALIFORNIA STOCK CORPORATION - OUT OF STATE -
STOCK
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd Ste 306 |
| | Greeneville, TN 37745 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | January 22, 2013 |
| File Number: | 3545580 |

Contact Us About The Company Profile For Lusa Associates, Inc

**LUSA ASSOCIATES, INC.**
COLORADO FOREIGN CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd |
| | Ste 306 |
| | Greeneville, TN 37745 |
| Registered Agent: | |
| Filing Date: | February 08, 2017 |
| File Number: | 20171109480 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
FLORIDA FOREIGN PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd |
| | Ste 306 |
| | Greeneville, TN 37743 |
| Registered Agent: | |
| Filing Date: | May 24, 2006 |
| File Number: | F06000003756 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC**
GEORGIA FOREIGN PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd |
| | Ste 306 |
| | Greeneville, TN 37745 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | June 03, 2016 |
| File Number: | 16070481 |

Contact Us About The Company Profile For Lusa Associates, Inc

**LUSA ASSOCIATES, INC.**
KANSAS FOREIGN FOR-PROFIT
WRITE REVIEW

| | |
|---|---|
| Address: | Celeste Bennett - Po Box 1945 |
| | Greeneville, TN 37744 |
| Registered Agent: | Business Filings International, Inc. |
| Filing Date: | October 27, 2003 |
| File Number: | 3534880 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES INC.**
KENTUCKY FCO - FOREIGN CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | Po Box 1945 |
| | Greeneville, TN 37744 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | December 22, 2016 |
| File Number: | 0971235 |

Contact Us About The Company Profile For Lusa Associates Inc.

**LUSA ASSOCIATES, INC.**
MARYLAND DOMESTIC CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 351 West Camden Street |
| | Baltimore, MD 21201 |
| Registered Agent: | Business Filings International Incorpora |
| Filing Date: | January 24, 2001 |
| File Number: | D06200802 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
MISSISSIPPI PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 645 Lakeland East Dr #101 |
| | Flowood, MS 39232 |
| Registered Agent: | Business Filings International, Inc. |
| Filing Date: | November 18, 2005 |
| File Number: | 897485 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
NEBRASKA FOREIGN CORP
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd. |
| | Ste. 306 |

**LUSA ASSOCIATES, INC.**
NEW JERSEY FOREIGN PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | Po Box 1945 |
| | Greeneville, TN 37744 |

**LUSA ASSOCIATES INC.**
NEW MEXICO FOREIGN PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 206 S Coronado Ave |
| | Espanola, NM 87532 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | February 25, 2020 |
| File Number: | 6109438 |

Contact Us About The Company Profile For Lusa Associates Inc.

**LUSA ASSOCIATES, INC.**
NORTH CAROLINA FOREIGN BUSINESS CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 160 Mine Lake Ct Ste 200 |
| | Raleigh, NC 27615-6417 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | October 09, 2013 |
| File Number: | 1341993 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
SOUTH DAKOTA FOREIGN BUSINESS
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd. #306 |
| | Greeenville, TN 37745 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | March 18, 2019 |
| File Number: | FB161815 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES INC.**
TEXAS FOREIGN FOR-PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd., Ste. 306 |
| | Greenville, TN 37743 |
| Registered Agent: | Serve Secretary Of State For Mailing To |
| Filing Date: | October 14, 2013 |
| File Number: | 0801868158 |

Contact Us About The Company Profile For Lusa Associates Inc.

**LUSA ASSOCIATES INC.**
VIRGINIA FOREIGN CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd. #306 |
| | P.O.Box 1945 |

**LUSA ASSOCIATES, INC.**
NEW YORK FOREIGN BUSINESS CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 187 Wolf Road Ste 101 |
| | Albany, NY 12205 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | January 09, 2017 |
| File Number: | 5064770 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
OHIO FOREIGN CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd |
| | Ste 306 |
| | Greenville, TN 37744 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | August 25, 2014 |
| File Number: | 2321953 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES INC.**
TENNESSEE FOREIGN FOR-PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd |
| | Ste 306 |
| | Greenville, TN 37745-4091 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | January 08, 2008 |
| File Number: | 000567151 |

Contact Us About The Company Profile For Lusa Associates Inc.

**LUSA ASSOCIATES, INC.**
UTAH CORPORATION - FOREIGN - PROFIT
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd |
| | Ste 306 |
| | Greenville, TN 37745 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | February 28, 2017 |
| File Number: | 10261230-0143 |

Contact Us About The Company Profile For Lusa Associates, Inc.

**LUSA ASSOCIATES, INC.**
WASHINGTON FOREIGN PROFIT CORPORATION
WRITE REVIEW

| | |
|---|---|
| Address: | 1104 Tusculum Blvd Ste 306 |
| | Greenville, TN 37745-4091 |

**LUSA ASSOCIATES, INC.**
WEST VIRGINIA FOREIGN PROFIT CORPORATION
<u>WRITE REVIEW</u>

| | |
|---|---|
| Address: | 76 South Laura Street |
| | Jacksonville, FL 32245 |
| Registered Agent: | Celeste Bennett |
| Filing Date: | January 07, 2003 |
| File Number: | 212906 |

<u>Contact Us About The Company Profile For Lusa Associates, Inc.</u>

**LUSA ASSOCIATES, INC.**
WISCONSIN FOREIGN CORPORATION
<u>WRITE REVIEW</u>

| | |
|---|---|
| Address: | 8020 Excelsior Dr, Ste 200 |
| | Madison, WI 53717 |
| Registered Agent: | Business Filings Incorporated |
| Filing Date: | November 01, 2019 |
| File Number: | L066104 |

<u>Contact Us About The Company Profile For Lusa Associates, Inc.</u>

Sponsored Links

# Court Records: 4 Sources

Aᵢ

ADDITIONAL LINKS

<u>Search All Companies</u>

*(Displaying 24 matches)*

*The information on this page is being provided for the purpose of informing the public about a matter of genuine public interest.*

Copyright © 2012-2024  Bizapedia.com.  All rights reserved.     Pro Data ▪ Pro Search ▪ Pro API ▪ Contact Us ▪ Terms of Use ▪ Privacy Policy ▪ Sitemap

Desktop · Server 1

Skip Navigation > Accessibility Options >

**SBA Profile**

**Privacy Statement**
(Back to Profile List, or use Back button)

**Identification, Location & Contacts**

| | |
|---|---|
| This profile was last updated: | 03/20/2024 |
| Status: | Active |
| | |
| User ID: | P0273871 |
| Name of Firm: | LUSA ASSOCIATES INC. |
| Capabilities Statement Link: | |
| Trade Name ("Doing Business As ..."): | LUSA ASSOCIATES INC |
| UEI: | TPCZJ93HK4B5 |
| Address, line 1: | 1104 TUSCULUM BLVD |
| Address, line 2: | STE 306 |
| City: | GREENEVILLE |
| State: | TN |
| Zip: | 37745-4091 |
| Phone Number: | 240-498-8574 x |
| Fax Number: | |
| E-mail Address: | cwbennett@lusaassociates.com |
| WWW Page: | |
| E-Commerce Website: | https://www.lusaassociates.com |
| Contact Person: | CELESTE BENNETT |
| County Code (3 digit): | 059 |
| Congressional District: | 01 |
| Metropolitan Statistical Area: | |
| CAGE Code: | 1T5K4 |
| Year Established: | 2001 |
| Accepts Government Credit Card?: | [X] Yes [ ] No |
| GSA Advantage Contract(s): | |

(Note: Size information is now under "NAICS Codes with Size Determinations by NAICS", below.)

**Organization, Ownership & Certifications**

| | |
|---|---|
| Legal Structure: | Subchapter S Corporation |
| Ownership and Self-Certifications: | Women-Owned Small Business, Woman Owned |

*Current Principals*

1. Celeste Bennett, President

*"Business Development Servicing Office" (for certifications)*

TENNESSEE DISTRICT OFFICE (SBA office code 0474)


*SBA Federal Certifications*

### *8(a) Certification:*

SBA 8(a) Case Number:
SBA 8(a) Entrance Date:
SBA 8(a) Exit Date:

### *HUBZone Certification:*

HUBZone Certified?: [X] Yes [ ] No
HUBZone Certification Date: 10/01/2021

### *8(a) Joint Venture - SBA Certified:*
*NOTE: Notify your servicing SBA Business Opportunity Specialist to have your 8(a) joint venture approval date reflected in DSBS.*

8(a) JV Entrance Date:
8(a) JV Exit Date:

### *Women Owned - SBA Certified:*

WOSB Certified?: [X] Yes [ ] No
WOSB Certification Date: 05/07/2021
WOSB Pending?: [ ] Yes [X] No

### *Economically Disadvantaged Women Owned - SBA Certified:*

EDWOSB Certified?: [ ] Yes [X] No
EDWOSB Pending?: [ ] Yes [X] No

### *Veteran-Owned Small Business - SBA Certified:*

VOSB Certified?: [ ] Yes [X] No
VOSB Joint Venture?: [ ] Yes [X] No
VOSB Certification Date:
VOSB Certification Expiration
Date:

### *Service-Disabled Veteran-Owned Small Business - SBA Certified:*

SDVOSB Certified?: [ ] Yes [X] No
SDVOSB Joint Venture?: [ ] Yes [X] No
SDVOSB Certification Date:
SDVOSB Certification Expiration
Date:

*Other Certifications*

### Non-Federal-Government Certifications:

(none given)



**Products & Services**

### Capabilities Narrative:

- HUBZone & Woman Owned Small Business - SECRET Facility Clearance - DOD / NASA / DOI / USDA Experience - 20+ years experience in federal contracting - Administration, Training, Military Test, Graphic Design, Audio Visual, Environmental Consulting, Logistics experience - Ability to act as a purchaser / pass-thru for federal agencies - Work Experience across 36 States including Alaska and Hawaii - Ability to work globally - Strong customer service focus - Cost competitive - Comprehensive employee benefits to attract & retain an excellent workforce - Offices in Tennessee and Colorado

### Special Equipment/Materials:

(none given)

### Business Type Percentages:

Research and Development (5 %)
Service (95 %)

### Bonding Levels

| | |
|---|---|
| Construction Bonding Level (per contract) | $0 |
| Construction Bonding Level (aggregate) | $0 |
| Service Bonding Level (per contract) | $0 |
| Service Bonding Level (aggregate) | $0 |

### NAICS Codes with Size Determinations by NAICS:

| # | Primary? | Code | NAICS Code's Description | "Buy Green"? [1] | Small? [2] |
|---|---|---|---|---|---|
| 1 | Yes | 561110 | Office Administrative Services | | Yes |
| 2 | | 334514 | Totalizing Fluid Meter and Counting Device Manufacturing | | Yes |
| 3 | | 335999 | All Other Miscellaneous Electrical Equipment and Component Manufacturing | | Yes |
| 4 | | 339113 | Surgical Appliance and Supplies Manufacturing | | Yes |
| 5 | | 491110 | Postal Service | | No |
| 6 | | 493110 | General Warehousing and Storage | | Yes |
| 7 | | 541330 | Engineering Services<br>General $22.50m Small Business Size Standard: [Yes]<br>Special $41.50m Military and Aerospace | | Yes |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(4) As s Case 2:20-cv-00064-JRG-CRW egories Document 112    Filed 10/29/24    Page 26 of 29

| # | Primary? | Code | NAICS Code's Description | "Buy Green"? [1] | Small? [2] |
|---|---|---|---|---|---|
| | | | Equipment and Military Weapons: [Yes] Special $41.50m Contracts and Subcontracts for Engineering Services Awarded Under the National Energy Policy Act of 1992: [Yes] Special $41.50m Marine Engineering and Naval Architecture: [Yes] [4] | | |
| 8 | | 541340 | Drafting Services | | No |
| 9 | | 541360 | Geophysical Surveying and Mapping Services | | Yes |
| 10 | | 541370 | Surveying and Mapping (except Geophysical) Services | | Yes |
| 11 | | 541380 | Testing Laboratories and Services | | Yes |
| 12 | | 541430 | Graphic Design Services | | No |
| 13 | | 541511 | Custom Computer Programming Services | | Yes |
| 14 | | 541512 | Computer Systems Design Services | | Yes |
| 15 | | 541611 | Administrative Management and General Management Consulting Services | | Yes |
| 16 | | 541612 | Human Resources Consulting Services | | Yes |
| 17 | | 541614 | Process, Physical Distribution and Logistics Consulting Services | | Yes |
| 18 | | 541618 | Other Management Consulting Services | | Yes |
| 19 | | 541620 | Environmental Consulting Services | | Yes |
| 20 | | 541690 | Other Scientific and Technical Consulting Services | | Yes |
| 21 | | 541720 | Research and Development in the Social Sciences and Humanities | | Yes |
| 22 | | 541990 | All Other Professional, Scientific and Technical Services | | Yes |
| 23 | | 561210 | Facilities Support Services | | Yes |
| 24 | | 561311 | Employment Placement Agencies | | Yes |
| 25 | | 561312 | Executive Search Services | | Yes |
| 26 | | 561320 | Temporary Help Services | | Yes |
| 27 | | 561410 | Document Preparation Services | | Yes |
| 28 | | 561439 | Other Business Service Centers (including Copy Shops) | | Yes |
| 29 | | 561499 | All Other Business Support Services | | Yes |
| 30 | | 561510 | Travel Agencies | | Yes |
| 31 | | 561612 | Security Guards and Patrol Services | | Yes |
| 32 | | 561621 | Security Systems Services (except Locksmiths) | | Yes |
| 33 | | 561790 | Other Services to Buildings and Dwellings | | No |
| 34 | | 561990 | All Other Support Services | | Yes |
| 35 | | 562920 | Materials Recovery Facilities | | Yes |
| 36 | | 611420 | Computer Training | | Yes |
| 37 | | 611430 | Professional and Management Development Training | | Yes |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(4) As seen above, the size standard can depend on subcategories within a NAICS code.

*Keywords:*

Administration, Military Test, Logistics, Graphic Design, Audio Visual, Financial Management, Human Resources, Training, Consulting, Environment, ADA Compliance, NASA, DOD, Army, DOI, Reclamation, USDA, NRCS, Contract Management, Audit Support, Customer Service, Secretary, Technician, Supply.

*Miscellaneous:*

Quality Assurance Standards:          (none given)
Electronic Data Interchange            [ ] Yes [ ] No
capable?:

## *Export Profile (Trade Mission Online)*

Exporter?:                                          [ ] Yes [ ] No [X] Wants To Be
Export Business Activities:             Service(s)
Exporting to:                                     Aruba; Algeria; Albania; Argentina; Australia; Austria; Bahrain;
                                                          Barbados; Botswana; Bermuda; Belgium; Bahamas, The;
                                                          Belize; Brazil; Brunei; Canada; Sri Lanka; China; Chile;
                                                          Cayman Islands; Colombia; Costa Rica; Cyprus; Denmark;
                                                          Dominica; Dominican Republic; Egypt; Ireland; Estonia; El
                                                          Salvador; Czech Republic; Finland; Fiji; France; Gabon; Ghana;
                                                          Grenada; Germany; Greece; Guatemala; Hong Kong; Croatia;
                                                          Hungary; Iceland; India; Israel; Italy; Japan; Jordan; Korea,
                                                          Republic of; Kuwait; Lebanon; Latvia; Lithuania; Slovakia;
                                                          Liechtenstein; Lesotho; Luxembourg; Macau; Montserrat;
                                                          Monaco; Morocco; Mauritius; Malta; Oman; Maldives; Mexico;
                                                          Malaysia; Vanuatu; Netherlands; Norway; Netherlands Antilles;
                                                          New Zealand; Paraguay; Peru; Poland; Panama; Portugal;
                                                          Qatar; Philippines; Saudi Arabia; St. Kitts and Nevis;
                                                          Seychelles; South Africa; Slovenia; Singapore; Spain; St. Lucia;
                                                          Sweden; Switzerland; United Arab Emirates; Trinidad and
                                                          Tobago; Thailand; Tonga; Tunisia; Turkey; Taiwan; United
                                                          Kingdom; Uruguay; St. Vincent and the Grenadines; Venezuela;
                                                          British Virgin Islands; Vatican City; Namibia; Western Samoa;
                                                          Swaziland; Zimbabwe
Desired Export Business                  Distributor/Importer
Relationships:
Description of Export                       Pass through for federal contracts
Objective(s):

## *Performance History (References)*

| Name:      | Programmatic Support Services |
|------------|-------------------------------|
| Contract:  | AG-6740-C-11-0007             |
| Start:     |                               |
| End:       |                               |
| Value:     |                               |
| Contact:   | Denise Gauer                  |
| Phone:     | 605-352-1243                  |

| Name: | Mission Test Support Services (MTSS) |
|---|---|
| Contract: | 1W9124R-18-C0001 |
| Start: | |
| End: | |
| Value: | |
| Contact: | Susan L. Blahovec |
| Phone: | 928-328-6026 |

| Name: | Programmatice Support - USDA Illinois |
|---|---|
| Contract: | 12FPC319C0002 |
| Start: | |
| End: | |
| Value: | |
| Contact: | Winnie Chen |
| Phone: | 217-353-6621 |

| Name: | Goddard Logistics and Technical Information Service Contract (GLTI) |
|---|---|
| Contract: | 80GSFC170010 |
| Start: | |
| End: | |
| Value: | |
| Contact: | Elizabeth Booker |
| Phone: | 301-286-3414 |

The structure of this page was last updated 02/01/2013, as part of SBSS 8.1.1.

----------------------------------------------------------------------------------------------------------