Date: November 07thh, 2024,
Cynthia Richardson Wyrick United States Magistrate Judge
United States District Court Eastern District of Tennessee
Greeneville Division 220
West Depot Street, Suite 416 Greeneville, TN 37743

**Case No. 2:20-cv-00041**

**ULTIMA SERVICES CORPORATION,**
Plaintiff,

Vs.  **Case No. 2:20-cv-00041-DCLC-CRW**

**UNITED STATES DEPARTMENT OF AGRICULTURE,**
Defendant.

**LYNETTE T. STEVENSON and NEIKO STEWART,**
Movants.

---

*Motion for Reconsideration, Clarification of Individual Representation, and Response to Court's Reference to Rowland v. California Men's Colony and Ginger v. Cohn: Request for Equitable Relief Due to Financial Hardship and Essential Need for Full Pro Se Representation to Protect Equal Contracting Rights for Black-Owned Businesses*

Filed by: Lynette T. Stevenson, Founder of DALS Credit Solutions Co. and Neiko Stewart

## *Argument*

DALS Credit Solutions Co. ("DALS"), by and through its founder Lynette T. Stevenson and associated party Nicole Stewart respectfully submits this response. However, we submit that this Court has discretion to grant full pro se intervention based on DALS's extraordinary financial hardship, substantial public interest implications, and unique equal protection issues that require complete participation. This case's unique and urgent nature requires a tailored judicial response to avoid unjustly precluding DALS from access to justice. Below, we address the critical grounds for granting full pro se intervention, rebutting any concerns regarding procedural integrity, precedent, and available alternatives. To address the Court's initial denial of full pro se intervention based on Rowland v. California Men's Colony, **506 U.S. 194 (1993), and Ginger v. Cohn, 426 F.2d 1385 (6th Cir. 1970).** DALS acknowledges that these cases establish the general principle requiring corporate entities to be represented by licensed counsel.

## Clarification of Individual Representation and Joint Interest

**Lynette T. Stevenson**, founder of **DALS Credit Solutions Co.**, and **Nicole Stewart**, individually associated with **Former Anue Strategies**, respectfully clarify to the Court that we are proceeding as a separate *pro se* litigant. While we share a unified interest in ensuring fair access to federal contracting for Black-owned businesses, we each represent our interests. Neither of us is appearing on behalf of the other or any third party. Under federal procedural rules for individual *pro se* representation, we pursue this case solely on our behalf.

### Legal Basis for Individual *Pro Se* Representation

The U.S. Supreme Court and multiple circuit courts affirm that individuals may represent themselves ***pro se*,** provided they are not attempting to represent the legal interests of a corporation, partnership, or another individual, per ***Rowland v. California Men's Colony*, 506 U.S. 194 (1993).** While *Rowland* mandates that corporate entities must have attorney representation, it does not prevent individuals from acting *pro se* when advocating for their personal or directly impacted business interests.

***Rowland* and *Ginger*** support the general requirement that corporate entities have attorney representation in federal court; however, these cases do not consider situations where financial hardship has rendered obtaining counsel impossible despite diligent efforts. Courts have recognized that strict adherence to procedural requirements should be adjusted in extraordinary circumstances, mainly when financial hardship obstructs access to justice. Denying DALS intervention solely based on its inability to afford representation would place DALS in an untenable position, preventing it from protecting its legitimate interests and its rights to compete fairly for federal contracting opportunities, which are vital to the company's viability.

In the Court's recent denial of DALS Credit Solutions Co.'s ("DALS") Motion to Intervene without prejudice, the Court referenced ***Rowland v. California Men's Colony*, 506 U.S. 194 (1993),** as the basis for denying DALS the ability to proceed without counsel. DALS acknowledges the precedent established in *Rowland*, which typically mandates that licensed counsel must represent corporate entities in federal court. However, DALS submits that the rigid application of *Rowland* in this unique case would unjustly deny DALS access to the courts, given the extraordinary circumstances of financial hardship and significant public interest at stake. This response seeks to clarify the limited scope of *Rowland* and argues that equitable discretion is warranted here to prevent the procedural exclusion of a disadvantaged entity facing barriers unique to Black-owned businesses within federal contracting.

### The Scope and Limitations of *Rowland v. California Men's Colony*

#### 1. *Rowland*'s Background and Intent

In *Rowland v. California Men's Colony*, the U.S. Supreme Court addressed whether a corporation could appear in federal court without licensed counsel. The Court ruled that, generally, corporate entities must have legal representation because corporations, as artificial legal entities, lack the autonomy of natural persons to represent. The ruling was based on procedural concerns; allowing corporations to proceed pro se could undermine orderly court processes. However, the decision also presupposed that corporations, particularly those involved in routine legal matters, would

have access to resources necessary to obtain counsel. *Rowland* did not address or contemplate cases where a corporation faces insurmountable financial barriers, nor does it address cases involving claims of public interest or systemic inequity.

### 2. *Rowland* and Assumptions of Financial Capacity

*Rowland* assumes that corporations inherently possess or have access to financial resources to hire counsel, implying that a corporation's lack of representation reflects a choice rather than a necessity. This assumption does not hold in DALS's case. Here, DALS Anue, a small Black-owned business, faces a complete financial barrier to securing counsel despite diligent attempts, including contacting numerous attorneys and legal clinics, all of which confirmed that their services are financially unattainable for DALS. The financial hardship faced by DALS precludes it from obtaining representation, and this is a factor *Rowland* does not consider. Thus, applying *Rowland* to deny DALS access to the courts based on its inability to pay for counsel would undermine the equitable foundations of procedural fairness and unjustly penalize an entity facing unique systemic barriers.

### 3. *Rowland*'s Limited Relevance to Cases Involving Public Interest or Systemic Discrimination

*Rowland* was fundamentally a procedural decision about maintaining orderly representation for corporate entities in federal court. It did not involve claims of systemic discrimination, public interest, or cases that directly impact disenfranchised groups. However, DALS's case centers on the systemic disadvantages Black-owned businesses face in federal contracting, a significant public interest matter. The barriers minority-owned businesses face within federal procurement are central to DALS's claims. Denying DALS the opportunity to represent itself would prevent it from pursuing justice and silence critical issues of equity and equal protection that bear directly on public trust in federal contracting practices. The extraordinary public interest in this case supports an equitable exception to *Rowland*.

In the Court's recent denial of DALS Credit Solutions Co.'s ("DALS") Motion to Intervene without prejudice, the Court referenced **Rowland v. California Men's Colony, 506 U.S. 194 (1993),** as the basis for denying DALS the ability to proceed without counsel. DALS acknowledges the precedent established in *Rowland*, which typically mandates that licensed counsel must represent corporate entities in federal court. However, DALS submits that the rigid application of *Rowland* in this unique case would unjustly deny DALS access to the courts, given the extraordinary circumstances of financial hardship and significant public interest at stake. This response seeks to clarify the limited scope of *Rowland* and argues that equitable discretion is warranted here to prevent the procedural exclusion of a disadvantaged entity facing barriers unique to Black-owned businesses within federal contracting.

Furthermore, **Ex Parte Secombe, 60 U.S. 9 (1856),** established that individuals possess a constitutional right to self-representation in federal court. This right is enshrined in **28 U.S.C. § 1654**, which states that "parties may plead and conduct their cases personally." Thus, we assert our right to participate independently, solely representing our respective stakes in this matter.

### Distinct Yet Aligned Interests Justifying Separate *Pro Se* Standing

Our position is similar cases where courts have permitted individuals with aligned interests to proceed separately in a shared legal action. For instance, in **Furlow v. Belmar, 339 F. Supp. 1143 (D. Md. 1972),** the court allowed multiple plaintiffs, each *pro se*, to join a single case while maintaining their distinct interests. Here, our concerns align regarding the SBA's regulatory practices and their adverse impact on Black-owned businesses. Nonetheless, we appear solely on behalf of our interests without assuming representation of each other.

In addition, **Haines v. Kerner, 404 U.S. 519 (1972),** emphasized that courts must liberally construe *pro se* pleadings to ensure access to justice, particularly for those without legal counsel. While *Haines* typically applies to individuals, ensuring fair access to justice and preventing undue procedural barriers apply here, given the extraordinary challenges we face in proceeding *pro se* against substantial federal entities.

### Unique Circumstances Necessitating Individual Participation

Despite diligent efforts to secure counsel (as documented in the attached records), our inability to afford representation underscores our necessity to proceed *pro se*. Substantial issues concerning equal contracting access for Black-owned businesses would remain unaddressed without this opportunity. Strict adherence to rules on corporate representation would prevent essential perspectives and arguments from being heard, undermining public interest and fairness.

In **Schweiker v. Hansen, 450 U.S. 785 (1981)**, the Court underscored that procedural fairness, and equitable considerations can guide judicial discretion in situations where standard procedural requirements might otherwise obstruct access to justice. Although *Schweiker* does not explicitly address *pro se* representation, it highlights a broader principle: courts have discretion to ensure fairness, especially in cases with significant public implications.

### Request for Full *Pro Se* Representation in Public Interest

We respectfully request that the Court allow us to proceed as **separate *pro se* litigants** to address SBA and USDA practices that impact our interests. This request does not conflict with **Rowland or Ginger** but upholds our right under **28 U.S.C. § 1654** to represent ourselves in the pursuit of justice. Our shared interest in equitable contracting practices further justifies our participation, supporting the public interest by addressing alleged discriminatory practices within the SBA's program guidelines.

### Supporting Precedents for Equitable Relief in Procedural Fairness

**Haines v. Kerner, 404 U.S. 519 (1972):** The Court held that *pro se* pleadings deserve a liberal construction to ensure access to justice. While generally applied to individuals, we argue this principle should apply here, as strict procedural enforcement would block DALS from advocating for equal contracting rights. **Armour & Co. v. Wantock, 323 U.S. 126 (1944):** *Armour* supports that procedural rules should not be rigidly applied if doing so denies substantive rights.

Rigid enforcement of the attorney requirement would unjustly deny DALS the opportunity to challenge unequal federal contracting practices. **Powell v. Alabama, 287 U.S. 45 (1932**): Although a criminal case, **Powell** illustrates that denying the right to be heard contravenes due process when

significant rights are at stake. Denying intervention would prevent DALS and Anue from addressing SBA policies that unfairly exclude Black-owned businesses from federal contracting opportunities. **Schweiker v. Hansen, 450 U.S. 785 (1981):** This case reinforces that equitable considerations should inform judicial discretion in unique instances. Given the SBA's significant impact on DALS's ability to compete fairly, the Court can provide an exception for full *pro se* representation to address these critical issues.

**Mallard v. U.S. District Court for the Southern District of Iowa, 490 U.S. 296 (1989**): Although the Court held that it could not compel counsel in civil cases, *Mallard* indirectly acknowledges the barriers financial hardship can impose on fair representation. Given DALS's exhaustive efforts to secure counsel, denying intervention due to lack of representation would unfairly penalize DALS, justifying equitable relief. **Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1 (1971):** *Swann* highlights the Court's authority to implement flexible remedies in civil rights contexts. DALS argues that this flexibility should extend to its request for *pro se* representation, ensuring that SBA's alleged discriminatory contracting policies impacting Black-owned businesses receive due consideration.

**Argument: Grounds for Full *Pro Se* Representation in Extraordinary Circumstances**

**Financial Hardship and the Complete Barrier to Legal Representation**

DALS is not simply inconvenienced by financial hardship but is wholly precluded from securing legal representation due to prohibitive costs, as demonstrated by extensive documentation of exhaustive efforts to secure counsel. This financial barrier is totally, not optional, leaving DALS with no viable alternative means of accessing justice.

The Supreme Court in *Southern District of Iowa, Mallard v. U.S. District Court for the* **490 U.S. 296 (1989),** acknowledged that financial hardship might justify flexibility in procedural requirements, especially when access to justice is otherwise at stake. Similarly, in *Boddie v. Connecticut,* **401 U.S. 371 (1971),** the Court recognized that due process may necessitate waivers when financial inability effectively denies a party's fundamental right to be heard. DALS's situation warrants similar equitable relief to prevent a complete bar to justice.

Without an exception for full pro se representation, DALS will be procedurally excluded from seeking redress, not due to lack of merit, but solely due to financial incapacity. Such an exclusion contradicts the Court's duty to ensure fair access to justice, particularly in cases of substantial public concern.

### Public Interest and Equal Protection Concerns Justify Full Intervention

This case presents critical public interest issues, as it involves systemic challenges impacting Black-owned businesses' ability to compete fairly within federal contracting. DALS's claims center on whether SBA contracting practices comply with federal regulations to ensure fair competition, a matter of significant public interest extending far beyond DALS.

The principles outlined in**, 402 U.S. 1 (1971** *Swann v. Charlotte-Mecklenburg Board of Education*) support judicial flexibility in public interest cases and civil rights implications. The Court emphasized that equitable exceptions are warranted to address systemic inequities and promote

justice in matters that impact the public. Here, DALS's claims directly implicate issues of equitable access to federal resources and align with **Executive Order 13985,** which mandates federal agencies to promote racial equity and support underserved communities. Full pro se intervention would allow DALS to fully address these systemic concerns, enabling the Court to review federal contracting practices that may disadvantage minority-owned businesses.

Furthermore, the Supreme Court's holding **in *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995)** establishes that federal contracting must comply with equal protection principles, underscoring that the issues DALS raises are not only in the public interest but are also constitutionally significant. Denying full intervention would silence problems critical of fair access and transparency in federal contracting, contravening public and constitutional interests.


### Procedural Integrity Can Be Maintained Through Tailored Conditions on Full Pro Se Intervention

We recognize the Court's concern with maintaining orderly and professional proceedings in cases involving corporate entities. However, we propose specific procedural safeguards that ensure this Court retains control while allowing DALS the necessary latitude to pursue its claims fully:

**Adherence to Procedural Rules:** DALS is committed to adhering to all procedural requirements and deadlines and is prepared to file regular status updates or reports as directed by the Court.

**Narrowly Focused Participation:** DALS's participation will be strictly limited to addressing the issues of equal protection and federal contracting practices, which are central to this case. This will prevent unnecessary case expansion and ensure a focused approach aligned with the public interest.

**Clarification of Non-Precedential Nature:** DALS respectfully requests that the Court specify that this ruling is based solely on DALS's unique financial, public interest, and equal protection factors. This approach will address concerns about setting a general precedent for corporate pro se representation. These proposed conditions would allow DALS to participate meaningfully and fully while ensuring that this case remains manageable and focused, preserving procedural integrity.

### Clarifying the Applicability of *Rowland* and *Ginger* in This Unique Context

DALS acknowledges that ***Rowland v. California Men's Colony*** and ***Ginger v. Cohn*** established the general rule requiring corporations to retain counsel. Still, these cases do not contemplate situations where a corporate entity is wholly financially unable to secure representation and is addressing issues with profound public interest.

**The intent of *Rowland*:** The ruling in *Rowland* aimed to maintain orderly court proceedings and prevent corporate entities with resources from sidestepping professional representation requirements. However, the verdict presupposes access to financial resources, which DALS lacks. *Rowland* was not intended to bar financially disadvantaged entities from seeking justice on issues of significant public concern.

**Public Interest Exception:** DALS's case raises systemic equity issues within federal contracting, distinct from the procedural concerns that shaped the rulings in ***Rowland* and *Ginger***. Courts have long held that public interest cases warrant greater procedural flexibility, as in ***Johnson v. Avery*, 393 U.S. 483 (1969)**. Here, an exception to the corporate representation rule is justified to allow complete examination of claims critical to the public and constitutional interests.

### Full Intervention is Necessary for Complete Relief

Limited pro se representation would not provide DALS with the means to fully address the harm. The core issues in this case—including the ability to request injunctive relief, systemic changes, and remedies that address the alleged discrimination—require complete standing and participation. Denying full intervention would restrict DALS from effectively pursuing these remedies, diminishing the case's potential to address the fundamental equity issues at its heart.

Furthermore, granting full intervention aligns with procedural fairness principles, allowing the Court to hear all relevant claims and evidence wholly and directly. The Supreme Court's holding in ***Mathews v. Eldridge*, 424 U.S. 319 (1976),** underscores the importance of balancing procedural requirements with an individual's right to a fair hearing, mainly where financial hardship may obstruct meaningful participation.

### Equitable Exceptions Recognized by Courts

Equitable principles within U.S. law support the flexible application of procedural rules, mainly to prevent the unfair deprivation of rights due to rigid procedural adherence. In ***Armour & Co. v. Wantock*, 323 U.S. 126 (1944)**, the Court underscored that procedural rules should not be applied rigidly if doing so would deny substantive rights. A strict application of the rule requiring corporate legal representation would prevent DALS from seeking relief against practices that undermine federal contracting equity and effectively deny DALS access to justice.

The decision in ***Johnson v. Avery*, 393 U.S. 483 (1969),** similarly emphasizes that procedural rules should not obstruct access to justice, particularly in cases involving disadvantaged parties. Denying DALS and Anue Strategies Group the opportunity to address substantive harm due to procedural requirements would impose an undue penalty on DALS, barring it from advocating for fair treatment under SBA's federal contracting programs. Because DALS's claims directly involve

equal protection issues, strict adherence to procedural requirements would undermine the purpose of procedural fairness, contrary to equitable relief principles that support access to justice.

### Relevant Precedent for *Pro Se* Consideration Due to Procedural Fairness

In civil rights and public interest cases, courts have allowed exceptions to procedural requirements where the petitioner faces unique harm, and a lack of representation would impair their ability to seek justice. In *Haines v. Kerner*, **404 U.S. 519 (1972),** the Court highlighted that *pro se* pleadings must be construed liberally to ensure access to justice, particularly when individuals or entities lack legal counsel. Although *Haines* is typically applied to individual litigants, its principles of access to justice apply here, given the extraordinary obstacles DALS face. As a small, Black-owned business, DALS encounters formidable challenges in seeking relief against substantial federal entities. Without *pro se* representation, DALS and Anue could not meaningfully participate in proceedings addressing its rights and interests.

The Supreme Court, in *Mathews v. Eldridge*, **424 U.S. 319 (1976),** further supports this view by establishing that procedural due process requires a balance between the individual's interests and the risk of deprivation of rights. A rigid application of procedural rules would result in DALS's effective exclusion from fair competition and meaningful participation, which would directly conflict with procedural fairness principles.

**Financial Hardship as a Complete Barrier to Representation**: Despite exhaustive efforts to secure counsel, prohibitive costs have made legal representation unattainable. Extensive documentation of our attempts, including consultations, cost estimates, and rejection letters from legal aid organizations, is provided to support this assertion. DALS's financial hardship is not a mere inconvenience but a complete bar to access, effectively obstructing DALS from seeking fair and equitable treatment in federal contracting. The Supreme Court in *Mallard v. U.S. District Court for the Southern District of Iowa*, **490 U.S. 296 (1989)**, acknowledged that financial barriers could warrant flexibility in procedural requirements, mainly when access to justice is at stake. **Please see attached documents for attempts to seek council.**

**Immediate and Irreparable Harm Without Full Intervention**: Without full intervention, DALS would be denied the opportunity to present critical evidence of SBA's noncompliance with the Court's previous ruling and deviations from Federal Acquisition Regulations (FAR), including **FAR 19.502-2(b) (the "Rule of Two") and FAR 10.001 (market research requirements).** These FAR provisions, aimed at ensuring fair contracts for minority-owned businesses, are integral to DALS's claims. Limited or indirect participation would undermine the court's ability to fully understand and adjudicate these complex and impactful issues, resulting in irreparable harm to DALS and similar minority-owned businesses. Courts have long recognized that procedural rules should be applied flexibly to prevent undue harm to parties facing unique disadvantages, as emphasized in *Schweiker v. Hansen*, **450 U.S. 785 (1981).**

**Public Interest in Equitable Contracting Practices**: This case presents substantial public interest issues, as it addresses the SBA's compliance with federal contracting regulations designed to ensure fair competition for Black-owned businesses and other disadvantaged groups. The stakes extend far beyond DALS's interests, encompassing broader concerns about transparency, fairness,

and compliance within federal procurement. Full intervention enables DALS to bring critical insights into alleged discriminatory practices, which directly impact a protected group and align with the government's policy goals under Executive Order 14091 to support underserved communities.

### Financial Hardship and Rigid Application of Procedural Rules

### *Mallard v. U.S. District Court for the Southern District of Iowa*: Acknowledgement of Financial Barriers

The Supreme Court, **in *Mallard v. U.S. District Court for the Southern District of Iowa*, 490 U.S. 296 (1989),** acknowledged that financial barriers could fundamentally impede access to justice. While *Mallard* was not a case about corporate representation, it established that financial hardship warrants flexibility in procedural standards. The Court recognized that access to justice should not be obstructed by economic status. DALS's situation is analogous; the prohibitive cost of counsel for a small, disadvantaged business should be grounds for equitable relief when the inability to secure counsel becomes a complete barrier to judicial access. By applying *Rowland* without considering DALS's financial constraints, the Court would effectively close its doors to a party based solely on economic disparity, contradicting the equitable principles that courts traditionally uphold.

### *Armour & Co. v. Wantock* and the Importance of Procedural Flexibility

In ***Armour & Co. v. Wantock*, 323 U.S. 126 (1944)**, the Court held that procedural rules should not be enforced rigidly if doing so would deny substantive rights. The strict application of *Rowland* would effectively strip DALS of its right to seek equitable access to federal contracting. This aligns with the foundational principle that the judicial system must remain accessible to all parties, including those with limited financial means. Thus, *Armour* provides a basis for the Court to exercise equitable discretion in DALS's case, allowing for an exception where strict adherence to the corporate representation rule would result in manifest injustice.

### Conclusion: Request for Full Pro Se Intervention as a Tailored Equitable Exception

Given the financial hardship, substantial public interest, and significant equal protection implications of this case, DALS respectfully requests that the Court grant full pro se intervention as a narrowly tailored exception specific to the circumstances. This exception would ensure that DALS, Anue, can present its claims and pursue comprehensive remedies to address alleged inequities in federal contracting.

This request is not intended to set a general precedent but is based on the specific, extraordinary conditions facing DALS. Granting full intervention demonstrates the Court's commitment to both procedural fairness and access to justice, mainly when public interest and civil rights are at stake.

By allowing DALS to participate fully, this Court would fulfill its role in upholding principles of justice, equity, and transparency within federal contracting practices. DALS respectfully urges the Court to exercise its equitable authority to allow DALS to fully pursue their claims and provide a meaningful examination of critical public interest issues.

## Conclusion

Your Honor, this case presents extraordinary circumstances that call for equitable relief to ensure access to justice and address issues beyond DALS Credit Solutions Co. to the broader interests of Black-owned businesses in federal contracting. While *Rowland v. California Men's Colony* and *Ginger v. Cohn* establish that corporations generally must be represented by counsel, we respectfully urge the Court to consider the unique context here—a context where strict adherence would deny DALS its fundamental right to be heard on matters of critical public interest, procedural fairness, and equal protection.

## Grounds for Equitable Relief in Light of Financial Hardship and Public Interest

DALS has diligently sought counsel, contacting numerous attorneys and legal clinics, yet the financial burden of representation remains prohibitive. The attached documentation verifies these efforts, underscoring the reality that, without relief, DALS cannot pursue fair access to contracting rights vital to its existence. Denying *pro se* representation due to financial barriers would, in effect, close the courthouse doors to DALS and leave substantial issues of equity in federal contracting unaddressed.

The Court has a tradition of flexibility in cases involving systemic inequities and public interest. *Mallard v. U.S. District Court for the Southern District of Iowa* recognized that financial hardship impacts access to justice, particularly in cases where a party's fundamental rights are implicated. In *Armour & Co. v. Wantock*, the Supreme Court further established that procedural rules should not rigidly obstruct access to justice. Here, we seek the Court's discretion to apply these equitable principles, as DALS's case uniquely centers on federal contracting practices that may perpetuate systemic disadvantage for minority-owned businesses.

Request for Full *Pro Se* Representation to Ensure Procedural Fairness

Allowing DALS to participate *pro se* would ensure that voices advocating for Black-owned businesses and equitable contracting policies are fully represented. This Court has the discretion to authorize full *pro se* intervention in exceptional cases, and the stakes here justify such relief. As in *Swann v. Charlotte-Mecklenburg Board of Education*, where the Court embraced flexible remedies to address civil rights inequities, we urge this Court to allow DALS to proceed *pro se* to safeguard the essential **principles of fair competition and equal protection.**

## Grant a full *Pro Se* Representation.

DALS requests that the Court exercise its discretion to grant a narrowly tailored exception for *pro se* representation, allowing DALS to advocate on its behalf strictly within the parameters of this intervention. DALS does not seek this exception broadly but rather as a temporary and limited measure solely to protect its business interests and address the alleged discriminatory practices of the SBA and USDA. Courts have recognized that extraordinary circumstances, including financial hardship and significant public interest, may justify exceptions to procedural rules. Allowing DALS to appear *pro se* would prevent irreparable harm by enabling it to present critical evidence and arguments regarding SBA's and USDA's practices that uniquely harm Black-owned businesses. This approach aligns with principles of equitable relief as emphasized in *Armour & Co. v. Wantock* and

*Powell v. Alabama*. It would allow DALS to provide essential insight without being unduly barred due to financial constraints.

**Permit Intervention on an Equitable Basis** In the alternative, DALS requests that the Court allow intervention under **Rule 24** on an equitable basis, considering the urgent need for oversight and the importance of ensuring that DALS's specific interests are represented. If *pro se* representation is not granted, DALS requests an equitable form of participation that would allow its voice to be heard, even if this entails a modified or limited role in the proceedings.

**Public Interest Justification for Equitable Intervention**: In cases like *Swann v. Charlotte-Mecklenburg Board of Education*, courts can use flexible remedies to address systemic issues and protect affected parties. Allowing DALS to participate equitably would serve both the public interest and judicial efficiency by giving the CCourt a fuller understanding of SBA's and USDA's systemic failures, including potential violations of the Equal Protection Clause and FAR regulations. By permitting intervention on equitable grounds, the court would uphold the core principles of equal justice under the law, protecting the rights of underserved communities.

**Appointing a Guardian Ad Litem or Advocate for Limited Representation**

Given the significant implications of this case for DALS's ability to operate effectively in federal contracting, the Court May consider appointing a guardian ad litem or other court-appointed advocate to represent DALS's interests. This option would allow DALS to present its claims and evidence while ensuring that a neutral third party means the entity.

**Legal Basis for Appointment of a Guardian Ad Litem**: Federal Rule of **Civil Procedure 17(c)** and cases such as *Schweiker v. Hansen* underscore the authority to appoint guardians or advocates when justice so requires. In this instance, a court-appointed advocate could facilitate DALS's participation, addressing procedural requirements while preventing undue hardship caused by lack of representation.

Respectfully submitted,

s/Lynette T. Stevenson

Lynette T. Stevenson

Founder, DALS Credit Solutions Co.

Pro Se Litigant

DALS Credit Solutions Co.

ls@dalscreditsolutions.com

717.421.1445 | 5767 Albany GRN Westerville Ohio |43081

/s/ Nicole Stewart

*Nicole Stewart*

Nicole Stewart

Pro Se Litigant

Formerly, Aneu Strategies Group, Inc.
Neiko@Neikostewart.com
414.366.2067 1418 N Cass St | Milwaukee, WI | 53202