Date: November 22, 2024,
Cynthia Richardson Wyrick United States Magistrate Judge
United States District Court Eastern District of Tennessee
Greeneville Division 220
West Depot Street, Suite 416 Greeneville, TN 37743

**Case No. 2:20-cv-00041**

**ULTIMA SERVICES CORPORATION,**
Plaintiff,

Vs.                                                   **Case No. 2:20-cv-00041-DCLC-CRW**

**U.S. Small Business Administration**
Defendant.

**LYNETTE T. STEVENSON and NEIKO STEWART,** *Pro Se Litigants*
Movants

---

### *Movants' Reply in Support of Their Motion for Reconsideration*

Filed by: Lynette T. Stevenson, Founder of DALS Credit Solutions Co. and Neiko Stewart

## *Argument*

### Movants' Reply in Support of Their Motion for Reconsideration

**Introduction**

Lynette T. Stevenson and Nicole Stewart ("Movants"), representing DALS Credit Solutions Co. ("DALS"), submit this reply to counter the opposition to their Motion for Reconsideration of the Court's Order denying intervention. Movants assert that reconsideration under Federal Rule of Civil Procedure 59(e) is necessary to prevent manifesting injustice, address procedural fairness, and allow DALS to pursue its claims in light of extraordinary financial hardship and significant public interest considerations. Procedural rules should never obstruct access to justice, particularly in cases addressing systemic inequities. This Court has the discretion to ensure fairness, and granting the motion is essential to fulfilling that role.

### The Motion Satisfies Rule 59(e)'s Standards.
Defendants argue that Movants fail to meet the requirements for reconsideration under Rule 59(e). However, Movants' motion squarely falls within the Rule's framework, particularly to prevent manifest injustice and in light of newly submitted evidence demonstrating severe financial hardship.

### Manifest Injustice Requires Reconsideration.
Rule 59(e) explicitly provides for reconsideration of when manifest injustice would result from denying relief. See **GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)**. Courts consistently hold that procedural rules should not obstruct substantive justice. See **Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)** (procedural rules must serve justice, not block it).

Denying reconsideration would silence DALS—a Black-owned business—due to financial hardship, perpetuating systemic inequities in federal contracting. Unlike **GenCorp**, this case involves compelling equitable concerns and broader public interest implications. Courts have recognized the need for flexibility when procedural barriers threaten access to justice. See **Haines v. Kerner, 404 U.S. 519, 520 (1972)** (courts must show flexibility when pro se litigants face obstacles to justice).

### New Evidence Supports Relief
Movants have submitted additional evidence of their exhaustive attempts to secure counsel, including records of consultations and rejections based on prohibitive costs. This evidence was not entirely before the Court during the original decision and directly supports the need for equitable relief. See **Banister v. Davis, 140 S. Ct. 1698, 1703 (2020)** (Rule 59(e) allows consideration of newly presented evidence that materially affects the equities of a case). With reconsideration, DALS would avoid irreparable harm, be able to present its claims and seek redress for systemic discrimination in federal contracting. Justice requires accommodating unique circumstances to avoid inequity. See **Adams v. USAA Cas. Ins. Co., 863 F.3d 1069, 1076 (8th Cir. 2017)**.

### Financial Hardship Warrants Equitable Relief for Pro Se Intervention
Defendants rely on **Rowland v. California Men's Colony, 506 U.S. 194 (1993)** to assert that corporate entities cannot appear pro se. While **Rowland** underscores the general Rule, it does not preclude exceptions in extreme financial hardship or significant public interest cases.

Movants' financial situation has deteriorated significantly since the Court's initial ruling. This new development underscores the extreme economic hardship faced by Movants and justifies reconsideration. See **Banister v. Davis, 140 S. Ct. 1698, 1703 (2020)** (Rule 59(e) permits relief based on newly presented evidence materially affecting the equities of a case).

With reconsideration, DALS would avoid irreparable harm, be able to present its claims, seek redress for systemic discrimination in federal contracting, and avoid inequity. Justice requires accommodating unique circumstances to avoid inequity. See **Adams v. USAA Cas. Ins. Co., 863 F.3d 1069, 1076 (8th Cir. 2017)**.

Requiring DALS to retain counsel is impossible under these circumstances. Denying relief would effectively bar DALS from accessing justice and adjudicating its claims, contrary to the judiciary's role in ensuring fairness. See **Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)** (denying access to justice due to procedural barriers violates due process).

### Courts Retain Discretion in Exceptional Circumstances

Courts retain discretion to adapt procedural requirements in extraordinary cases. See **Mallard v. U.S. District Court, 490 U.S. 296, 310 (1989)** (acknowledging judicial flexibility to address financial hardship). Courts have also recognized that procedural rules should not serve as barriers to fairness where a party has no feasible alternative. See **Haines v. Kerner, 404 U.S. at 520**. Despite diligent efforts, movants have provided compelling evidence of their inability to retain counsel. Denying reconsideration based solely on procedural technicalities would deny DALS access to justice and violate its right to due process.

### Case Law Supports Relief in Cases Involving Financial Barriers

Courts have allowed procedural flexibility in cases where parties face significant obstacles to compliance. See **United States v. Kras, 409 U.S. 434, 446 (1973)** (balancing procedural rules with substantive fairness). DALS's financial hardship and systemic discrimination claims warrant similar equitable consideration.

### Public Interest and Systemic Discrimination Justify Intervention.

This case transcends DALS's claims and raises broader issues of systemic discrimination in federal contracting, impacting other minority-owned businesses. Defendants' opposition fails to acknowledge these significant public interest considerations.

### Systemic Discrimination Claims Require Judicial Review

This case transcends DALS's individual claims and raises broader issues of systemic discrimination in federal contracting, impacting other minority-owned businesses. Defendants' opposition fails to acknowledge these significant public interest considerations.

The challenges faced by DALS are not isolated but are part of a broader trend impacting Black-owned businesses in federal contracting. The Small Business Administration (SBA), in a recent notice on the Federal Register, highlighted the ask of the" Rule of two" to be added to the Task orders under the Multiple Award Schedule (MAS). Your honor, please allow me to explain the ongoing marginalization within the SBA.

The SBA's proposed Rule claims to expand small-business participation in multiple-award contracts (MACs), yet its structure undercuts the fundamental mechanisms designed to protect and promote small-business interests. According to **Regulations.gov**, By shifting the application of the **"Rule of Two"** from the contract vehicle selection stage to the order level, the SBA weakens the very foundation of equitable access for small businesses without special designations under **CFR Part 124, Subpart A**. This seemingly minor procedural adjustment has profound consequences, relegating the Rule of Two to an afterthought rather than a critical determinant in fostering fair competition. The **Tolliver** decision affirmed the importance of applying the **Rule of Two** at the earliest possible stage— instead those under MAC were the incumbents based on the data.

The SBA's proposal departs from this principle by allowing agencies to bypass the **Rule of Two** during the initial selection of MACs. Under this ruling, the SBA wants to incorporate **60 billion** in Small Business Opportunities. I have a question: Does the SBA have evidence that **Tolliver** or the **Rule of Two** hindered the federal government's ability to award MACs under **FAR 16.505** or **Federal Supply Schedules FAR 8.402 Economically**? If not, the justification for this procedural shift is questionable at best. Let's explore the data and its implications.

### Tolliver Was Never the Problem
The SBA's rationale for the proposed Rule hinges on reconciling the Tolliver decision with modern procurement practices. However, reviewing disaggregated contracting data from FY 2021 through FY 2023 clarifies that **Tolliver** and the **Rule of Two** were never obstacles to effective contracting. The data highlights systemic issues related to the Rule of Two and the deviation from **Tolliver Ruling**.

**Decline in Small Business Participation**: Despite increasing federal contracting dollars **(rising from $559 billion in FY 2021 to $665 billion in FY 2023)**, small businesses receiving prime contracts have consistently decreased. This indicates a failure to distribute opportunities equitably. Which favors Those within sections **13 CFR Part 124, Subpart A, 48 CFR Part 6, and 48 CFR § 6.302-5.** For Small Businesses who are not familiar with MAC and its entirety under **FAR 16.505,** for example, of an IDIQ, the Governmentwide Acquisition Contracts (GWACs)— According to GSA FAS GWAC Sales Dashboard | D2D GWACs are task-order or delivery-order contracts focused on information technology and other services.

### Restricted Competition:
Task orders under an IDIQ or Multiple Award Contract (MAC) are generally restricted to the preapproved pool of contractors awarded the original IDIQ or MAC.
This means that only vendors who participated in the initial competition for the IDIQ vehicle can bid on the individual task orders issued under that vehicle.

### Impact of the Rule of Two at Task Order Level:
If the Rule of Two is applied at the task order level, it will prioritize small-business competition within the preapproved IDIQ pool. In other words, only small businesses already included as IDIQ contract holders can compete for the task orders set. Vendors who are not part of the original IDIQ or MAC pool cannot compete, regardless of their qualifications. MAS Indefinite Delivery/Indefinite Quantity (IDIQ) Contracts.

### The Numbers:
**Alliant 2 GSA-has a $50 billion**-Five-year base period with one five-year option period, totaling up to 10 years. GSA-8(a) STARS III GSA-$50 billion-Five-year base period with one three-year option period, totaling up to 8 years.
**GSA VETS 2 GSA$5 billion** Five-year base period with one five-year option period, totaling up to 10 years. GSA CIO-SP3-NITAAC $20 billion-Ten-year period of performance, extended to April 29, 2023, with task orders through April 29, 2028.

This proposed Rule, SBA seeks to expand small-business participation on multiple-award contracts within the task order which continues to put Small Businesses without designations at an unfair disadvantage. The SBA blames Tolliver for the proposed Rule to increase small business participation and put 60 billion more dollars into those under MAC, which the Disaggregated Data demonstrated through 2021-2023 that contractor benefits well over 70% of procurement opportunities under the MAC category.

The SBA failed to implement "**The Rule of Two**" under **Tolliver and Kingdomware Technology** is one of many reasons Small Businesses has Declined and continues to decline over the past decade. Allocating 60 billion dollars of opportunities under MAC is questionable. To reiterate the question, does the Small Business Administration have concrete evidence that Tolliver or the Rule of Two hindered the federal government's ability to award MACs under **FAR 16.505 or FSS 8.402**, Economically?

This acknowledgment underscores the systemic barriers disproportionately affecting minority-owned businesses in accessing federal opportunities. DALS's allegations align with the SBA's findings and raise critical equal protection concerns regarding entrenched barriers to federal contracting for minority-owned businesses. Courts have long recognized the judiciary's role in addressing systemic inequities and ensuring fairness. See **Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1971)**.

### Broader Implications of the Case
This case can potentially impact DALS and other Black-owned businesses facing similar barriers. By addressing these systemic issues, the Court can reaffirm its commitment to ensuring equal access to justice and fair contracting practices.

### Appointment of a Guardian Ad Litem is a Viable Alternative
Defendants argue that Rule 17(c) restricts the appointment of a guardian ad litem to minors or incompetent individuals. However, courts have flexibly interpreted Rule 17(c) to ensure fairness.

### The Flexible Application of Rule 17(c)
Rule 17(c) empowers courts to appoint guardians or advocates in exceptional circumstances. See **Schweiker v. Hansen, 450 U.S. 785, 790 (1981)**. Appointing a guardian ad litem here would ensure procedural fairness without undermining procedural norms.

### Narrowly Tailored Pro Se Representation Balances Interests
Movants propose limiting pro se participation to claims directly related to procedural fairness and systemic discrimination. This narrowly tailored approach ensures the Court hears DALS's vital claims without creating a broad precedent.

### Conclusion
This case represents an opportunity for the Court to ensure justice prevails over procedural barriers. By granting reconsideration—or, alternatively, appointing a guardian ad litem or allowing narrowly tailored pro se representation—the Court will uphold its commitment to fairness, equity, and constitutional principles. Procedural rules must not obstruct substantive justice, particularly in cases with significant public interest implications. The Court's decision will address the systemic

inequities at issue and reaffirm the judiciary's role as a protector of fairness and equal access to justice.

Respectfully submitted,

/s/Lynette T. Stevenson

Pro Se Litigant

DALS Credit Solutions Co.

5767 Albany GRN Westerville, Ohio 43081

717.421.1445 ls@dalscreditsolutions.com

/s/ Nicole Stewart

Nicole Stewart

Pro Se Litigant

11220 W Burleigh St. Ste 222, Wauwatosa, WI 53222