Date: January 3rd, 2025,

Cynthia Richardson Wyrick United States Magistrate Judge

United States District Court Eastern District of Tennessee

Greeneville Division 220

West Depot Street, Suite 416 Greeneville, TN 37743



Case No. 2:20-cv-00041

**ULTIMA SERVICES CORPORATION**,

Plaintiff,

Vs.                                      **Case No. 2:20-cv-00041-DCLC-CRW**

**UNITED STATES DEPARTMENT OF AGRICULTURE**,

Defendant.

**LYNETTE T. STEVENSON Pro Se Litigant Intervenor**

Movants

---

*Motion for* **Renewed Request for Declaratory Judgment to Address Systemic Inequities in Federal Procurement and Enforce Compliance with the Rule of Two**

**Filed by: Lynette T. Stevenson, Founder of DALS Credit Solutions Co.**

## <u>*Argument*</u>

**Introduction**

I, Lynette T. Stevenson, founder of DALS Credit Solutions Co., respectfully renew my request for the Court to issue a declaratory judgment addressing systemic inequities in federal procurement. This motion highlights violations of the Rule of Two under FAR 19.502-2(b) and unequal enforcement of the 8(a) program, which disproportionately harms Black-owned businesses, including my own.

The Small Business Administration (SBA) and associated entities have compounded these inequities by prioritizing Alaskan Native Corporations (ANCs), National Hawaiian Organizations (NHOs), and Community Development Corporations (CDCs) through favorable statutory exemptions and financial mechanisms, mainly via the Small Business Investment Company (SBIC) program. These practices systematically exclude Black-owned businesses, violating statutory and constitutional mandates.

## Procedural Clarification with Case Law

I acknowledge the Court's current designation of my role as a Pro Se Intervenor in this matter. This designation recognizes my active participation in the case. Still, it does not fully reflect my role as the initiator of this action or the direct harm my business, DALS Credit Solutions Co., has sustained due to systemic inequities in federal procurement. To correct this procedural posture and to properly reflect my standing as the party directly and most significantly impacted, I submitted a formal request on **11/14/2024, Doc #118, to have my status revised to Plaintiff.**

**This request is grounded in legal principles established in relevant case law, as well as the facts of my case:**

### Recognition of Direct Harm and Standing

In *Lujan v. Defenders of Wildlife*, **504 U.S. 555 (1992),** the Supreme Court emphasized that standing requires an injury-in-fact that is concrete, particularized, and directly traceable to the challenged conduct. My business, DALS Credit Solutions Co., has sustained over $40 million in documented financial losses directly attributable to violations of the Rule of Two under FAR 19.502-2(b) and systemic inequities in the SBA's 8(a) program within all agencies, please see the attached documents. These injuries establish my direct stake in the outcome of this litigation.

### Pro Se Representation Rights

In *Faretta v. California*, **422 U.S. 806 (1975),** the Supreme Court affirmed the constitutional right of individuals to self-represent in legal proceedings. My role as a Pro Se litigant reflects my commitment to advocating for my business and other similarly situated Black-owned businesses. Recognizing my procedural status as a Plaintiff is essential to fully vindicating my right to self-representation in a matter where I bear the primary and direct harm.

### Role as the Initiator of the Legal Challenge

Federal courts have consistently recognized that parties who initiate legal actions to address systemic harm should be procedurally designated to reflect their primary stake in the litigation. **DALS Credit Solutions Co** has provided documented attempts to seek legal assistance **dated in court documents on 11/8/2024, doc #116. In** *Hunt v. Washington State Apple Advertising Commission*, **432 U.S. 333 (1977),** the Court noted that standing extends to parties who assert their rights and demonstrate a significant connection to the issues. My claims form the crux of this case, making a revised Plaintiff designation appropriate and procedurally efficient.

### Request for Expedited Review

The urgency of this request is underscored by the ongoing and compounding harm caused by systemic procurement inequities:

- **Immediate and Substantial Injury: As established in** *Abbott Laboratories v. Gardner*, **387 U.S. 136 (1967),** claims are ripe when harm is immediate and substantial. Each day of delay exacerbates financial and operational harm to DALS and perpetuates systemic inequities that contravene Congressional intent and constitutional mandates.

- **Judicial Efficiency**: Revising my designation to Plaintiff will streamline the litigation process and ensure that the party most directly affected by the challenged conduct can fully address the substantive legal issues.

I invoke my constitutional right to self-representation under *Faretta v. California*, **422 U.S. 806 (1975),** and seek judicial intervention to address these inequities and uphold the integrity of federal procurement practices.

**This motion is grounded in precedent, including:**

1. **Kingdomware Technologies, Inc. v. United States, 136 S. Ct. 1969 (2016):** Affirming the mandatory nature of the Rule of Two in federal contracting.

2. **Tolliver Group, Inc. v. United States, 20 F.4th 771 (Fed. Cir. 2021): Highlighting procurement misapplications that harm small businesses.**

3. **Ultima Services Corporation v. United States, No. 2:20-CV-0413 (E.D. Tenn. 2023):** Mandating equitable application of the 8(a) program with providing a Social Narrative to all participants.

4. **Adarand Constructors, Inc. v. Peña, 515 U.S. 200 (1995):** Requiring strict scrutiny for programs that create racial disparities.

5. **Executive Order 14091 (2023):** Reaffirming the federal government's commitment to advancing equity for underserved communities and requiring agencies to embed equity action plans into procurement practices.

6. **The Small Business Administration's Office of General Counsel (SBA OGC) also issued a 2016 memo adopting the** *Kingdomware* **opinion, reinforcing the Rule of Two as a binding legal mandate under 15(j) of the Small Business Act and 13 C.F.R. Section 125.2(f).**

   **Despite these clear directives, systemic inequities persist, including:**

- **The dominance of Alaskan Native Corporations-backed firms:** These firms received over 70% of 8(a) contracts in FY2016, while Black-owned businesses received less than **2%** to **the current date**

- **Exemptions from social disadvantage narratives:** ANC firms bypass individualized evidence requirements, creating an uneven playing field for other disadvantaged businesses.

- **Preferential funding mechanisms under the SBIC program:** ANC-backed firms leverage federal capital at a 3:1 ratio to private capital, excluding Black-owned businesses from comparable financial opportunities. This explains why the Department of Treasury and SBA Deviated from the ruling—**Attachments: # 1 Exhibits, dated 11/08/2024.**

**Please see the attached email communication between DALS Credit Solutions Co and USDA.**
The USDA Farm Production and Conservation (FPAC) division and other Federal Agencies have
further compounded the harm to Black-owned businesses by violating the Rule of Two under FAR
19.502-2(b). This rule requires federal contracts to be set aside for small businesses when at least
two qualified small businesses can perform the work. However, FPAC and other agencies have
ignored this requirement due to a lack of Advocacy from the SBA, which produced Executive Order
14091, awarding contracts directly to Alaskan Native Corporation firms without conducting market
research **(non-competitive/direct award distribution)** and failing to consider eligible Black-
owned businesses.

**Failure to implement the Rule of Two denies small businesses, including Black-owned firms,
the opportunity to compete for contracts.**

**FAR 19.202-2 and FAR 19.202-5**: Failure to conduct market research and follow Procurement
Center Representatives (PCRs) recommendations regarding small business set-asides.

**FAR 19.203 and FAR 10.001:** Failure to prioritize small business set-asides and conduct proper
market research.

**FAR 19.203 – Prioritization of Small Business Set-Asides:** This provision mandates that small
business set-asides take priority over full and open competition. Failure to prioritize small business
contracts, including those for Black-owned businesses, violates this regulation.

**FAR 10.001** – Market Research Requirements: Contracting officers must conduct thorough market
research before soliciting contracts. Ignoring this requirement, particularly when it would have
revealed capable Black-owned businesses, violates this provision.

**FAR 19.501(c) –** Priority for Small Business Set-Asides: If contracting officers do not prioritize small
business set-asides, they violate this provision, mainly if Black-owned businesses are eligible.

**FAR 1.602-2 – Responsibilities of the Contracting Officer:** Contracting officers must ensure fair,
impartial treatment of all businesses. Failing to consider Black-owned businesses violates their
responsibility under this provision.

**ECR-124.504 – Removal of Contracts from the 8(a) Program:** Contracting officers must work with
the SBA to remove contracts no longer qualifying for the 8(a) program. Failure to do so violates this
regulation.

**The systemic inequities extend beyond FAR regulations, violating federal statutes and
constitutional protections:**

**Small Business Act (15 USC § 644)** mandates that small businesses, including minority-owned
businesses, receive maximum practicable participation in federal procurement. Failing to consider
Black-owned businesses for set-asides while favoring ANC firms directly violates the intent of this
Act.

**Competition in Contracting Act (CICA):** While CICA promotes full and open competition, it also
mandates small business set-asides when the Rule of Two is met. Bypassing these set-asides in
favor of ANC firms violates CICA.

**Civil Rights Act of 1866 (42 USC § 1981):** Discriminatory contracting practices that disadvantage Black-owned businesses in favor of ANC firms may violate this Act, prohibiting racial discrimination in contract formation.

**Equal Protection Clause (Fifth Amendment):** The unequal treatment of Black-owned businesses under the SBA's 8(a) program may violate the Equal Protection Clause if ANC companies receive disproportionate benefits to exclude other minority-owned businesses and the July 30th 2023 Ruling Ultima vs USDA.

**Small Business Act (15 USC § 644): Violation:** This Act mandates that small businesses receive the maximum practicable participation in federal procurement. Ignoring the Rule of Two or failing to consider Black-owned businesses for set-asides directly violates the intent of the Small Business Act.

**Federal Procurement Policy (41 USC Chapter 17): Violation:** 41 USC Chapter 17 requires federal agencies to ensure that small businesses receive a fair opportunity to compete for federal contracts. The contracting officer violates this policy by not correctly applying the Rule of Two or considering minority-owned firms, including Black-owned businesses.

**National Defense Authorization Act (NDAA): Violation:** The NDAA includes provisions to increase the participation of small businesses in federal contracting, particularly defense contracts. Ignoring these provisions when minority-owned businesses or Black-owned businesses could compete under set-asides is a violation of the NDAA.

**Women-Owned Small Business (WOSB) Program (15 USC § 637(m)): Violation:** Similarly, failure to set aside contracts for Women-Owned Small Businesses (WOSBs), when applicable, violates this statute. In 2022, only 123 WOSB were awarded contracts which have partnerships with Alaskan Native Corporations

**Small Business Regulatory Enforcement Fairness Act (SBREFA):** Violation: SBREFA requires that small businesses, particularly socially disadvantaged businesses, are treated fairly in regulatory processes. Failing to apply the Rule of Two or consider Black-owned businesses in contracting decisions can violate this Act.

**Civil Rights Act of 1964 (Title VI) (42 USC § 2000d):** If oversight practices disproportionately scrutinize Black-owned businesses, leading to unequal access to relief funds, it could violate Title VI.

**Administrative Procedure Act (APA) (5 USC § 551 et seq.):** Disproportionate oversight of targeting Black-owned businesses could be viewed as arbitrary and capricious, violating the APA's standards.

**Administrative Procedure Act (APA) (5 USC § 706):** The APA allows for challenges to arbitrary, capricious, or unlawful agency actions. The USDA and SBA's contract awards to ANCs, mainly when ANC eligibility is suspect, may violate the APA by favoring ANC over other minority businesses without proper justification—failed practices from Procurement Center Representatives not advocating for Small Businesses. The January 2024 Executive Order 14091, Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.

**42 USC § 1981: The Civil Rights Act of 1866** prohibits racial discrimination in contract formation. The persistent disadvantage Black-owned businesses face in favor of ANCs that may not meet federal standards could violate § 1981. Discriminatory contracting practices must be called out and corrected.

**FOIA requests have further obstructed efforts to ensure compliance with the *Ultima* ruling. FOIA Request No. SBA-2024-005961, SBA FOIA Request No. SBA-2023-004712, and USDA FOIA Control No. 2024-FPAC-BC-07320-F:** Requesting documentation of SBA policy changes related to post-Ultima enforcement actions. Requesting records of contracts awarded to ANC firms over the past three years specifically sought documents demonstrating ANC firms' compliance with social disadvantage requirements. However, the SBA still needs to provide the requested information. With this information, businesses like mine can assess whether ANC-backed firms comply with the legal standards outlined in the *Ultima* ruling. FOIA Non-compliance and the SBA's Lack of Transparency.

- The SBA's lack of transparency and failure to respond to FOIA requests further demonstrate its refusal to enforce the Ultima ruling. Despite federal requirements **under 5 USC § 552(a)(6)(B)(iii)(II) and 13 C.F.R. § 102.5,** the SBA has delayed or outright refused to provide documents requested through FOIA that would demonstrate ANC-backed firms' compliance with social disadvantage narrative requirements.

**Systemic Harm Across SBA Programs**

**Small Business Investment Company (SBIC) Program**

**The Small Business Investment Company (SBIC) program disproportionately allocates federal capital to ANC-backed firms, sidelining Black-owned businesses:**

- **SBIC 2023-10A debenture issuance:** Allocated **$1.737 billion** in federal leverage, primarily benefiting ANC-backed firms.

- **Example:** An **SBIC raising $58.33 million** in private capital can leverage **$175 million in federal funds, creating $233.33 million in investment capital**—resources inaccessible to Black-owned businesses.

**Other SBA Divisions**

**Office of Government Contracting and Business Development (OGCBD): Alaskan Native Corporation companies** firms **secured over 400 billion** in federal contracts in 2023**,** while **Black-owned businesses received only 1.61%.**

**Office of Advocacy:** Fails to represent Black-owned businesses' interests in federal policymaking adequately. These failures reflect systemic exclusion, deliberate policy gaps, and a lack of accountability at the highest levels of the SBA**.**

**Anticipated Counterarguments and Rebuttals**

**Ripeness: SBA's Argument:** Claims are premature as the agency adjusts policies to comply with *Ultima*.

**Rebuttal:** The harm is immediate and ongoing, as evidenced by DALS's financial losses and exclusion from procurement opportunities. Delayed action will exacerbate harm.

**Sovereign Immunity: SBA's Argument:** Procurement policies are discretionary and protected by sovereign immunity.

**Rebuttal:** Under the Administrative Procedure Act (APA), sovereign immunity is waived for declaratory and injunctive relief to challenge unlawful agency actions.

**Efficiency and Administrative Burden**

**SBA's Argument:** Requiring social disadvantage narratives for ANC-backed firms will create undue administrative burdens.

**Rebuttal:** Administrative efficiency cannot justify unconstitutional practices, as held in ***Adarand Constructors***. Equity mandates require individualized narratives for all participants.

**Economic Necessity**

**As the Small Business Administration is the Trustees. Please see**

**Rebuttal:** Political considerations cannot justify racial classifications that violate the Equal Protection Clause. The benefits granted to ANC-backed firms fail to meet the strict scrutiny standard. Alaskan Native Corporation, backed by Small Business Investment Company (SBIC), serves unique political and economic interests, due to SBA's role as trustees with these companies, **(see documents dated 11/08/2024 under the Document Titled Exhibit #1).**

**Expanded Legal Arguments**

**The Rule of Two**

- **SCOTUS in *Kingdomware* affirmed that Rule of Two:** applies **to ALL procurements, including task and delivery orders.** SBA non-compliance violates procurement laws and constitutional protections.

  **Equal Protection Clause: *Ultima* requires individualized evidence of social disadvantage, eliminating blanket exemptions for** Alaskan Natie firms. SBA's current practices violate the Equal Protection Clause.

  **APA Violations:** SBA's arbitrary administration of the 8(a) program and SBIC funding mechanisms violates the APA, as it contradicts Congressional intent and statutory mandates.

  **Failure to Meet Equity Goals:** Agencies' non-compliance with Executive Order 14091 undermines federal equity initiatives, perpetuating systemic exclusion.

**Despite these directives:**

**Alaskan Native Corporations**- firms dominate federal procurement, receiving 80% of those under the FAR 19 Small Business Programs contracts in FY2023, while Black-owned businesses received less than 1%. The SBA disaggregated data demonstrates an illusion of inclusion. SBA used their 1099 Independent Contractors to exemplify the data with Black-owned Businesses at 17% in 2023, which is false.

**Contract Allocation Disparities**

- Over the past **Forty Years, Alaskan Native Corporations** have **dominated** over **70% of 8(a) contracts, while Black-owned businesses received less than 2%, despite comparable qualifications (Exhibit B).**
- **Over 80% of task and delivery orders under FSS contracts bypassed the Rule of Two, favoring open competition and excluding Black-owned businesses.**

**SBIC Program Inequities**

- SBICs leverage federal capital at a 3:1 ratio to private capital, creating significant advantages for ANC-backed firms:
  - **Example: An SBIC raising $58.33 million in private capital receives $175 million in federal leverage, resulting in $233.33 million in total investment capital.**
  - **These funds disproportionately support ANC-backed firms, enabling them to dominate federal contracts and expand operations while Black-owned businesses struggle to access similar resources.**

**Proposed Remedies**

1. **Declaratory Relief**:
   - Declare the Rule of Two mandatory across all federal procurements.
   - Affirm that all 8(a) participants must submit individualized social disadvantage narratives.

2. **Injunctive Relief**:
   - Enjoin agencies from bypassing the Rule of Two.
   - Require equity benchmarks in procurement policies under Executive Order 14091.

3. **Financial Compensation:**

    - Award **millions in lost revenue for the past four years, for operational disruptions**, Including Community Development Financial Institution (CDFI), GSA Schedule, Missed Certifications CMMC, CFCM, CCCM, CPCM, CGFM, exhaustions in communications, networking events where the rule of two was exercise and failed **advocacy costs**.

4. **Judicial Oversight:**

    - Appoint a special master to oversee SBA compliance with FAR and *Ultima* rulings.

    - Mandate quarterly audits and public reporting on 8(a) program outcomes.

5. **Policy Reforms:**

    - Strengthen FAR enforcement to prioritize small business set-asides.

    - Mandate equity-driven training for Procurement Center Representatives (PCRs).


**Request for Court Review and Declaratory Judgment on Systemic Procurement Inequities"**

**On the Ultima Ruling and Equal Protection**

**1.**Does the presumption of social disadvantage for ANC-backed firms, without requiring individualized narratives under the FAR 19 Small Business Program, including Alaskan Native Corporations (ANC**), violate the Equal Protection Clause as interpreted in *Adarand Constructors, Inc. v. Peña* and *Ultima Services Corp. v. USDA*?**

**The *Ultima* ruling held that blanket presumptions of social disadvantage for certain groups, including ANC-backed firms, lack the individualized evidence required under constitutional scrutiny. This question asks whether exempting ANC-backed firms from submitting individualized social disadvantage narratives creates an unconstitutional classification.**

**2.**Given that ***Ultima Services Corp. v. USDA*** invalidated the blanket presumption of social disadvantage, should the Court require all those within the 8A program to provide evidence of systemic disadvantages to comply with constitutional principles of narrow tailoring and compelling governmental interest?

**Under strict scrutiny, government programs must serve a compelling interest and be narrowly tailored. This question evaluates whether ANC-back firms' exemptions undermine these principles and whether they should be subject to the exact evidentiary requirements as other 8(a) participants.**

**3.**Does the SBA's continued reliance on the presumption of social disadvantage for Alaskan Native Corporations (ANC) rooted in political classifications rather than federally recognized criteria undermine the constitutional guarantees of equal protection**?**

**This question highlights the disconnect between the political rationale behind ANC-back firms' eligibility and the constitutional mandate to ensure equal treatment under the law, especially for disadvantaged groups like Black-owned businesses.**

**On SBA Compliance and Agency Discretion**

**1.** Does the SBA's failure to uniformly implement policies post-ultima—including individualized social disadvantage narratives for all 8(a) participants—constitute arbitrary and capricious agency action under the Administrative Procedure Act (APA)?

- **The APA requires agency decisions to be rational, consistent, and evidence based. By failing to enforce uniform policies post-*Ultima*, the SBA may have acted arbitrarily, disadvantaging Black-owned businesses while favoring ANC-backed firms.**

**2.** Should the Court mandate immediate enforcement of *Ultima* by requiring all 8(a) program participants, including Alaskan Native Corporation -backed by Small Business Investment Company firms, to provide evidence of social disadvantage as outlined in **13 C.F.R. Section 124.103(c)?**

- Enforcing ***Ultima*** **would ensure compliance with constitutional mandates, level the playing field for ALL 8(a) participants,** and remove **undue advantages granted to Alaskan Native Corporation Companies due to the ANCS 1971 Settlement.**

**3.** Should the SBA follow the explicit guidelines for applying **Rule of Two under the Federal Acquisition Regulations and Tolliver** and ensure that all federal agencies enforce these guidelines uniformly to prevent discriminatory practices against Black-owned businesses**?**

- **Clear and consistent guidelines would address disparities in applying the Rule of Two, ensuring equitable access for all small businesses while preventing systemic exclusion of Black-owned enterprises.**

**On the Rule of Two and Procurement Equity**

**1.**Should the Rule of Two be applied before selecting procurement vehicles, as upheld in ***Tolliver Group, Inc. v. United States***, to guarantee compliance with the Small Business Act?

- **The *Tolliver* ruling underscored the need for the Rule of Two to be applied at the earliest stages of procurement planning. This ensures that small businesses are prioritized in procurement decisions rather than excluded under large IDIQ contracts by default.**

**2.** Does failing to apply the Rule of Two uniformly across all task and delivery orders under multiple-award contracts undermine Congressional intent to maximize small business participation?

- **Congress intended Rule of Two to maximize opportunities for small businesses. However, its uneven application, especially under task and delivery orders, creates loopholes that exclude qualified small and disadvantaged companies from competing for federal contracts.**

**3.** Should the Court resolve the ongoing conflict between the Government Accountability Office's (GAO) interpretation and the Court of Federal Claims ruling in *Tolliver*, ensuring a uniform and mandatory application of the Rule of Two for task and delivery orders under IDIQ contracts?

- **Conflicting interpretations between the GAO and the Court of Federal Claims have created inconsistencies in enforcing the Rule of Two. Resolving this conflict would provide clarity and implement the statutory intent of the Small Business Act.**

**On the Kingdomware Ruling and Its Implications**

**1. Does** the SBA's proposed rule from October 25, 2024, requiring the application of the Rule of Two to task and delivery orders under multiple-award contracts align with the Supreme Court's mandates in *Kingdomware Technologies, Inc. v. United States*?

- **In *Kingdomware*, the Supreme Court held that the Rule of Two is mandatory and applies to all federal procurements, including orders under multiple-award contracts. This question determines if the SBA's proposed rule appropriately incorporates this binding precedent, ensuring consistent enforcement across procurement practices.**

**2.** Regarding *Kingdomware*, should the **Rule of Two be applied to the Federal Supply Schedule (FSS) task and delivery orders to maximize small business participation in federal procurement?**

- **The Court in *Kingdomware* emphasized that "shall" imposes a mandatory duty. This question addresses whether agencies can bypass this duty in FSS contracts, undermining opportunities for small businesses.**

**3.** Does the failure of federal agencies to apply the Rule of Two to FSS firms directly violate the mandatory nature of **15 USC § 644(j), as interpreted in** *Kingdomware*?

- **This examines whether agency practices that ignore the Rule of SBA in FSS orders conflict with statutory requirements and the Supreme Court's ruling in *Kingdomware*.**

**4.** Given the Supreme Court's assertion in *Kingdomware* **that "shall" creates a binding obligation impervious to judicial discretion,** can any federal agency justify the discretionary application of the **Rule of Two** to task firms' delivery orders under multiple-award contracts**?**

- **This question challenges whether agency discretion in applying the Rule of Two undermines the statute's mandatory language, as affirmed in *Kingdomware*.**

**On SBA Compliance and Enforcement of Kingdomware:**

**1.**Does the SBA have evidence that Tolliver or the Rule of Two hindered the federal government's ability to award MACs under FAR 16.505 or Federal Supply Schedules FAR 8.402 Economically?

**2.** Does the SBA's ongoing failure to enforce the Rule of Two in all federal procurements, as mandated by *Kingdomware*, constitute arbitrary and capricious action under the **Administrative Procedure Act (APA)?**

- **Under the APA, agency actions must align with statutory and judicial mandates. This question examines whether the SBA's inconsistent enforcement of *Kingdomware* violates these principles.**

**3. Should** the Court compel the SBA to enforce its 2016 memorandum interpreting *Kingdomware* **as applying the Rule of Two to all FSS (Non-Mandatory) task and delivery orders?**

- **The SBA's Office of General Counsel issued a memorandum acknowledging *Kingdomware's* applicability. This question addresses whether failure to enforce this policy undermines small business protections.**

**4. Should** the Court mandate the SBA to adhere to SCOTUS ruling and, enforceable policies ensuring compliance with *Kingdomware* across all federal agencies and procurement practices?

- **This question seeks to prevent inconsistencies in applying the Rule of Two by requiring explicit SBA policies, particularly for FSS and IDIQ contracts.**

**On Broader Implications of Kingdomware**

**1.Does** the assertion in *Kingdomware* that **FSS** orders now encompass complex, multiyear procurements rather than "mundane government purchases" necessitate the consistent application of the Rule of Two to all such orders to protect small business participation**?**

- **The Supreme Court recognized that FSS orders are no longer limited to minor procurements. This question emphasizes the importance of applying the Rule of Two to protect small businesses in these high-value contracts.**

**2.** Should the Court reaffirm that the Supreme Court's **opinion in *Kingdomware* is binding** and **supersedes any conflicting interpretations by lower courts, such as the Government Accountability Office's (GAO) discretionary interpretation of 15 USC § 644(r)?**

- **This question Offices whether conflicting interpretations by agencies and lower courts undermine the Supreme Court's authority and the intent of the Rule of Two.**

**3.** Should the Court issue an injunction to prevent agencies from bypassing the **Rule of Two** in favor of open competition under FS**S practices, given that** such actions **misinterpret *Kingdomware* and undermine small business protections?**

- **An injunction would ensure compliance with *Kingdomware*, preventing agencies from sidelining small businesses in SBA's decisions.**

**On Judicial Oversight and Remedy Enforcement**

**1.** Should the Court appoint a special master to oversee SBA and agency-wide compliance with *Kingdomware* **to ensure uniform application of the Rule of Two?**

- **Independent oversight would ensure that agencies comply with judicial mandates and statutory obligations, preventing further harm to small businesses.**

**2.** Should compliance reports and audits addressing adherence to *Kingdomware* be made publicly available to promote transparency and accountability?

- **Public reporting would give stakeholders, including disadvantaged businesses, the information needed to hold agencies accountable for following procurement laws.**

**3.**Should the Court require federal agencies to update their procurement guidelines to explicitly incorporate *Kingdomware's* **interpretation of the Rule of Two,** ensuring uniform enforcement across all contracting mechanisms?

- **Updated guidelines would eliminate ambiguities and ensure that all procurement mechanisms prioritize small business participation as mandated by law.**

**On Systemic Harm and Remedies Under Kingdomware**

**1.** Should the Court compel the SBA to conduct a comprehensive analysis of how federal agencies' non-compliance with *Kingdomware* disproportionately impacts **Black-owned businesses?**

- **This question addresses the systemic harm caused by inconsistent enforcement of the Rule of Two, particularly its impact on marginalized communities.**

**2.** Should the Court immediately implement corrective measures, including mandatory training for contracting officers on *Kingdomware* **compliance?**

- **Corrective measures ensure contracting officers understand and consistently apply the Rule of Two in all procurement decisions.**

**3.** Is financial compensation warranted for small businesses, such as **DALS Credit Solutions Co., excluded** from procurement opportunities due to **non-compliance with *Kingdomware* mandates?**

- **Financial restitution would address the economic harm suffered by businesses unjustly excluded from federal contracts.**

**On Broader Equal Protection Implications**

**1.** Does the Small Business Administration's preferential treatment of ANC-backed SBIC firms, exempting them from providing social disadvantage narratives, create a two-tier system within the 8(a) program that disproportionately disadvantages Black-owned businesses, violating the **Equal Protection Clause?**

- **The exemption for ANC-backed firms establishes an unequal standard within the 8(a) program. This question evaluates whether such disparities violate constitutional equal protection principles by marginalizing Black-owned businesses.**

**2.** Should the Court compel the SBA to justify its policy of granting blanket presumptions to Alaskan Native Corporation firms under strict scrutiny, demonstrating that these classifications serve a compelling governmental interest and are narrowly tailored to achieve that interest?

- **This question challenges whether the benefits granted to ANC-backed firms can withstand strict scrutiny, particularly when such policies disadvantage other disadvantaged groups without sufficient justification.**

**On Judicial Oversight and Accountability**

**1. Should** the Court appoint a **special master to oversee SBA compliance with *Ultima*, ensuring** individualized social disadvantage narratives are required for **all 8(a) participants?**

- **A special master would provide impartial oversight, ensuring that SBA practices align with constitutional and statutory mandates while addressing disparities in program administration.**

**2.** Should the Court require quarterly audits of the 8(a) program to verify that all participants adhere to the same evidentiary standards for social disadvantage**?**

- **Regular audits ensure consistent enforcement of eligibility requirements, promoting accountability and preventing systemic inequities.**

**3.** Should compliance reports be publicly available to promote transparency and accountability in SBA practices**?**

- **Publicly accessible compliance data would empower stakeholders, including disadvantaged businesses, to hold the SBA accountable for equitable program administration.**

**On Systemic Harm and Equity**

**1. Should** the Court compel the SBA to conduct a detailed impact assessment of how its current policies disproportionately harm **Black-owned businesses**, as required by **Executive Order 14091?**

- **A comprehensive impact analysis would quantify the harm caused by SBA policies and inform necessary reforms to address systemic inequities in federal procurement.**

**2.**Should the Court mandate that the SBA develop and implement explicit policies ensuring that the Rule of Two and individualized social disadvantage narratives promote equitable access for all disadvantaged groups?

- **Explicit policies would safeguard against systemic discrimination and prioritize equitable participation for all eligible small businesses.**

**3.**Does the SBA's failure to enforce equity-driven procurement policies exacerbate systemic disparities, perpetuating a cycle of exclusion for Black-owned businesses?

- **This question examines whether the SBA's inaction undermines its equity objectives, perpetuating harm to disadvantaged groups.**

**On Remedies and Restitution**

**1.** Should the Court grant injunctive relief requiring the SBA to implement the proposed rule changes immediately, ensuring compliance with the **Rule of Two** and the *Ultima* decision?

- **Injunctive relief would compel immediate action, addressing ongoing harm to disadvantaged businesses caused by systemic inequities.**

**2. Should** the Court establish a compliance timeline with enforceable benchmarks to ensure that SBA reforms align with constitutional and statutory obligations and prevent further systemic harm?

- **Establishing benchmarks would ensure accountability and sustained progress toward equitable federal procurement practices.**

**On Compliance with Court Rulings and Federal Regulations**

**3.**Have **Ultima Services Corporation, LUSA Associates, Inc., USDA, or SBA** provided any updates to the Court regarding compliance with rulings issued since October 2023**?**

- **The Court's rulings require ongoing compliance updates to ensure adherence to legal mandates. This question explores whether the involved entities have fulfilled their obligations to report progress or outcomes, including operational changes or procedural compliance.**

**4.** What steps have USDA and SBA taken to ensure compliance with **41 USC § 6305**, which mandates **novation agreements for federal contract transfers,** particularly in the cases of **Ultima Services Corporation and LUSA Associates, Inc.?**

- **41 USC § 6305 requires novation agreements when federal contracts are transferred from one entity to another. This question scrutinizes whether the transfer of contracts from Ultima to LUSA was conducted lawfully and, if not, what remedies or accountability measures have been implemented.**

**5. Does the non-operational status of Ultima Services Corporation and LUSA Associates, Inc., as evidenced by their non-functioning websites, indicate a failure to fulfill contractual obligations or update the Court regarding their status?**

- **The cessation of operations by these companies raises concerns about their ability to perform existing federal contracts. This question probes whether their status was disclosed to the Court and if their contracts were reassigned lawfully and transparently.**

**6.** How have **Treasury and SBA addressed deviations from FAR regulations that allow ANC-backed firms to receive contracts without meeting eligibility requirements or submitting required social narratives?**

- **The Treasury report indicates that ANC-backed firms continue to receive contracts despite non-compliance with FAR and 8(a) program requirements. This question examines whether regulatory enforcement mechanisms have been applied and how these violations have been rectified.**

**On Financial Leverage and Preferential Treatment**

**1.** Has the **Small Business Investment Companies s 3:1 leverage structure disproportionately enabled ANC-backed firms to dominate federal contracts post-***Ultima*,** further disadvantaging Black-owned businesses?**

- **The 3:1 leverage structure provides federal funds three times the amount of private capital raised, creating a significant financial advantage for ANC-backed firms. This question evaluates whether this leverage has perpetuated an unfair contracting environment that excludes Black-owned businesses.**

**2.** What measures have SBA and Treasury implemented to ensure that the SBIC leverage structure complies with FAR and 8(a) program requirements, particularly regarding ANC-backed firms?

- **Given the financial advantages created by the SBIC program, this question seeks to determine whether SBA and Treasury have enforced compliance mechanisms to prevent misuse or over-reliance on these funds by ANC-backed firms.**

**3.** How has the dominance of ANC-backed firms in federal contracting impacted the competitive landscape for Black-owned businesses, particularly in sectors heavily reliant on federal contracts?

- **This question examines the broader systemic effects of financial and regulatory preferences for ANC-backed firms, including the economic exclusion of Black-owned businesses from key industries.**

**On Constitutional Violations and Equal Protection**

**1.** Does the preferential treatment of ANC-backed firms, as documented in the **Treasury report, violate the Equal Protection Clause under the principles established in *Adarand Constructors, Inc. v. Peña*?**

- ***Adarand* requires that racial classifications in federal contracting undergo strict scrutiny and be narrowly tailored to serve a compelling governmental interest. This question challenges whether the preferential treatment of ANC-backed firms meets these constitutional standards.**

**2.** Have race-based preferences under **FAR 19 been narrowly tailored** to meet the compelling governmental interests required under ***Rothe Development Corp. v. U.S. Department of Defense*?**

- **This question evaluates whether ANC preferences in federal contracting satisfy the strict scrutiny test established in *Rothe*, particularly given the documented disparities affecting Black-owned businesses.**

**3.** How has SBA ensured that the 8(a) program is narrowly tailored to avoid unconstitutional race-based preferences, as required under ***Dynalantic Corp. v. U.S. Department of Defense*?**

- **In *Dynalantic*, the Court held that race-based preferences must be carefully structured to avoid constitutional violations. This question assesses whether the SBA's 8(a) program administration aligns with this requirement.**

**On the Impact on Black-Owned Businesses**

**1.** What evidence do SBA and Treasury have to demonstrate that Black-owned businesses have been provided equitable opportunities to compete for federal contracts post-***Ultima*?**

- **This question demands data and evidence showing whether Black-owned businesses have benefitted from reforms or have continued to face systemic exclusion from federal procurement opportunities.**

**2.** How has SBA mitigated the ongoing harm to Black-owned businesses caused by the failure to enforce compliance with **Court rulings regarding Tolliver, Kingdomware, etc., FAR, and 8(a) program requirements?**

- **This explores whether SBA has taken corrective actions to address economic and operational harm to Black-owned businesses caused by non-compliance with legal standards.**

**3.** What role has the Treasury's SBIC program played in addressing—or exacerbating—the exclusion of Black-owned businesses from federal contracting opportunities**?**

- **This question examines whether the financial leverage provided by SBICs has been used to promote equity or whether it has further entrenched systemic disparities.**

**On Transparency and Accountability**

**1.** Why have SBA and USDA not provided transparency regarding compliance with Court rulings, including disclosures of contract allocations and updates on All Participants within Ultima Ruling?

- **The lack of transparency undermines trust in federal procurement processes. This question asks why compliance updates have not been provided despite Court directives.**

**2.** Should the Court require SBA, USDA, and Treasury to submit quarterly compliance reports detailing contract awards, eligibility checks, and adherence to FAR and constitutional mandates?

- **Quarterly reports would ensure ongoing accountability and provide stakeholders with the information necessary to monitor compliance.**

**3.** How can the Court ensure that the preferential treatment of ANC-backed firms, documented in the Treasury report, is subject to public scrutiny and does not violate federal contracting laws**?**

- **This question addresses the need for transparency and public accountability in federal procurement practices to prevent systemic inequities.**

**On Remedies and Future Oversight**

**1.** Should the Court compel SBA, USDA, and Treasury to implement comprehensive corrective measures, including training, independent oversight, and policy reforms, to address documented violations of FAR and the Equal Protection Clause**?**

- **This question proposes systemic reforms to prevent future violations and ensure equitable access for all disadvantaged groups.**

**2.** Should financial restitution be provided to Black-owned businesses excluded from federal contracts due to non-compliance with Court rulings and federal regulations**?**

- **This question seeks compensation for businesses that have suffered measurable harm due to systemic inequities in federal contracting.**

**3.** Should the Court mandate public disclosure of the steps taken to reallocate contracts improperly awarded to ANC-backed firms, including the specific criteria used to assess eligibility and compliance?

- **Public disclosure would ensure that remedial actions are transparent and align with legal and constitutional standards.**

**On Intervention and Addressing Systemic Discrimination**

**1.** Should the Court grant full intervention rights to individuals or entities that can demonstrate a direct and significant interest in the outcome of a case involving systemic discrimination, such as the exclusion of Black-owned businesses from federal contracting?

- **This question examines the threshold for intervention in cases where systemic inequities have caused measurable harm to the intervening party.**

**On Audits and Transparency in Federal Agencies**

1. Should the Court order an independent audit of the SBA and USDA to determine whether their handling of LUSA Associates Inc.'s contracts violated federal procurement laws or perpetuated discriminatory practices?

**This question focuses on transparency in agency actions, particularly regarding allegations of preferential treatment and non-compliance.**

2. As emphasized in ***Ashcroft v. Iqbal,*** how can an independent audit provide the transparency necessary to evaluate whether the SBA and USDA failed to handle Alaskan Native Corporations- with Small Business Investment Corporation influences?

**This evaluates whether transparency through audits would expose failures or misconduct in federal contracting processes.**

3. What role has the **SBIC 3:1** leverage structure played in perpetuating systemic inequities, and should the audit analyze its influence on awarding federal contracts to ANC-backed firms?

**This question targets the financial mechanisms contributing to disparities and their compliance with federal standards.**

**On LUSA Associates, Inc. and Compliance**

1. Should LUSA Associates, Inc. be required to submit evidence of its current certification under the SBA 8(a) program to confirm its compliance with eligibility requirements?

**This seeks to ensure that LUSA operates within the bounds of the 8(a) program's criteria, particularly regarding certification and eligibility.**

2. Has LUSA Associates, Inc. complied with 41 USC § 6305 by submitting a novation agreement for any transferred contracts, and should the Court compel documentation proving adherence?

**This question examines whether LUSA correctly followed the legal requirements for transferring federal contracts and whether such compliance has been verified.**

3. Given its **non-operational website**, should the Court **order LUSA Associates, Inc.** to disclose its operational status and demonstrate its capacity to fulfill contractual obligations?

- **This question addresses concerns about LUSA's ability to meet its contractual obligations and whether its status disqualifies it from receiving federal contracts.**

**On Federal Procurement Compliance**

1. Should the Court compel USDA, SBA, and LUSA Associates, Inc. to submit detailed documentation demonstrating compliance with federal procurement laws, including FAR regulations and 8(a) program requirements**?**
   **This question addresses the broader issue of the entities involved' compliance with procurement laws.**

2. Should the courts request an audit with **MAX.GOV** to see how many **Black-owned Businesses registered vs Alaskan Native Corporation within the portal?**

   **This ensures that the SBA, USDA and other agencies comply with Federal Guidelines to ensure Black Owned Companies are having a fair chance with Federal opportunities.**

3. Should the Court require SBA and USDA to provide evidence of internal oversight mechanisms ensuring compliance with SAM.gov and MAX.GOV standards across all federal contractors?

   **This question explores whether oversight mechanisms are in place to prevent systemic failures in federal procurement processes.**

4. What penalties or corrective measures should the Court impose on USDA and SBA for failing to enforce compliance with federal procurement laws, particularly in cases involving ANC-backed firms and Black-owned businesses?

   **This question evaluates accountability measures for agency non-compliance and systemic inequities.**

**On Status Conferences and Oversight**

1. Should the Court schedule a status conference to address ongoing compliance failures by USDA, SBA, and LUSA Associates, Inc., ensuring these entities operate within the framework of federal law and Court rulings?

   **This question emphasizes the need for judicial oversight to ensure compliance and address systemic issues.**

2. How can a status conference facilitate accountability and transparency in resolving non-compliance with federal procurement laws and addressing discriminatory practices in federal contracting?

**This evaluates the utility of status conferences in creating a forum for addressing and remedying systemic failures.**

3. Should the Court establish a recurring schedule of status conferences to monitor compliance with Court rulings, federal procurement standards, and equitable treatment of disadvantaged businesses?

**This proposes ongoing judicial oversight to ensure sustained compliance and equitable federal contracting practices.**

**On Broader Accountability and Remedies**

1. Should the Court require USDA, SBA, and Treasury to implement corrective measures, including training, independent oversight, and public reporting, to address documented violations of federal procurement laws**?**

` **This question addresses systemic reforms needed to prevent future violations and ensure equitable practices.**

2. What specific remedies should be provided to Black-owned businesses that have suffered harm due to the discriminatory practices documented in the SBA and USDA's handling of federal contracts**?**

**This examines potential compensatory measures for businesses excluding equitable access to federal contracts.**

3. Should the Court mandate public disclosure of all findings from audits, status conferences, and compliance reviews to promote transparency and accountability in federal procurement practices?

**Public disclosure ensures that systemic failures are addressed openly, fostering accountability and equitable reforms.**

**In Closing:**

Your Honor,

The federal procurement system, established to promote fairness, equity, and opportunity, has instead perpetuated systemic inequities that have excluded **Black-owned businesses** like mine from accessing the opportunities mandated by Congress and protected by the Constitution. The evidence before this Court is not merely an indictment of past practices but a reflection of ongoing violations that demand immediate judicial intervention.

For decades, the Rule of Two, codified in **FAR 19.502-2(b),** has stood as a vital safeguard to ensure that small and disadvantaged businesses receive equitable opportunities in federal

contracting. Yet, systemic **non-compliance** with this mandate, coupled with the unchecked dominance of Alaskan Native Corporations and the failure to enforce individualized social disadvantage narratives under the **8(a) program**, has created a contracting environment rife with inequities, undermining the principles of equal protection, fairness, and statutory compliance.

**This Motion Seeks to Restore Justice, Equity, and Accountability**

I renew my request for this Court to issue a **declaratory judgment** addressing these systemic inequities. As the founder of DALS Credit Solutions Co., I am a direct witness to the harm caused by these violations—over $40 million in documented financial losses, the erosion of operational capacity, and exclusion from federal opportunities rightfully intended for businesses like mine.

This Court has long affirmed its commitment to upholding the integrity of federal procurement laws and the constitutional principles that govern them. The rulings in ***Kingdomware Technologies, Inc. v. United States***, ***Adarand Constructors, Inc. v. Peña***, and most recently ***Ultima Services Corporation v. United States*** have provided clear directives that agencies must adhere to the Rule of Two, ensure strict scrutiny of racial classifications, and enforce equitable application of the 8(a) program. Yet, despite these precedents, systemic violations persist.

**Urgency of Judicial Intervention**

The urgency of this motion cannot be overstated. Each day of non-compliance exacerbates the harm suffered by Black-owned businesses, perpetuates inequities, and undermines the public trust in federal contracting. Consider the following:

1. **Egregious Non-Compliance with Court Rulings**

   - The SBA and USDA have failed to implement *Ultima* by requiring individualized social disadvantage narratives for all 8(a) participants.

   - ANC-backed firms continue to dominate federal contracts, leveraging statutory exemptions and financial advantages that exclude Black-owned businesses, violating constitutional protections under the Equal Protection Clause.

2. **Violation of Federal Laws and Regulations**

   - The systemic disregard for the Rule of Two denies qualified small businesses, including Black-owned firms, their rightful opportunities to compete for contracts.

   - The Treasury report reveals deviations from FAR regulations, enabling ANC-backed firms to exploit financial leverage under the SBIC program without meeting eligibility requirements.

3. **Lack of Transparency and Accountability**

   - Agencies have obstructed compliance efforts by failing to provide documentation under FOIA requests and withholding critical data that would reveal systemic non-compliance.

- Neither **LUSA Associates, Inc**. nor the **SBA and USDA** has demonstrated adherence **to 41 U.S.C. § 6305**, which mandates novation agreements for federal contract transfers.

**Judicial Authority to Address Systemic Inequities**

This Court has the authority and the obligation to address these systemic failures and enforce compliance. The Constitution and federal laws demand nothing less. Specifically:

- **The Equal Protection Clause** prohibits the creation of a two-tiered system where ANC-backed firms are exempted from requirements that burden other disadvantaged businesses.

- **The Administrative Procedure Act** mandates that agency actions be rational, evidence-based, and free from arbitrary or capricious decision-making. The SBA's failure to implement *Ultima* and enforce FAR regulations violates these standards.

- **The Small Business Act (15 U.S.C. § 644)** requires that small and disadvantaged businesses receive the maximum practicable participation in federal contracting. Current practices violate the intent of this law.

Proposed Judicial Actions

To address these inequities and restore trust in the federal procurement system, I respectfully request the Court to:

1. **Grant Full Intervention**

   - Allow me, as a directly harmed party, to intervene fully in this matter to ensure that systemic discrimination against Black-owned businesses is comprehensively addressed.

2. **Order Comprehensive Audits**

   - Mandate audits of SBA and USDA to uncover the full extent of non-compliance with *Ultima*, FAR regulations, and federal procurement laws, and require public reporting of findings.

3. **Compel Compliance with the Rule of Two**

   - Declare the Rule of Two mandatory across all federal procurements, including task and delivery orders under multiple-award contracts, as affirmed in *Kingdomware*.

4. **Enjoin Further Discriminatory Practices**

   - Issue injunctive relief to prevent agencies from bypassing the Rule of Two and require equity benchmarks under Executive Order 14091.

5. **Appoint a Special Master**

- Oversee compliance with this Court's rulings and ensure that agencies adhere to constitutional and statutory mandates.

6. **Provide Financial Restitution**

   - Award damages for financial losses suffered by Black-owned businesses, including DALS Credit Solutions Co., due to systemic exclusion and non-compliance with federal laws.

7. **Mandate Policy Reforms**

   - Require SBA and USDA to implement reforms ensuring transparency, equity, and consistent application of procurement laws, including regular training for contracting officers.

**A Call for Equity and Justice**

Your Honor, this motion is not merely about enforcing laws or correcting procedural failures. It is about affirming the principles of justice, fairness, and equity foundational to our democracy. The exclusion of Black-owned businesses from federal procurement opportunities is not just a violation of statutes and regulations—it is a moral failing that perpetuates inequality and undermines trust in public institutions.

This Court can set a powerful precedent, ensuring that all disadvantaged businesses, regardless of their racial or political classifications, are afforded equal opportunities to compete in the federal marketplace. By granting this motion, the Court can reaffirm its commitment to upholding the Constitution, enforcing compliance with federal laws, and addressing systemic inequities in federal procurement.

Respectfully submitted,

/s/Lynette T. Stevenson

Pro Se Litigant

DALS Credit Solutions Co.

5767 Albany GRN Westerville, Ohio 43081

717.421.1445 ls@dalscreditsolutions.com



U.S. SMALL BUSINESS ADMINISTRATION
WASHINGTON, D.C. 20416

OFFICE OF GENERAL COUNSEL

**DATE:**     July 29, 2016

**TO:**     Seán Crean
Director of Government Contracting

**FROM:**     Melvin F. Williams, Jr.
General Counsel

**SUBJECT :**     Applicability of the Mandatory Reserve in Section 15(j) to Orders
Between $3,500 and $150,000 Awarded Through the Federal Supply
Schedule (FSS); Authority of Procurement Center Representatives to
Review FSS Purchases to Recommend Small Business Set-Asides

On June 16, 2016, the United States Supreme Court issued a unanimous opinion in
*Kingdomware v. United States*, 579 U.S. ___ (2016) (slip op.), ruling that the Rule of
Two in 38 U.S.C. § 8127(d) applies to orders issued by the Department of Veterans
Affairs (VA) through the Federal Supply Schedule (FSS). In light of the *Kingdomware*
decision, you have asked whether the mandatory automatic reserve in section 15(j) of the
Small Business Act, 15 U.S.C. § 644(j), for contracts between $3,500 and $150,000 equally
applies when an agency awards an order under the FSS, and further, whether
SBA's procurement center representatives (PCRs) have authority to review FSS orders to
recommend small business set-asides. For the reasons set forth below, we believe that
section 15(j) mandates reserving FSS orders between $3,500 and $150,000 for small
business. We also believe that PCRs have existing authority to review FSS purchases
and to recommend that agencies set aside orders at any value.

### BACKGROUND

The Supreme Court issued its unanimous decision in *Kingdomware* on June 16,
2016. The opinion delivered by Justice Thomas rejected the decisions of two lower
courts and the arguments of the Solicitor General. The Court ruled that veteran-owned
small business contractors must receive first priority for all contracts and orders of the
VA.

The case involved the "Rule of Two" contracting principle. [1] Under the Rule of
Two, an executive agency must set aside a purchase for award to a small business or a

---

[1] In this memorandum, the Rule of Two refers to the rule that the agency must implement the set
aside unless market research shows that there is not a reasonable expectation that offers will be obtained
from at least two small business concerns that are competitive in terms of quality and delivery and award
will be made at a fair market price. The Federal Acquisition Regulation (FAR) expresses the Rule of Two
in FAR § 19.502.2 as requiring a set aside "where there is a reasonable expectation that—(1) Offers will be
obtained from at least two responsible small business concerns offering the products of different small
business concerns; and (2) Award will be made at fair market prices." 48 C.F.R. § 19.502-2(b).

subset of small businesses—in *Kingdomware*, small businesses owned by a veteran—provided the agency has a reasonable expectation of receiving offers from two or more small business concerns (or the relevant subset) that can perform at fair market prices. In the Veterans Benefits Act of 2006 (2006 Act), Congress mandated that the VA "shall" apply the Rule of Two for veteran-owned small businesses (VOSBs) for every "contract." 38 U.S.C. § 8127(d). By regulation, the VA has implemented a Rule of Two requirement for service-disabled veteran-owned small businesses (SDVO SBs), a subset of VOSBs. 48 C.F.R. § 819.7005.

After being denied an FSS order, Kingdomware Technologies, a VOSB, filed a bid protest of the VA's failure to follow the 2006 Act's Rule of Two. The VA argued that it followed the 2006 Act, but for two exceptions. First, the VA argued that it did not need to follow the Rule of Two if the agency met its internal goal for contracting with veteran-owned small businesses. Second, the VA claimed that purchases using the FSS—such as the challenged one—were exempt from the Rule of Two. The FSS is a government-wide acquisition vehicle run by the General Services Administration (GSA) under which GSA preapproves vendors to sell particular categories of products to the Government, negotiates terms, and sets prices on behalf of federal agencies. An agency's purchase from the FSS is referred to as an "order."

Although the trial court and appeals court agreed with the first goals-based exception, the Supreme Court read the statute differently. Because the statute uses the word "shall," the Court wrote that it must be read as a command and as imposing a "mandatory duty." The Court found that the VA's goals were an objective "that Congress hoped that the [VA] would achieve," but they did "not change the plain meaning of the operative clause" in the mandatory statute. Addressing the particular structure of the statute, the Court wrote, "When a statute distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." *Kingdomware* at 9. Thus, the VA is bound to follow the Rule of Two regardless of whether it has achieved its goals.

The Supreme Court also rejected the second orders-based exception. An order is itself a contract, the Court ruled, because the order imposes mutually binding obligations. The Court reasoned that an FSS order is a "contract" within the dictionary definition of that term and as defined by the Federal Acquisition Regulation (FAR) at § 2.101. The Rule of Two clearly applies to contracts, and therefore it must apply to orders, the Court reasoned. Responding to the argument that FSS orders are primarily used for small-dollar procurements, the Court wrote, "the Department may continue to purchase items that cost less than the simplified acquisition threshold (currently $150,000) through the FSS, if the Department procures them from a veteran-owned small business." *Kingdomware* at 12. Furthermore, the opinion finds that the VA could not receive *Chevron* deference for an interpretation that FSS orders are not contracts because the 2006 Act is "unambiguous." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984).

Eight months prior to Supreme Court's decision in *Kingdomware*, the Government Accountability Office (GAO) ruled that the small business set-aside rules do

not apply to FSS orders below the simplified acquisition threshold. *Matter of Aldevra*, B-411752, Oct. 16, 2015, 2015 CPD ¶ 339. *Aldevra* involved a challenge by an SDVO SBC of the Department of Army's decision to procure a $4,300 ice dispenser through the FSS without setting aside the FSS order. The small business argued that section 15(j) of the Small Business Act, 15 U.S.C. § 644(j), mandates that all purchases at that dollar level—including FSS orders—be automatically set aside for small business.

GAO denied the challenge and decided that "it is readily apparent that the general small business set-aside rule for contracts valued between $2,500 and $100,000, set forth under section 644(j), and implemented under FAR § 19.502-2, does not apply when placing orders under the FSS program." *Aldevra* at 5-6. GAO drew a distinction between "orders under multiple-award contracts"—which GAO found were not subject to set-aside requirements—and "all other types of contracts," which were subject to set-aside mandates. *Id.* at 6. GAO reasoned that section 15(r) of the Small Business Act, 15 U.S.C. § 644(r), "carved out a limited exception with respect to section [15](j) for orders under multiple-award contracts." *Id.* Consequently, GAO determined that "a harmonious application of the two sections" results in agencies having "discretion whether to set aside an order" for small business, rather than being mandated to do so by section 15(j). *Id.*

## SUMMARY

The Supreme Court's *Kingdomware* decision resolutely confirms the existing SBA interpretation in 13 C.F.R. § 125.1(d) that a "contract" includes orders issued against multiple award contracts, such as FSS contracts. Under 15(j) of the Small Business Act and 13 C.F.R. § 125.2(f) of SBA's rules, all contracts between $3,500 and $150,000 must be reserved for small business unless the Rule of Two is not satisfied. Post-*Kingdomware*, it is our view that an order is a contract for all federal procurement purposes, and the 15(j) mandatory reserve therefore applies to FSS orders between $3,500 and $150,000. In particular, because section 15(j) is mandatory and the FSS is discretionary, an agency must apply the section 15(j) mandate before deciding whether to use the FSS.

GAO and others have raised the argument that section 15(r) of the Small Business Act negates the mandate in section 15(j) for orders, but this argument fails for numerous reasons. In particular, Congress enacted section 15(r) in the Small Business Jobs Act of 2010 with the intent of *improving* small business participation in federal procurement, not taking away set-aside opportunities from small business or diverting them to large business. Furthermore, the *Kingdomware* Court dismissed the argument by specifically holding that the VA must set aside FSS orders below $150,000. Also, GAO's argument supposedly "harmonizing" 15(r) with 15(j) violates the centuries-old principle of statutory construction—followed at least nine times by GAO itself—that a later-enacted statute such as 15(r) does not partially repeal an earlier-enacted statute unless it specifically provides for a repeal, which 15(r) does not. *See, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-663 (2007). Finally, SBA's guidance implementing section 15(r) stated that the set-aside Rule of Two requirement applies to the "GSA Multiple Award Schedule" program (also known as the FSS) for

orders below the simplified acquisition threshold of $150,000. 78 Fed. Reg. 61135, 61125 (Oct. 2, 2013).

On the issue of PCR review, 13 C.F.R. § 125.2(b)(i) expressly grants PCRs the authority to review "acquisitions where the agency has not set-aside orders placed against Multiple Award Contracts for small business concerns." Under SBA's rules, the FSS is a Multiple Award Contract, and therefore PCRs clearly have authority to review FSS orders that are not set aside, at any dollar level.

## DISCUSSION

### A.  *Kingdomware* confirms the existing SBA rule that FSS orders are contracts and therefore FSS orders between $3,500 and $150,000 are presumptively reserved for small business.

The *Kingdomware* decision supports the existing SBA rules requiring that FSS orders between $3,500 and $150,000 be reserved for small businesses unless the Rule of Two is not satisfied. SBA's rules provide that a contracting officer "shall set aside any acquisition" with an anticipated dollar value exceeding the Micropurchase Threshold but not exceeding the Simplified Acquisition Threshold for small business concerns unless the Rule of Two is not satisfied. 13 C.F.R. § 125.2(f)(1). The term "acquisition" is defined in the FAR as "the acquiring *by contract* with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through purchase or lease...." 48 C.F.R. § 2.101 (emphasis added). SBA uses the FAR definition of "acquisition." 81 Fed. Reg. 34243, 34244 (May 31, 2016) (SBA's clarification that SBA uses the FAR § 2.101 definition of "acquisition"). The FAR sets the Micropurchase Threshold at $3,500, and the Simplified Acquisition Threshold at $150,000. 48 C.F.R. § 2.101. Therefore, SBA's rule at 13 C.F.R. § 125.2(f)(1) mandates that any contract between $3,500 and $150,000 be reserved for small business concerns unless the Rule of Two is not satisfied.

The mandate in 13 C.F.R. § 125.2(f)(1) is the same mandate imposed by section 15(j) of the Small Business Act, which provides as follows: "Each *contract* for the purchase of goods and services that has an anticipated value greater than $[3,500] but not greater than $[150,000] shall be reserved exclusively for small business concerns unless the contracting officer is unable to obtain offers from two or more small business concerns that are competitive with market prices and are competitive with regard to the quality and delivery of the goods or services being purchased." 15 U.S.C. § 644(j) (emphasis added).[2]

SBA defines "contract" to specifically include FSS orders. 13 C.F.R. § 125.1(d), (k)(1). The effect of including FSS orders in the definition of "contract" is that, through

---

[2] The dollar thresholds in section 15(j) of the Small Business Act and other procurement statutes are adjusted every 5 years for inflation. 41 U.S.C. § 1908. Although the text of section 15(j) reflects thresholds of $2,500 and $100,000, the adjusted thresholds have stood at $3,500 and $150,000 since October 1, 2015. 80 Fed. Reg. 38293, 38292 (July 2, 2015).

13 C.F.R. § 125.2(f)(1) and section 15(j), FSS orders between $3,500 and $150,000 must be reserved for small business unless the Rule of Two is not satisfied.

*Kingdomware* resolutely confirms the reasonableness of SBA's definition of "contract." First citing to Black's Law Dictionary, the unanimous *Kingdomware* Court held that an FSS order is a "contract" "within the ordinary meaning of that term." *Kingdomware* at 11. Then, citing the FAR definition of "contract," the Court held that an FSS order is a "contract" for federal procurement regulations. *Id.* The Court found this interpretation that FSS orders are "contracts" to be "unambiguous" and therefore not subject to *Chevron* deference. *Id.* at 12.

Because *Kingdomware* validates SBA's inclusion of FSS orders within the "contract" definition, SBA's application of the mandatory reserve to FSS orders between $3,500 and $150,000 is reasonable and must be given due deference. Section 15(j) of the Small Business Act and 13 C.F.R. § 125.2(f)(1) require set asides of FSS orders between those thresholds whenever the Rule of Two is met. SBA clarified this point in a Federal Register notice dated October 2, 2013. In that notice, SBA issued the final rule on Multiple Award Contracts under the Small Business Jobs Act of 2010. SBA wrote under the heading "GSA Multiple Award Schedule Program" that "for acquisitions valued below the simplified acquisition threshold...the agency would first apply the 'rule of two' to determine whether a set-aside is appropriate...." 78 Fed. Reg. 61125 (Oct. 2, 2013). In SBA's usage, the "GSA Multiple Award Schedule Program" specifically refers to the FSS. "General Services Administration (GSA) Schedule Contract means a Multiple Award Contract issued by GSA and includes the Federal Supply Schedules and other Multiple Award Schedules." 13 C.F.R. § 125.1(j). Thus, SBA's interpretation of its rules and 15(j) of the Small Business Act has been consistent: the mandatory reserve between $3,500 and $150,000 applies to the FSS.

The Small Business Act contains four exceptions to the 15(j) mandatory reserve. First, an agency is not required to implement the reserve if "the contracting officer is unable to obtain offers from two or more small business concerns that are competitive with market prices and are competitive with regard to the quality and delivery of the goods or services being purchased." This is the familiar Rule of Two set forth in SBA's rules and in the FAR. An agency should apply this Rule of Two before reserving an FSS order for small business.

None of the remaining exceptions are at issue when an agency awards an FSS order. The second, third, and fourth exceptions permit the award of contracts below the simplified acquisition thresholds through four other statutes: (1) section 8(a) of the Small Business Act; (2) 10 U.S.C. § 2323, allowing preferences for Small Disadvantaged Businesses in military agencies; and (3) section 7102 of the Federal Acquisition Streamlining Act of 1994, allowing preferences for Small Disadvantaged Businesses in civilian agencies.[3]

---

[3] Section 15(j) also includes an exception for the Small Business Competitiveness Demonstration Program, created through section 712 of Public Law 100-656. That program, however, was repealed in section 1335 of the Small Business Jobs Act of 2010. See Pub. L. 111-240, § 1335; 75 Fed. Reg. 82567 (Dec. 30, 2010).

Some may argue that the *Kingdomware* decision must be limited to the 2006 VA Act. Although the Court did not explicitly apply its holding outside the VA, to view the Court's decision as applying only to one agency would be illogical. The naked text of the decision applies the order-as-contracts conclusion to federal acquisitions as a whole, not just to the VA. The Court wrote that an FSS order "creates a 'contract' *as defined by federal regulations....*" *Kingdomware* at 11 (citing 48 C.F.R. § 2.101 (2015)) (emphasis added). Thus, the Court *did not* hold VA orders or contracts to be different from other agencies. Instead, the Court turned to the definition of "contract" common to all agencies as the basis for the order-as-contracts holding.

Under *Kingdomware*, orders are contracts not just for the 2006 VA Act, but for any purpose, including small business programs. The Government argued vociferously for the order/contracts distinction in its Supreme Court briefing and primarily pointed to the Small Business Act as supporting a distinction between orders and contracts. Referring to the Small Business Act, the Solicitor General argued that its "statutory and historical context strongly suggests that, as under the statutes on which Section 8127 [in the 2006 Act] was modeled, Section 8127's procedures for 'award[ing] contracts' do not apply when the VA places orders under pre-existing FSS contracts." Brief for the United States at 39. The Court refuted these arguments by turning to the dictionary definition of contract and to the FAR definition of "contract" that applies to all agencies. The Court did not reference any VA-specific definition of "contract." By rejecting the order/contracts distinction for the 2006 Act, the Supreme Court therefore rejected it for all purposes, including for the Small Business Act.

The argument may be raised that SBA's rules at 13 C.F.R. § 125.2(e)(1) and (e)(6)(iii) contradict the mandatory reserve for orders between $3,500 and $150,000, but that entirely misconstrues the intent of these provisions. Subsection (e)(1) is merely a restatement of section 15(r) of the Small Business Act and does not, as discussed in depth below, contradict the mandatory set-aside set forth in § 125.2(f)(1). Subsection (e)(1) does not address contracts or orders between $3,500 and $150,000, and we therefore read it to apply where the mandatory reserve in § 125.2(f)(1) does not apply—that is, to orders above $150,000.

Subsection (e)(6)(iii) provides for parity among SBA's small business programs when setting aside an order under the simplified acquisition threshold, but it does not abrogate the mandatory reserve. The subsection presumes that the agency will conduct some sort of small business set-aside between $3,500 and $150,000, and, based on that presumption, permits an agency to determine the type of small business set aside that it will use. The set aside could be for eligible 8(a) participants, HUBZone small business concerns (SBCs), SDVO SBCs, women-owned small business concerns (WOSBs), economically disadvantaged women-owned small business concerns (EDWOSBs), or all small businesses. Absent this provision, agencies might read the § 125.2(f) and 15(j) mandates as prohibiting the agencies from using the 8(a), HUBZone, SDVO SBC, WOSB, and EDWOSB programs for orders between $3,500 and $150,000. Subsection (e)(6)(iii) is consistent with subsection (f), which states that the mandatory reserve "does

not preclude a contracting officer from making an award to a small business under the 8(a) BD, HUBZone, SDVO SBC, or WOSB Programs." 13 C.F.R. § 125.2(f).

Subsection (e)(6)(iii) was never intended to authorize agencies to award an order to a large business when section 15(j) and § 125.6(f) would mandate a set-aside. Such a reading ascribes to SBA the intent to authorize large business awards where a small business mandatory reserve would otherwise apply. This obviously is something SBA would not do lightly and without significant public input. But SBA never sought input on that reading of the rule, because there was no intent to have the rule authorize awards to large businesses. When SBA proposed (e)(6)(iii) in May 2012, the proposed rule language did not address the dollar level of an order acquisition. The proposed rule simply included the second and third sentences of (e)(6)(iii) without reference to dollar level: "After conducting market research, the contracting officer shall first consider whether there is a reasonable expectation that offers will be obtained from at least two 8(a) BD, HUBZone, SDVO or WOSB small business concerns under the respective programs, before setting aside the requirement as a small business set-aside. There is no order of precedence among the 8(a) BD, HUBZone, SDVO SBC or WOSB programs." 77 Fed. Reg. 29130, 29160 (May 16, 2012). This proposed rule cannot be read to negate the set-aside. Instead, the proposed rule provided that there is not a contracting priority between the 8(a), HUBZone, SDVO, and WOSB programs. However, the proposed rule omitted the possibility that agencies could set aside orders below the simplified acquisition threshold for small businesses (that is, outside of the specified programs). The final (e)(6)(iii) rectified that error by including "small businesses" in the parity list but only for orders below the simplified acquisition threshold. The final (e)(6)(iii) therefore mirrors § 125.2(f) in providing for parity among all SBA's small business contracting programs, including the general small business set-aside program, when the acquisition is below $150,000. We believe that this is an entirely consistent interpretation of the § 15(j) mandate for small business.

**B.    The mandatory 15(j) reserve takes priority over the procedures of the entirely discretionary FSS program.**

Under the FAR, agencies "automatically" reserve acquisitions between $3,500 and $150,000 for small businesses. 48 C.F.R. § 19.502-2. By contrast, the FAR states that the FSS is a "non-mandatory" source that agencies are "encouraged to consider...." 48 C.F.R. § 8.004 (non-mandatory sources). The small business reserve in 15(j) therefore should apply *before* the agency decides to use the FSS or any other contracting vehicle. Even posing the question of whether the reserve applies on the FSS approaches the question from the wrong end. Instead, the agency's acquisition between $3,500 and $150,000 should begin with *automatically* reserving the acquisition for small business, determining whether the Rule of Two exception applies, and only then determining whether the FSS is the appropriate contracting vehicle.

The FAR Council has ruled that "[t]he use of the FSS is *not required*." 78 Fed. Reg. 80376, 80377 (Dec. 13, 2013) (emphasis added). Similarly, GAO held that the FAR "does not require agencies to use the FSS." *Murray-Benjamin Electric Company, LP*, B-298481, Sept. 7, 2006, 2006 CPD ¶ 129. GAO reasoned that the FAR "does not establish

7

a presumption that all FSS contractors represent the best value, such that the agency would be required to purchase from an FSS contractor." *Id.*

The statutory underpinning of the FSS does not grant the FSS priority over any mandatory requirement. 41 U.S.C. § 152(3). The statute merely establishes the FSS as a competitive acquisition process. *Id.* As the adjudicative body that previously heard protests of GSA acquisitions, the General Services Board of Contract Appeals (GSBCA) determined that use of the FSS does not relieve the agency from satisfying the mandatory provision in the Small Business Act that requires the posting of a contract synopsis. *Systemhouse Federal Systems, Inc.*, GSBCA, 90-1 BCA ¶ 22432, Oct. 27, 1989. The GSBCA observed that it was "puzzling" why GSA argued that using the FSS exempted the purchase from the Small Business Act. *Id.* The board held that the FSS was "not exempt from the statutory requirements of … 15 U.S.C. § 637(e)-(g) [sections 8(e) through 8(g) of the Small Business Act]." *Id.* The Court of Federal Claims also has concluded that the FSS does not have "higher priority" as compared to other sources. *ATA Defense Industries v. United States*, 38 Fed. Cl. 489, 504 (1997).

Similarly, the FAR's acquisition planning guide puts small business requirements ahead of selecting a contracting vehicle, such as the FSS. The FAR directs that "consideration of small business" is the *first step* in an agency's "[p]lan of action" while conducting an acquisition. 48 C.F.R. § 7.105(b)(1). Next, the agency considered how it can seek, promote and sustain competition. 48 C.F.R. § 7.105(b)(2). Selecting the contract type is the third of 22 steps. These acquisition planning steps must precede the placement of orders on the FSS. 48 C.F.R. § 8.404(c)(1).

Thus, we see nothing in the U.S. Code, in case law, or in the FAR that grants the FSS priority over any mandatory programs, including the 15(j) automatic reserve. Any argument against the automatic reserve that assumes that an agency must issue an FSS order is based on the false premise that agencies must use the FSS. By providing that acquisitions "shall be reserved exclusively for small business concerns," section 15(j) creates a mandatory program. The FSS is a discretionary program. "Mandatory programs take precedence over discretionary ones," GAO has concluded. *Principles of Appropriations Law*, GAO § 3-49 (2004). Regardless of what vehicle the agency uses, all contracts between $3,500 and $150,000—including orders—are automatically set aside for small business.

In *Aldevra*, however, GAO came to a different conclusion and found that the discretionary FSS could be used to evade the mandatory reserve contained in section 15(j). The holding not only incorrectly presumed that agencies select contracting vehicles before considering small business participation, it also contradicts GAO, Supreme Court, and Court of Federal Claims precedent on the same issue. In a recent case involving two provisions of the Small Business Act—one mandatory and one discretionary—GAO ruled that the mandatory provision must be applied first. The case involved the mandatory HUBZone set-aside and the discretionary SDVO SBC set-aside, both of which appeared in the Small Business Act at that time. 15 U.S.C. §§ 657a (b)(2)(B) (2006), 657f(b). GAO ruled that the mandatory provision must be applied if its conditions are met:

Here, given the unambiguous language of the HUBZone
and SDVOSBC statutes (with which the implementing
FAR provisions are consistent), we conclude that a
HUBZone set-aside is mandatory where the enumerated
conditions are met, and that the discretion granted the
contracting officer under the SDVOSBC set-aside program
*does not supersede the mandatory nature of the HUBZone
set-aside program.* To interpret the statutes otherwise, as
in effect creating parity between the programs, would fail
to give effect to the clear language of the HUBZone statute,
which uses the mandatory term "shall," not (as in the
SDVOSBC statute) the discretionary term "may."

*International Program Group, Inc.*, B-400278, B-400308, Sept. 19, 2008, 2008 CPD
¶ 172 at 5-6 (emphasis added). Thus, GAO typically prioritizes mandatory programs
over discretionary ones, but it violated that principle in *Aldevra* without any discussion of
precedent.

   Arguing the position that the rules governing the discretionary FSS program
supersede the mandatory "shall" provision in section 15(j), violates a rule of statutory
construction discussed in *Kingdomware* and another federal court government
contracting cases. The rule is that a "shall" statute takes priority over a discretionary
statute. In *Kingdomware*, the Supreme Court observed that the VA's 2006 Act at 38
U.S.C. § 8127 used both "may" and "shall" in the same provision, and the Court held that
the mandatory "shall" provision connotes the requirement. *Kingdomware* at 9. The
Court wrote:

    The surrounding subsections of § 8127 confirm that
Congress used the word "shall" in § 8127(d) as a
command. Like § 8127(d), both § 8127(b) and § 8127(c)
provide special procedures "[f]or purposes of meeting the
goals under [§ 8127(a)]." §§ 8127(b), (c). But, in contrast
to § 8127(d), those latter two provisions state that "a
contracting officer of the Department *may* use" (or, for
§ 8127(c), "*may* award") such contracts. §§ 8127(b), (c)
(emphasis added). When a statute distinguishes between
"may" and "shall," it is generally clear that "shall" imposes
a mandatory duty. *See United States ex rel. Siegel* v.
*Thoman*, 156 U. S. 353, 359–360 (1895). We see no reason
to depart from the usual inference here.

*Kingdomware* at 9. This has been a long-held view of the Court. *See also Anderson v.
Yungkau*, 329 U.S. 482, 485 (1947) ("when the same Rule uses both 'may' and 'shall,'
the normal inference is that each is used in its usual sense—the one act being permissive,
the other mandatory"); *United States ex rel. Siegel v. Thoman*, 156 U.S. 353, 359-360
(1895) ("The legislature first imposes an imperative duty, the application of the revenue
of each year to the expenses thereof, and then makes provision for the case of an excess

of revenue over expenses. In the first the word 'shall' and in the latter provision the word 'may' is used, indicating command in the one and permission in the other.").

The Court of Federal Claims decision in *Mission Critical Solutions v. United States* applied the same principle. Prior to the Small Business Jobs Act of 2010, the HUBZone portion of the Small Business Act provided that a "contract opportunity shall be awarded" to a HUBZone firm if the Rule of Two was satisfied as applied to HUBZone firms. The 8(a) statute provided that an agency contracting officer was "authorized in his discretion" to award an 8(a) contract. The Court of Federal Claims reconciled the two statutes by prioritizing the mandatory "shall" HUBZone statute over the discretionary 8(a) statute. The Court of Federal Claims wrote in *Mission Critical*:

> The court interprets the language of the HUBZone competition provision—"shall be awarded"—to be mandatory, such that a contract opportunity must be set aside for competition among qualified HUBZone small business concerns whenever the rule of two is met. The court agrees that the "shall" of the competition provision contrasts with the "may" of the sole-source provision but does not conclude that the mandatory nature of the HUBZone competition provision is bounded by this relationship. The court concludes that the HUBZone competition provision is properly interpreted as mandatory in relationship to both the sole-source provision and the 8(a) program provisions, and that this interpretation is further supported by the differences in the statutory language providing authority for contract decisionmaking and program administration.

*Mission Critical Solutions v. United States*, 91 Fed. Cl. 386 (2010) (citations omitted).

The GAO's prioritizing of the discretionary FSS procedures over the section 15(j) "shall" provision violates the principle from *Kingdomware* and *Mission Critical* that "shall" always connotes a command. Because 15(j) provides that each contract between $3,500 and $150,000 "shall be reserved" for small businesses, agencies must follow the 15(j) command. Only after an agency has reserved the contract for small business may the agency consider whether it can satisfy its requirement through an FSS order or another procurement vehicle. Giving precedence to the 15(j) mandatory requirement that all contracts (and pursuant to *Kingdomware*, all orders) between $3,500 and $150,000 must be reserved for small business, the FSS procedures providing for discretionary set-aside authority necessarily apply only to orders above $150,000.

We recognize that prioritizing the section 15(j) reserve over FSS procedures may alter the behavior of some procuring activities. This is not true in all cases; for example, the Department of Homeland Security (DHS) reported to the Small Business Procurement Advisory Committee (SBPAC) that it already applies the section 15(j) automatic reserve to orders below $150,000. For agencies that do not already apply the

automatic reserve to all order and contracts, however, we believe there is no additional burden involved with doing so. Agencies already must perform acquisition planning for all orders and contracts, so the information required to apply the Rule of Two is already close at hand. *See* 48 C.F.R. § 7.102(a). Applying the section 15(j) automatic reserve still allows agencies to use simplified acquisition tools, such as the FSS or government-wide acquisition vehicles, for purchases under $150,000, provided the agency sets aside the purchase where the Rule of Two is satisfied. This is essentially the same guidance the Supreme Court provided in *Kingdomware* in responding to the Solicitor General's argument that applying set-asides to orders would wreak havoc on government contracting. The Court advised that the VA could continue to use the FSS to purchase low-dollar items, "if the Department procures them from a veteran-owned small business." *Kingdomware* at 12.

C.   **The argument that section 15(r) might negate section 15(j) is completely unsupported by legislative intent, *Kingdomware*, principles of statutory construction, and SBA's guidance.**

In *Aldevra*, GAO found that the section 15(j) mandatory reserve "does not apply when placing orders under the FSS program." In addition to relying on its reading of FAR § 19.502-2 as "not mandatory," GAO cited section 15(r)—a statute that requires SBA to "establish guidance" for order set-asides. GAO found that section 15(r) "carved out a limited exception" from the section 15(j) mandatory reserve for FSS orders. For the reasons discussed below, we believe that *Kingdomware* overrules *Aldevra*, and *Aldevra* should not be followed.

*(1) Congress passed the Small Business Jobs Act to improve small business participation in federal procurement, not to deny small businesses an existing benefit.*

Congress passed the Small Business Jobs Act of 2010 in September 2010 with the intent to "revitalize and renew small business procurement law to better assist the small business community…." S. Rep. 111-343. Section 1331 of the Small Business Jobs Act created a new section 15(r) in the Small Business Act. Section 15(r) authorizes the SBA Administrator and the Administrator of Federal Procurement Policy to "by regulation, establish guidance" under which agencies "may, at their discretion…set aside orders placed against multiple award contracts for small business concerns…." 15 U.S.C. § 644(r).

Congress passed section 15(r) in the Small Business Jobs Act with the intention to benefit small business, not to eliminate or lessen the application of the automatic reserve under $150,000. Nothing in the legislative history for section 15(r) indicates the intent to repeal or curtail the automatic reserve as applied to FSS orders. The argument that section 15(r) creates an exception to 15(j) must rely on the premise that Congress sought to take mandatory reserves away from small business. The legislative history, however, clearly shows that Congress actually intended to create set-aside authority not restrict it.

The Senate Report accompanying the legislation that became section 15(r) states, "The bill improves small business participation in the acquisition process. The bill also authorizes small business set-asides in multiple award multi-agency contracting vehicles in order to *correct* the very mixed record of small business participation in such contracts." S. Rep. No. 111–343 at 7 (emphasis added). The Senate Report explains that in FY 2007, although small businesses represented about 80.8% of the contractors under the GSA Multiple Award Schedules Program, they received only about 37.33% of the sales dollars (*i.e.*, task or delivery orders). *Id.* The Report further explains that although the Small Business Act and the FAR require Federal agencies to set contracts aside for small businesses if there is a reasonable expectation that two or more small businesses would submit offers at reasonable prices, many agencies have not applied these small business set-aside requirements to multiple award contracts and even fewer have considered application of these requirements to orders issued against such contracts.

Nothing in the legislative history indicates that Congress sought to deny set-asides for small business or to authorize agencies to award to large business where a set-aside would otherwise apply. Eliminating set-asides for small business would be an extraordinarily unexpected step for a Congress bent on "correcting" issues with small business participation. There is no reason to believe that Congress would take such an action without considerable discussion. Thus, the legislative history indicates that section 15(r) kept the existing mandatory set-aside scheme intact while addressing authority to set-aside orders where set-asides were not mandated (i.e., above $150,000). It is hard to believe that Congress would "improve small business participation" and "correct…small business participation" by creating an exception to the mandatory reserve rule.

Aside from misconstruing the legislative history, GAO also based its *Aldevra* decision on the understanding that "it is readily apparent that the general small business set-aside rule for *contracts* valued between $2,500 and $100,000, set forth under section 644(j), and implemented under FAR § 19.502-2, does not apply when *placing orders* under the FSS program." *Aldevra* at 5-6 (emphasis added). GAO drew a distinction between "orders under multiple award contracts"—which GAO found were not subject to set-aside requirements—and "all other types of contracts," which were subject to set-aside mandates. *Id.* at 6. Based on this order/contracts distinction, GAO held that 15(j) does not apply to "orders" and therefore does not apply to the FSS (*i.e.*, section 15(j) applies only to contracts and section 15(r) applies to orders). Kingdomware specifically overruled the orders/contract distinction, making *Aldevra* bad law.

### (2) The Kingdomware opinion explicitly addresses FSS orders below $150,000 and holds that such orders must be set aside.

In Section III.B of the *Kingdomware* opinion, the Supreme Court opinion laid out a rule that VA purchases under $150,000 must be set aside for VOSBs. *Kingdomware* at 12. We interpret this rule to be a direct reference to the Small Business Act's section 15(j) automatic small business reserve because the VA set-aside statute applies at all dollar levels, whereas section 15(j) applies only below $150,000. The Court had no reason to specify the dollar value for this rule but to address the relevance of section 15(j) of the Small Business Act. Thus, the argument that the Small Business Act does *not*

require order set-asides under $150,000 must distinguish the Supreme Court's specific ruling requiring orders below $150,000 to be reserved for VOSBs. But there is no reasonable way to distinguish *Kingdomware*'s treatment of section 15. If the Small Business Act did not create an exception for the VA—which the Supreme Court held that it did not—then the Small Business Act cannot create an exception for any agency.

The Solicitor General's Office relied on section 15 heavily in its brief to the Supreme Court. In the Solicitor General's view, section 15(j) of the Small Business Act "does not mandate set-asides for any class of 'orders placed against multiple award contracts.'" Brief for United States at 29. Pursuant to section 15(r) of the Small Business Act, "all FSS set-asides are discretionary," the Solicitor General argued. *Id.* We read the Supreme Court's opinion to roundly reject this argument, where it explicitly holds that FSS set-asides are mandatory when used by the VA for purchases under $150,000. The language below directly contradicts the Solicitor General's reading that the Small Business Act provides that "all FSS set-asides are discretionary":

> Third, the Department contends that our interpretation fails to appreciate the distinction between FSS orders and contracts. The Department maintains that FSS orders are only for simplified acquisitions, and that using the Rule of Two for these purchases will hamper mundane purchases like "griddles or food slicers."

> But this argument understates current practices under the FSS. The Department has expanded use of the FSS well beyond simple procurement. This case proves the point: the contract at issue here concerned complex information technology services over a multiyear period. Moreover, the Department may continue to purchase items that cost less than the simplified acquisition threshold (currently $150,000) through the FSS, *if the Department procures them from a veteran-owned small business. See* 38 U.S.C. § 8127(b)

*Kingdomware* at 12 (emphasis added).

Based on this discussion in *Kingdomware*, we believe that the Supreme Court already has decided the issue of whether section 15(r) can create an exception to a mandatory set-aside, such as the one in section 15(j). The Solicitor General argued that section 15(r) stands for set-aside discretion when using the FSS and therefore should allow the VA to create an exception through regulation to the mandatory set-aside in the 2006 Act. Section 15(r) is a government-wide statute, and, if it creates an exception from set-asides for one agency, it would create an exception from set-asides for all agencies including the VA.

That interpretation cannot be reconciled with the Supreme Court's holding that the VA "may continue to purchase items that cost less than the simplified acquisition

threshold (currently $150.00) through the FSS," but only if the VA set aside those purchases for veteran-owned small business. The same principle should apply to purchases conducted by executive agencies outside the VA. Had section 15(r) been a true exception from set-aside requirements, it would have relieved the VA from its set-aside mandate under the 2006 Act. But the Supreme Court did not find section 15(r) to create an exception, despite the Solicitor General's urging. Under the rule set forth in *Kingdomware*, agencies may continue to purchase items that cost less than $150,000 through the FSS, if the agency first applies the small business Rule of Two set-aside.

### (3) In attempting to harmonize sections 15(j) and 15(r), GAO wrongly held that the later-enacted statute partially repealed the earlier-enacted one.

GAO violated a bedrock principle of statutory construction by finding that section 15(r) "carved out" an exception to 15(j). Longstanding case law from the Supreme Court and more recently from GAO itself requires that the earlier-enacted statute takes precedence over a later-enacted statute unless specifically repealed—either partially or wholly—by the later statute. Because section 15(j) was the earlier-enacted statute, the automatic reserve mandate must be applied unless a later statute partially repeals the mandate. But a partial repeal will not be found unless the intent to repeal is "clear and manifest." *Rodriguez v. United States*, 480 U.S. 522, 524 (1987). Section 15(r) does not act as a partial repeal or an exception to section 15(j). Although it clearly creates exceptions to the "fair opportunity" requirements in 10 U.S.C. § 2304c (b) and 41 U.S.C. § 253j(b), 15(r) leaves 15(j) entirely intact.

The Supreme Court has held numerous times that the earlier-enacted statute must be given full effect unless there is a clear and explicit whole or partial repeal in a later statute. We were unable to find a single Supreme Court case that supports GAO's effort to "change the direction" of this rule. *Aldevra* at 6. The weight of precedent applying the earlier statute ahead of the later one—against GAO's interpretation—is overwhelming. First, in *United States v. Gear*, the Court held that the Land Act of 1834, which requires the sale of certain land districts in Illinois, does not partially repeal the 1807 Act directing that lands with lead mines be leased and not sold. 44 U.S. 120, 131 (1845). "The rule is, that a perpetual statute, (which all statutes are unless limited to a particular time,) until repealed by an act professing to repeal it, or by a clause or section of another act directly bearing in terms upon the particular matter of the first act, notwithstanding an implication to the contrary may be raised by a general law which embraces the subject-matter, is considered still to be the law in force as to the particulars of the subject-matter legislated upon," the Court wrote. *Id.*

Likewise, section 4(f) of the Internal Security Act of 1950, which provides that the holding of membership in a Communist organization is not a per se violation of any criminal statute, did not act as a partial repeal of the membership clause of the earlier-enacted Smith Act, which makes it a felony to hold membership in an organization that advocated the overthrow of the Government of the United States by Force or violence. *Scales v. United States*, 367 U.S. 203, 219 (1961). The Securities Exchange Act of 1934, 15 U.S.C. § 78f, imposes a duty of self-regulation of stock exchanges and allows an exchange to adopt rules to govern its membership, but it does not exempt rules from the

---

14

Sherman Act. *Silver v. New York Stock Exchange*, 373 U.S. 341, 357 (1963). "The Securities Exchange Act contains no express exemption from the antitrust laws or, for that matter, from any other statute. This means that any repealer of the antitrust laws must be discerned as a matter of implication, and 'it is a cardinal principle of construction that repeals by implication are not favored.' Repeal is to be regarded as implied only if necessary to make the Securities Exchange Act work, and even then only to the minimum extent necessary. This is the guiding principle to reconciliation of the two statutory schemes." *Id.* (citations omitted); *see also Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 157-158 (1976) (the Securities Exchange Act of 1934 does not partially repeal the venue provision of the National Bank Act of 1878, which requires proceedings against a national banking association to be in the district in which the association is established).

Similarly, Title VII of the Civil Rights Act of 1964 does not partially repeal the Full Faith and Credit Act. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982). The Federal Insecticide, Fungicide, and Rodenticide Act does not withdraw jurisdiction from the Claims Court under the Tucker Act for suits for compensation arising from taking for private use. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984). And, Section 28(a) of the Securities Exchange Act of 1934 does not limit recovery under section 12(2) of the Securities Act of 1933 to the actual damages of a defrauded tax shelter investor because to read it to do so would be to effect a partial repeal by implication of an earlier-enacted statute. *Randall v. Loftsgaarden*, 478 U.S. 647, 661 (1986). The Court wrote in *Randall*, "To hold otherwise would be to effect a partial repeal of § 12(2) by implication, and '[it] is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.'" *Id.* (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976)).

More recently, the Court has applied the rule against partial repeals in cases involving mandatory sentencing, labor management relations, the Full Faith and Credit Act, and patenting requirements. *Rodriguez v. United States*, 480 U.S. 522, 524-525 (1987); *Wooddell v. International Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 102 (1991); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 380-381 (1996); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l*, Inc., 534 U.S. 124, 137 (2001). In a case decided less than 10 years ago, the Court prioritized the earlier-enacted Clean Water Act over the Endangered Species Act, which requires a federal agency to consult with the Departments of Commerce and Interior to ensure that an agency action does not jeopardize an endangered species. The Court held that the Endangered Species Act does not partially repeal the Clean Water Act's requirement that the Environmental Protection Agency (EPA) transfer certain permitting powers to the states. Therefore, the EPA was mandated to transfer its permitting powers and was not required to follow the consultation requirements of the Endangered Species Act. The Court concluded:

> While a later enacted statute (such as the ESA) can
> sometimes operate to amend or even repeal an earlier
> statutory provision (such as the CWA), "repeals by
> implication are not favored" and will not be presumed
> unless the "intention of the legislature to repeal [is] clear
> and manifest." We will not infer a statutory repeal "unless

> the later statute expressly contradict[s] the original act" or
> unless such a construction "is absolutely necessary . . . in
> order that [the] words [of the later statute] shall have any
> meaning at all." Outside these limited circumstances, "a
> statute dealing with a narrow, precise, and specific subject
> is not submerged by a later enacted statute covering a more
> generalized spectrum."

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-663 (2007) (citations omitted).

At least nine GAO decisions apply the same rule and conclude that the earlier-enacted statute must be granted full effect because the later-enacted statute does not partially repeal the former. Based on this principle of statutory construction, GAO has decided the following cases:

1. The acts of March 4, 1923 and January 13, 1925, grant the Secretary of the Treasury authority to appoint all officers or employees of the Customs Service, but they do not repeal the earlier-enacted Section 2631, Revised Statutes, and conforming procedures, which provide that in the case of sickness or absence, a collector or surveyor of customers may authorize an officer or clerk to act in place. *Comptroller General McCarl to the Secretary of the Treasury*, A-32620, September 2, 1930, 10 Comp. Gen. 105.

2. Public Law 88-459 authorizes agencies to provide garage space to employees through salary deduction, and the deduction shall remain in the applicable appropriation or fund. The statute does not partially repeal the earlier enacted 38 USC § 5004, which requires that certain parking income that the Veterans Administration receives from employees be deemed miscellaneous receipts. "An act is not impliedly repealed because of conflict, inconsistency, or repugnancy between it and a later act unless the conflict, etc., is plain, unavoidable, and irreconcilable, and the two acts cannot be harmonized or both cannot stand, operate, or be given effect at the same time." *To the Administrator, Veterans Administration*, B-100883, January 26, 1965, 44 Comp. Gen. 424.

3. Section 508 of the Merchant Marine Act of 1936 requires the Maritime Administration to competitively bid the disposal of surplus vessels, but it does not partially repeal sections 5 and 6 of the Merchant Marine Act of 1920, which creates a preference for selling scrapped vessels to United States citizens and prohibits the sale to aliens unless the Secretary is unable to sell the vessel to a citizen. *To the Administrator, Maritime Administration*, B-169094, September 4, 1970, 50 Comp. Gen. 167.

4. Public Law 90-207 provides that uniformed service members will receive adjustments in regular compensation, including subsistence allowances, commensurate with general schedule employees, but it does not repeal 37 USC § 402(b), which provides that the basic allowance for subsistence is equal to the

cost of the ration. "The courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears." *Decision of the Comptroller General*, B-159511, May 13, 1974.

5. Public Law 93-623, which requires foreign travel using American-flag carriers, does not amend statutory authorizations for programs that must be paid with foreign currencies. "It is well established that repeals and modifications of law by implication are not favored; on the contrary, there is a well-recognized presumption against implied repeal or modification." *In the Matter of the Use of Noncertificated Air Carriers for Foreign Travel When Certificated American Carriers Will Not Accept Foreign Currencies Made Available By Specific Appropriation Acts*, B-184136, August 17, 1976, 55 Comp. Gen. 1355.

6. The Shipping Act grants shippers' tariff provisions the force and effect of law, but it did not partially repeal 31 U.S.C. § 529, which prohibits advance payments and therefore requires delivery by the shipper prior to payment. "And to assume that the mere passage of a specific statute governing an area of conduct also regulated by a more general statute limits enforcement of the general statute by carving out an exception to it is, in effect, to accomplish by implication a partial repeal of the general statute, a type of repeal which is not favored." *In the Matter of Delta S.S. Lines, Inc.*, B-192002, September 26, 1979, 58 Comp. Gen. 799.

7. The Contract Disputes Act of 1978 requires that claims against the Government be presented to contracting officers, but it does not repeal 31 U.S.C. §§ 71, 74, which permit GAO to settle and adjust demands against the government. "To hold otherwise would be inconsistent with the statutory authority of our Office to pass upon the propriety of expenditures of public funds and would result, in effect, in a repeal by implication of 31 U.S.C. §§ 71, 74, a construction not favored by the law." *In the Matter of Contract Disputes Act of 1978*, B-195272, January 29, 190, 59 Comp. Gen. 232, 80-1 Comp. Gen. Proc. Dec. P79.

8. Public Law 103-127 requires the mayor of the District of Columbia to reduce expenditures for communications costs but did not impliedly repeal the earlier-enacted Home Rule Act, which protects the District of Columbia courts from appropriations reductions. *In re Reduction of Dist. of Columbia Superior Court's Appropriations*, B-258163, September 29, 1994.

9. The Veterans Benefits, Health Care, and Information Technology Act of 2006, 38 USC 8127(d), requires the Department of Veterans Affairs to set aside contracts for veteran-owned small businesses, but it did not repeal the Javits-Wagner-O'Day (JWOD) Act, which requires contracting preference for AbilityOne. *Alternative Contracting Enterprises, LLC; Pierce First Medical*, B-406265, B-406266, B-406291, B-406291.2, B-406318.1, B-406318.2, B-406343, B-406356, B-406357, B-406369, B-406371, B-406374, B-406400, B-406404, B-406428, March 26, 2012, 2012 CPD ¶ 124.

GAO did not address any of the numerous Supreme Court cases or nine prior GAO decisions in *Aldevra*. Instead, GAO based its decision on an effort to achieve "harmony" between sections 15(j) and 15(r). These cases, however, demonstrate that the Court and GAO achieve harmony in a specific manner—by applying the earlier-enacted statute unless the later-enacted statute includes a specific partial repeal. In *Aldevra*, GAO conceded that it was "changing the direction" of this preference, but it failed to explain or justify this shift. The correct application of the two statutes is to apply 15(j) first so that orders between $3,500 and $150,000 are automatically reserved for small businesses. Then section 15(r) allows for set-asides above the $150,000 threshold.

    *(4) Through a specific delegation from Congress in section 15(r), SBA established guidance providing that Rule of Two set-asides apply to FSS orders below the simplified acquisition threshold of $150,000.*

Section 15(r) authorizes the SBA Administrator and the Administrator of Federal Procurement Policy to "by regulation, establish guidance" for setting aside orders under multiple award contracts. 15 U.S.C. § 644(r). SBA issued the guidance required by section 15(r) on October 2, 2013. The guidance applies the mandatory reserve to FSS orders. 13 C.F.R. § 125.1(d), 125.2(f). Because SBA issued this guidance through the express delegation of authority from Congress in 15(r), the application of the mandatory reserve to FSS orders is "binding in the courts" and has the "force of law." *United States v. Mead Corp.*, 533 U.S. 218, 227-229 (2001) (*citing Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984)).

The 15(r) guidance also specifically provides that the small business set-aside Rule of Two requirement applies to FSS orders below the simplified acquisition threshold. In addressing the concern that mandating such set-asides would conflict with existing FSS competition requirements, SBA explained the Rule of Two set-aside "requirement" applied to the FSS below the simplified acquisition threshold. SBA wrote:

> *H. GSA Multiple Award Schedule Program*
>
> In the proposed rule, SBA explained that when setting aside orders against a GSA MAS contract, certain regulations in FAR Part 8.4 (48 CFR part 8.4) must be followed. For example, the FAR states that agencies must survey at least three schedule contractors through the GSA Advantage! (http://www.gsaadvantage.gov/), or request quotations from at least three schedule contractors for acquisitions valued below the simplified acquisition threshold. SBA does not believe that this requirement conflicts with the set-aside ''rule of two'' requirement; rather, the two requirements can be reconciled. SBA explained that the agency *would first apply the ''rule of two'' to determine whether a set-aside is appropriate*; however, the agency can request quotes from more than two small businesses

78 Fed. Reg. 61114, 61125 (Oct. 2, 2013) (emphasis added). *See also* 77 Fed. Reg. 29130, 29144 (May 16, 2012) (proposed rule with same discussion).

By referring to the Rule of Two "requirement" with specific reference to FSS orders under the simplified acquisition threshold of $150,000, SBA set forth its clear interpretation of section 15(j) and § 125.2(f) as applying the mandatory reserve between $3,500 and $150,000 to FSS orders. SBA's contemporaneous interpretation of its own regulations receives deference under *Auer v. Robbins*, 519 U.S. 452 (1997) and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

D.    **SBA's regulation on PCR review, 13 CFR 125.2, clearly provides that PCRs have authority to review FSS orders.**

You also sought guidance regarding the authority of PCRs to review FSS orders. PCRs have authority under SBA's rules to review all orders that have not been set aside for small business concerns. 13 C.F.R. § 125.2(b)(i)(A). The relevant rule reads as follows:

> At the SBA's discretion, PCRs will review all acquisitions that are not totally set aside for small businesses to determine whether a set-aside or sole source award to a small business under one of SBA's programs is appropriate and to identify alternative strategies to maximize the participation of small businesses in the procurement. PCRs also advocate for the maximum practicable utilization of small business concerns in Federal contracting, including by advocating against the consolidation or bundling of contract requirements, as defined in § 125.1, and reviewing any justification provided by the agency for consolidation or bundling. This review includes acquisitions that are Multiple Award Contracts where the agency has not set-aside all or part of the acquisition or reserved the acquisition for small businesses. *It also includes acquisitions where the agency has not set-aside orders placed against Multiple Award Contracts for small business concerns.*

*Id.* (emphasis added).

This rule therefore makes PCRs officially responsible for reviewing orders that have not been set aside, including FSS orders. This is because, under SBA's definition of "Multiple Award Contract," the FSS is a Multiple Award Contract. 13 C.F.R. § 125.1(k). The FAR requires that "contracting officers shall give SBA procurement center representatives … access to all reasonably obtainable contract information that is *directly pertinent to their official duties*." 48 C.F.R. § 19.402(b) (emphasis added).

By referring to *"acquisitions* where the agency has not set-aside orders," the rule above also clarifies that *"acquisitions"* in SBA parlance includes orders, and therefore the set aside in § 125.2(f) applies to acquisitions that are orders.

Therefore, pursuant to the FAR and SBA's regulations, PCRs clearly have authority to review FSS orders that are not set aside, at any dollar level. Further, as discussed above, acquisitions under the simplified acquisition threshold must be set aside for small business in accordance with 13 C.F.R. § 125.2(f). An FSS order is an acquisition. 48 C.F.R. § 2.101; 13 C.F.R. § 125.1(d).

## CONCLUSION

For the foregoing reasons, we advise that FSS orders between $3,500 and $150,000 must comply with the automatic reserve set forth in section 15(j) of the Small Business Act and 13 C.F.R. § 125.2(f). We also advise that PCRs have authority to review FSS orders at any value and to recommend that agencies set aside orders.

 Outlook

## Re: [External Email]Re: Request for PWS: Website 508 Compliance Testing

**From** Lynette Stevenson <ls@dalscreditsolutions.com>
**Date** Mon 22-Jan-24 4:15 PM
**To** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

Thank you, Sheryl Welch. I greatly appreciate it.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

**From:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Sent:** Monday, January 22, 2024 4:10 PM
**To:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Subject:** RE: [External Email]Re: Request for PWS: Website 508 Compliance Testing

Good afternoon,

I shared your information with the acquisition team and let them know you would like to meet and discuss a potential sole source.

Have a great afternoon,

Have a good evening.


*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC



**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Tuesday, January 16, 2024 10:51 AM
**To:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Subject:** Re: [External Email]Re: Request for PWS: Website 508 Compliance Testing
**Importance:** High

Subject: Scheduling a Meeting to Discuss Potential Sole Source Opportunity under Section 508
Dear Sheryl,

Good Morning,
I hope this message finds you in good health and high spirits. Given your notable advocacy and contributions in this area, I would like to discuss a potential opportunity that warrants a more robust conversation, which we sincerely appreciate.
To facilitate a detailed discussion, I am to inform you that Michael Sands or Danish from our team will not be participating.

Additionally, I would like to introduce you to another company we are collaborating with. This company is an 8A Stars III participant on a GSA Schedule. Their experience and qualifications could be a significant asset in our current endeavor.
In your recent communication, you presented a series of dates for potential meetings. I propose we use one of these dates for a meeting involving the Contracting Officer's Representative (COR) and yourself.

This meeting would be a platform to discuss a potential sole source opportunity related to the new requirements under Section 508. Attached is our joint capability Statement.
Your input and guidance in this matter would be immensely beneficial. Please let us know your availability so that we can schedule the meeting at a time that is convenient for you.
I look forward to your positive response and the opportunity to work together on this exciting venture.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

**From:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Sent:** Tuesday, January 16, 2024 11:44 AM
**To:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** RE: [External Email]Re: Request for PWS: Website 508 Compliance Testing

Good morning,

I am not at liberty to provide a PWS or any other Procurement Sensitive documents prior to their release in a RFI/Sources Sought/Solicitation.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Tuesday, January 16, 2024 7:00 AM
**To:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** [External Email]Re: Request for PWS: Website 508 Compliance Testing
**Importance:** High

> [External Email]
> If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
> Use caution before clicking links or opening attachments.
> Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy. We look forward to your prompt response.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified


Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS
Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any
third party without written authorization. DALS Credit Solutions Co does not participate in removing
items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that
adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

---

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Friday, January 12, 2024 8:05 AM
**To:** sheryl.welch@usda.gov <sheryl.welch@usda.gov>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** Request for PWS: Website 508 Compliance Testing


Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are
exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated
testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS)
that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy.  We look forward to your prompt response.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article:** Why is Financial Literacy Important to Small Business Owners.
**Article:** Women Business Owners made Strides; Gender Gap still remains.

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the

law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

**For Today's Meeting**

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Wed 10-Apr-24 8:42 AM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>; danish.adnan@janoons.com <danish.adnan@janoons.com>

▌ 9 attachments (11 MB)
FY2024 FPAC IT Industry Day (FINAL) (1).pptx; FPAC IT FY24 Procurements (2023-10-13) Customer Copy.docx; Formatted IT Industry Day Q&A Final.docx; Federal and DOD Events for Industry; P2P MARYVILLE MO-SAVE THE DATE-flyer-FINAL-03122024.pdf; [External Email]Small Business Updates & Events; RE: USDA Cyber Threat; SAM.gov FPAC ONLY Contract_Notice_Details response due 04092024 thru 05092024.csv; SAM.gov ALL FEDERAL Contract_Notice_Details response due 04092024 thru 05092024.csv;

Good morning,

**Presently for FPAC,**

---

**Emerging Opportunities for FPAC Below:**

| |
|---|
| FSA Dale County Office Furniture in Ozark AL |
| Memphis, TN Field Office new furniture |
| Davenport, WA office furniture |
| Marion, AL new office furniture |
| Two Nikon Total Survey Station instruments and accessories |
| Prince's Point Construction - The Natural Resources Conservation Service (NRCS) is assisting the Wisconsin Department of Natural Resources (WDNR) with the wetland restoration of 1,750 acres through the Agricultural Conservation Easement Program (ACEP-WRE) |

---

**SAM.gov opportunities are attached for both FPAC and all Federal Government in the excel attachments. If interested in an opportunity then please respond as directed in SAM.gov. SEE ATTACHED SAM reports to get the ID numbers for the below FPAC SAM opportunities.**

- Blanket Purchase Agreement (BPA) for Title Search and Closing Services for NRCS Easement Programs Louisiana
- Two New High Efficiency Heat Pumps - Aberdeen Plant Materials Center (PMC) Office Space and Conference Room 1691A South 2700 West Aberdeen, Bingham County, Idaho, 83210.
- Two New High Efficiency Heat Pumps - Aberdeen Plant Materials Center (PMC) Office Space and Conference Room 1691A South 2700 West Aberdeen, Bingham County, Idaho, 83210.
- Emergency Watershed Protection (EWP) Erosion control project located at Lincoln Community College, Adams County, Mississippi
- Emergency Watershed Protection (EWP) Erosion control project located at Lincoln Community College, Adams County, Mississippi
- Emergency Watershed Protection (EWP) â€" Erosion Control, Court Street, City of Waynesboro, Wanye County, Mississippi
- Emergency Watershed Protection (EWP) â€" Erosion Control, Court Street, City of Waynesboro, Wanye County, Mississippi
- NRI Data collection Western Nevada Services USDA â€" NRCS Nevada
- Video Production Services USDA/NRCS Alaska

---

**FPAC IT Opportunities:**

1. Please find the attached slide deck.
2. Q&A provided
3. Complete the survey embedded in the slide deck as soon as possible.
4. Recording of event is available via Youtube: https://youtu.be/SBaFOijAQAQ
- **Birch is in source selection.**
- **Quaking Aspen will post to CIO-SP3 as a total small business set-aside once it is funded.**
- **FPAC Websites Support, Digital Records Management, and Greenhouse Gas Quantification Blueprint have all moved to FY25.**

**USDA OUTREACH:**

April 24, 2024 Midwest Path to Prosperity in-person/Hybrid virtual event SEE ATTACHED FOR INFORMATION AND REGISTRATION

OTHER POTENTIAL OUTREACH ATTACHMENTS INCLUDED.

Please let me know if you have any questions.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

## INFORMAL SOURCES SOUGHT PRIOR TO SOLICITATION ONLY - 12FPC324Q0011 - WA State Conservation Planners

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Wed 17-Jan-24 4:27 PM
**To** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

■ 2 attachments (653 KB)
S01 12FPC324Q0011 Combined Synopsis_Solicitation WA State Conservation Planner Svcs.pdf; P03 1115748 PWS-Rev4_IRA Conservation Planner 12122023.pdf;

Good afternoon,

This is informal sources sought only at this time  Please indicate **your interest only and capability statement** after reading the below and attached.  You are welcome to share with other small businesses.

May want to point out to them that Section 1.3 Scope, notes that NRCS is anticipating full staffing to be completed within 90 days of award.

Please provide your response (interest and capability statement only) by noon CST, Friday, 1/19/2024.

Thank you,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it

contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 **Outlook**

## WA State Conservation Planners Published Solicitation: 12FPC324R0003

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

**Date** Thu 25-Jan-24 4:03 PM

**To** Timothy Thompson <TThompson@adeptusasi.com>; Aimee Reid <areid@adeptusasi.com>; Erica Robertson <erobertson@adeptusasi.com>; Chaz Dudley <cdudley@alexton.com>; Parker Oldham <parker.oldham@arelicorp.com>; Nicole Waldenmeyer <nicole.waldenmeyer@arelicorp.com>; Andy Nevers <andy@cyberassetpartner.com>; Lynette Stevenson <ls@dalscreditsolutions.com>; Lynette Stevenson <ls@dalscreditsolutions.com>; Ayodele Alaran <ayo@delnovak.com>; tnewland <tnewland@heartlandconsulting.com>; Raghu@HighCloud <raghu@highcloudsolutions.com>; Kossi Kpante <kkpante@kraisolutions.com>; Tyler Rush <tyler@redcreeksolutions.com>; Makayla Walker <makaylawalker@tribal.one>; franb <franb@aerobodies.com>; Matt McCall <matt@alfatechconsulting.biz>; Jason See <jsee@dawsonohana.com>; Alicia Hurtt <info@he-management.com>; Matt Bringman <mbringman@im-strat.com>

▌ 2 attachments (634 KB)
S01 12FPC324R0003 SAM.gov - Published Solicitation.pdf; S01 12FPC324R0003 Solicitation Package Combined.pdf;

Good afternoon:

https://sam.gov/opp/c9e1434f3e7f4c9f95e346fbcca888f6/view

This message is to inform you that the subject Solicitation for Conservation Planner Support Service has been published on SAM.gov. It has been posted as a Total Small Business Set-Aside. Please feel free to inform any known interested parties that this is now posted and proposals will be accepted until February 26, 2024 at 2:00pm EST. The link is above for your convenience or you can go to SAM.gov and search for the solicitation number.

**Please go to the website and respond as directed.**

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 **Outlook**

---

## WA State Conservation Planners Published Solicitation: 12FPC324R0003

---

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

**Date** Thu 01-Feb-24 9:52 AM

**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▌ 2 attachments (634 KB)
S01 12FPC324R0003 SAM.gov - Published Solicitation.pdf; S01 12FPC324R0003 Solicitation Package Combined.pdf;

Good morning,

https://sam.gov/opp/c9e1434f3e7f4c9f95e346fbcca888f6/view

This message is to inform you that the subject Solicitation for Conservation Planner Support Service has been published on SAM.gov. It has been posted as a Total Small Business Set-Aside. Please feel free to inform any known interested parties that this is now posted and proposals will be accepted until February 26, 2024 at 2:00pm EST. The link is above for your convenience or you can go to SAM.gov and search for the solicitation number.

**Please go to the website and respond as directed.**

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 **Outlook**

---

## Weekly Email

---

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

**Date** Wed 13-Dec-23 8:07 AM

**To** Lynette Stevenson <ls@dalscreditsolutions.com>; danish.adnan@janoons.com <danish.adnan@janoons.com>

▌ 4 attachments (8 MB)

FY2024 FPAC IT Industry Day (FINAL) (1).pptx; FPAC IT FY24 Procurements (2023-10-13) Customer Copy.docx; SAM.gov FPAC only Contract_Notice_Details response due 12052023 thru 01052024.csv; SAM.gov ALL FEDERAL Contract_Notice_Details response due 12052023 thru 01052024.csv;

Good morning,

Presently,

Emerging Opportunities:
- moving/relocation opportunities in the near future in Georgia and two locations in Oklahoma.
- erosion control opportunity in Hattiesburg MS.
- Fairview OK - Major County - Pack and move office contents to the new location
- Conservation Planner Service Contract – WA State
- Geotech Drilling, Trempealeau County, WI
- Janitorial Services at the Jimmy Carter Plant Materials Center, Americus, GA, Incumbent 12FPC421P0055
- Environmental Liabilities (EL) Cost Estimating Audit Support

Thank you for attending the event, if you were able to join – My apologies if technology took you somewhere else without my knowledge or consent!

1. Please find the attached slide deck.
2. Please provide all questions via email to me,, by COB, November 30, 2023.  Q&A will be provided after December 15, 2023.
3. Complete the survey embedded in the slide deck as soon as possible.
4. Recording of event is available via Youtube:  https://youtu.be/SBaFOijAQAQ

I am including the SAM.gov reports for FPAC and all Federal Government that have current open opportunities.  If interested then respond directly to the posting as instructed.

Please forward me any questions you may have and I will respond as soon as possible.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch

Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

## FW: FY2024 Farm Production and Conservation (FPAC) IT Industry Day

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Fri 15-Dec-23 10:40 AM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>; danish.adnan@janoons.com <danish.adnan@janoons.com>

▌ 3 attachments (4 MB)
FY2024 FPAC IT Industry Day (FINAL) (1).pptx; FPAC IT FY24 Procurements (2023-10-13) Customer Copy.docx; FY 2023 FPAC IT Industry Day Consolidated Q&A Final.docx;

Good morning,

Many of you may have missed the event due to a TEAMS error. Attached please find the slide deck, completed Q&As, and link to the recording below.

1. Please find the attached slide deck.
2. Please provide all questions via email to me,, by COB, November 30, 2023. Q&A will be provided after December 15, 2023.
3. Complete the survey embedded in the slide deck as soon as possible.
4. Recording of event is available via Youtube: https://youtu.be/SBaFOijAQAQ

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it

contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.



## RE: FY2024 Farm Production and Conservation (FPAC) IT Industry Day

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

**Date** Fri 15-Dec-23 3:16 PM

**To** Lynette Stevenson <ls@dalscreditsolutions.com>; danish.adnan@janoons.com <danish.adnan@janoons.com>

▌ 1 attachment (142 KB)
Formatted IT Industry Day Q&A Final.docx;

Wrong copy attached!

My apologies.

**From:** Welch, Sheryl - FPAC-FBC, MO
**Sent:** Friday, December 15, 2023 9:40 AM
**To:** Lynette Stevenson <ls@dalscreditsolutions.com>; danish.adnan@janoons.com
**Subject:** FW: FY2024 Farm Production and Conservation (FPAC) IT Industry Day

Good morning,

Many of you may have missed the event due to a TEAMS error. Attached please find the slide deck, completed Q&As, and link to the recording below.

1. Please find the attached slide deck.
2. Please provide all questions via email to me,, by COB, November 30, 2023. Q&A will be provided after December 15, 2023.
3. Complete the survey embedded in the slide deck as soon as possible.
4. Recording of event is available via Youtube: https://youtu.be/SBaFOijAQAQ

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

**Request for PWS: Website 508 Compliance Testing**

**From** Lynette Stevenson <ls@dalscreditsolutions.com>
**Date** Fri 12-Jan-24 8:05 AM
**To** sheryl.welch@usda.gov <sheryl.welch@usda.gov>
**Cc** Michael Sands <michael@ctrperfmastery.com>

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy.  We look forward to your prompt response.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified

Disclosure: <u>Website</u>

All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: <u>Why is Financial Literacy Important to Small Business Owners.</u>
**Article**: <u>Women Business Owners made Strides; Gender Gap still remains.</u>

 Outlook

---

**Read: [External Email]Re: Request for PWS: Website 508 Compliance Testing**

---

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

**Date** Tue 16-Jan-24 11:44 AM

**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▌ 1 attachment (20 KB)

Read: [External Email]Re: Request for PWS: Website 508 Compliance Testing;

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 **Outlook**

## RE: [External Email]Re: Request for PWS: Website 508 Compliance Testing

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Tue 16-Jan-24 11:44 AM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>
**Cc** Michael Sands <michael@ctrperfmastery.com>

Good morning,

I am not at liberty to provide a PWS or any other Procurement Sensitive documents prior to their release in a RFI/Sources Sought/Solicitation.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Tuesday, January 16, 2024 7:00 AM
**To:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** [External Email]Re: Request for PWS: Website 508 Compliance Testing
**Importance:** High

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.

As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy.  We look forward to your prompt response.

Warm Regards,

Lynette T. Stevenson-Owner she/her-NMLS #2327554

www.dalscredit.solutions

DALS Credit Solutions Co DBA DALS Economic & Strategic Co

DALS Notary Services

5246 Simpson Ferry Road

Mechanicsburg, PA. 17055

717-421-1445

UEI W9MKGJS85B81

CAGE:8N9Y9

CMMC1 & NIST 800-171 Complaint

SPRS Scores 88

PIEE Registered Vendor

Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Friday, January 12, 2024 8:05 AM
**To:** sheryl.welch@usda.gov <sheryl.welch@usda.gov>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** Request for PWS: Website 508 Compliance Testing

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy.  We look forward to your prompt response.

Warm Regards,

Lynette T. Stevenson-Owner she/her-NMLS #2327554

<u>www.dalscredit.solutions</u>

DALS Credit Solutions Co DBA DALS Economic & Strategic Co

DALS Notary Services

5246 Simpson Ferry Road

Mechanicsburg, PA. 17055

717-421-1445

UEI W9MKGJS85B81

CAGE:8N9Y9

CMMC1 & NIST 800-171 Complaint

SPRS Scores 88

PIEE Registered Vendor

Iden-Trust Verified

Disclosure: <u>Website</u>
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: <u>Why is Financial Literacy Important to Small Business Owners.</u>
**Article**: <u>Women Business Owners made Strides; Gender Gap still remains.</u>

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it

contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.



**Re: [External Email]Re: Request for PWS: Website 508 Compliance Testing**

**From** Lynette Stevenson <ls@dalscreditsolutions.com>
**Date** Tue 16-Jan-24 11:50 AM
**To** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

▌ 1 attachment (2 MB)
Cinteot-DALS Capabilites Statement 2024 v2.pdf;

Subject: Scheduling a Meeting to Discuss Potential Sole Source Opportunity under Section 508
Dear Sheryl,

Good Morning,
I hope this message finds you in good health and high spirits. Given your notable advocacy and contributions in this area, I would like to discuss a potential opportunity that warrants a more robust conversation, which we sincerely appreciate.
To facilitate a detailed discussion, I am to inform you that Michael Sands or Danish from our team will not be participating.

Additionally, I would like to introduce you to another company we are collaborating with. This company is an 8A Stars III participant on a GSA Schedule. Their experience and qualifications could be a significant asset in our current endeavor.
In your recent communication, you presented a series of dates for potential meetings. I propose we use one of these dates for a meeting involving the Contracting Officer's Representative (COR) and yourself. This meeting would be a platform to discuss a potential sole source opportunity related to the new requirements under Section 508. Attached is our joint capability Statement.
Your input and guidance in this matter would be immensely beneficial. Please let us know your availability so that we can schedule the meeting at a time that is convenient for you.
I look forward to your positive response and the opportunity to work together on this exciting venture.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81

CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified


Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

---

**From:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Sent:** Tuesday, January 16, 2024 11:44 AM
**To:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** RE: [External Email]Re: Request for PWS: Website 508 Compliance Testing

Good morning,

I am not at liberty to provide a PWS or any other Procurement Sensitive documents prior to their release in a RFI/Sources Sought/Solicitation.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Tuesday, January 16, 2024 7:00 AM
**To:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** [External Email]Re: Request for PWS: Website 508 Compliance Testing
**Importance:** High

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy. We look forward to your prompt response.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor

Iden-Trust Verified

Disclosure: <u>Website</u>
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: <u>Why is Financial Literacy Important to Small Business Owners.</u>
**Article**: <u>Women Business Owners made Strides; Gender Gap still remains.</u>
<u>Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)</u>

**From:** Lynette Stevenson <<u>ls@dalscreditsolutions.com</u>>
**Sent:** Friday, January 12, 2024 8:05 AM
**To:** <u>sheryl.welch@usda.gov</u> <<u>sheryl.welch@usda.gov</u>>
**Cc:** Michael Sands <<u>michael@ctrperfmastery.com</u>>
**Subject:** Request for PWS: Website 508 Compliance Testing

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy. We look forward to your prompt response.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
<u>www.dalscredit.solutions</u>
DALS Credit Solutions Co DBA DALS Economic & Strategic Co

DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS
Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any
third party without written authorization. DALS Credit Solutions Co does not participate in removing
items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that
adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.

This electronic message contains information generated by the USDA solely for the intended
recipients. Any unauthorized interception of this message or the use or disclosure of the information it
contains may violate the law and subject the violator to civil or criminal penalties. If you believe you
have received this message in error, please notify the sender and delete the email immediately.

 Outlook

---

**Read: [External Email]Re: Request for PWS: Website 508 Compliance Testing**

---

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Tue 16-Jan-24 12:38 PM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▌ 1 attachment (20 KB)
Read: [External Email]Re: Request for PWS: Website 508 Compliance Testing;

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 **Outlook**

---

**RE: [External Email]Re: Request for PWS: Website 508 Compliance Testing**

---

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Mon 22-Jan-24 4:10 PM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>

Good afternoon,

I shared your information with the acquisition team and let them know you would like to meet and discuss a potential sole source.

Have a great afternoon,

Have a good evening.

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Tuesday, January 16, 2024 10:51 AM
**To:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Subject:** Re: [External Email]Re: Request for PWS: Website 508 Compliance Testing
**Importance:** High

Subject: Scheduling a Meeting to Discuss Potential Sole Source Opportunity under Section 508
Dear Sheryl,

Good Morning,
I hope this message finds you in good health and high spirits. Given your notable advocacy and contributions in this area, I would like to discuss a potential opportunity that warrants a more robust conversation, which we sincerely appreciate.
To facilitate a detailed discussion, I am to inform you that Michael Sands or Danish from our team will not be participating.

Additionally, I would like to introduce you to another company we are collaborating with. This company is an 8A Stars III participant on a GSA Schedule. Their experience and qualifications could be a significant asset in our current endeavor.

In your recent communication, you presented a series of dates for potential meetings. I propose we use one of these dates for a meeting involving the Contracting Officer's Representative (COR) and yourself. This meeting would be a platform to discuss a potential sole source opportunity related to the new requirements under Section 508. Attached is our joint capability Statement.

Your input and guidance in this matter would be immensely beneficial. Please let us know your availability so that we can schedule the meeting at a time that is convenient for you.

I look forward to your positive response and the opportunity to work together on this exciting venture.

Warm Regards,

Lynette T. Stevenson-Owner she/her-NMLS #2327554

www.dalscredit.solutions

DALS Credit Solutions Co DBA DALS Economic & Strategic Co

DALS Notary Services

5246 Simpson Ferry Road

Mechanicsburg, PA. 17055

717-421-1445

UEI W9MKGJS85B81

CAGE:8N9Y9

CMMC1 & NIST 800-171 Complaint

SPRS Scores 88

PIEE Registered Vendor

Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing

items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

---

**From:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Sent:** Tuesday, January 16, 2024 11:44 AM
**To:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** RE: [External Email]Re: Request for PWS: Website 508 Compliance Testing

Good morning,

I am not at liberty to provide a PWS or any other Procurement Sensitive documents prior to their release in a RFI/Sources Sought/Solicitation.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center
U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

Acquisitions Division – Customer Resources SharePoint Site
https://usdagcc.sharepoint.com/sites/FBC-ACC

**From:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Sent:** Tuesday, January 16, 2024 7:00 AM
**To:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Cc:** Michael Sands <michael@ctrperfmastery.com>
**Subject:** [External Email]Re: Request for PWS: Website 508 Compliance Testing
**Importance:** High

[External Email]
If this message comes from an **unexpected sender** or references a **vague/unexpected topic;**
Use caution before clicking links or opening attachments.
Please send any concerns or suspicious messages to: Spam.Abuse@usda.gov

Dear Sheryl Welch,

I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.

As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.

Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.

Thank you for your time and consideration and your continued Advocacy.  We look forward to your prompt response.

Warm Regards,

Lynette T. Stevenson-Owner she/her-NMLS #2327554

www.dalscredit.solutions

DALS Credit Solutions Co DBA DALS Economic & Strategic Co

DALS Notary Services

5246 Simpson Ferry Road

Mechanicsburg, PA. 17055

717-421-1445

UEI W9MKGJS85B81

CAGE:8N9Y9

CMMC1 & NIST 800-171 Complaint

SPRS Scores 88

PIEE Registered Vendor

Iden-Trust Verified

Disclosure: <u>Website</u>
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: <u>Why is Financial Literacy Important to Small Business Owners.</u>
**Article**: <u>Women Business Owners made Strides; Gender Gap still remains.</u>
<u>Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)</u>

**From:** Lynette Stevenson <<u>ls@dalscreditsolutions.com</u>>
**Sent:** Friday, January 12, 2024 8:05 AM
**To:** <u>sheryl.welch@usda.gov</u> <<u>sheryl.welch@usda.gov</u>>
**Cc:** Michael Sands <<u>michael@ctrperfmastery.com</u>>
**Subject:** Request for PWS: Website 508 Compliance Testing

Dear Sheryl Welch,
I hope this message finds you well. I am contacting you on behalf of Dals Credit Solutions Co. We are exploring opportunities related to Website 508 Compliance Testing, explicitly focusing on automated testing of public and internal-facing websites for Section 508 compliance.
As part of our due diligence in pursuing this opportunity, we need a Performance Work Statement (PWS) that outlines this project's specific requirements and expectations.

A comprehensive PWS will allow us to effectively align our capabilities and resources to meet this project's needs.

Could you kindly provide us with the PWS for the "Website 508 Compliance Testing - Automated testing of public and internal-facing websites for Section 508 compliance" opportunity? Additional information or documentation related to this opportunity would also be greatly appreciated.
Your assistance in providing the PWS will be instrumental in helping us prepare a detailed proposal that meets your requirements.
Thank you for your time and consideration and your continued Advocacy.  We look forward to your prompt response.

Warm Regards,

Lynette T. Stevenson-Owner she/her-NMLS #2327554

www.dalscredit.solutions

DALS Credit Solutions Co DBA DALS Economic & Strategic Co

DALS Notary Services

5246 Simpson Ferry Road

Mechanicsburg, PA. 17055

717-421-1445

UEI W9MKGJS85B81

CAGE:8N9Y9

CMMC1 & NIST 800-171 Complaint

SPRS Scores 88

PIEE Registered Vendor

Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

**Read: [External Email]Re: Request for PWS: Website 508 Compliance Testing**

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>

**Date** Mon 22-Jan-24 4:34 PM

**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▌ 1 attachment (20 KB)

Read: [External Email]Re: Request for PWS: Website 508 Compliance Testing;

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.



## REQUEST FOR QUOTE (RFQ) - 12FPC324Q0011

**From** Lynette Stevenson <ls@dalscreditsolutions.com>
**Date** Thu 18-Jan-24 9:30 AM
**To** bobby.copenny@usda.gov <bobby.copenny@usda.gov>
**Cc** sheryl.welch@usda.gov <sheryl.welch@usda.gov>

▌ 2 attachments (2 MB)

EntityInformation_20240117-075121.pdf; DALS Sources Sought RFIQ for USDA.docx;

Dear Mr. Bobby Copenny Jr.,

I hope this email finds you well. I am writing on behalf of DALS Credit Solutions Co., a proud SBA Women-Owned Small Business (WOSB) with diverse certifications and an established reputation as a PIEE vendor, boasting a SPRS score 88.

We are excited to present our quotation in response to solicitation 12FPC324Q0011, issued as a request for quote (RFQ). We understand that this RFQ is governed by the acquisition procedures detailed in FAR Part Subpart 12 & 13.5 and that the Government is anticipating a Firm Fixed Price award.

DALS Credit Solutions Co. has a strong background in providing high-quality, efficient services that align with the requirements of the USDA NRCS. Our team of experienced Conservation Planners is uniquely equipped to offer comprehensive support in Field and Area Offices throughout Washington State. We are committed to delivering solutions that not only meet but exceed the expectations outlined in your RFQ.

Enclosed with this email is our detailed quotation outlining our proposed approach, comprehensive cost breakdown, and the value-added services we are excited to bring to this project. We have ensured that our proposal is competitive and reflects the high standards and expectations of the USDA NRCS.

We look forward to working closely with your team and contributing positively to the objectives of the USDA NRCS. Please do not hesitate to contact me for further information or clarification regarding our quotation.

Thank you for considering DALS Credit Solutions Co. for this opportunity. We eagerly await your response and the potential to establish a fruitful partnership.

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
717-421-1445

UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified


Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: Why is Financial Literacy Important to Small Business Owners.
**Article**: Women Business Owners made Strides; Gender Gap still remains.
Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)

 Outlook

---

**Read: [External Email]REQUEST FOR QUOTE (RFQ) - 12FPC324Q0011**

---

**From** Copenny, Bobby–FPAC - FPAC-FBC, TX <Bobby.Copenny@usda.gov>

**Date** Thu 18-Jan-24 9:42 AM

**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▮ 1 attachment (20 KB)

Read: [External Email]REQUEST FOR QUOTE (RFQ) - 12FPC324Q0011;

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

## Read: [External Email]REQUEST FOR QUOTE (RFQ) - 12FPC324Q0011

**From** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Date** Thu 01-Feb-24 10:37 AM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▌ 1 attachment (20 KB)
Read: [External Email]REQUEST FOR QUOTE (RFQ) - 12FPC324Q0011;

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

 Outlook

## Fw: For Today's meeting, An USDA FPAC Update

**From** Lynette Stevenson <ls@dalscreditsolutions.com>
**Date** Sat 07-Sep-24 9:21 PM
**To** Lynette Stevenson <ls@dalscreditsolutions.com>

▌ 5 attachments (8 MB)
FY2024 FPAC IT Industry Day (FINAL) (1).pptx; FPAC IT FY24 Procurements (2023-10-13) Customer Copy.docx; Formatted IT Industry Day Q&A Final.docx; SAM.gov FPAC ONLY Contract_Notice_Details response 01302024 thru 03012024.csv; SAM.gov ALL FEDERAL Contract_Notice_Details response 01302024 thru 03012024.csv;

Warm Regards,
Lynette T. Stevenson-Owner she/her-NMLS #2327554
www.dalscredit.solutions
DALS Credit Solutions Co DBA DALS Economic & Strategic Co
DALS Notary Services
President of USMCA PA /Ohio Chapter
Associate Dean of ETI
5246 Simpson Ferry Road
Mechanicsburg, PA. 17055
Phone: 717.421.1445
Fax: 800.721.9930
UEI W9MKGJS85B81
CAGE:8N9Y9
CMMC1 & NIST 800-171 Complaint
SPRS Scores 88
PIEE Registered Vendor
Iden-Trust Verified

Disclosure: Website
All information in this email and attachments is the property of DALS Credit Solutions Co DBA DALS Economic & Strategic Co. All actions are strictly forbidden to share any part of this message with any third party without written authorization. DALS Credit Solutions Co does not participate in removing items of the credit profile that are legally bonded. We are a Resilience Financial Training firm that adheres to Federal Consumer and Credit Laws and Identity and Access Management.



**Article**: <u>Why is Financial Literacy Important to Small Business Owners.</u>
**Article**: <u>Women Business Owners made Strides; Gender Gap still remains.</u>
Speaking: <u>Lynette T. Stevenson - Small Business Expo (thesmallbusinessexpo.com)</u>
Speaking: <u>2021 ImpACT Conference - Virtual | SOA</u> **session 14A: Credit Risk & Small Diverse Businesses Within Underserved Communities**

 Book time to meet with me

---

**From:** Welch, Sheryl - FPAC-FBC, MO <sheryl.welch@usda.gov>
**Sent:** Thursday, February 1, 2024 9:44 AM
**To:** Lynette Stevenson <ls@dalscreditsolutions.com>
**Subject:** For Today's meeting, An USDA FPAC Update

Good morning,

Presently for FPAC,

Emerging Opportunities:
- Appraisal and Timber Cruise for Healthy Forest Reserve Program in Alabama

SAM.gov opportunities are attached for both FPAC and all Federal Government. If interested in an opportunity then please respond as directed in SAM.gov.

FPAC IT Opportunities:

1. Please find the attached slide deck.
2. Q&A provided
3. Complete the survey embedded in the slide deck as soon as possible.
4. Recording of event is available via Youtube: <u>https://youtu.be/SBaFOijAQAQ</u>

Birch posting to GSA MAS 8(a) set-aside approximately February 15, 2024 to those that expressed your interest to the survey in the IT Industry Slide Deck and responded to the RFI!
Quaking Aspen RFI posted to CIO SP3 total small business and VETS2, close February 1, 2024.

Please let me know if you have any questions.

Respectfully,

*Sheryl Welch*

Contract Specialist
Small Business Coordinator
Ability One Representative (ABOR)
Acquisitions Support Section
Acquisition Policy Branch
Farm Production and Conservation, Business Center

U.S. Department of Agriculture
816-926-6108
Sheryl.welch@usda.gov

This electronic message contains information generated by the USDA solely for the intended recipients. Any unauthorized interception of this message or the use or disclosure of the information it contains may violate the law and subject the violator to civil or criminal penalties. If you believe you have received this message in error, please notify the sender and delete the email immediately.

# Proposed Rules

Federal Register

Vol. 89, No. 207

Friday, October 25, 2024

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

## SMALL BUSINESS ADMINISTRATION

### 13 CFR Part 125

**RIN 3245–AH95**

### Small Business Contracting: Increasing Small Business Participation on Multiple Award Contracts

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Proposed rule.

**SUMMARY:** This proposed rule would apply the Rule of Two to multiple-award contract task and delivery orders, with some exceptions. Under the Rule of Two, unless an exception applies, an agency must set aside the award for small businesses where there is a reasonable expectation of receiving offers from two or more small-business contract holders under the multiple-award contract that are competitive in terms of price, quality, and delivery. Documentation requirements apply where the agency decides not to move forward with a set-aside order.

**DATES:** Comments must be received on or before December 24, 2024.

**ADDRESSES:** You may submit comments, identified by RIN 3245–AH95, and/or Docket Number SBA–2024–0002 by any of the following methods:
• *Federal eRulemaking Portal: https://www.regulations.gov* and follow the instructions for submitting comments.
• *Mail (for paper, disk, or CD–ROM submissions):* Donna Fudge, Lead Procurement Policy Analyst, Office of Policy Planning and Liaison, U.S. Small Business Administration, 409 Third Street SW, Washington, DC 20416.

*Instructions:* All submissions received must include the agency name and docket number or Regulatory Information Number (RIN) for this rulemaking. All comments received will be posted on *https:// www.regulations.gov*. If you wish to submit confidential business information (CBI) as defined in the User

Notice at *https://www.regulations.gov*, please submit the comments to Donna Fudge and highlight the information that you consider to be CBI and explain why you believe this information should be held confidential.

**FOR FURTHER INFORMATION CONTACT:** Donna Fudge, Lead Procurement Policy Analyst, Office of Policy Planning and Liaison, Small Business Administration, at *donna.fudge@sba.gov*, (202) 205–6363.

**SUPPLEMENTARY INFORMATION:** This proposed rule would expand the use of the small-business Rule of Two in multiple-award contracting and make other regulatory revisions to encourage the use of small businesses when creating new multiple-award contracts. In issuing this proposed rule, SBA implements recommendations of the Office of Federal Procurement Policy (OFPP) in its memorandum titled "*Increasing Small Business Participation on Multiple-Award Contracts*," dated January 25, 2024.

Section 15(a)(1)(C) of the Small Business Act, 15 U.S.C. 644(a)(1)(C), provides that the Small Business Administration (SBA) shall "assur[e] that a fair proportion of the total purchases and contracts for goods and services of the Government in each industry category . . . are awarded to small business concerns." To further this statutory provision, SBA's regulations and the Federal Acquisition Regulation (FAR) provide that an acquisition shall be set aside for small business concerns whenever there is reasonable expectation that offers will be obtained from at least two responsible small business concerns that are competitive in terms of fair market prices, quality, and delivery (13 CFR 125.2(f); 48 CFR 19.502–2). This provision in SBA's regulations and the FAR is commonly referred to as the Rule of Two.

The Rule of Two dates back to 1964, when the Department of Navy first adopted it. Additional agencies implemented the rule afterward, and the FAR extended the Rule of Two for governmentwide application in 1984. The Rule of Two is the cornerstone of the Federal Government's support for small-business prime contracting. In Fiscal Year (FY) 2023, set-aside awards accounted for 65% of contracting dollars awarded to small businesses, the highest percentage since data became

available in 2010. Those set-aside dollars pushed the government's spending with small business prime contractors to $178 billion in FY23, or 28.4%. Prior to the government-wide application of the Rule of Two in 1984, the Federal Government spent just 21% of its procurement dollars with small businesses.

This proposed rule would clarify the applicability of the Rule of Two to multiple-award contracts by directing that an agency set aside an order under a multiple-award contract for small business contract holders when the contracting officer determines there is a reasonable expectation of obtaining offers from two or more small business contract holders under the multiple-award contract that are competitive in terms of market prices, quality, and delivery. Like the OFPP memorandum, the proposed rule provides several exceptions, such as orders under the Federal Supply Schedule, or where an exception to fair opportunity or an agency-specific exception applies. When an agency is unable to set aside an order over the micro-purchase threshold and an exception does not apply, the contracting officer must document their rationale and provide the documentation to the agency's small business specialist or the Office of Small and Disadvantaged Business Utilization (OSDBU) or, for the Department of Defense, the Office of Small Business Programs (OSBP). An SBA procurement center representative (PCR) can review the documentation and may submit recommendations to increase small business opportunities.

These proposed changes result from an interagency negotiation among SBA, the FAR Council, and other agencies. SBA initiated this negotiation for three reasons.

First, the Small Business Act specifies that a fair proportion of the total "purchase and contracts" for goods and services shall be awarded to small business concerns. The statute does not limit the fair proportion language only to contracts. Rather, it applies it to both "purchase[s] *and* contracts." The Federal Government is directed to assure that a fair proportion of purchases and contracts are awarded to small businesses. SBA believes that the use of the words "purchase and" means that the Rule of Two should not apply only when an agency is considering the

award of a contract. It should also apply to all purchases of goods and services, as well. As such, SBA believes that it makes sense to apply the Rule of Two to orders issued under multiple-award contracts. Again, it should apply to all "purchases," not just to all new contracts.

Second, the proposed rule would provide certainty on how to apply the Rule of Two to task and delivery orders under multiple-award contracts and eliminate confusion created by an unresolved question in dispute between the Court of Federal Claims and the Government Accountability Office (GAO). The Court of Federal Claims agreed with the small-business plaintiffs in *Tolliver Group* that "an agency must apply the Rule of Two before an agency can even identify the possible universe of procurement vehicles which may be utilized for a particular scope of work." 151 Fed. Cl. at 104. In a GAO protest decided after the court's ruling, GAO maintained its longstanding interpretation, which differs from the Court's conclusion, that, in 15 U.S.C. 644(r), Congress intended to clearly delineate a distinction between a procuring agency's mandatory set-aside obligations when establishing a contract, and an agency's discretion with respect to setting aside task or delivery orders under a multiple-award contracts, *i.e.,* indefinite delivery indefinite quantity (IDIQ) contracts. *Itility, LLC,* B–419167, Dec. 23, 2020, 2020 CPD P412 at 18. The proposed change to require application of the Rule of Two to task and delivery orders under multiple-award contracts, with certain exceptions, should eliminate lingering confusion.

Third, for similar reasons as those described in the OFPP memorandum, the proposed rule advances equity in Federal procurement practices. This rule is expected to create more contract opportunities for small businesses, particularly small disadvantaged businesses (SDBs). Executive Order 14091 established a government-wide goal of awarding 15 percent of Federal contract spending to SDBs in FY 2025, and this proposed rule would put the government in a better position to achieve that goal.

This proposed rule rests on the authority in the Small Business Jobs Act of 2010, Public Law 111–240, sec. 1331, codified at 15 U.S.C. 644(r), for SBA and the FAR Council to establish guidance under which Federal agencies may, at their discretion and notwithstanding fair opportunity requirements, set aside orders placed against multiple-award contracts for small business concerns. Under this proposal, agencies are

required to document their decisions not to set aside an order for small businesses. Such a decision might be based on one of the exceptions in the regulation, or because the Rule of Two is not satisfied—*i.e.,* where there are zero small businesses or only one small business that are responsible, available, and reasonably priced.

The OFPP memorandum, footnote 4, stated that Federal Supply Schedule orders are not covered by the term "multiple-award contract" as used in the memorandum. The memorandum stated that Schedules are continually open to new entrants and highly accessible to small businesses. Similarly, this proposed rule would not cover the Federal Supply Schedule. This also mirrors the treatment of the Federal Supply Schedule by the Court of Federal Claims, which exempted the Schedule from the Rule of Two in *VSolvit, LLC* v. *United States,* 151 Fed. Cl. 678 (2020), because of specific language providing so in FAR subpart 8.4.

### Severability

SBA intends for the provisions of this proposed rule, if finalized, to be severable from each other such that if a court were to hold that any provision is invalid or unenforceable as to a particular person or circumstance, the rule would remain in effect as to any other person or circumstance.

### Section-by-Section Analysis

#### 13 CFR 125.2(c)(1)(i)

The proposed rule adopts the updated terminology of "certified service-disabled veteran-owned small businesses concerns," given that SBA now certifies service-disabled veteran-owned small businesses.

#### 13 CFR 125.2(c)(2)

The proposed rule would add a new § 125.2(c)(2) with new documentation and coordination requirements when an agency plans to establish a multiple award contract without an order set-aside provision. The current § 125.2(c)(3) only requires notification at least 30 days prior to the solicitation's issuance when an agency would issue a bundled requirement or one that would be unlikely for award to a small business. SBA believes that 30 days is not enough time to intervene in a large procurement when, oftentimes, the agency has been planning the procurement for over a year. The proposed rule would require small business specialists to notify the PCR as early in the acquisition planning process as possible where the multiple-

award contract exceeds the substantial bundling threshold (even if the contract is not bundled), and the number of small business awardees is expected to be less than 30 percent of the total number of awardees. With the notification, the contracting officer must include market research and documentation explaining why the multiple-award contract is not set-aside or reserved with an expectation of at least 30 percent for small businesses. In the future, if this proposed rule is finalized, small business should make up at least 30 percent of new multiple-award contract holders and that should make the Rule of Two more effective on orders issued under those multiple award contracts.

The 30-percent threshold is based on the current proportion of multiple-award contract dollars going to small business, and agencies can reach that threshold by using contract reserves. Contract reserves are a procurement strategy available only for multiple-award contracts in which the agency sets aside some of the contract awards for small businesses (or a small business program such as 8(a) or HUBZone), and then competes orders only among those set-aside awardees.

#### 13 CFR 125.2(c)(4)

The proposed rule incorporates the OFPP memorandum's recommendation that agencies share with small-business specialists documentation of the basis for not setting aside orders over the micro-purchase threshold, unless an exception applies. Small business specialists are agency staff, typically working with the agency's OSDBU or OSBP. Small business specialists play a vital role in ensuring that the agency prioritizes small-business participation when planning acquisitions. Under the proposed rule, the agency would also document, and share with its small business specialist, the decision to place an order under a multiple-award contract with only one or no small business contract holders.

#### 13 CFR 125.2(e)(6)

The proposed rule would revise the regulation on setting aside orders, § 125.2(e)(6)(i), to require the set-aside of orders over the micro-purchase threshold where the Rule of Two is satisfied with respect to small-business contract holders. The only exceptions to applying the Rule of Two are for orders under Federal Supply Schedule contracts, when an exception to fair opportunity applies, or where agency procedures reflect an appropriate exception. When one of these three exceptions does not apply, the agency

would be required to document its determination not to issue a set-aside and coordinate that documentation with the small business specialist. If the agency chooses to issue an order under a multiple award contract that has one or no small business contract holders, the agency must document the rationale for that decision, including the market research conducted by the agency, coordinate that documentation with the small business specialist, and ensure that the small business specialist has a reasonable opportunity to respond. This requirement would not apply to orders under the Federal Supply Schedule, where an exception to fair opportunity applies, or an agency-specific exception applies.

Through this proposed rule, SBA seeks to expand small-business participation on multiple-award contracts. Unlike the *Tolliver* decision, this proposed rule does not require the application of the Rule of Two prior to choosing a particular multiple-award contract vehicle. Thus, although the proposed rule would permit an agency to use existing multiple award vehicles, agencies would be required to conduct the Rule of Two analysis on the selected multiple-award contract before issuing an order (unless an exception applies). Agencies are not expected to amend ordering procedures of existing multiple-award contracts that did not provide for order set-asides, but they could choose to do so if there is adequate time remaining on the contract (*i.e.*, more than one year), to permit small business concerns to fully perform or deliver under an order.

Exceptions to the application of the mandatory Rule of Two would apply for orders under the Federal Supply Schedule, where an exception to fair

opportunity applies (such as there being only one responsible source), and agency-specific exceptions. For example, agencies may use an agency-specific exception to address supply chain and national security risks, to address goods or services that no small businesses provide and would not provide in the future, or to respond to a major disaster or emergency. The proposed rule would require that agency exceptions be developed in consultation with both the agency OSDBU or OSBP and SBA, and made public before they are used. The exception procedures must have an appropriate mechanism to ensure responsible use.

**Compliance With Executive Orders 12866, 12988, 13132, 13563, the Paperwork Reduction Act (44 U.S.C. Ch. 35), and the Regulatory Flexibility Act (5 U.S.C. 601–612)**

*Executive Order 12866*

The Office of Management and Budget (OMB) anticipates that this rulemaking will be a significant regulatory action and, therefore, is subject to review under section 6(b) of Executive Order 12866, Regulatory Planning and Review, dated September 30, 1993. Accordingly, the next section contains SBA's Regulatory Impact Analysis.

*Regulatory Impact Analysis:*

1. *Is there a need for the regulatory action?*

This action implements recommendations made in OFPP's memorandum titled "Increasing Small Business Participation on Multiple-Award Contracts". It also addresses confusion from the contradictory decisions between the Court of Federal Claims and the Government Accountability Office (GAO). The Court

of Federal Claims agreed with the small-business plaintiffs in *Tolliver Group* that "an agency must apply the Rule of Two before an agency can even identify the possible universe of procurement vehicles which may be utilized for a particular scope of work." 151 Fed. Cl. at 104. In a GAO protest decided after the court's ruling, GAO ruled that agencies may set aside orders even if the underlying multiple-award contract does not notify contract holders to future set-asides. *Itility, LLC,* B–419167, Dec. 23, 2020, 2020 CPD P412 at 18. GAO has ruled agencies may set aside orders even if the underlying does not notify contract holders to future set-asides. *Marine Hydraulics Int'l LLC,* B–420562, May 25, 2022, 2022 CPD P122 at 10. This rulemaking is intended to eliminate any confusion and ensure that the policy is consistently implemented across all agencies. The proposed rule also supports Administration efforts to develop a competitive small-business contracting base and increase spending with small disadvantaged businesses (SDBs).

2. *What is the baseline, and the incremental benefits and costs of this regulatory action?*

Based on SBA's analysis of FY 2019 to FY 2023 data, as shown in the table below, this change could add up to $6 billion per year in small business contract spending. The table below shows the dollar gap between small-business spending on non-set-aside multiple-award task and delivery order contracts, and that same spending government wide, when the governmentwide numbers are adjusted to use the same NAICS-code distribution present in the non-set-aside multiple-award task-order contracts:

| Dollars and potential dollars in multiple-award contracts FY | Total dollars on MACs ($B) | Small business dollars on MACs (not set aside) ($B) | MAC small business % | Overall small business % (NAICS adjusted) | Potential MAC small business dollars ($B) | Gap between actual and potential SB dollars ($B) |
|---|---|---|---|---|---|---|
| 2019 | $75.5 | $14.2 | 18.8 | 24.8 | $18.8 | $4.5 |
| 2020 | 92.5 | 16.9 | 18.3 | 25.2 | 23.3 | 6.4 |
| 2021 | 78.5 | 16.6 | 21.2 | 25.7 | 20.1 | 3.5 |
| 2022 | 84.4 | 17.0 | 20.2 | 24.3 | 20.6 | 3.5 |
| 2023 | 100.7 | 19.2 | 19.1 | 25.1 | 25.3 | 6.1 |

In the table above, the fifth column (Overall Small Business % (NAICS adjusted)) is multiplied by total dollars (second column) to determine the numbers in the sixth column (Potential MAC Small Business Dollars ($B)). SBA presumes that applying the Rule of Two to task and delivery orders would close the dollar gap between small-business

spending on non-set-aside multiple-award contracts and small-business spending, governmentwide, as adjusted. The action could add up to $6 billion to small-business contract spending. With contract spending exceeding $600 billion annually, this equates to less than 1 percent of all Federal contract spending.

This rulemaking will impose costs to the acquisition workforce to comply with the market-research, documentation, and coordination requirements when the Rule of Two is not applied, as specified in the rulemaking. Although some agencies currently apply the Rule of Two when ordering under a multiple-award

contract vehicle and may have documentation and coordination procedures, SBA will assume for the purpose of calculating the potential cost that no agencies currently require the application of the Rule of Two.

In FY23, agencies awarded 130,246 orders to other-than-small businesses off multiple-award contracts, not including the Federal Supply Schedule. Many of those orders went repeatedly from the same agency to the same other-than-small contractors. The proposed rule allows agencies to use market research conducted within the past 18 months, so if an agency were ordering to the same other-than-small contractor repeatedly under the same multiple-award contract, the agency would, most likely, reuse market research from prior awards. After eliminating orders that went to the same other-than-small contractor on a single vehicle from the same agency, only 5,513 orders remain that would require new small-business market research annually. The actual number of affected orders is likely less because the 5,513 orders presume annual market research (*i.e.*, every 12 months), but the proposed rule allows for market research to be used from up to 18 months prior.

Contracting officers must base a decision on sufficient facts, considering market research, to demonstrate a reasonable assessment of the availability of small businesses on the selected multiple-award contract. Market research may include but is not limited to a review of procurement history, search of databases such as SBA's Dynamic Small Business Search (DSBS), consultation with SBA Procurement Center, or internet searches. Because of the variety of market research methods, SBA estimates that the time required for justification of a decision ranges from a half-hour to search relevant databases to several hours for more extensive open-market research, with the distribution of methods skewed toward database searches rather than intensive market research. SBA therefore estimates that the mean time required for justification is 60 minutes for an estimated annual number of 5,500 affected contracts, resulting in an estimated annual burden to the government for market research of $683,870.[1]

Additionally, agency small-business specialists would review documentation for orders not set-aside above the micropurchase threshold. FAR section 7.104(d) currently requires such a review for orders not set-aside above the

substantial bundling threshold. The number of additional orders to be reviewed annually (excluding those going from the same agency to the same contractor for the reasons explained in the last paragraph) are 3,700. SBA estimates that the time required for a small-business specialist to review this order documentation is 60 minutes. This considers that the orders are relatively low-dollar. SBA therefore estimates the annual burden to the government for small-business specialist review to be $460,000.

3. *What are the alternatives to this rulemaking?*

SBA considered a rule that would require the agency to assess the Rule of Two prior to choosing an existing contracting vehicle. That approach could increase consideration of small businesses that may not presently be on a multiple-award contract, but fails to recognize that the capabilities and capacity of many qualified small businesses already on multiple-award contracts are not being fully leveraged by agencies. SBA's research suggests that the changes proposed by this rulemaking to increase opportunities for small business contract holders on multiple-award contracts could advance diversity and resilience by adding up to $6 billion per year in contract awards to small businesses. Requiring application of the Rule of Two prior to selecting an existing contracting vehicle would, in many cases, duplicate the small business market research that agencies have conducted when establishing the multiple-award contract and could undermine important benefits that these vehicles were designed to create, including the ability to meet mission needs in a timely manner at lower cost and the ability to implement Governmentwide priorities.

*Executive Order 12988*

This action meets applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988, Civil Justice Reform, to minimize litigation, eliminate ambiguity, and reduce burden. The action does not have retroactive or preemptive effect. While this rulemaking will have no effect on task and delivery orders already awarded, it will apply to all new multiple-award contracts, the orders placed under those contracts, and a new order entered into on existing multiple-award contracts where ordering procedures allow for the set aside of the order.

*Executive Order 13132*

For the purposes of Executive Order 13132, SBA has determined that this

rulemaking will not have substantial, direct effect on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, for the purpose of Executive Order 13132, Federalism, SBA has determined that this rulemaking has no federalism implications warranting preparation of a federalism assessment.

*Executive Order 13563*

Executive Order 13563, Improving Regulation and Regulatory Review, directs agencies to, among other things: (a) afford the public a meaningful opportunity to comment through the internet on proposed regulations, with a comment period that should generally consist of not less than 60 days; (b) provide for an "open exchange" of information among government officials, experts, stakeholders, and the public; and (c) seek the views of those who are likely to be affected by the rulemaking, even before issuing a notice of proposed rulemaking. As far as practicable or relevant, SBA considered these requirements in developing this proposed rule, as discussed below.

*Did the agency use the best available techniques to quantify anticipated present and future costs when responding to Executive Order 12866 (e.g., identifying changing future compliance costs that might result from technological innovation or anticipated behavioral changes)?*

To the extent possible, the agency utilized the most recent data available in the Federal Procurement Data System—Next Generation, DSBS, and SAM.

*Public participation:* Did the agency: (a) afford the public a meaningful opportunity to comment through the internet on any proposed regulation, with a comment period that should generally consist of not less than 60 days; (b) provide for an "open exchange" of information among government officials, experts, stakeholders, and the public; (c) provide timely online access to the rulemaking docket on *Regulations.gov*; and (d) seek the views of those who are likely to be affected by rulemaking, even before issuing a notice of proposed rulemaking?

The proposed rule will have a 60-day comment period and will be posted on *www.regulations.gov* to allow the public to comment meaningfully on its provisions. SBA has also discussed some of the proposals in this rulemaking with stakeholders at various

[1] As performed by a GS–13 Step 5 (DC locality in 2024 of $62.17 with 100% added for benefits and overhead).

small business on-line and in-person procurement conferences.

*Flexibility:* Did the agency identify and consider regulatory approaches that reduce burdens and maintain flexibility and freedom of choice for the public?

The proposed rule is intended to eliminate confusion in the small business acquisition community arising due to contradictory decisions of the Court of Federal Claims and the GAO, and increase procurement opportunities for small businesses.

*Paperwork Reduction Act, 44 U.S.C. Ch. 35*

This rulemaking does not impose additional reporting or recordkeeping requirements under the Paperwork Reduction Act, 44 U.S.C. chapter 35.

*Regulatory Flexibility Act, 5 U.S.C. 601–612*

The Regulatory Flexibility Act (RFA), 5 U.S.C. 601, requires administrative agencies to consider the effect of their actions on small entities, small nonprofit enterprises, and small local governments. Pursuant to the RFA, when an agency issues a rulemaking, the agency must prepare a regulatory flexibility analysis which describes the impact of the rule on small entities. However, section 605 of the RFA allows an agency to certify a rule, in lieu of preparing an analysis if the rulemaking is not expected to have a significant economic impact on a substantial number of small entities.

This proposed rule implements an OFPP memorandum and seeks to resolve confusion created by differing interpretations of the Rule of Two by the Court of Federal Claims (*Tolliver Group,* 151 Fed. Cl. 70) and the GAO (*iTility,* B–419167). It does not impose any costs on small business, but rather increases procurement opportunities for small business. Therefore, SBA does not believe the rulemaking would have a disparate impact on small entities or would impose any additional significant costs on them. For the reasons discussed, SBA certifies that this proposed rule does not have a significant economic impact on a substantial number of small entities.

**List of Subjects in 13 CFR Part 125**

Government contracts, Government procurement, Reporting and recordkeeping requirements, Small businesses, Technical assistance.

For the reasons discussed in the preamble, the Small Business Administration proposes to amend 13 CFR part 125 as follows:

**PART 125—GOVERNMENT CONTRACTING PROGRAMS**

■ 1. The authority citation for part 125 continues to read as follows:

**Authority:** 15 U.S.C. 632(p), (q), 634(b)(6), 637, 644, 657f, 657q, 657r, and 657s; 38 U.S.C. 501 and 8127.

■ 2. Amend § 125.2 by:
■ a. In paragraph (c)(1)(i), removing the words ''small business concerns owned and controlled by service-disabled veterans'' and adding, in their place, the words ''certified service-disabled veteran-owned small business concerns'';
■ b. Redesignating paragraphs (c)(2) through (6) as (c)(3) through (7), respectively;
■ c. Adding new paragraph (c)(2);
■ d. Adding new paragraphs (c)(5)(iv) and (v);
■ e. Removing paragraphs (e)(6)(ii) and (iii);
■ f. Redesignating paragraphs (e)(6)(i), (iv), and (v) as (e)(6)(iii), (v), and (vi), respectively;
■ g. Adding new paragraphs (e)(6)(i) and (ii);
■ h. Removing the first sentence of newly redesignated paragraph (e)(6)(iii); and
■ i. Adding new paragraph (e)(6)(iv).
The additions and revisions read as follows:

**§ 125.2 What are SBA's and the procuring agency's responsibilities when providing contracting assistance to small businesses?**

\*     \*     \*     \*     \*

(c) \* \* \*

(2) *PCR notification and early coordination on certain Multiple-award Contracts.* (i) The agency's small business specialist must notify SBA's Procurement Center Representative during the development of the acquisition plan as early in the planning process as possible if:

(A) The dollar value of the Multiple-award Contract exceeds the agency's threshold for substantial bundling, though this requirement is not limited to bundled requirements; and

(B) the number of small business contract holders is expected to be under 30 percent of all expected holders.

(ii) When the number of small business contract holders on a multiple-award contract exceeding the substantial-bundling threshold is expected to be under 30 percent of all expected holders, the agency must document the acquisition plan with the rationale, including market research conducted, for not setting aside or reserving the contract for small business. The explanation should be

reviewed by the agency's small business specialist.

\*     \*     \*     \*     \*

(5) \* \* \*

(iv) When placing an order valued over the micro purchase threshold under a multiple-award contract that has no or only one small business contract awardee, agencies must document and provide to its small business specialist:

(A) How the market research of small business contract holders, including small businesses that are not contract holders on the multiple award contract against which the order would be placed, and mission needs informed the agency's decision for selecting the multiple award contract to fulfill its needs

(B) The market research the agency conducted within the past 18 months regarding the multiple award contract.

(C) The requirement of this paragraph (c)(5)(iv) does not apply to orders under the Federal Supply Schedule, where an exception to fair opportunity applies, when an agency exception applies, or to repetitive orders, including orders placed using automated ordering procedures, issued by an agency when a prior order was documented and coordinated within the prior 18 months.

(v) When placing an order valued over the micro-purchase threshold under a multiple award contract that has two or more small business contract awardees but the agency does not set-aside the order for small business, agencies must document and provide to its small business specialist the basis for not setting aside the order, and ensure the specialist has an opportunity to respond. The agency small business specialist must notify the SBA PCR when the value of such an order exceeds a dollar amount negotiated between the agency and the PCR. This documentation and coordination requirement does not apply to orders placed under the Federal Supply Schedule, citing an exception to fair opportunity, or using an agency-specific exception.

(e) \* \* \*

(6) \* \* \*

(i) Notwithstanding the fair opportunity requirements set forth in 10 U.S.C. 3406(c) and 41 U.S.C. 4106(c), and unless the order is under a Federal Supply Schedule or an agency exception in accordance with agency procedures applies, a contracting officer shall set aside orders valued over the micro-purchase threshold (MPT) for small business contract holders when the contracting officer determines there is a reasonable expectation of obtaining

offers from two or more small business contract holders under the multiple-award contract that are competitive in terms of fair market price, quality, and delivery.

(ii) When placing an order valued over the MPT under a multiple award contract, and the contracting officer does not set-aside the order for small business, the contracting officer must document and provide to its small business specialist the basis for not setting aside the order, in accordance with paragraph (c)(4)(v) of this section.

\* \* \* \* \*

(iv) Agencies may develop procedures for the use of agency-specific exceptions. Exception procedures must be developed in consultation with both the agency small business director and SBA, and made available to the public. Exception procedures must have an appropriate mechanism to ensure responsible use.

\* \* \* \* \*

**Isabella Casillas Guzman,**
*Administrator.*
[FR Doc. 2024–24716 Filed 10–24–24; 8:45 am]
**BILLING CODE 8026–09–P**

---

**CONSUMER PRODUCT SAFETY COMMISSION**

**16 CFR Parts 1220 and 1221**

**[Docket No. CPSC–2024–0034]**

**Revision to the Voluntary Standard for Non-Full-Size Baby Cribs and Play Yards**

**AGENCY:** Consumer Product Safety Commission.

**ACTION:** Notice of revised standard; request for comments.

**SUMMARY:** Two of the U.S. Consumer Product Safety Commission's (Commission or CPSC) mandatory rules, Safety Standard for Non-Full-Size Baby Cribs and Safety Standard for Play Yards, incorporate by reference the same voluntary standard, ASTM F406, *Standard Consumer Safety Specification for Non-Full-Size Baby Cribs/Play Yards.* The Safety Standard for Non-Full-Size Baby Cribs incorporates the 2022 version of ASTM F406, and the Safety Standard for Play Yards incorporates the 2019 version of ASTM F406. ASTM notified the Commission that it has revised ASTM F406 and published ASTM F406–2024. CPSC seeks comment on whether adopting the revised voluntary standard would improve the safety of non-full-size cribs and/or play yards.

**DATES:** Comments must be received by November 8, 2024.

**ADDRESSES:** You can submit comments, identified by Docket No. CPSC–2024–0034, by any of the following methods:

*Electronic Submissions:* Submit electronic comments to the Federal eRulemaking Portal at: *https://www.regulations.gov.* Follow the instructions for submitting comments. Do not submit through this website: confidential business information, trade secret information, or other sensitive or protected information that you do not want to be available to the public. CPSC typically does not accept comments submitted by email, except as described below.

*Mail/Hand Delivery/Courier/Confidential Written Submissions:* CPSC encourages you to submit electronic comments by using the Federal eRulemaking Portal. You may, however, submit comments by mail, hand delivery, or courier to: Office of the Secretary, Consumer Product Safety Commission, 4330 East-West Highway, Bethesda, MD 20814; telephone: (301) 504–7479. If you wish to submit confidential business information, trade secret information, or other sensitive or protected information that you do not want to be available to the public, you may submit such comments by mail, hand delivery, or courier, or you may email them to: *cpsc-os@cpsc.gov.*

*Instructions:* All submissions must include the agency name and docket number. CPSC may post all comments without change, including any personal identifiers, contact information, or other personal information provided, to: *https://www.regulations.gov.* Do not submit to this website: confidential business information, trade secret information, or other sensitive or protected information that you do not want to be available to the public. If you wish to submit such information, please submit it according to the instructions for mail/hand delivery/courier/confidential written submissions.

*Docket:* For access to the docket to read background documents or comments received, go to: *https://www.regulations.gov,* and insert the docket number, CPSC–2024–0034, into the "Search" box, and follow the prompts.

**FOR FURTHER INFORMATION CONTACT:** Frederick DeGrano, Project Manager, Division of Mechanical and Combustion Engineering, U.S. Consumer Product Safety Commission, 5 Research Place, Rockville, MD 20850; telephone: (301) 987–2711; email: *fdegrano@cpsc.gov.*

**SUPPLEMENTARY INFORMATION:** Section 104(b) of the Consumer Product Safety

Improvement Act of 2008 (CPSIA) requires the Commission to adopt mandatory standards for durable infant or toddler products. 15 U.S.C. 2056a(b)(1). Mandatory standards must be "substantially the same as" voluntary standards, or they may be "more stringent" than the applicable voluntary standards, if the Commission determines that more stringent requirements would further reduce the risk of injury associated with the products. *Id.* Mandatory standards may be based, in whole or in part, on a voluntary standard.

Section 104(b)(4)(B) of the CPSIA specifies the process for when a voluntary standards organization revises a standard that the Commission incorporated by reference under section 104(b)(1). First, the voluntary standards organization must notify the Commission of the revision. Once the Commission receives this notification, the Commission may reject or accept the revised standard. To reject a revised standard, the Commission must notify the voluntary standards organization within 90 days of receiving the notice of revision that the Commission has determined that the revised standard does not improve the safety of the consumer product and that CPSC is retaining the existing standard. If the Commission does not take this action, the revised voluntary standard will be considered a consumer product safety standard issued under section 9 of the Consumer Product Safety Act (15 U.S.C. 2058), effective 180 days after the Commission received notification of the revision (or a later date specified by the Commission in the **Federal Register**). 15 U.S.C. 2056a(b)(4)(B).

Under this authority, the Commission issued two mandatory safety rules that incorporate by reference applicable provisions of ASTM F406: Safety Standard for Non-Full-Size Baby Cribs, codified at 16 CFR part 1220 (75 FR 81787, Dec. 28, 2010), and Safety Standard for Play Yards, codified at 16 CFR part 1221 (77 FR 52228, Aug. 29, 2012). These mandatory standards include performance requirements and test methods, as well as requirements for warning labels and instructions, to address hazards to children. After the Commission's promulgation of these final rules, ASTM published several revisions to ASTM F406 that the Commission considered for incorporation by reference in the mandatory rules, parts 1220 and 1221. Most recently, in 2023, the Commission revised the non-full-size (NFS) cribs mandatory standard to incorporate by reference ASTM F406–2022, but rejected ASTM F406–2022 as it applied